

# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
05/14/2019

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
|  | ) |  |
| Debtors. | ) |  |
|  | ) | (Jointly Administered) |

**INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO THE PREPETITION CONSENTING SECURED PARTIES, (C) SCHEDULING A FINAL HEARING, (D) MODIFYING THE AUTOMATIC STAY AND (E) GRANTING RELATED RELIEF**

(Docket No. 41)

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**") and pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Bankruptcy Rules for the Southern District of Texas (the "**Local Rules**") and the Procedures for Complex Chapter 11 Bankruptcy Cases (the "**Complex Case Rules**") promulgated by the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"), seeking entry of a proposed interim order (the "**Interim Order**"), among other things:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd., and Bristow Equipment Leasing Ltd.  The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

[2] Capitalized terms used herein and not herein defined have the meaning ascribed to such terms in Annex A or Annex B, as applicable.

(i)  subject to the restrictions set forth in this Interim Order, authorizing the Debtors to use the Prepetition Collateral, including Cash Collateral (as defined herein), of the Prepetition Secured Parties under the applicable Prepetition Debt Documents and grant adequate protection to the Prepetition Secured Parties pursuant to sections 361 and 363(e) of the Bankruptcy Code for any diminution in value of their respective interests in the Prepetition Collateral (including Cash Collateral), resulting from the imposition of the automatic stay or the Debtors' use, sale or lease of the Prepetition Collateral (including Cash Collateral), including, subject to entry of a Final Order, granting adequate protection claims and liens on Avoidance Proceeds (as defined herein);

(ii)  authorizing the Debtors to waive: (a) the Debtors' right, upon entry of a Final Order, to surcharge the Prepetition Collateral (each as defined herein) or the Adequate Protection Collateral (as defined herein) pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

(iii)  approving certain stipulations and releases by the Debtors attached as Annex C;

(iv)  modifying the automatic stay to the extent set forth herein to the extent necessary to permit the Debtors and the Prepetition Secured Parties to implement and effectuate the terms and provisions of this Interim Order and the Final Order and to deliver any notices of termination described below; and

(v)  scheduling a final hearing (the "**Final Hearing**") to consider final approval of the use of Cash Collateral pursuant to a proposed final order (the "**Final Order**"), as set forth in the Motion.

The Court having considered the Motion, the annexes and exhibits attached thereto, the *Declaration of Brian J. Allman in Support of the Debtors' First Day Motions* (the "**First Day Declaration**"), and the evidence submitted and arguments made by the Debtors at the interim hearing held on May 14, 2019 (the "**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002 and 4001 and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to

avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors and their estates and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.      *Jurisdiction and Venue*.  This Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for the Chapter 11 Cases (as defined below) and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      *Notice*.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Complex Case Rules, and no other or further notice of the Motion or the entry of this Interim Order shall be required.

---

[3]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

#91969680v30

C.      *Cash Collateral*.  Substantially all of the Debtors' cash, including cash in deposit accounts constitutes "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code (and together with all property described in section 363(a), "**Cash Collateral**").

D.      *Annexes*.  All annexes and schedules to this Interim Order, including Annex A, Annex B, Annex C (the "**Annexes**") and Schedule 1 (the "**Schedule**") attached hereto, constitute part of this Interim Order and all stipulations, findings, rulings, orders, approvals, authorizations, waivers, limitations, restrictions, obligations, modifications, definitions and other portions, shall constitute a part of this Interim Order and are fully integrated within this Interim Order.  No party in any proceeding before this Court or otherwise at any time shall argue that, any such portion of the Annexes or the Schedule, by virtue of being contained in such Annexes or Schedule, are not part of or fully integrated within this Interim Order.

E.      *Findings Regarding the Use of Cash Collateral*.

(i)      Good and sufficient cause has been shown for the entry of this Interim Order.

(ii)      The Debtors have an immediate and critical need to use Prepetition Collateral (including Cash Collateral), on an interim basis, in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with contract counterparties, vendors, suppliers and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operational needs, and fund expenses of these chapter 11 cases.  The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral is necessary and vital to the preservation and maintenance of the going concern value of the Debtors and their successful reorganization.  Absent the ability to use Cash Collateral and the other Prepetition

#91969680v30

Collateral, the continued operation of the Debtors' businesses would not be possible, and immediate and irreparable harm to the Debtors and their estates would be inevitable.

(iii)    The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Collateral and acquire equipment, inventory and other personal property, all of which may constitute Prepetition Collateral under the Prepetition Debt Documents (as applicable).  The Debtors stipulate that the property described in the preceding sentence as it relates to the BGI Term Loan Collateral and the Senior Secured Notes Collateral constitutes BGI Term Loan Collateral and Senior Secured Notes Collateral (as applicable) that is subject to the Prepetition Consenting Secured Parties' valid and perfected security interests.

(iv)    The Debtors desire to use a portion of such cash, rents, income, offspring, products, proceeds and profits in their business operations which may constitute Cash Collateral of the Prepetition Agents under section 363(a) of the Bankruptcy Code.  Certain prepetition rents, income, offspring, products, proceeds, and profits, in existence as of May 11, 2019 (the "**Petition Date**"), including balances of funds in the Debtors' prepetition and postpetition operating bank accounts, may also constitute Cash Collateral.  The Debtors stipulate that the property described in the two preceding sentences as it relates to the BGI Term Loan Collateral and the Senior Secured Notes Collateral constitutes Cash Collateral of the Prepetition Consenting Agents.

(v)    The Prepetition Consenting Agents on behalf of the Prepetition Consenting Secured Parties have consented to the Debtors' use of the Cash Collateral exclusively on and subject to the terms and conditions set forth herein and for the limited duration of such use provided for herein.

5

(vi)     Based on the Motion, the First Day Declaration, and the record presented to the Court at the Interim Hearing, the terms of the Adequate Protection Obligations and the terms on which the Debtors may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(vii)    The Prepetition Consenting Secured Parties have acted in good faith regarding the Debtors' continued use of the Prepetition Collateral (including Cash Collateral) to fund the administration of the Debtors' estates and permit the continued operation of their businesses (including the incurrence, granting and payment of the Adequate Protection Obligations (as defined herein)), in accordance with the terms hereof.  The Prepetition Consenting Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 363(m) of the Bankruptcy Code, to the extent such section applies, in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(viii)   The Prepetition Secured Parties are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code.  The adequate protection provided to the Prepetition Secured Parties in this Interim Order for any diminution in the value of the Prepetition Secured Parties' interest in the Prepetition Collateral from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, is consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to protect such parties'

6

interests in the Prepetition Collateral in accordance with sections 361, 362, and 363 of the Bankruptcy Code.  The adequate protection provided herein and other benefits and privileges contained herein are necessary in order to (i) protect the Prepetition Secured Parties from the diminution of their respective interests in the value of the Prepetition Collateral and (ii) obtain the foregoing consents and agreements.

(ix)     Nothing in this Interim Order shall (x) be construed as the affirmative consent by any of the Prepetition Consenting Secured Parties for the use of Cash Collateral other than on the terms set forth in this Interim Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties and the rights of any other party in interest to object to such relief are hereby preserved.

(x)     The Debtors stipulate and the Court finds that each of the Prepetition Secured Parties and the Prepetition Agents shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  Subject only to and effective upon entry of a Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to them with respect to proceeds, product, offspring or profits with respect to any of the Prepetition Collateral.

(xi)     The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and the Local Rules.  Absent granting the relief set forth in this Interim Order, the Debtors' estates will be immediately and irreparably harmed. Permitting the use of Prepetition Collateral (including Cash Collateral), in accordance with this

Interim Order is therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.

F.     *Permitted Prior Liens; Continuation of Prepetition Liens*.   Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien (as defined in Annex C) is valid, senior, enforceable, prior, perfected or non-avoidable.   Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the Prepetition Secured Parties, the Creditors' Committee, and the Ad Hoc Group of Unsecured Noteholders (as defined in the verified statement filed on the Court's docket as docket entry no. 52), in each case to the extent such party has standing to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Lien and/or security interests.   The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien and is expressly subject to the Prepetition Liens.   The Prepetition Liens of each of the Prepetition Secured Parties are continuing liens and the respective Prepetition Collateral of each such Prepetition Secured Party is and will continue to be encumbered by such liens in light of the integrated nature of the respective Prepetition Debt Documents applicable to each such Prepetition Secured Party.

G.     *Immediate Entry*.   Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     *Motion Approved*.   The Motion is granted, and the incurrence and granting of the Adequate Protection Obligations is authorized and approved and the use of the Prepetition Collateral (including Cash Collateral) on an interim basis is authorized, in each case subject to

the terms and conditions set forth in this Interim Order.  All objections to this Interim Order to the extent not withdrawn, waived, settled or resolved are hereby denied and overruled.

2.      *Use of Cash Collateral*. The Debtors are hereby authorized, subject to the terms and conditions of this Interim Order (including compliance with the Budget (as defined below)) during the period from the Petition Date through and including the Termination Date, to use the Cash Collateral for (i) working capital, general corporate purposes, and administrative costs and expenses of the Debtors incurred in the Chapter 11 Cases, including first-day related relief subject to the terms hereof and (ii) adequate protection payments to the Prepetition Secured Parties, as provided herein; *provided* that (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms and conditions of this Interim Order, the Debtors shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

3.      *Adequate Protection of BGI Term Loan Secured Parties*. The BGI Term Loan Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, to the extent of the diminution in the value of the BGI Term Loan Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**BGI Term Loan Secured Parties Adequate Protection Claims**").  In consideration of the foregoing, the BGI Term Loan Agent for the benefit of the BGI Term Loan Secured Parties, is hereby granted the following (collectively, the "**BGI Term Loan Secured Parties Adequate Protection Obligations**"):

#91969680v30

(b)     <u>BGI Adequate Protection Liens</u>.  The BGI Term Loan Agent, for itself and for the benefit of the other BGI Term Loan Secured Parties, is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, aircraft or other registrations, pledge agreements, financing statements or other agreements), in the amount of the BGI Term Loan Secured Parties Adequate Protection Claim, a valid, perfected replacement security interest in and lien upon all of the following (all property identified in clauses (i), (ii), (iii) and (iv) below being collectively referred to as the "**Adequate Protection Collateral**"), subject only to the Carve Out (as defined below) (all such liens and security interests, the "**BGI Term Loan Secured Parties Adequate Protection Liens**"):

(i)     *First Priority Liens on Unencumbered Property*:  Pursuant to sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a valid, perfected and non-avoidable lien, including, without limitation, any and all unencumbered cash of the Debtors (whether maintained with any of the Prepetition Agents or otherwise) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, aircraft, aircraft parts, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, real property leaseholds, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock or other equity interests of subsidiaries, wherever located, intercompany loans and notes, servicing rights, swap and hedge proceeds and termination payments, claims and causes of action, tort claims and the proceeds, products, rents and profits, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (excluding claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or applicable state-law equivalents ("**Avoidance Actions**"), but including any net proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by

10

judgment, settlement or otherwise ("**Avoidance Proceeds**")) (the "**Unencumbered Property**"), which lien and security interest shall rank *pari passu* with the Senior Secured Notes Secured Parties Adequate Protection Liens on Unencumbered Property. ** Avoidance Prceeds shall be the collateral of last resort.

(ii)     *Liens Junior to Certain Other Liens*.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all tangible and intangible pre- and postpetition property of each Debtor and the proceeds, products, rents and profits thereof, whether arising under section 552(b) of the Bankruptcy Code or otherwise, that is subject to either (i) valid, perfected and non-avoidable liens (other than the BGI Term Loan Liens, the Senior Secured Notes Liens and the BULL Lombard Liens) in existence immediately prior to the Petition Date or (ii) valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (any such liens described in the foregoing clauses (i) and (ii), the "**Other Senior Liens**"), which security interest and lien shall be junior and subordinate to any valid, perfected, and non-avoidable Other Senior Liens on such property in existence immediately prior to the Petition Date, and which security interest and lien shall rank *pari passu* with the Senior Secured Notes Secured Parties Adequate Protection Liens with respect to such collateral.

(iii)    *Liens Senior to Certain Existing Liens*.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, the BGI Term Loan Collateral and the Senior Secured Notes Collateral, and all products, proceeds, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise; *provided* that the BGI Term Loan Secured Parties Adequate Protection Liens set forth in this paragraph (iii) shall be junior to valid, perfected and non-avoidable Other Senior Liens on such property in existence immediately prior to the Petition Date that are permitted under the BGI Term Loan Documents and/or the Senior Secured Notes Documents, as applicable; *provided, further* that the BGI Term Loan Secured Parties Adequate Protection Liens set forth in this paragraph (iii) on the Senior Secured Notes Collateral shall be senior to the Senior Secured Notes Liens (and the BGI Term Loan Liens) with respect to such collateral but junior to the Senior Secured Notes Secured Parties Adequate Protection Liens with respect to such collateral.

(iv)     *Status of Adequate Protection Claims.* Subject to the Carve Out, the BGI Term Loan Secured Parties Adequate Protection Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or

11

security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in this Interim Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors or (C) any intercompany or affiliate liens of the Debtors or security interests of the Debtors; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.   For the avoidance of doubt, the Debtors are permitted to grant the following postpetition liens and security interests: (i) those granted pursuant to this Interim Order; (ii)  carriers', mechanics', operators', repairmen's, warehousemen's, or other similar liens arising in the ordinary course of business; (iii) pledges and deposits in connection with workers' compensation, unemployment insurance and other social security legislation; and (iv) deposits to secure the payment of any postpetition statutory obligations and performance bonds.

(c)      BGI Term Loan Section 507(b) Claims.  The BGI Term Loan Agent, for itself and for the benefit of the other BGI Term Loan Secured Parties, is hereby granted, subject to the Carve Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the BGI Term Loan Secured Parties' Adequate Protection Claims with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**BGI Term Loan Secured Parties 507(b) Claim**"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors.  The BGI Term Loan Secured Parties 507(b) Claim shall be subject and subordinate only to the Carve Out and shall rank *pari passu* with the Senior Secured Notes Secured Parties 507(b) Claim and each Equipment Lenders 507(b) Claim.

(d)      BGI Term Loan Secured Parties Adequate Protection Cash Payments. The BGI Term Loan Agent, for the benefit of the applicable BGI Term Loan Secured Parties,

#91969680v30

shall receive current payment in cash on the due dates provided in the BGI Term Loan Credit Agreement in an amount equal to the sum of (A) all unpaid fees and expenses owing to the BGI Term Loan Agent under the BGI Term Loan Credit Agreement and (B) all interest accruing on any BGI Term Loan Debt, whether accruing prior to, on or after the Petition Date, at the applicable rate under the BGI Term Loan Credit Agreement (collectively, the "**BGI Term Loan Secured Parties Adequate Protection Payments**").

   (e) <u>BGI Term Loan Secured Parties Fees and Expenses</u>.  Upon entry of this Interim Order, the Debtors are authorized and directed to pay in cash all reasonable and documented prepetition or postpetition professional fees, expenses and disbursements payable to the advisors to the BGI Term Loan Agent, including, without limitation, the fees and expenses of (A) Davis Polk & Wardwell LLP, (B) Haynes and Boone, LLP, (C) Daugherty, Fowler, Peregrin, Haught & Jenson, (D) PJT Partners LP and (E) special and local counsel in each relevant jurisdiction, in each case pursuant to the procedures set forth in this paragraph (the "**Adequate Protection Fee Payment Procedures**").  The payment of the fees, expenses and disbursements set forth in this paragraph 3(d) and paragraph 4(d) of this Interim Order shall be made within ten (10) days (which time period may be extended by the applicable professional) after the receipt by the Debtors, the U.S. Trustee, and counsel for the Committee (the "**Review Period**") of invoices therefor without the necessity of filing formal fee applications or compliance with the U.S. Trustee's fee guidelines.  Such invoices provided to the Debtors, the U.S. Trustee, and counsel for the Committee shall be summary copies, which shall not be required to contain time detail and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the

attorney client privilege or of any benefits of the attorney work product doctrine.  Any objections raised by the Debtors, the U.S. Trustee, or the Committee with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional so as to be actually received prior to the expiration of the Review Period. Following the Review Period, any such timely received objection will be subject to resolution by the Court to the extent it remains unresolved.  Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors and the applicable parties shall attempt to negotiate a resolution in good faith until the time of such resolution by the Court. Notwithstanding the foregoing, the Debtors are authorized and directed to pay all adequate protection fees and expenses incurred under this paragraph 3(d) or paragraph 4(d) of this Interim Order on or prior to such date without the need for any applicable professional to first deliver a copy of its invoice or other supporting documentation.

          (f)      *Financial Reporting*.  The Debtors shall continue to provide the BGI Term Loan Agent with financial and other reporting substantially in compliance with the BGI Term Loan Documents and any reporting described in this Interim Order, including weekly liquidity reporting and detail on all intercompany cash transfers between the Debtors and the Debtors and/or the non-Debtors; *provided* that no audited financial statements shall be required and there shall be longer deadlines to be mutually agreed for certain reporting.  So long as the Debtors' right to use cash collateral pursuant to this Interim Order has not terminated, the Debtors shall provide the same financial information required to be provided to the BGI Term Loan Agent under this subparagraph at the same time to counsel for the Ad Hoc Group of Unsecured Noteholders.

14

(g)     *Milestones*. Subject only to and effective upon entry of the Final Order, the BGI Term Loan Secured Parties are hereby entitled to performance of the following case milestones (collectively, the "**BGI Adequate Protection Milestones**"):

(i)     the filing of a chapter 11 plan of reorganization in form and substance satisfactory to the Debtors, the Required Term Loan Lenders, and the Required Secured Noteholders (an "**Acceptable Chapter 11 Plan**") and a disclosure statement related thereto, on or before August 1, 2019;

(ii)    entry of an order approving the disclosure statement for the Acceptable Chapter 11 Plan, in form and substance reasonably satisfactory to the Required Term Loan Lenders and the Required Secured Noteholders on or before the date that is 45 days after the filing of the Acceptable Chapter 11 Plan and disclosure statement therefor;

(iii)   entry of an order confirming the Acceptable Chapter 11 Plan, in form and substance reasonably satisfactory to the Required Term Loan Lenders and the Required Secured Noteholders on or before the date that is 60 days after entry of an order approving the disclosure statement for the Acceptable Chapter 11 Plan; and

(iv)    substantial consummation of the Acceptable Chapter 11 Plan by no later than 30 days after entry of an order confirming such Acceptable Chapter 11 Plan.

4.      *Adequate Protection of Senior Secured Notes Secured Parties*.   The Senior Secured Notes Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, to the extent of the diminution in the value of the Senior Secured Notes Secured Parties' interests in the Senior Secured Notes Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Senior Secured Notes Secured Parties Adequate Protection Claims**").   In consideration of the foregoing, the Senior Secured Notes Indenture Trustee, for the benefit of the Senior

#91969680v30

Secured Notes Secured Parties, is hereby granted the following (collectively, the "**Senior Secured Notes Secured Parties Adequate Protection Obligations**"):

(a)     Senior Secured Notes Adequate Protection Liens.  The Senior Secured Notes Indenture Trustee, for itself and for the benefit of the other Senior Secured Notes Secured Parties, is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of the execution of any mortgages, security agreements, aircraft or other registrations, pledge agreements, financing statements or other agreements), in the amount of the Senior Secured Notes Secured Parties Adequate Protection Claim, a valid, perfected replacement security interest in and lien upon all of the Adequate Protection Collateral, subject only to the Carve Out (all such liens and security interests, the "**Senior Secured Notes Secured Parties Adequate Protection Liens**"):

(i)     *First Priority Liens on Unencumbered Property*:  Pursuant to sections 361(2) and 363(c)(2), a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all Unencumbered Property, which lien and security interest shall rank *pari passu* with the BGI Term Loan Secured Parties Adequate Protection Liens on Unencumbered Property.

(ii)     *Liens Junior to Certain Other Liens*.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all tangible and intangible pre- and postpetition property of each Debtor and the proceeds, products, rents and profits thereof, whether arising under section 552(b) of the Bankruptcy Code or otherwise, that is subject to the Other Senior Liens, which security interest and lien shall be junior and subordinate to any valid, perfected and non-avoidable Other Senior Liens on such property in existence immediately prior to the Petition Date, and which security interest and lien shall rank *pari passu* with the BGI Term Loan Secured Parties Adequate Protection Liens with respect to such collateral.

(iii)     *Liens Senior to Certain Existing Liens*.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected priming lien on, and security interest in, the BGI Term Loan Collateral and the Senior Secured Notes Collateral, and all products, proceeds, rents and profits thereof,

16

whether arising from section 552(b) of the Bankruptcy Code or otherwise; *provided*, that the liens and security interests of the Senior Secured Notes Secured Parties set forth in this paragraph (iii) shall be junior to valid, perfected and non-avoidable Other Senior Liens in existence immediately prior to the Petition Date that are permitted under the BGI Term Loan Documents and/or the Senior Secured Notes Documents, as applicable; *provided*, *further* that the liens and security interests of the Senior Secured Notes Secured Parties set forth in this paragraph (iii) on the BGI Term Loan Collateral shall be senior to the BGI Term Loan Liens with respect to such collateral but junior to the BGI Term Loan Secured Parties Adequate Protection Liens with respect to such collateral.

(iv)    *Status of Adequate Protection Claims.* Subject to the Carve Out, the Senior Secured Notes Secured Parties Adequate Protection Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in this Interim Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors or (C) any intercompany or affiliate liens of the Debtors or security interests of the Debtors; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.  For the avoidance of doubt, the Debtors are permitted to grant the following postpetition liens and security interests: (i) those granted pursuant to this Interim Order; (ii)  carriers', mechanics', operators', repairmen's, warehousemen's, or other similar liens arising in the ordinary course of business; (iii) pledges and deposits in connection with workers' compensation, unemployment insurance and other social security legislation; and (iv) deposits to secure the payment of any postpetition statutory obligations and performance bonds.

(b)    Senior Secured Notes Section 507(b) Claims.  The Senior Secured Notes Indenture Trustee, for itself and for the benefit of the other Senior Secured Notes Secured Parties, is hereby granted, subject to the Carve Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Senior Secured Notes Secured Parties' Adequate Protection Claim with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind

17

specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Senior Secured Notes Secured Parties 507(b) Claim**"), which Senior Secured Notes Secured Parties 507(b) Claim which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors.  The Senior Secured Notes Secured Parties 507(b) Claim shall be subject and subordinate only to the Carve Out and shall rank *pari passu* with the BGI Term Loan Secured Parties 507(b) Claim and each Equipment Lenders 507(b) Claim.

(c)     Senior Secured Notes Secured Parties Cash Payments.    The Senior Secured Notes Indenture Trustee, for the benefit of the applicable Senior Secured Notes Secured Parties, shall receive current payment in cash on the last business day of each month in an amount equal to the sum of (A) all unpaid fees and expenses owing to the Senior Secured Notes Indenture Trustee under the Senior Secured Notes Indenture and (B) all interest accruing on the Notes (as defined in the Senior Secured Notes Indenture), whether accruing prior to, on or after the Petition Date, at the applicable non-default rate thereunder (collectively, the "**Senior Secured Notes Secured Parties Adequate Protection Payments**").

(d)     Senior Secured Notes Secured Parties Fees and Expenses.    Without duplication of amounts required to be paid pursuant to paragraph 3(d) of this Interim Order, upon entry of this Interim Order, the Debtors are authorized and directed to pay in cash all reasonable and documented prepetition or postpetition professional fees, expenses and disbursements payable to the advisors to the ad hoc group of Senior Secured Noteholders (which group holds a majority in amount of the Senior Secured Notes outstanding as of the Petition Date, the "**Secured Notes Group**"), including the fees and expenses of (A) Davis Polk & Wardwell LLP, (B) Haynes and Boone, LLP, (C) Daugherty, Fowler, Peregrin, Haught & Jenson, (D) PJT Partners LP and (E) special and local counsel in each relevant jurisdiction, and the reasonable

18

and documented prepetition or postpetition professional fees, expenses and disbursements payable to counsel to the Senior Secured Notes Indenture Trustee, which payments shall be subject to the Adequate Protection Fee Payment Procedures.

(e)     *Financial Reporting*.  The Debtors shall continue to provide the Senior Secured Notes Trustee with financial and other reporting substantially in compliance with the Prepetition Debt Documents and any reporting described in this Interim Order, including weekly liquidity reporting and detail on all intercompany cash transfers between the Debtors and the Debtors and/or the non-Debtors; *provided* that no audited financial statements shall be required and there shall be longer deadlines to be mutually agreed for certain reporting.  So long as the Debtors' right to use cash collateral pursuant to this Interim Order has not terminated, the Debtors shall provide the same financial information required to be provided to the Senior Secured Notes Trustee under this subparagraph at the same time to counsel for the Ad Hoc Group of Unsecured Noteholders.

(f)     *Milestones*.  Subject only to and effective upon entry of the Final Order, the Senior Secured Notes Secured Parties are hereby entitled to performance of the BGI Adequate Protection Milestones.

5.     *Adequate Protection of Each Equipment Lender (Each Individually and Not Collectively)*.  Each of the Equipment Lenders is entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of its respective interest in its own Equipment Prepetition Collateral, including Cash Collateral, individually and not collectively, and each solely to the extent of such Equipment Lender's respective diminution in the value of such Equipment Lender's interests in its own Equipment Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the

#91969680v30

Bankruptcy Code, including the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Equipment Lenders Adequate Protection Claims**").  In consideration of the foregoing, each of the Equipment Lender Agents, for the benefit of their respective Equipment Lenders, are hereby granted, individually in respect of each such Equipment Lender's own Equipment Prepetition Collateral, and not collectively, the following (each, the "**Equipment Lenders Adequate Protection Obligations**").

         (a)        <u>Equipment Lenders Adequate Protection Liens</u>.  Each of the Equipment Lender Agents, for themselves and for the benefit of their respective Equipment Lenders, are hereby granted, each individually and not collectively, in the amount of each such Equipment Lenders Adequate Protection Claim, subject to the Carve Out (all such liens and security interests applicable to an Equipment Lender, each on an individual basis, the "**Equipment Lenders Adequate Protection Liens**"), a post-petition replacement lien in and against its own Equipment Prepetition Collateral as of the Petition Date, and all products, proceeds, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise.  The Equipment Lenders Adequate Protection Liens shall attach to and be enforceable against the same property and any post-petition proceeds thereof, to the same extent, and in the same order as their respective Equipment Prepetition Liens.

         (b)        <u>Equipment Lenders Section 507(b) Claims</u>.   Each of the Equipment Lender Agents, for themselves and for the benefit of their respective Equipment Lenders, are hereby granted, subject to the Carve Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of their respective Equipment Lenders Adequate Protection Claim with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered

#91969680v30

pursuant to any provision of the Bankruptcy Code (the "**Equipment Lenders 507(b) Claim**"), which administrative claims shall have recourse to and be payable from all prepetition and postpetition property of the Debtors.  Each Equipment Lenders 507(b) Claim shall be subject and subordinate to the Carve Out and shall rank *pari passu* with each other and the Senior Secured Notes Secured Parties 507(b) Claim and the BGI Term Loan Secured Parties 507(b) Claim.

(c)     Equipment Lenders Adequate Protection Cash Payments.  Each of the Equipment Lender Agents, for themselves and for the benefit of their respective Equipment Lenders, shall receive payment of all interest accruing under its own respective Equipment Lender Agreement, whether accruing prior to, on or after the Petition Date, at the non-default rate thereunder when due thereunder.  The Debtors are authorized to pay all reasonable and documented fees and expenses of the legal advisors to each of the Equipment Lender Agents, limited to the reimbursement of the fees and expenses of one main counsel and one local counsel for each, which payments shall be subject to the Adequate Protection Fee Payment Procedures. In addition, upon entry of a Final Order, the BULL Lombard Agent, for itself and for the benefit of the BULL Lombard Lenders, shall receive payment of all regularly scheduled principal under the BULL Lombard Credit Facility, whether accruing prior to, on or after the Petition Date, when due thereunder.  The payments made under this paragraph are collectively, the "**Equipment Lenders Adequate Protection Payments**."

6.     *Adequate Protection Obligations Binding*.  Upon entry of this Interim Order, the Adequate Protection Obligations shall constitute valid, binding and non-avoidable obligations of the Debtors, enforceable against each Debtor and its estate in accordance with the terms of the this Interim Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the

#91969680v30

Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**").

7.      *Carve Out*.

(a)      For purposes hereof, the "**Carve Out**" is an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court and to the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $100,000 (without regard to the notice set forth in (iii) below); and (iii) (A) all unpaid claims for fees, costs, disbursements and expenses to the extent allowed at any time, whether by interim order, final order, procedural order or otherwise of persons or firms retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code or any Creditors' Committee (collectively, the "**Professional Fees**") incurred at any time on or prior to the Trigger Date, plus (B) Professional Fees incurred after the Trigger Date in an amount not to exceed $5,000,000, of professionals retained by the Debtors (the "**Carve Out Cap**"), in each case subject to the limits imposed by this Interim Order, the Final Order (if and when entered) or otherwise on Professional Fees permitted to be incurred in connection with any permitted investigation of the claims, liens and defenses against any Prepetition Secured Party; provided, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii)(A) or (iii)(B) above, on any other grounds.   "**Trigger Notice**" shall mean a written notice delivered by the Required Term Loan Lenders or the Required Secured Noteholders as applicable, stating that a Termination Event (as defined below) has occurred and describing the

22

reason for termination of the use of Cash Collateral.  Immediately upon delivery of a Trigger Notice, and prior to the payment to any Prepetition Secured Party on account of any adequate protection or otherwise, the Debtors shall be required to deposit, in a segregated account not subject to the control of either Prepetition Consenting Agent (the "**Carve Out Account**"), an amount equal to the Carve Out Cap.  The funds on deposit in the Carve Out Account shall be available only to satisfy obligations benefiting from the Carve Out, and the BGI Term Loan Agent and Senior Secured Notes Indenture Trustee, each on behalf of itself and the relevant secured parties, (i) shall not sweep or foreclose on cash of the Debtors necessary to fund the Carve Out Account and (ii) shall have a security interest upon any residual interest in the Carve Out Account available following satisfaction in cash in full of all obligations benefitting from the Carve Out.

(b)     For purposes hereof, the "**Trigger Date**" shall mean the earlier of delivery (including via email) of the Trigger Notice to the Borrowers' lead restructuring counsel and the U.S. Trustee.

(c)     Notwithstanding the foregoing, (x) the Carve Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation (other than, prior to the Trigger Date, as permitted under paragraph 20 of this Interim Order), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation, or assertions of any defense or counterclaim, against any of the Prepetition Consenting Secured Parties, and their respective agents, attorneys, advisors, representatives or other Representatives (as defined herein) or in connection with or related to any of the Prepetition Debt Documents or this Interim Order or the Chapter 11 Cases, including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense,

#91969680v30

counterclaim or offset to, the obligations and the liens and security interests granted under the Prepetition Debt Documents (whether in such capacity or otherwise), including, in each case, without limitation, for lender liability or pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the Prepetition Consenting Secured Parties; (c) attempts to prevent, hinder or otherwise delay any of the Prepetition Consenting Secured Parties' assertion, enforcement or realization upon any Adequate Protection Collateral or Prepetition Collateral in accordance with this Interim Order or the Final Order other than to seek a determination that an Termination Event has not occurred or is not continuing; or (d) paying any amount on account of any claims arising before the commencement of the Chapter 11 Cases unless such payments are approved by an order of the Court, and (y) prior to the Trigger Date, the Carve Out shall not be reduced by the payment or incurrence of Professional Fees allowed at any time by the Court. Further, notwithstanding anything to the contrary in this Interim Order, (i) the failure of the Carve Out Account to satisfy in full the Professional Fees shall not affect the priority of the Carve Out and (ii) in no way shall the initial Budget (attached to the Motion), the Carve Out, the Trigger Notice, the Carve Out Cap, or any of the foregoing be construed as a cap or limitation on the amount of the Professional Fees due and payable to the Debtors or the Creditors' Committee.

8.     *Budget Maintenance and Compliance*.  The use of Cash Collateral and Prepetition Collateral pursuant to this Interim Order shall be limited in accordance with the budget (the "**Budget**"), an initial version of which (the "**Interim Budget**") is attached hereto as **Schedule 1**.[4] The Budget and delivery thereof shall (A) comply in all respects with the requirements for delivery of Cash Flow Forecasts and Variance Reports (as defined and set forth in the BGI Term

---

[4]     The Budget attached as Schedule 1 is a consolidated budget that includes the Debtors and their non-debtor affiliates.

#91969680v30

Loan Credit Agreement) and (B) contain such other information reasonably requested by the Required Secured Noteholders or the Required Term Loan Lenders.  Each Budget delivered pursuant to this paragraph shall be approved by, and in form and substance reasonably satisfactory to, the Required Secured Noteholders and the Required Term Loan Lenders (it being acknowledged and agreed that the Interim Budget attached hereto as **Schedule 1** is approved and satisfactory for such purpose).  The Budget shall be updated, modified or supplemented by the Debtors from time to time and upon the reasonable request of either the Required Secured Noteholders or the Required Term Loan Lenders, but in any event the Budget shall be updated by the Debtors on or before the last business day at the end of every 4-week period, commencing June 7, 2019, and each such updated, modified or supplemented Budget shall be deemed an approved Budget for purposes of this Interim Order unless either the Required Secured Noteholders or the Required Term Loan Lenders object by written notice delivered to the Debtors on or within five (5) business days after the receipt of such updated, modified or supplemented budget; *provided*, that in the event that either the Required Secured Noteholders or the Required Term Loan Lenders object, the then-current approved Budget shall remain the approved Budget until the applicable parties and the Debtors agree as to an updated, modified or supplemented Budget.  Each Budget delivered pursuant to this paragraph shall be accompanied by such supporting documentation as reasonably requested by the Required Secured Noteholders or the Required Term Loan Lenders.  Each Budget shall be prepared in good faith based upon assumptions that the Debtors believe to be reasonable. In addition to these reporting requirements, the Debtors shall provide PJT Partners LP with weekly liquidity reporting, including detail on all intercompany cash transfers.  The Debtors shall have a bona fide business purpose for each such intercompany cash transfer.  The Debtors' failure to comply with the

#91969680v30

Budget, or to provide the reports and other information, including without limitation, intercompany transactions and current intercompany balances, requested by either the Required Secured Noteholders or the Required Term Loan Lenders shall constitute a Termination Event (as defined herein). So long as the Debtors' right to use cash collateral pursuant to this Interim Order has not terminated, the Debtors shall provide the same financial information required to be provided under this paragraph at the same time to counsel for the Ad Hoc Group of Unsecured Noteholders.

9.      *Termination*.  The Debtors' right to use the Cash Collateral pursuant to this Interim Order shall terminate (the date of any such termination, the "**Termination Date**") without further notice or court proceeding on the earliest to occur of (i) the date that is forty (40) days after the date this Interim Order is entered if the Final Order in form and substance acceptable to the Required Term Loan Lenders and the Required Secured Noteholders has not been entered by the Court on or before such date (unless such period is extended by mutual agreement of the Required Secured Noteholders, the Required Term Loan Lenders and the Debtors); and (ii) seven (7) calendar days (any such seven-calendar-day period of time, the "**Default Notice Period**") following the delivery of a written notice (any such notice, a "**Default Notice**") and the filing of an emergency motion on the Court's docket, during which period the Court shall hold an expedited hearing, by either the Required Secured Noteholders or the Required Term Loan Lenders, to the Debtors, Debtors' Counsel, the U.S. Trustee, the Prepetition Consenting Agents, counsel to the Ad Hoc Group of Unsecured Noteholders, and counsel to the Creditors' Committee (if any) of the occurrence of any of the events set forth below unless such occurrence is cured by the Debtors prior to the expiration of the Default Notice Period with respect to such clause or such occurrence is waived by both the Required Secured Noteholders

and the Required Term Loan Lenders, *provided* that, during the Default Notice Period, the Debtors shall be entitled to continue to use the Cash Collateral in accordance with the terms of this Interim Order (the events set forth in clauses (a) through (r) below are collectively referred to herein as the "**Termination Events**"):

(a)    Failure of the Debtors to make any payment under this Interim Order to any of the Prepetition Consenting Secured Parties, or committees thereof after such payment becomes due;

(b)    Failure of the Debtors to: (i) comply with any provision of this Interim Order; (ii) comply with any other covenant or agreement specified in this Interim Order (other than those described in clause (i) above) in any material respect; or (iii) comply with paragraph 8 of this Interim Order (unless waived in writing by each of the Required Secured Noteholders and the Required Term Loan Lenders);

(c)    An order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Interim Order without the written consent of each of the Required Secured Noteholders and the Required Term Loan Lenders;

(d)    The Debtors' commencing, or participating in furtherance of, any solicitation of any plan of reorganization that is not an Acceptable Chapter 11 Plan (as defined herein) or such other plan of reorganization as each of the Required Secured Noteholders and the Required Term Loan Lenders shall have expressly consented to such treatment in writing;

(e)    The Court shall terminate or reduce the period pursuant to section 1121 of the Bankruptcy Code during which the Debtors have the exclusive right to file a plan of reorganization and solicit acceptances thereof;

(f)    There shall be a breach by any Debtor of any provisions of the Final Order, or the Final Order shall cease to be in full force and effect or shall have been reversed, modified, amended, stayed, vacated or subject to stay pending appeal, in the case of any modification or amendment;

(g)    The entry of an order in the Chapter 11 Cases charging any of the Adequate Protection Collateral of the Prepetition Consenting Secured Parties under sections 506(c) or 552(b) of the Bankruptcy Code against any of the Prepetition Consenting Secured Parties under which any person takes action against such collateral or that becomes a final non-appealable order, or the commencement of other actions that are materially adverse to any of the Prepetition Consenting Secured Parties or their respective rights and remedies under the Prepetition Debt Documents in the Chapter 11 Cases (or any order requiring any of the Prepetition Consenting Secured Parties to be subject to the equitable doctrine of "marshaling");

#91969680v30

(h)     The entry of an order granting relief from any stay of proceeding (including, without limitation, the automatic stay) so as to allow a third party to proceed with foreclosure (or granting of a deed in lieu of foreclosure) or other remedy against any asset with a value in excess of $2 million;

(i)     The entry of any postpetition judgment against any Debtor in excess of $2 million;

(j)     The payment of any prepetition claims that are junior in interest or right to the liens and mortgages on such collateral held by any of the Prepetition Consenting Secured Parties, other than as permitted by an order entered in the Chapter 11 Cases;

(k)     The Court shall have entered an order dismissing any of the Chapter 11 Cases;

(l)     The Court shall have entered an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(m)     The Court shall have entered an order appointing a chapter 11 trustee, responsible officer, or any examiner with enlarged powers relating to the operation of the businesses in the Chapter 11 Cases, unless consented to in writing by each of the Required Secured Noteholders and the Required Term Loan Lenders;

(n)     A filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the BGI Term Loan Debt or the Senior Secured Notes Obligations or asserting any other cause of action against and/or with respect to the BGI Term Loan Debt or the Senior Secured Notes Obligations, the Prepetition Collateral, or any of the Prepetition Consenting Secured Parties, (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party);

(o)     The Debtors shall obtain court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or other proceeding against any of the Prepetition Consenting Secured Parties relating to the BGI Term Loan Debt or the Senior Secured Notes Obligations;

(p)     The existence of any claims or charges, or the entry of any order of the Court authorizing any claims or charges, other than as permitted under this Interim Order, entitled to superpriority under section 364(c)(1) of the Bankruptcy Code *pari passu* or senior to the BGI Term Loan Debt or the Senior Secured Notes Obligations, or there shall arise or be granted by the Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code (other than the Carve Out), including the 507(b) Claims, or (ii) subject to the Other Senior Liens, any lien on the Prepetition Collateral or Adequate Protection Collateral having a priority senior to or *pari passu* with the liens and security interests granted herein, except as expressly provided in this Interim Order;

28

(q)     The entry of an order other than this Interim Order or the Final Order in any of the Chapter 11 Cases authorizing the use of cash collateral or granting adequate protection to any party without the consent of the Required Term Loan Lenders and Required Secured Noteholders; and

(r)     Failure by any of the Debtors to satisfy any of the Adequate Protection Milestones.

10.     *Remedies upon the Termination Date*.  Upon the occurrence of the Termination Date, (a) the Adequate Protection Obligations, if any, shall become due and payable, and (b) the BGI Term Loan Agent, each BGI Term Loan Secured Party, the Senior Secured Notes Indenture Trustee and each Senior Secured Notes Secured Party, may exercise the rights and remedies available under the BGI Term Loan Debt Documents, the Senior Secured Notes Documents, this Interim Order or applicable law (subject only to the Carve Out), including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral in order to collect the Adequate Protection Obligations.  The automatic stay under section 362 of the Bankruptcy Code is hereby deemed modified and vacated to the extent necessary to permit such actions, *provided* that during the Default Notice Period, unless the Court orders otherwise, the automatic stay under section 362 of the Bankruptcy Code (to the extent applicable) shall remain in effect.  The rights of the Debtors to oppose any relief requested by the BGI Term Loan Agent, BGI Term Loan Secured Parties, Senior Secured Notes Indenture Trustee or Senior Secured Notes Secured Parties are fully reserved, and the parties hereby consent to the setting of an expedited hearing.  If the Debtors request a hearing to consider relief from the automatic stay or any other appropriate relief in connection with delivery of the Default Notice within the Default Notice Period but is scheduled for a later date by the Court, the Default Notice Period shall be automatically extended to the date of such hearing.  Any delay or failure of the BGI Term Loan Agent, BGI Term Loan Secured Parties, Senior Secured Notes Indenture Trustee or Senior Secured Notes Secured Parties to exercise rights under the Prepetition Debt

29

Documents or this Interim Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable document.  Without limiting the Debtors' rights under this Interim Order, the Prepetition Consenting Secured Parties shall be entitled to apply the payments or proceeds of the Consenting Parties' Collateral in accordance with the provisions of the BGI Term Loan Credit Agreement and the Senior Secured Notes Indenture, and in no event shall the Prepetition Consenting Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Consenting Parties' Collateral or otherwise while this Interim Order shall be in effect but without prejudice to any provisions of a Final Order; *provided* that prior to seeking payment of any 507(b) Claims from net proceeds of Avoidance Actions, the Prepetition Consenting Secured Parties shall use commercially reasonable efforts to first satisfy such claims from all other Adequate Protection Collateral.  Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties under this Interim Order shall survive the Termination Date.

11. *Limitation on Charging Expenses Against Collateral*.  Subject only to and effective upon entry of a Final Order, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Adequate Protection Collateral (including Cash Collateral) or the BULL Lombard Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Required Secured Noteholders and the Required Term Loan Lenders or, with respect to the BULL Lombard Collateral, the BULL Lombard Agent, and no such

#91969680v30

consent shall be implied from any other action, inaction, or acquiescence by the BGI Term Loan Secured Parties or Senior Secured Notes Secured Parties, or, with respect to the BULL Lombard Collateral, the BULL Lombard Agent, and nothing contained in this Interim Order shall be deemed to be a consent by the BGI Term Loan Secured Parties or the Senior Secured Notes Secured Parties or, with respect to the BULL Lombard Collateral, the BULL Lombard Agent, to any charge, lien, assessment or claim against the Adequate Protection Collateral or the BULL Lombard Collateral, as applicable, under section 506(c) of the Bankruptcy Code or otherwise.

12.     *Bankruptcy Code Section 552(b)*.  Subject only to and effective upon entry of a Final Order, each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral or the Adequate Protection Collateral.

13.     *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Consenting Secured Parties and any other parties holding interests that are secured by the Prepetition Collateral; *provided* that any Prepetition Secured Party, upon a change in circumstances, may request further or different adequate protection and the Debtors or any other party may contest any such request.

14.     *Perfection of Adequate Protection Liens.*

(a)     Without in any way limiting the automatically effective perfection of the Adequate Protection Liens granted in this Interim Order, the Prepetition Secured Parties are

31

hereby authorized, but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, aircraft registrations, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, aircraft registrations, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order.  Upon the request of any of the Prepetition Secured Parties, each of the Debtors, without any further consent of any party, is authorized to, and to cause its subsidiaries to, take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the validation, perfection, preservation and enforcement of the Adequate Protection Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)     A certified copy of this Interim Order may, in the discretion of the Prepetition Agents, each acting on its own behalf or as directed by the Required Secured Noteholders or the Required Term Loan Lenders, as applicable, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and/or recording, as applicable.  The

32

automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit each of the Prepetition Consenting Secured Parties to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

15.     *Perfection of De-registered Pledged Aircraft.*   Any prepetition liens or liens granted under this Interim Order secured by any Pledged Aircraft (as defined in the BGI Term Loan Credit Agreement) shall be deemed to be continuing post-petition liens that will continue on such Pledged Aircraft notwithstanding the Debtors' de-registration of the Pledged Aircraft from the Pledged Aircraft's Jurisdiction of Registration (as that term is defined in the BGI Term Loan Credit Agreement), and such liens shall be deemed valid and perfected without the need for any additional execution of any mortgages, security agreements, aircraft or other registrations, pledge agreements, financing statements or other agreements.   Such liens shall further be non-avoidable under 11 U.S.C. §§ 544(a) and 549(a).   Notwithstanding any of the foregoing, the Debtors are permitted to reasonably cooperate, or cause their non-debtor affiliates to reasonably cooperate, with the BGI Term Loan Agent in perfecting liens of the Pledged Aircraft under local law consistent with the Debtors' prior similar practice under the Senior Secured Notes Documents.

16.     *Preservation of Rights Granted Under This Interim Order.*

(a)     Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered: (i)  the 507(b) Claims and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Obligations shall have been indefeasibly paid in full in cash (and that such 507(b) Claims and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in

interest); (ii) the other rights granted by this Interim Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(b)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority or enforceability of the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacatur or stay of any use of Cash Collateral, any Adequate Protection Obligations incurred by the Debtors to the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Interim Order, and the Prepetition Consenting Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code and this Interim Order with respect to all uses of Cash Collateral and the BGI Term Loan Secured Parties Adequate Protection Obligations and Senior Secured Notes Secured Parties Adequate Protection Obligations.

(c)     Subject only to and effective upon entry of the Final Order, and notwithstanding section 1129(b)(2)(A)(iii) of the Bankruptcy Code, as adequate protection for their consent to the use of Prepetition Collateral (including Cash Collateral), none of the Prepetition Consenting Secured Parties shall receive, in any plan of reorganization in the Chapter

11 Cases that purports to pay in full or otherwise render unimpaired the claims of the Prepetition Consenting Secured Parties, consideration other than payment in cash or reinstatement in accordance with section 1124 of the Bankruptcy Code, and any such other treatment is hereby deemed not to constitute the "indubitable equivalent" of such claims, except to the extent that the Prepetition Consenting Secured Parties have agreed to such different treatment.

(d)    Except as expressly provided in this Interim Order, the Adequate Protection Obligations and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases or terminating the joint administration of these Chapter 11 Cases or by any other act or omission, (ii) the entry of an order approving the sale of any Adequate Protection Collateral pursuant to section 363(b) of the Bankruptcy Code, or (iii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations.  The terms and provisions of this Interim Order shall continue in these Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Obligations and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Interim Order shall continue in full force and effect until the Adequate Protection Obligations are indefeasibly paid in full in cash, as set forth herein.

17.    *Payments Free and Clear*.  Subject to entry of the Final Order (except with respect to payments of interest, fees, expenses and disbursements set forth in paragraphs 3(c),

35

3(d), 4(c) and 4(d) of this Interim Order made between now and the entry of the Final Order), any and all payments or proceeds remitted to the BGI Term Loan Agent or the Senior Secured Notes Indenture Trustee on behalf of the applicable Prepetition Consenting Secured Parties, or the BULL Lombard Agent on behalf of the BULL Lombard Lenders, pursuant to the provisions of this Interim Order, the Final Order (if and when entered), any subsequent order of the Court or the Prepetition Debt Documents or, as to the BULL Lombard Agent, the BULL Lombard Loan Documents, shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or 552(b) of the Bankruptcy Code (subject to the entry of the Final Order approving the waiver of the Debtors' rights under section 506(c) and section 552(b) of the Bankruptcy Code), whether asserted or assessed by, through or on behalf of the Debtors, and solely in the case of payments made or proceeds remitted after the delivery of a Trigger Notice, subject to the Carve Out in all respects.

18.    *Releases*.    Without prejudice to the rights of any other party-in-interest in the Chapter 11 Cases (but subject to the limitations with respect to any such rights contained in paragraphs 19 and 20 of this Interim Order), the Debtors hereby absolutely and unconditionally release and forever discharge and acquit each of the Prepetition Consenting Secured Parties and their respective Representatives (as defined herein) (collectively, the "**Released Parties**"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, responsibilities, disputes, remedies, indebtedness, obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorney's fees, costs, expenses, judgements and causes of action arising prior to the Petition Date (collectively, the

36

"**Released Claims**") of any kind, nature or description, whether matured or unmatured, known or unknown, foreseen or unforeseen, liquidated or unliquidated, arising in law or equity, upon contract or tort or under any state or  federal or common law or statute or regulation or otherwise, arising out of or related to (as applicable) the Prepetition Debt Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Interim Order.

19.     *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including in Annex B and Annex C, shall be binding upon the Debtors and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon all other parties in interest, including, without limitation, any Creditors' Committee unless: such other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein), including, *inter alia*, in this paragraph by no later than (i) (x) with respect to parties in interest with requisite standing other than the Creditors' Committee, the earlier of an order confirming a chapter 11 plan and 75 calendar days after entry of this Interim Order and (y) with respect to the Creditors' Committee,

#91969680v30

60 calendar days after the appointment of the Creditors' Committee, (ii) any such later date as has been agreed to, in writing, by each of the Required Secured Noteholders and the Required Term Loan Lenders, or the BULL Lombard Agent, as applicable, and (iii) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth in this paragraph (the time period established by the foregoing clauses (i), (ii), and (iii), the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of any of the BGI Term Loan Debt, Senior Secured Notes Debt, or the BULL Lombard Credit Facility Debt (as applicable) or the BGI Term Loan Liens, the Senior Secured Note Liens, or the BULL Lombard Credit Facility Liens (as applicable), or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against any of the Representatives in connection with matters related to the (i) BGI Term Loan Documents, Senior Secured Notes Documents, or BULL Lombard Loan Documents (as applicable), (ii) BGI Term Loan Debt, Senior Secured Notes Debt, or BULL Lombard Credit Facility Debt (as applicable), (iii) BGI Term Loan Liens, Senior Secured Note Liens, or BULL Lombard Credit Facility Liens (as applicable) or (iv) BGI Term Loan Collateral, Senior Secured Notes Collateral, or BULL Lombard Collateral (as applicable); and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If no such Challenge is timely and properly filed

during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding on all parties in interest, including, without limitation, the Creditors' Committee (if any); (b) the obligations of the Prepetition Consenting Secured Parties or the BULL Lombard Credit Facility Secured Parties under the BGI Term Loan Documents, the Senior Secured Notes Documents, or the BULL Lombard Loan Documents (as applicable) including the BGI Term Loan Debt, the Senior Secured Notes Debt, or the BULL Lombard Credit Facility Debt (as applicable), shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s); (c) the BGI Term Loan Liens, the Senior Secured Note Liens, and the BULL Lombard Credit Facility Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (d) the BGI Term Loan Debt, Senior Secured Notes Debt, and the BULL Lombard Credit Facility Debt and the BGI Term Loan Liens, the Senior Secured Note Liens, and the BULL Lombard Credit Facility Liens shall not be subject to any other or further claim or challenge by the Creditors' Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor

thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Consenting Secured Parties or the BULL Lombard Credit Facility Secured Parties and their Representatives arising out of or relating to any of the BGI Term Loan Debt, Senior Secured Notes Debt, or BULL Lombard Credit Facility Debt shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Creditors' Committee (if any), and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to (i) the BGI Term Loan Documents, the Senior Secured Notes Documents, or the BULL Lombard Loan Documents, (ii) the BGI Term Loan Debt, the Senior Secured Notes Debt, or the BULL Lombard Credit Facility Debt, or (iii) the BGI Term Loan Liens, the Senior Secured Note Liens, or the BULL Lombard Credit Facility Liens.

20.     *Limitation on Use of Cash Collateral*.  Notwithstanding any other provision of this Interim Order or any other order entered by the Court, none of the Consenting Parties' Collateral or any portion of the Carve Out may be used directly or indirectly, (a) in connection with the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the Prepetition Consenting Secured

Parties, or each of the foregoing's respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of the BGI Term Loan Debt, the Senior Secured Notes Debts, the BGI Term Loan Liens, the Senior Secured Notes Liens, and/or the Prepetition Consenting Secured Parties' Adequate Protection Obligations granted to the Prepetition Consenting Secured Parties under the Interim Order or the Final Order, as applicable, or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the Prepetition Consenting Secured Parties in the Prepetition Debt, and/or the liens, claims, rights, or security interests granted under this Interim Order, the Final Order, the Prepetition Debt Documents including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; *provided* that, notwithstanding anything to the contrary herein, the Debtors and the Creditors' Committee may use the proceeds of the Prepetition Consenting Secured Parties' Adequate Protection Collateral (including Cash Collateral) to investigate but not to prosecute (A) the claims and liens of the Prepetition Secured Parties and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties up to an aggregate cap of no more than $50,000; (b) to prevent, hinder, or otherwise delay or interfere with the Prepetition Secured Parties', enforcement or realization on the Prepetition Debt, Prepetition Collateral, Adequate Protection Obligations or Adequate Protection Collateral, and the liens, claims and rights granted to such parties under this Interim Order or the Final Order, each in accordance with the Prepetition Debt Documents or this Interim Order; (c) to seek to modify any of the rights and remedies granted to any of the Prepetition Secured Parties under this Interim Order or the Prepetition Debt Documents, as applicable; (d) to apply to the Court for

41

authority to approve superpriority claims or grant liens or security interests in the Adequate Protection Collateral or any portion thereof that are senior to, or on parity with, the Adequate Protection Obligations or Prepetition Debt; or (e) to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by each of the Required Term Loan Lenders and the Required Secured Noteholders, expressly permitted under this Interim Order (including the Interim Budget), in each case unless all the Adequate Protection Obligations granted to the Prepetition Consenting Secured Parties under this Interim Order and the Prepetition Debt have been refinanced or paid in full in cash.

21.  *Compliance with Section 1110 Obligations.*  Notwithstanding anything in this Interim Order, the Debtors are permitted to, but not directed to, comply with any obligations, including monetary obligations, that are required under 11 U.S.C. § 1110 to protect the Debtors' interests in any of the Debtors' property that is subject to 11 U.S.C. § 1110, in each case to the extent that the Court provides such approval pursuant to an order.  Nothing in this Interim Order (i) shall constitute a waiver, forbearance or adjudication of the rights of any secured party, lessor or vendor, or of any trustee, agent or controlling party for any such entity (including, without limitation, any servicer or beneficial owner of any lessor and including any secured party, lessor or vendor under any aircraft lease or mortgage) (in each case, an "**1110 Beneficiary**") under section 1110 of the Bankruptcy Code and/or under the Convention on International Interests in Mobile Equipment (the "**Convention**") and the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment (the "**Protocol**", and, along with the Convention, the "**Cape Town Treaty**"); or (ii) shall prejudice, limit or otherwise affect any rights of any 1110 Beneficiary or other entity under section 1110 of the Bankruptcy Code and/or under the Cape Town Treaty, all of which rights are expressly preserved.

42

22.     *Interim Order Governs*.  In the event of any inconsistency between the provisions of this Interim Order and any other order entered by this Court, the provisions of this Interim Order shall govern unless such other order expressly provides that it controls over this Interim Order.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Interim Order, including, without limitation, the approved Interim Budget.

23.     *Limitation of Liability*.  In permitting the use of the Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, subject to entry of the Final Order, none of the Prepetition Secured Parties or the Prepetition Agents shall (i) have liability to any third party or be deemed to be in control of the operation of any of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute) or (ii) owe any fiduciary duty to any of the Debtors, their creditors or their estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the Prepetition Agents or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

#91969680v30

24.     *Binding Effect; Successors and Assigns*.   The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the Prepetition Secured Parties, the Creditors' Committee (if any), the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* that none of the Prepetition Secured Parties shall have any obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

25.     *Master Proof of Claim*.   None of the Prepetition Consenting Agents shall be required to file proofs of claim in the Chapter 11 Cases or any successor case in order to assert claims on behalf of themselves or the Prepetition Consenting Secured Parties for payment of the Prepetition Debt arising under the Prepetition Debt Documents, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts under the Prepetition Debt Documents.  The statements of claim in respect of the such indebtedness set forth in this Interim Order, together with any evidence accompanying the Motion and presented at the Interim Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status.  However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, each of the Prepetition Consenting Agents is authorized to file in the Debtors' lead chapter 11 case *In re*

44

*Bristow Group Inc.*, Case No. 19-32713, a master proof of claim on behalf of the its respective Prepetition Consenting Secured Parties on account of any and all of their respective claims arising under the applicable Prepetition Debt Documents and hereunder (each, a "**Master Proof of Claim**") against each of the Debtors.  Upon the filing of a Master Proof of Claim by any of the Prepetition Consenting Agents, such entity shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Debt Documents, and the claim of each applicable Prepetition Consenting Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to identify whether any Prepetition Consenting Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Consenting Secured Party (or its successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Consenting Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the Prepetition Consenting Agents.

26.     *Intercreditor Agreement*.  Nothing in this Interim Order shall amend or otherwise modify the terms and enforceability of the Intercreditor Agreement.  The rights of the BGI Term

#91969680v30

Loan Agent, the Senior Secured Notes Indenture Trustee and the Prepetition Consenting Secured Parties shall at all times remain subject to the Intercreditor Agreement.

27.     *Credit Bidding*.  The Prepetition Secured Parties shall have the right to credit bid up to the full amount of the applicable Prepetition Debt in any sale of their Prepetition Collateral, on which they have Prepetition Liens or Adequate Protection Liens, in each case, as provided for in section 363(k) of the Bankruptcy Code and subject to any successful Challenge, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

28.     *Maintenance of Collateral*.  The Debtors shall comply with the covenants contained in the Prepetition Debt Documents regarding the maintenance and insurance of the Prepetition Collateral.

29.     *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

30.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

31.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

#91969680v30

32.     *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

33.     *Retention of Jurisdiction*.  The Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

34.     *Final Hearing*.  The Final Hearing is scheduled for June 12, 2019 at 3:00 p.m. before this Court.

35.     *Objections*.  Any party in interest objecting to the relief sought at the Final Hearing shall file and serve written objections, which objections shall be served upon (a) the Debtors, 2103 City West Blvd., 4th Floor, Houston, Texas 77042 (Attn.: Justin D. Mogford); (b) counsel to the Debtors, proposed counsel for the Debtors, Baker Botts L.L.P., 2001 Ross Avenue, Suite 900, Dallas, Texas 75201 (Attn.: James R. Prince, Omar Alaniz and Ian E. Roberts) and Baker Botts L.L.P., 30 Rockefeller Plaza, New York, New York 10112 (Attn.: Emanuel Grillo and Christopher Newcomb); (c) counsel to the Secured Notes Group and the BGI Term Loan Agent, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn.: Damian S. Schaible, Esq. and Natasha Tsiouris, Esq.) and Haynes and Boone, LLP, 1221 McKinney Street, Suite 2100, Houston, Texas 77010 (Attn.: Charles A. Beckham, Jr., Esq.); (d) counsel to any of the Equipment Lenders that have filed a notice of appearance by the objection deadline; and (e) counsel to the Committee, in each case to allow actual receipt by the foregoing no later than ___June 7_____, 2019 at 4:00 p.m., prevailing Central Time.

36.     The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to the Creditors' Committee after the same has been appointed, or such Creditors' Committee's counsel, if the same shall have been appointed.

**Signed:  May 14, 2019**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## Annex A

## Definitions

"**507(b) Claims**" shall mean, collectively, the BGI Term Loan Secured Parties 507(b) Claim, the Senior Secured Notes Secured Parties 507(b) Claim, and the Equipment Lenders 507(b) Claim.

"**Adequate Protection Liens**" shall mean, collectively, the BGI Term Loan Secured Parties Adequate Protection Liens, the Senior Secured Notes Secured Parties Adequate Protection Liens, and the Equipment Lenders Adequate Protection Liens.

"**Adequate Protection Obligations**" shall mean, collectively, the BGI Term Loan Secured Parties Adequate Protection Obligations, the Senior Secured Notes Secured Parties Adequate Protection Obligations, and the Equipment Lenders Adequate Protection Obligations.

"**BGI**" shall mean Bristow Group Inc.

"**BELL**" shall mean Bristow Equipment Leasing Ltd.

"**BULL**" shall mean Bristow U.S. Leasing LLC

"**BUS**" shall mean Bristow U.S. LLC.

"**Consenting Parties' Collateral**" shall mean, collectively, the Adequate Protection Collateral, BGI Term Loan Collateral, and Senior Secured Notes Collateral.

"**Consenting Parties Debt**" shall mean, together, the BGI Term Loan Debt and the Senior Secured Notes Debt.

"**Consenting Parties' Prepetition Liens**" shall mean, together, the BGI Term Loan Liens and the Senior Secured Notes Liens.

"**Creditors' Committee**" shall mean any official committee of unsecured creditors appointed under 11 U.S.C. § 1102.

"**Equipment Lender Agents**" shall mean the Macquarie Agent, the PK Agent, and the BULL Lombard Agent, and each, individually, an "**Equipment Lender Agent**".

"**Equipment Lenders**" shall mean, collectively, the Macquarie Credit Facility Secured Parties, the PK Credit Facility Secured Parties, and the BULL Lombard Credit Facility Secured Parties, and each, individually, an "**Equipment Lender**".

"**Equipment Lender Agreements**" shall mean, collectively, the Macquarie Credit Agreement, the PK Credit Agreement, and the BULL Lombard Credit Agreement, and each, individually, an "**Equipment Lender Agreement**".

"**Equipment Prepetition Collateral**" shall mean, collectively, the Macquarie Collateral, the PK Collateral, and the BULL Lombard Collateral.

"**Equipment Prepetition Liens**" shall mean, collectively, the Macquarie Credit Facility Liens, the PK Credit Facility Liens, and the BULL Lombard Credit Facility Liens.

"**Intercreditor Agreement**" shall mean that certain Junior Lien Intercreditor Agreement, dated as of [DATE], among the Senior Secured Notes Issuer, the Senior Secured Notes Indenture Trustee, the BGI Term Loan Agent, and each additional Representative from time to time party thereto, as amended, restated, supplemented, waived, or otherwise modified from time to time.

"**Prepetition Agents**" shall mean, collectively, the Prepetition Consenting Agents and Equipment Lender Agents.

"**Prepetition Collateral**" shall mean, collectively, the BGI Term Loan Collateral, the Senior Secured Notes Collateral and the Equipment Prepetition Collateral.

"**Prepetition Consenting Agents**" shall mean, together, the BGI Term Loan Agent and the Senior Secured Notes Indenture Trustee.

"**Prepetition Consenting Secured Parties**" shall mean, collectively, the BGI Term Loan Secured Parties and the Senior Secured Notes Secured Parties.

"**Prepetition Debt**" shall mean, collectively, the BGI Term Loan Debt, the Senior Secured Notes Debt, the Macquarie Credit Facility Debt, the PK Credit Facility Debt, and the BULL Lombard Credit Facility Debt.

"**Prepetition Debt Documents**" shall mean the BGI Term Loan Credit Agreement, the Senior Secured Notes Indenture, the Macquarie Credit Agreement, the PK Credit Agreement, and the BULL Lombard Credit Agreement.

"**Prepetition Liens**" shall mean, collectively, the BGI Term Loan Liens, the Senior Secured Notes Liens, the Macquarie Credit Facility Liens, the PK Credit Facility Liens, and the BULL Lombard Credit Facility Liens.

"**Prepetition Notes & Credit Facilities**" shall mean, collectively, the BGI Term Loans, the Senior Secured Notes, the Macquarie Credit Facility, the PK Credit Facility and the BULL Lombard Credit Facilities.

"**Prepetition Secured Parties**" shall mean, collectively, the Prepetition Consenting Secured Parties, the Macquarie Credit Facility Secured Parties, the PK Credit Facility Secured Parties, and the BULL Lombard Credit Facility Secured Parties, and each of the above, individually, a "**Prepetition Secured Party**".

"**Representative**" or "**Representatives**" shall mean, individually or collectively, the Prepetition Secured Parties or their respective subsidiaries, officers, directors, managers, principals,

50

employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such.

"**Required Secured Noteholders**" shall have the meaning provided in the RSA.

"**Required Term Loan Lenders**" shall mean the "Required Lenders" as defined in the BGI Term Loan Credit Agreement.

"**RSA**" shall mean the Restructuring Support Agreement entered into by BGI with (i) certain holders of the Senior Secured Notes and (ii) the guarantors of the Senior Secured Notes, to support a restructuring on the terms set forth in the term sheet contained in an exhibit to the RSA.

51

**Annex B**

**Stipulated Description of the Prepetition Debt Documents and Prepetition Collateral**

1.     **BGI Term Loan**

Pursuant to that Credit Agreement dated as of May 10, 2019 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "**BGI Term Loan Credit Agreement**", collectively and with any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "**BGI Term Loan Documents**") by and among (a) BGI and Bristow Holdings Company Ltd. III (an indirect subsidiary of BGI), as borrowers (the "**BGI Term Loan Borrowers**"), (b) the subsidiary Debtors and other direct and indirect subsidiaries of BGI that are guarantors party thereto (the "**BGI Term Loan Guarantors**"), (c) Ankura Trust Company, LLC, as administrative and collateral agent (in such capacities, the "**BGI Term Loan Agent**") and (d) the lenders party thereto (the "**BGI Term Loan Lenders**" and, collectively with the BGI Term Loan Agent, the "**BGI Term Loan Secured Parties**"), the BGI Term Loan Lenders provided term loans (the "**BGI Term Loans**") to the BGI Term Loan Borrowers.  The BGI Term Loan Credit Agreement provides the BGI Term Loan Borrowers, the BGI Term Loan Guarantors, and the BGI Term Loan Secured Parties the ability to amend, restate, supplement, provide waivers or consents with respect to or otherwise modify the BGI Term Loan Documents, subject to the terms thereof; the Debtors and the BGI Term Loan Secured Parties are hereby and thereby authorized, but not directed, to enter into any such ordinary course modifications, subject in all cases to the Debtors' business judgment.

As of the Petition Date, the BGI Term Loan Borrowers and the BGI Term Loan Guarantors were justly and lawfully indebted and liable to the BGI Term Loan Secured Parties, without defense, counterclaim or offset of any kind, in aggregate principal amount of not less than $75 million (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the BGI Term Loan Borrowers' and the BGI Term Loan Guarantors' obligations pursuant to the BGI Term Loans and the BGI Term Loan Documents, the "**BGI Term Loan Debt**"), which BGI Term Loan Debt has been guaranteed by the BGI Term Loan Guarantors.

As more fully set forth in the BGI Term Loan Credit Agreement, prior to the Petition Date, the BGI Term Loan Borrowers and the BGI Term Loan Guarantors granted to the BGI Term Loan Agent, for the benefit of itself and the BGI Term Loan Secured Parties, (i) a first priority interest in and continuing lien (the "**BGI Senior Liens**") on certain of their assets and property (the "**BGI Term Loan Collateral**") and (ii) a second priority junior secured interest in and continuing lien (the "**BGI Junior Liens**"); the BGI Senior Liens and BGI Junior Liens collectively, the "**BGI Term Loan Liens**") on the Senior Secured Notes Collateral.

2.      **Senior Secured Notes**

Pursuant to that certain Indenture for certain 8.75% notes due 2023 dated as of March 6, 2018 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "**Senior Secured Notes Indenture**", collectively and with any other agreements and documents executed or delivered in connection therewith, each as may be

amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "**Senior Secured Notes Documents**") by and among (a) BGI, as issuer (the "**Senior Secured Notes Issuer**"), (b) the subsidiary Debtors party thereto (the "**Senior Secured Notes Guarantors**"), (c) U.S. Bank, National Association, as trustee and collateral agent (in such capacities, the "**Senior Secured Notes Indenture Trustee**") and (d) the Holders (as defined in the Senior Secured Notes Indenture, the "**Senior Secured Noteholders**", collectively with the Senior Secured Notes Indenture Trustee, the "**Senior Secured Notes Secured Parties**"), the Senior Secured Notes Issuer incurred indebtedness to the Senior Secured Noteholders of 8.75% Senior Secured Notes Due 2023 (collectively, the "**Senior Secured Notes**").

Pursuant to the Senior Secured Notes Indenture, the Senior Secured Notes were originally issued with a face value of $350 million.  As of the Petition Date, the aggregate principal amount outstanding under the Senior Secured Notes Indenture was $350 million (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Senior Secured Notes Issuer's and the Senior Secured Notes Guarantors' obligations pursuant to the Senior Secured Notes and the Prepetition Senior Secured Notes Documents, the "**Senior Secured Notes Debt**"), which Senior Secured Notes Debt has been guaranteed by the Senior Secured Notes Guarantors.

As more fully set forth in the Senior Secured Notes Documents, prior to the Petition Date, the Senior Secured Notes Issuer and the Senior Secured Notes Guarantors granted to the Senior Secured Notes Indenture Trustee, for the benefit of itself and the Senior Secured

Noteholders, a first priority security interest in and continuing lien (the "**Senior Secured Notes Liens**") on certain of their assets and property (the "**Senior Secured Notes Collateral**").

**3.      Macquarie Equipment Lender**

Pursuant to that certain Third Term Loan Credit Agreement dated as of February 1, 2017 (as amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "**Macquarie Credit Agreement**," and collectively with the Loan Documents (as defined in the Macquarie Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived and/or otherwise modified from time to time, the "**Macquarie Loan Documents**"), among (a) BUS, as borrower (in such capacity, the "**Macquarie Borrower**"), (b) BGI, as guarantor, (c) Macquarie Bank Limited, as administrative agent and security agent (in such capacities, the "**Macquarie Agent**") and (d) the lenders from time to time party thereto (the "**Macquarie Lenders**") (the Macquarie Lenders, collectively with the Macquarie Agent, the "**Macquarie Credit Facility Secured Parties**"),  the Macquarie Lenders provided term loans to the Macquarie Borrower pursuant to the Macquarie Loan Documents (the "**Macquarie Credit Facility**").

As of the Petition Date, the Macquarie Borrower was indebted to the Macquarie Credit Facility Secured Parties in the aggregate principal amount of approximately $171 million (the "**Macquarie Credit Facility Debt**").

As more fully set forth in the Macquarie Loan Documents, prior to the Petition Date, the Macquarie Borrower granted to the Macquarie Agent, for the benefit of itself and the Macquarie Lenders, a first priority security interest in and continuing lien on (the "**Macquarie Credit Facility Liens**") on certain of their assets and property, which assets and property do not

55

constitute Senior Secured Notes Collateral (such assets and property which are the assets and property of any Debtor, the "**Macquarie Collateral**").

  **4.**  **PK Air Equipment Lender**

  Pursuant to that certain Term Loan Credit Agreement dated as of July 17, 2017 (as amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "**PK Credit Agreement**," and collectively with the Transaction Documents (as defined in the PK Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived and/or otherwise modified from time to time, the "**PK Loan Documents**"), among (a) BELL, as borrower (in such capacity, the "**PK Borrower**"), (b) BGI, as guarantor, (c) PK AirFinance S.à r.l., as agent and security trustee (in such capacities, the "**PK Agent**") and (d) PK Transportation Finance Ireland Limited, as lender, and the other lenders from time to time party thereto (the "**PK Lenders**") (the PK Lenders, collectively with the PK Agent and other such entity defined as a secured party, the "**PK Credit Facility Secured Parties**"), the PK Lenders provided term loans to the PK Borrower pursuant to the PK Loan Documents (the "**PK Credit Facility**").

  As of the Petition Date, the PK Borrower was indebted to the PK Credit Facility Secured Parties in the approximate amount of $210 million plus accrued and unpaid interest and other liabilities and Secured Obligations (as defined in the PK Credit Agreement) arising under the PK Loan Documents (the "**PK Credit Facility Debt**").

  As more fully set forth in the PK Loan Documents, prior to the Petition Date, the PK Borrower granted to the PK Agent, for the benefit of itself and the PK Credit Facility Secured Parties, a first priority security interest in and continuing lien on (the "**PK Credit Facility Liens**") on certain of their assets and property, which assets and property do not constitute Senior

Secured Notes Collateral (such assets and property which are the assets and property of any Debtor, the "**PK Collateral**").

  5.  **BULL Lombard Equipment Lender**

  Pursuant to that certain Term Loan Credit Agreement dated as of November 11, 2016 (as amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "**BULL Lombard Credit Agreement**," and collectively with the Loan Documents (as defined in the BULL Lombard Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived and/or otherwise modified from time to time, the "**BULL Lombard Loan Documents**"), among (a) BULL, as borrower (in such capacity, the "**BULL Lombard Borrower**"), (b) BGI, as guarantor, (c) Lombard North Central PLC, a part of the Royal Bank of Scotland, as administrative agent and security trustee (in such capacities, the "**BULL Lombard Agent**") and (d) the other lenders from time to time party thereto (the "**BULL Lombard Lenders**") (the BULL Lombard Lenders, collectively with the BULL Lombard Agent, the "**BULL Lombard Credit Facility Secured Parties**"), the BULL Lombard Lenders provided term loans to the BULL Lombard Borrower pursuant to the BULL Lombard Loan Documents (the "**BULL Lombard Credit Facility**").

  As of the Petition Date, the BULL Lombard Borrower was indebted to the BULL Lombard Credit Facility Secured Parties in an amount of £77,060,836.44 plus accrued and unpaid interest and fees (such amount, together with reimbursement obligations, fees, expenses, indemnities and other liabilities and obligations arising under the BULL Lombard Loan Documents, the "**BULL Lombard Credit Facility Debt**").

#91969680v30

As more fully set forth in the BULL Lombard Loan Documents, prior to the Petition Date, the BULL Lombard Borrower granted to the BULL Lombard Agent, for the benefit of itself and the BULL Lombard Lenders, a first priority security interest in and continuing lien (the "**BULL Lombard Credit Facility Liens**") on certain of their assets and property more fully described in the BULL Lombard Loan Documents (the "**BULL Lombard Collateral**").

58

**Annex C**

**Stipulations**

1.      *Validity, Perfection and Priority of Consenting Parties' Prepetition Liens and Consenting Parties' Debt*.  The Debtors acknowledge and agree that as of the Petition Date (a) the Consenting Parties' Prepetition Liens on the BGI Term Loan Collateral and Senior Secured Notes Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Consenting Secured Parties for fair consideration and reasonably equivalent value; (b) the Consenting Parties' Prepetition Liens were senior in priority over any and all other liens on the BGI Term Loan Collateral and Senior Secured Notes Collateral, subject only to certain liens senior by operation of law or otherwise permitted by the Prepetition Debt Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date, the "**Permitted Prior Liens**"); (c) the Consenting Parties Debt constitutes legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition Debt Documents and there exists no basis upon which the Debtors or their subsidiaries can properly challenge or avoid the validity, enforceability, priority, or perfection of the Consenting Parties' Debt or the Prepetition Liens; (d) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Consenting Parties' Prepetition Liens or the Consenting Parties Debt exist, and no portion of the Consenting Parties' Prepetition Liens or the Consenting Parties Debt is subject to any challenge or defense including, attachment, avoidance, disallowance, disgorgement, impairment, reduction, recharacterization, recovery or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their

estates have no claims, objections, challenges, causes of action and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Consenting Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Notes & Credit Facilities; and (f) the Debtors waive, discharge, and release any right to challenge any of the BGI Term Loan Debt or the Senior Secured Notes Debt, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the BGI Term Loan Debt or the Senior Secured Notes Debt.

2.      *Validity, Perfection and Priority of BULL Lombard Credit Facility Liens and BULL Lombard Credit Facility Debt.*  The Debtors acknowledge and agree that as of the Petition Date, the BULL Lombard Credit Facility Liens on the BULL Lombard Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the BULL Lombard Credit Facility Secured Parties for fair consideration and reasonably equivalent value; (b) the BULL Lombard Credit Facility Liens were senior in priority over any and all other liens on the BULL Lombard Collateral, subject only to certain liens senior by operation of law or otherwise permitted by the BULL Lombard Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the BULL Lombard Credit Facility Liens on the BULL Lombard Collateral as of the Petition Date, the "**BULL Lombard Permitted Prior Liens**"); (c) the BULL Lombard Credit Facility Debt constitutes legal, valid, binding, and non-avoidable obligations of BULL enforceable in accordance with the terms of the applicable BULL Lombard Loan Documents and there exists no basis upon which the Debtors or their subsidiaries can properly challenge or avoid

60

the validity, enforceability, priority, or perfection of the BULL Lombard Loan Documents or the Lombard Credit Facility Liens; (d) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the BULL Lombard Credit Facility Liens or the BULL Lombard Credit Facility Debt exist, and no portion of the BULL Lombard Credit Facility Liens or the BULL Lombard Credit Facility Debt is subject to any challenge or defense including, attachment, avoidance, disallowance, disgorgement, impairment, reduction, recharacterization, recovery or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the BULL Lombard Credit Facility Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the BULL Lombard Credit Facility; and (f) the Debtors waive, discharge, and release any right to challenge any of the BULL Lombard Credit Facility Debt, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the BULL Lombard Credit Facility Debt.

3.    *No Claims or Causes of Action.*  The Debtors stipulate that no claims or causes of action exist against, or with respect to, any of the Prepetition Consenting Secured Parties under any agreements by and among the Debtors and any such party that is in existence as of the Petition Date.

4.    *No Control.*  The Debtors stipulate that none of the Prepetition Consenting Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of

61

the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Debt Documents or this Interim Order (including by permitting the Debtors to use the Cash Collateral or in taking any other actions permitted by this Interim Order), and none of the Prepetition Consenting Secured Parties or Prepetition Consenting Agents (i) has liability to any third party or be deemed to be in control of the operation of any of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any of the Debtors (as such term, or any similar terms, is used in the Internal Revenue Code, the Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any other federal or state statute) or (ii) owes any fiduciary duty to any of the Debtors, their creditors or their estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.

**<u>Schedule 1</u>**

**Budget**

#91969680v30

Exhibit 1
**Cash Flow Forecast**
**Consolidated**
**Global**
*(Dollars in Thousands)*

| | 1 5/17/2019 | 2 5/24/2019 | 3 5/31/2019 | 4 6/7/2019 | 5 6/14/2019 | 6 6/21/2019 | 7 6/28/2019 | 8 7/5/2019 | 9 7/12/2019 | 10 7/19/2019 | 11 7/26/2019 | 12 8/2/2019 | 13 8/9/2019 | 13 Week Forecast | 26 Week Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **OPERATING CASH FLOW** | | | | | | | | | | | | | | | |
| Total Receipts | $ 46,085 | $ 16,759 | $ 38,337 | $ 12,830 | $ 14,189 | $ 51,760 | $ 20,182 | $ 26,090 | $ 18,256 | $ 25,149 | $ 22,673 | $ 23,967 | $ 5,303 | $ 321,580 | $ 649,946 |
| Total Operating Disbursements | (40,414) | (24,574) | (25,962) | (24,332) | (17,134) | (27,202) | (35,238) | (19,117) | (22,591) | (20,632) | (25,706) | (85,102) | (10,747) | (378,751) | (687,089) |
| **Operating Cash Flow** | $ 5,671 | $ (7,814) | $ 12,375 | $ (11,502) | $ (2,945) | $ 24,558 | $ (15,056) | $ 6,973 | $ (4,335) | $ 4,517 | $ (3,033) | $ (61,135) | $ (5,444) | $ (57,172) | $ (37,143) |
| **NON-OPERATING ACTIVITIES** | | | | | | | | | | | | | | | |
| Other Non-Operating Activities | $ - | $ (250) | $ (1,486) | $ - | $ - | $ - | $ (250) | $ - | $ - | $ - | $ (250) | $ 75,000 | $ - | $ 72,764 | $ 72,014 |
| Debt Service | (942) | - | (1,502) | (2) | (1,535) | - | (384) | (9,211) | (594) | (942) | (668) | (1,994) | (771) | (18,545) | (53,208) |
| **Total Non-Operating Activities** | $ (942) | $ (250) | $ (2,988) | $ (2) | $ (1,535) | $ - | $ (634) | $ (9,211) | $ (594) | $ (942) | $ (918) | $ 73,006 | $ (771) | $ 54,219 | $ 18,806 |
| **RESTRUCTURING ACTIVITIES** | | | | | | | | | | | | | | | |
| Restructuring Professional Fees | $ (750) | $ - | $ (800) | $ - | $ - | $ - | $ - | $ (4,941) | $ - | $ - | $ - | $ (6,015) | $ - | $ (12,507) | $ (33,063) |
| US Trustee | - | - | - | (500) | - | - | - | - | - | - | - | - | - | (500) | (1,250) |
| Utility Deposit | (175) | - | - | - | - | - | - | - | - | - | - | - | - | (175) | (175) |
| **Total Restructuring Activities** | $ (925) | $ - | $ (800) | $ (500) | $ - | $ - | $ - | $ (4,941) | $ - | $ - | $ - | $ (6,015) | $ - | $ (13,182) | $ (34,488) |
| **Net Change in Cash** | $ 3,805 | $ (8,064) | $ 8,586 | $ (12,004) | $ (4,480) | $ 24,558 | $ (15,690) | $ (7,180) | $ (4,929) | $ 3,575 | $ (3,951) | $ 5,855 | $ (6,215) | $ (16,134) | $ (52,825) |
| Beginning Cash Balance | $ 154,523 | $ 158,327 | $ 150,263 | $ 158,849 | $ 146,845 | $ 142,365 | $ 166,923 | $ 151,233 | $ 144,054 | $ 139,125 | $ 142,700 | $ 138,748 | $ 144,603 | $ 154,523 | $ 154,523 |
| Net Change in Cash | 3,805 | (8,064) | 8,586 | (12,004) | (4,480) | 24,558 | (15,690) | (7,180) | (4,929) | 3,575 | (3,951) | 5,855 | (6,215) | (16,134) | (52,825) |
| **Ending Cash Balance** | $ 158,327 | $ 150,263 | $ 158,849 | $ 146,845 | $ 142,365 | $ 166,923 | $ 151,233 | $ 144,054 | $ 139,125 | $ 142,700 | $ 138,748 | $ 144,603 | $ 138,388 | $ 138,388 | $ 101,698 |