# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

ENTERED
08/21/2019

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
|  | ) |  |
| Debtors. | ) |  |
|  | ) | (Jointly Administered) |

## ORDER (A) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, (B) AUTHORIZING THE DEBTORS TO CONTINUE TO USE CASH COLLATERAL, (C) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (D) MODIFYING THE AUTOMATIC STAY, AND (E) GRANTING RELATED RELIEF
(Docket No. 466)

Upon the motion (the "**DIP Motion**")[2] of Bristow Group Inc. (the "**Borrower**" and, collectively with all direct and indirect subsidiaries, the "**Company**"), those guarantors under the DIP Credit Agreement (a final copy of which is attached hereto as <u>Exhibit A</u> (the "**DIP Credit Agreement**")) that are debtors and debtors-in-possession (the "**Debtor DIP Guarantors**" and, together with the Borrower, the "**Debtors**" or "**Debtor DIP Loan Parties**"), in the above-captioned cases (the "**Chapter 11 Cases**") and pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507 of title 11 of

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd., and Bristow Equipment Leasing Ltd.  The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

[2]   Capitalized terms used herein and not herein defined have the meaning ascribed to such terms in, as applicable, Annex A, the DIP Credit Agreement or the Final Cash Collateral Order.  As used herein, "**Prepetition Cash Collateral**" means Cash Collateral (as defined in the Final Cash Collateral Order) including, without limitation such Cash Collateral through the date of this Order and any proceeds of the Prepetition Collateral.  As used herein, "**DIP Cash Collateral**" means the cash proceeds of the DIP Facility, the cash proceeds of the DIP Collateral solely after the date of this Order (which, to the extent such DIP Collateral constitutes Prepetition Collateral, also constitutes Prepetition Cash Collateral), and, solely prior to a Termination Event under this Order, Prepetition Cash Collateral.

the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001,

6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

the Bankruptcy Local Rules for the Southern District of Texas (the "**Local Rules**") and the

Procedures for Complex Chapter 11 Bankruptcy Cases (the "**Complex Case Rules**")

promulgated by the United States Bankruptcy Court for the Southern District of Texas (the

"**Court**"), seeking entry of a proposed order (this "**Order**"), among other things:

    (i)    authorizing the Borrower to obtain postpetition financing ("**DIP Financing**") pursuant to a senior secured, superpriority, priming debtor-in-possession credit facility (the "**DIP Facility**" and the loans incurred thereunder, the "**DIP Loans**") in an aggregate principal amount of $150,000,000 (the "**Total DIP Commitment**") solely on the terms and conditions set forth in the DIP Credit Agreement, by and among the Borrower and the Co-Borrower, as borrowers, the DIP Guarantors (as defined below), as guarantors, the several banks and other financial institutions or entities from time to time party thereto as lenders (in such capacities, collectively, the "**DIP Lenders**"), and Ankura Trust Company, LLC, as administrative agent and collateral agent (in such capacities, and together with its successors and permitted assigns, the "**DIP Agent**");

    (ii)    authorizing the Debtor DIP Guarantors to jointly and severally guarantee on a senior secured superpriority basis the DIP Loans and the DIP Obligations (as defined below);

    (iii)    authorizing and directing the Debtors to cause the Co-Borrower and the guarantors under the DIP Credit Agreement that are not Debtors (the "**Non-Debtor DIP Guarantors**" and together with the Co-Borrower, the "**Non-Debtor DIP Loan Parties**" and together with the Debtor DIP Guarantors, the "**DIP Guarantors**" and together with the Co-Borrower and the Debtor DIP Loan Parties, the "**DIP Loan Parties**") as applicable to (i) obtain postpetition financing under the DIP Credit Agreement, (ii) guarantee the Debtors' obligations under the DIP Facility, (iii) grant security interests and liens thereunder, and (iv) perform all such other and further acts as may be required in connection with the DIP Documents;

    (iv)    authorizing the Debtors to execute and deliver the DIP Credit Agreement and other documentation, including credit agreements, security agreements, pledge agreements, control agreements, mortgages, guarantees, promissory notes, certificates, instruments, intellectual property security agreements, notes, aircraft registrations, that certain Fee Letter, by and among the DIP Agent and the Borrowers (the "**Agent Fee Letter**"), and such other documentation which may be necessary or

required to implement the DIP Facility and perform thereunder and/or that may be reasonably requested by the DIP Agent, in each case, as amended, restated, supplemented, waived and/or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively, together with the DIP Credit Agreement, the "**DIP Documents**"); all loans, advances, extensions of credit, financial accommodations, reimbursement obligations, fees (including, without limitation, commitment fees, administrative agency fees and other fees payable pursuant to the Fee Letter), costs, expenses and other liabilities, all other obligations (including indemnities and similar obligations, whether contingent or absolute) and all other amounts due or payable under the DIP Documents, (collectively, the "**DIP Obligations**"), and to perform such other and further acts as may be necessary, desirable or appropriate in connection therewith;

(v)     granting to the DIP Agent for the benefit of the DIP Lenders (collectively, the "**DIP Secured Parties**") allowed superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP Obligations, and valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code, in each case, on all prepetition and postpetition property of the Debtor DIP Loan Parties' estates (other than certain excluded property as provided in the DIP Documents (the "**Excluded Assets**")) and all proceeds thereof, including, any Avoidance Actions Proceeds (as defined herein), in each case subject to the Carve Out (as defined herein);

(vi)    authorizing the Debtors to waive the Debtors' right to surcharge the DIP Collateral or the Prepetition Collateral (each as defined herein) pursuant to section 506(c) of the Bankruptcy Code;

(vii)   authorizing the Debtors to use proceeds of the DIP Facility as set forth in the DIP Documents, solely in accordance with this Order and the DIP Documents (including the Budget (as defined below));

(viii)  authorizing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable to the extent provided in, and in accordance with, the DIP Documents; and

(ix)    modifying the automatic stay to the extent set forth herein and in the DIP Documents.

The Court having considered the DIP Motion, the annexes and exhibits attached thereto,

the *Declaration of Brian Allman in Support of First Day Pleadings* (the "**Allman Declaration**"),

the *Declaration of Bradley Jordan in Support of the Debtors' Motion for Entry of an Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Modifying the Automatic Stay, and (E) Granting Related Relief* (the "**Jordan Declaration**"), the DIP Documents, and the evidence submitted and arguments made by the Debtors at the hearing held on August 21, 2019 (the "**Hearing**"); and notice of the Hearing having been given in accordance with Bankruptcy Rules 2002 and 4001 and all applicable Local Rules; and the Hearing having been held and concluded; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the relief requested in the DIP Motion is fair and reasonable and in the best interests of the Debtors and their estates and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE HEARING BY THE DEBTORS, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.    *Jurisdiction and Venue*.   This Court has core jurisdiction over the Chapter 11 Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

24, 2012) (Hinojosa, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for the Chapter 11 Cases (as defined below) and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      *Notice*.  The Hearing was held pursuant to Bankruptcy Rule 4001(b)(2).  Proper, timely, adequate and sufficient notice of the DIP Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Complex Case Rules, and no other or further notice of the DIP Motion or the entry of this Order shall be required.

C.      *Findings, Stipulations and Releases*.  All of the findings, stipulations and releases set forth in the Final Cash Collateral Order including, without limitation, paragraphs C, D, E and 18 thereof and Annexes B and C thereto, are hereby affirmed subject to paragraph 18 hereof.

D.      *Annexes*.  All annexes and schedules to this Order, including Annex A and Schedule 1 attached hereto, constitute part of this Order and all stipulations, findings, rulings, orders, approvals, authorizations, waivers, limitations, restrictions, obligations, modifications, definitions and other portions hereof or set forth herein, shall constitute a part of this Order and are fully integrated within this Order.  No party in any proceeding before this Court or otherwise at any time shall argue that, any such portion of Annex A or Schedule 1, by virtue of being contained in Annex A or Schedule 1, are not part of or fully integrated within this Order.

E.      *Findings Regarding the DIP Financing and Use of Prepetition Cash Collateral and DIP Cash Collateral*.

(i)      Good and sufficient cause has been shown for the entry of this Order.

(ii)     The Debtor DIP Loan Parties have a critical need to obtain the DIP Financing to continue to permit them to operate in chapter 11, including for the reasons set forth in the Final Cash Collateral Order.  Use of the Debtors' Prepetition Cash Collateral alone is

necessary but not sufficient to satisfy these needs.  The access of the Debtor DIP Loan Parties to sufficient working capital and liquidity through the incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Debtor DIP Loan Parties and to a successful reorganization of the Debtor DIP Loan Parties.

(iii)    The Debtor DIP Loan Parties are unable to obtain financing on more favorable terms and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor DIP Loan Parties are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the DIP Loan Parties granting to the DIP Secured Parties, subject to the Carve Out, the DIP Liens and the DIP Superpriority Claims (as defined herein), and the Secured Notes Tender Offer, in each case, under the terms and conditions set forth in this Order and in the DIP Documents.

(iv)    The Prepetition Consenting Agents on behalf of the Prepetition Consenting Secured Parties have consented or are deemed under the applicable Prepetition Debt Documents to have consented to (i) the Debtor DIP Loan Parties' incurrence of the DIP Priming Liens (as defined herein) subject to the terms and conditions of this Order, (ii) the DIP Loan Parties' incurrence of the DIP Obligations, solely as set forth in the DIP Documents, solely to the extent there is no Termination Event (as defined herein) under this Order, (iii) the DIP Loan Parties' entry into the DIP Documents in accordance with and subject to the terms and conditions in this Order and the DIP Documents, and (iv) the Debtors' continued use of the Prepetition Cash Collateral exclusively on and subject to the terms and conditions set forth herein (which, subject to paragraphs 21 and 22 hereof, fully incorporates the terms of the Final Cash Collateral Order

by reference) and for the limited duration of such use provided for herein; *provided* that upon the occurrence of a Termination Event under this Order, the consents to priming of the claims and liens of the Prepetition Consenting Secured Parties with respect to the Prepetition Collateral including, without limitation, as set forth in this paragraph E(iv) and all other consents, deemed or otherwise, granted by the Prepetition Consenting Secured Parties under this Order including, without limitation, the use of the Prepetition Cash Collateral shall be deemed immediately withdrawn and such consents shall be treated as null and void *ab initio*; *provided further* that the withdrawal of such consents by the Prepetition Consenting Secured Parties shall not affect any action taken or payment made pursuant to this Order prior to the occurrence of a Termination Event.

(v)      Based on the DIP Motion, the Allman Declaration, the Jordan Declaration, and the record presented to the Court at the Hearing, the terms of the DIP Financing, including the Secured Notes Tender Offer, and the terms on which the Debtor DIP Loan Parties may continue to use the Prepetition Collateral (including Prepetition Cash Collateral) pursuant to this Order and the DIP Documents are fair and reasonable, reflect the Debtor DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(vi)      The DIP Financing, including the Secured Notes Tender Offer, as well as the continued use of the Prepetition Collateral (including Prepetition Cash Collateral solely to the extent set forth herein) have been negotiated in good faith and at arms' length among the Debtor DIP Loan Parties and the DIP Lenders, and all of the Debtor DIP Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation:  all DIP Loans made to and guarantees issued by the

DIP Loan Parties pursuant to the DIP Documents, and any "**Obligations**" (as defined in the DIP Documents), shall be deemed to have been extended by the DIP Agent and the DIP Lenders and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(vii)   The Prepetition Consenting Secured Parties have acted in good faith regarding the DIP Financing and the Debtor DIP Loan Parties' continued use of the Prepetition Collateral (including Prepetition Cash Collateral) to fund the administration of the Debtor DIP Loan Parties' estates and permit the continued operation of their businesses and those of the Non-Debtor DIP Loan Parties, in accordance with the terms hereof.  The Prepetition Consenting Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 363(m) of the Bankruptcy Code, to the extent such section applies, in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(viii)   Nothing in this Order or the DIP Documents shall (a) following a Termination Event (as defined herein) be construed as the affirmative consent by any of the Prepetition Consenting Secured Parties for the use of Prepetition Collateral (including Prepetition Cash Collateral) other than on the terms set forth in the Final Cash Collateral Order, (b) be construed as a consent by any party to the terms of any financing other than the DIP Financing or any lien other than the DIP Liens encumbering the Prepetition Collateral (whether senior or junior) or (c) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection or assert the interests of

any of the Prepetition Secured Parties, with the rights of any other party in interest to object to such relief being hereby preserved.

F.      *Permitted Prior Liens; Continuation of Prepetition Liens.*  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien (as defined in Annex C of the Final Cash Collateral Order) is valid, senior, enforceable, prior, perfected or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Creditors' Committee, and the Ad Hoc Group of Unsecured Noteholders (as defined in the verified statement filed on the Court's docket as docket entry no. 52, as supplemented by the verified statement filed on the Court's docket as docket entry no. 270), in each case to the extent such party has standing pursuant and subject to the terms of the Final Cash Collateral Order to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Lien and/or security interest.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien and is expressly subject to the Prepetition Liens and the DIP Liens.  The Prepetition Liens, and the DIP Liens that prime the Prepetition Liens, are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens in light of the integrated nature of the DIP Facility, the Debtor DIP Documents, and the Prepetition Debt Documents.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      *Motion Approved.*  The DIP Motion is granted on a final basis and the financing described herein is authorized and approved subject to the terms and conditions set forth in the

DIP Documents and this Order.  All objections to this Order to the extent not withdrawn, waived, settled or resolved are hereby denied and overruled on the merits.

2.      *Authorization of the DIP Financing and the DIP Documents*.

(a)      The Debtor DIP Loan Parties are hereby authorized and directed, and authorized and directed to cause the Non-Debtor DIP Loan Parties, as applicable, to, execute, deliver, enter into and, as applicable, perform all of their obligations in accordance with, and subject to the terms of this Order and the DIP Documents.  The Borrower is hereby authorized to borrow money pursuant to the DIP Credit Agreement, the Debtor DIP Guarantors are hereby authorized to guaranty the DIP Obligations and the Debtors are authorized and directed to cause the Co-Borrower to borrow and the Non-Debtor DIP Guarantors to guaranty, in each case up to an aggregate principal or face amount equal to $150,000,000 under the DIP Facility, subject to any limitations on borrowing under the DIP Documents, which, together with any Prepetition Cash Collateral and DIP Cash Collateral, shall be used for all purposes permitted under the DIP Documents, subject to and in accordance with the Budget (as defined below) (as the same may be modified from time to time consistent with the terms of the DIP Documents and subject to such variances as permitted therein),[4] including, without limitation, to pay certain costs, fees and expenses related to the Chapter 11 Cases, to complete the Secured Notes Tender Offer, and to fund the working capital needs during the Chapter 11 Cases, in each case, in accordance with this Order and the DIP Documents, including the Budget.

(b)      In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to, and to cause the Co-Borrower and the Non-Debtor DIP Guarantors to, perform all acts, to make, execute and deliver all instruments, certificates,

---

[4]      A copy of the initial Budget is attached hereto as **<u>Schedule 1</u>**.

registrations and agreements and documents (including, without limitation, the execution or recordation of security agreements, control agreements, pledge agreements, intellectual property security agreements, aircraft security agreements, aircraft registrations, mortgages, financing statements and other similar documents), and to pay all fees in connection with or that may be reasonably required, necessary or desirable for the DIP Loan Parties' performance of their obligations under or related to the DIP Financing, including, without limitation:

(i)       the execution and delivery of, and performance under, each of the DIP Documents;

(ii)       the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as required under the DIP Documents or as the requisite parties under the DIP Documents may agree, it being understood that any material amendments or modifications to and under the DIP Documents shall only be permitted pursuant to an order of this Court (which may be sought within three (3) business days), upon notice to counsel to the Creditors' Committee, the U.S. Trustee, counsel to the Prepetition Consenting Agents, counsel to the Ad Hoc Group of Unsecured Noteholders and counsel to the Ad Hoc Equity Committee (as defined in the stipulation filed on the Court's docket as docket entry no. 311); *provided* that no approval of this Court shall be required for any non-material authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents (other than this Order) (or to any fees and other expenses (including attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder, including any forbearance from, or

waiver of, (a) a breach by the Debtors of a covenant, representation, or any other agreement or (b) an Event of Default, in each case under the DIP Documents.

   (iii) the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be and on terms as set forth in the DIP Documents, of all fees including, without limitation, unused facility fees, commitment fees, exit fees, equitization fees, amendment fees, prepayment premiums, early termination fees, servicing fees, audit fees, liquidator fees, structuring fees, administrative agent's or collateral agent's fees, upfront fees, closing fees, commitment fees, exit fees, backstop fees, agency fees and/or professional fees (which fees shall be irrevocable, and shall be deemed to have been approved, upon entry of this Order, whether or not such fees arose before or after the Petition Date and whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Documents (and in any separate letter agreements, including without limitation, any Fee Letter between any or all DIP Loan Parties, on the one hand, and any of the DIP Agent and/or DIP Lenders, on the other, in connection with the DIP Financing) and the reasonable and documented costs and expenses as may be due from time to time, including, without limitation, the reasonable and documented fees and expenses of the professionals retained by any of the DIP Agent or DIP Lenders (including Davis Polk & Wardwell LLP, Haynes and Boone, LLP, Daugherty, Fowler, Peregrin, Haught & Jenson, PJT Partners LP, Kirkland & Ellis LLP, Ducera Partners LLC, Seabury Capital Group LLC and such other

advisors as permitted under the DIP Documents), in each case, as provided for in the DIP Documents, without the need to file retention motions or fee applications but subject to compliance with the Adequate Protection Fee Payment Procedures *provided, however*, that nothing herein or in the DIP Documents shall limit the rights of any party in interest to seek payment of any fees and expenses in accordance with the Plan (as defined in the DIP Documents); and

(iv)     the performance of all other acts necessary, appropriate or desirable under or in connection with the DIP Documents, including the incurrence, granting and perfecting of the DIP Liens and DIP Superpriority Claims.

3.     *DIP Obligations*.  Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and non-avoidable obligations of the DIP Loan Parties, enforceable against each Debtor DIP Loan Party and its estate in accordance with the terms of the DIP Documents and this Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**").  Upon execution and delivery of the DIP Documents, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the DIP Loan Parties to the DIP Agent or any of the DIP Lenders, in each case, under, or secured by, the DIP Documents or this Order, including all principal, accrued interest, costs, fees, expenses and other amounts under the DIP Documents.  The DIP Loan Parties shall be jointly and severally liable for the DIP Obligations.  The DIP Obligations shall be due and payable, without notice or demand, and the right of the Debtors to use Prepetition Cash Collateral and DIP Cash

Collateral pursuant to this Order shall automatically cease on the Termination Date (as defined herein), except as provided in paragraph 19 herein; *provided* that following any Termination Event use of Prepetition Cash Collateral shall continue to be permitted as and to the extent provided in the Final Cash Collateral Order.  No obligation, payment, transfer, or grant of collateral or security hereunder or under the DIP Documents (including any DIP Obligation or DIP Lien) shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544 and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.     *DIP Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Debtor DIP Loan Parties (without the need to file any proof of claim) with priority over any and all claims against the Debtor DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under section 105, 326, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall for purposes of section

1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtor DIP Loan Parties and all proceeds thereof (excluding claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or applicable state-law equivalents ("**Avoidance Actions**") but including any net proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Actions Proceeds**")) in accordance with the DIP Documents and this Order, subject only to the Carve Out and the recourse of the BULL Lombard Agent, for the benefit of itself and the BULL Lombard Lenders, to the BULL Lombard Collateral.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  The DIP Superpriority Claims shall be *pari passu* in right of payment with one another.

5.      *DIP Liens*.

(a)      *DIP Liens*.  As security for the DIP Obligations and perfected upon the date of this Order and without the necessity of the execution, recordation, registration or filing by the Debtor DIP Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements, aircraft or other registrations, notation of certificates of title for titled goods or other similar documents, or the possession or control by the DIP Agent of, or over, any Collateral, security interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (i), (ii), and (iii) below, including DIP Cash Collateral and Prepetition Cash Collateral, but excluding the Whitney

Collateral and subject to paragraph 20 below, being collectively referred to as the "**DIP Collateral**"), subject only to the payment of the Carve Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Order and the DIP Documents, the "**DIP Liens**"):

<div style="margin-left:2em">

(i)    *Liens Priming BGI Term Loan Liens and Senior Secured Notes Liens*. With the consent of the BGI Term Loan Secured Parties and the Senior Secured Notes Secured Parties so long as there is no Termination Event under this Order, "Termination Event" under the Final Cash Collateral Order or termination of the RSA, pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all prepetition and postpetition property of the Debtor DIP Loan Parties of the same nature, scope and type as the BGI Term Loan Collateral and Senior Secured Notes Collateral, regardless of where located, regardless whether or not any liens on such assets are voided, avoided, invalidated, lapsed or unperfected, including all Adequate Protection Liens on the "Adequate Protection Collateral" (as defined in the Final Cash Collateral Order) (the "**DIP Priming Liens**"), which shall prime in all respects the interests of the BGI Term Loan Secured Parties and Senior Secured Notes Secured Parties (but not the interests of the Macquarie Credit Facility Secured Parties, the PK Credit Facility Secured Parties or the BULL Lombard Credit Facility Secured Parties) arising from current and future liens of the BGI Term Loan Secured Parties and Senior Secured Notes Secured Parties (including, without limitation, the Adequate Protection Liens granted to the BGI Term Loan Secured Parties and Senior Secured Notes Secured Parties under the Final Cash Collateral Order) (the "**Primed Liens**"). Notwithstanding anything herein to the contrary, the DIP Priming Liens shall be (i) subject and junior to the Carve Out in all respects, (ii) senior in all respects to the BGI Term Loan Liens and the Senior Secured Notes Liens, and (iii) senior to the Adequate Protection Liens under the Final Cash Collateral Order;

(ii)    *First Priority Liens on Unencumbered Property*:  Pursuant to section 364(c)(2) of the Bankruptcy Code and to the extent not encompassed by the liens on "Adequate Protection Collateral" (as defined in the Final Cash Collateral Order), as contemplated by the preceding paragraph 5(a)(i), a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Debtor DIP Loan Parties, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a valid, perfected and non-avoidable lien, including, without limitation, any and all unencumbered cash of the Debtor DIP Loan Parties (whether maintained with the DIP Agent or otherwise) and any

</div>

investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, aircraft, aircraft parts, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, real property leaseholds, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock or other equity interests of subsidiaries, wherever located, intercompany loans and notes, servicing rights, swap and hedge proceeds and termination payments, claims and causes of action, tort claims and the proceeds, products, rents and profits, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (excluding Avoidance Actions, but including to the extent not encompassed by the preceding paragraph (5)(a)(i) any Avoidance Actions Proceeds), including the loan proceeds of the DIP Loans (net of any fees and expenses payable on the applicable funding date) (the "**Unencumbered Property**"); and

(iii)      *Liens Junior to Certain Other Liens*.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all tangible and intangible pre- and postpetition property of each Debtor DIP Loan Party and the proceeds, products, rents and profits thereof, (but not property subject to the existing security interests of the BULL Lombard Credit Facility Secured Parties), whether arising under section 552(b) of the Bankruptcy Code or otherwise, that is subject to either (i) valid, perfected and non-avoidable liens (other than (A) the BGI Term Loan Liens and the Secured Notes Liens granted by Debtor DIP Loan Parties, which are Primed Liens pursuant to clause (i) above, (B) Liens with respect to the BULL Lombard Collateral, (C) the Section 1110 Excluded Collateral, or (D) the PK Collateral solely to the extent that the PK Credit Agreement and applicable law would permit the PK Credit Facility to exercise remedies as a result of the grant and, in each of (C) and (D), unless and until the limitations set forth in paragraph 20(b) of this Order shall cease to apply, in accordance with paragraph 20(b) of this Order) in existence immediately prior to the Petition Date or (ii) valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (any such liens described in the foregoing clauses (i) and (ii), the "**Other Senior Liens**"), which security interest and lien shall be junior and subordinate to any valid, perfected, and non-avoidable Other Senior Liens on such property in existence immediately prior to the Petition Date.

(b)      *DIP Loan Proceeds*.  The loan proceeds of the DIP Loans (net of any fees and expenses payable on the applicable funding date) shall be deposited in the DIP Loan

Proceeds Disbursement Account, which account, for the avoidance of doubt, shall constitute DIP Collateral.  No cash or cash equivalents of the Debtor DIP Loan Parties that are not loan proceeds of the DIP Loans shall be deposited in the DIP Loan Proceeds Disbursement Account. For the avoidance of doubt, nothing herein alters or modifies the terms and conditions of the *Final Order Authorizing the Debtors to (I) Continue to Operate their Cash Management System, (II) Honor Certain Prepetition Obligations Related Thereto, (III) Maintain Existing Business Forms, (IV) Perform Intercompany Transactions, and (V) Granting Related Relief* [D.I. 306].

6.     *Adequate Protection of the BGI Term Loan Secured Parties and the Senior Secured Notes Secured Parties*.  The BGI Term Loan Secured Parties and the Senior Secured Notes Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral (including Prepetition Cash Collateral) to the extent of the diminution in the value of their interests in the Prepetition Collateral (including Prepetition Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.  In addition to the adequate protection of the BGI Term Loan Secured Parties and the Senior Secured Notes Secured Parties set forth in paragraphs 3 and 4 of the Final Cash Collateral Order, in consideration for the use of their Prepetition Collateral (including Prepetition Cash Collateral) and consent to priming of their Prepetition Collateral in accordance with this Order, the following adequate protection shall be granted:

(a)     *Additional BGI Adequate Protection Liens*.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, the BGI Term Loan Agent, for itself and for the benefit of the other BGI Term Loan Secured Parties, is hereby granted (effective and perfected upon the

date of this Order and in addition to the BGI Term Loan Secured Parties Adequate Protection Liens (as defined in the Final Cash Collateral Order)) a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all DIP Collateral, whether or not such DIP Collateral constitutes Adequate Protection Collateral as defined in the Final Cash Collateral Order and including, for the avoidance of doubt, all monies deposited in the DIP Loan Proceeds Disbursement Account (the "**Additional BGI Adequate Protection Liens**"), which liens shall be junior to the DIP Priming Liens and which security interest and lien shall rank *pari passu* with the Additional Senior Secured Notes Adequate Protection Liens (as defined herein);

(b)     *Additional Senior Secured Notes Adequate Protection Liens*.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, the Senior Secured Notes Indenture Trustee, for itself and for the benefit of the other Senior Secured Notes Secured Parties, is hereby granted (effective and perfected upon the date of this Order and in addition to the Senior Secured Notes Secured Parties Adequate Protection Liens) a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all DIP Collateral, whether or not such DIP Collateral constitutes Adequate Protection Collateral as defined in the Final Cash Collateral Order and including, for the avoidance of doubt, all monies deposited in the DIP Loan Proceeds Disbursement Account (the "**Additional Senior Secured Notes Adequate Protection Liens**" and, together with the Additional BGI Adequate Protection Liens, the "**Additional Adequate Protection Liens**"), which liens shall be junior to the DIP Priming Liens and which security interest and lien shall rank *pari passu* with the Additional BGI Adequate Protection Liens.

7.     *Limitation on Charging Expenses Against Collateral*.  No costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be

charged against or recovered from the DIP Collateral (including DIP Cash Collateral and, as expressly set forth herein, Prepetition Collateral (including Prepetition Cash Collateral)) or the BULL Lombard Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Required DIP Lenders, the Required Secured Noteholders and the Required Term Lenders, or with respect to the BULL Lombard Collateral, the BULL Lombard Agent, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Secured Parties or the Prepetition Consenting Secured Parties, or, with respect to the BULL Lombard Collateral, the BULL Lombard Agent, and nothing contained in this Order shall be deemed to be a consent by the DIP Secured Parties or, with respect to the BULL Lombard Collateral, the BULL Lombard Agent, to any charge, lien, assessment or claim against the DIP Collateral or the BULL Lombard Collateral, as applicable, under section 506(c) of the Bankruptcy Code or otherwise.  Notwithstanding anything to the contrary herein, in the event the consensual use of DIP Cash Collateral is terminated in accordance with paragraph 11 hereof, the Debtors and the Creditors' Committee reserve their rights under section 506(c) of the Bankruptcy Code solely with respect to costs and expenses incurred in respect of the DIP Collateral after the Termination Date and the DIP Secured Parties reserve their rights to contest any such assertion on any basis.

8.      *Carve Out*.  Paragraph 7 of the Final Cash Collateral Order is hereby superseded and replaced in its entirety with the following for so long as is necessary to comply with this paragraph 8:

(a)      For purposes hereof, the "**Carve Out**" is an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court and to the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") under section 1930(a) of title 28 of the

United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $100,000 (without regard to the notice set forth in (iii) below); and (iii) (A) all unpaid claims for fees, costs, disbursements and expenses to the extent allowed at any time, whether by interim order, final order, procedural order or otherwise of persons or firms retained by the Debtors pursuant to section 327, 328 or 363 of the Bankruptcy Code or by the Creditors' Committee (collectively, the "**Professional Fees**") incurred at any time on or prior to the Trigger Date, plus (B) Professional Fees incurred after the Trigger Date in an amount not to exceed $6,000,000 (the "**Carve Out Cap**"), in each case subject to the limits imposed by this Order or otherwise on Professional Fees permitted to be incurred in connection with any permitted investigation of the claims, liens and defenses against any Prepetition Secured Party; provided, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii)(A) or (iii)(B) above, on any other grounds.   "**Trigger Notice**" shall mean a written notice delivered by the DIP Agent describing the event of default that is alleged to continue under the DIP Documents (or after the payment in full of the DIP Obligations by the Debtors, a written notice delivered by the Required Term Loan Lenders or the Required Secured Noteholders, as applicable, stating that a Termination Event under this Order has occurred and describing the reason for termination of the use of DIP Cash Collateral or Prepetition Cash Collateral).  Immediately upon delivery of a Trigger Notice, and prior to the payment to any DIP Secured Party or Prepetition Secured Party on account of any adequate protection or otherwise, the Debtors shall be required to deposit, in a segregated account not subject to the control of the DIP Agent or either Prepetition Agent (the "**Carve Out Account**"), an amount equal to the

Carve Out Cap.  The funds on deposit in the Carve Out Account shall be available only to satisfy obligations benefiting from the Carve Out, and the DIP Agent and the BGI Term Loan Agent, each on behalf of itself and the relevant secured parties, (i) shall not sweep or foreclose on cash of the Debtors necessary to fund the Carve Out Account and (ii) shall have a security interest upon any residual interest in the Carve Out Account available following satisfaction in cash in full of all obligations benefitting from the Carve Out.

(b)  For purposes hereof, the "**Trigger Date**" shall mean the earliest of (i) the first business day after the occurrence of an Event of Default (as defined in the DIP Credit Agreement), (ii) the Maturity Date (as defined in the DIP Credit Agreement) and (iii) the Trigger Date under the Final Cash Collateral Order and the delivery (including via email) of the Trigger Notice to each of the Borrowers' lead restructuring counsel, counsel to the Creditors' Committee, counsel to the Ad Hoc Equity Committee and the U.S. Trustee.

(c)  Notwithstanding the foregoing, (x) the Carve Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation (other than, prior to the Trigger Date, as permitted under paragraph 19 of this Order), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation, or assertions of any defense or counterclaim, against any of the DIP Lenders, the DIP Agent, the BGI Term Loan Lenders, the BGI Term Loan Agent, the Senior Secured Noteholders or the Senior Secured Notes Indenture Trustee, each in such capacity, and their respective agents, attorneys, advisors or representatives, including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Documents or the Prepetition Debt Documents (whether in such capacity or otherwise), including, in each case, without limitation,

22

for lender liability or pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP Lenders, the DIP Agent or the Prepetition Secured Parties; (c) attempts to prevent, hinder or otherwise delay any of the DIP Lenders' or the DIP Agent's assertion, enforcement or realization upon any DIP Collateral or Prepetition Collateral in accordance with the DIP Documents and this Order other than to seek a determination that an Event of Default has not occurred or is not continuing; or (d) paying any amount on account of any claims arising before the commencement of the Chapter 11 Cases unless such payments are approved by an order of the Court, and (y) prior to the Trigger Date, the Carve Out shall not be reduced by the payment or incurrence of Professional Fees allowed at any time by the Court.  Further, notwithstanding anything to the contrary in this Order, (i) the failure of the Carve Out Account to satisfy in full the Professional Fees shall not affect the priority of the Carve Out and (ii) in no way shall the Budget, the Carve Out, the Trigger Notice, the Carve Out Cap, or any of the foregoing be construed as a cap or limitation on the amount of the Professional Fees due and payable to persons or firms retained by the Debtors or the Creditors' Committee.

9.      *The Secured Notes Tender Offer*.  The Debtors are hereby authorized and directed, no later than three (3) business days after the entry of this Order, to commence the Secured Notes Tender Offer as and to the extent set forth in the DIP Credit Agreement and the RSA and in compliance with applicable law.

10.     *Budget Maintenance and Compliance*.   The use of borrowings and other extensions of credit by the Debtors under the DIP Documents and the DIP Collateral (including DIP Cash Collateral and, as expressly set forth herein, Prepetition Cash Collateral) pursuant to this Order shall be limited in accordance with the budget (the "**Budget**"), a current version of

which is attached hereto as **Schedule 1**.[5]  The Budget and delivery thereof shall (A) comply in all respects with the requirements for delivery of Semi-Annual Cash Flow Forecasts and Variance Reports and (B) contain such other information reasonably requested by the Required DIP Lenders.  Each Budget delivered pursuant to this paragraph shall be approved by, and in form and substance reasonably satisfactory to, the Required DIP Lenders (it being acknowledged and agreed that the Budget attached hereto as **Schedule 1** is approved and satisfactory for such purpose).  The Budget shall be updated, modified or supplemented by the Debtors from time to time and upon the reasonable request of the Required DIP Lenders, but in any event the Budget shall be updated by the Debtors on or before the last business day at the end of every 4-week period, commencing August 30, 2019; *provided*, that in the event that the Required DIP Lenders object, the then-current approved Budget shall remain the approved Budget until the applicable parties and the Debtors, in consultation with the Creditors' Committee, agree as to an updated, modified or supplemented Budget.  Each Budget delivered pursuant to this paragraph shall be accompanied by such supporting documentation and/or information as reasonably requested by the Required DIP Lenders.  Each Budget shall be prepared in good faith based upon assumptions that the Debtors believe to be reasonable.  The Debtors' failure to comply with the Budget, or to provide the reports and other information, including without limitation, intercompany transactions and current intercompany balances, requested by the Required DIP Lenders shall constitute a Termination Event under this Order.  For the avoidance of doubt, financial reporting packages shall include information on Debtor and non-Debtor subsidiaries, including detailed information on Bristow Aviation Holdings Limited and its subsidiaries.

---

[5]    The Budget attached as Schedule 1 is a consolidated budget that includes the Debtors and their non-debtor affiliates.

11.     *Termination*.  The Debtor DIP Loan Parties' right to use Prepetition Collateral (including Prepetition Cash Collateral) on a priming basis and the Prepetition Consenting Secured Parties' consent to priming by the DIP Priming Liens pursuant to this Order shall terminate upon an Event of Default under the DIP Credit Agreement, the termination of the RSA or the occurrence of a "Termination Event" under the Final Cash Collateral Order, in each case, as provided in the RSA or the Final Cash Collateral Order, as applicable (each a "**Termination Event**" and the date of any such termination, the "**Termination Date**") without further notice or court proceeding after five (5) calendar days (any such five-calendar-day period of time, the "**Default Notice Period**") following the delivery of a written notice (any such notice, a "**Default Notice**") and the filing of an emergency motion on the Court's docket, during which period the Court shall hold an expedited hearing, by the Required DIP Lenders to the Debtors, Debtors' counsel, the U.S. Trustee, counsel to the Prepetition Consenting Agents, counsel to the Ad Hoc Group of Unsecured Noteholders, counsel to the Creditors' Committee and counsel to the Ad Hoc Equity Committee of the occurrence of any Termination Event unless such occurrence is cured by the Debtors prior to the expiration of the Default Notice Period with respect to such clause or such occurrence is waived by the Required DIP Lenders, *provided* that, during the Default Notice Period, the Debtor DIP Loan Parties shall be entitled to continue to use the DIP Cash Collateral in accordance with the terms of this Order.

12.     *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court affirms and finds that the adequate protection provided to the Prepetition Secured Parties for any diminution in the value of their respective interests in the value of the Prepetition Collateral in (i) the Final Cash Collateral Order and (ii)

paragraph 6 of this Order is reasonable to protect the interests of the Prepetition Consenting Secured Parties and any other parties holding interests that are secured by the Prepetition Collateral; *provided* that any Prepetition Secured Party, upon a change in circumstances and without limitation, upon a Termination Date, may request, by motion on notice and after a hearing, further or different adequate protection and the Debtors or any other party may contest any such request.

13.     *Perfection of DIP Liens.*

(a)     Without in any way limiting the automatically effective perfection of the DIP Liens granted in this Order, the DIP Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the DIP Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, aircraft registrations, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder (the "**Perfection Actions**").  Whether or not the DIP Secured Parties shall, in their sole discretion, choose to take such Perfection Actions, such liens and security interests (with the exception of any security interests arising under the Cayman Security Documents in respect of the non-U.S. situs assets) shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Order.  Upon the request of any of the DIP Secured Parties, each of the Debtor DIP Loan Parties, without any further consent of any party, is authorized to, and to cause its subsidiaries to, take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the validation, perfection, preservation and

enforcement of the DIP Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date; *provided* that, upon an Event of Default under the DIP Credit Agreement as described in paragraph 11 hereof, the Debtor DIP Loan Parties shall, and cause their subsidiaries to, terminate the Perfection Actions.

(b)     A certified copy of this Order may, in the discretion of the DIP Agent, acting on its own behalf or as directed by the Required DIP Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit each of the DIP Secured Parties to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

(c)     Any DIP Liens granted under this Order secured by any Aircraft Collateral (as defined in the DIP Credit Agreement) shall be deemed to be continuing post-petition liens that will continue on such Aircraft Collateral notwithstanding the Debtors' de-registration of the Aircraft Collateral from the Aircraft Collateral's Jurisdiction of Registration (as that term is defined in the DIP Credit Agreement), and such liens shall be deemed valid and perfected without the need for any additional execution of any mortgages, security agreements, aircraft or other registrations, pledge agreements, financing statements or other agreements.  The Debtors are authorized to cooperate, or cause their non-debtor affiliates to cooperate, with the DIP Agent in perfecting liens of the Aircraft Collateral under local law.

14.     *Preservation of Rights Granted Under This Order.*

(a)     Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered: (i)  the DIP Superpriority Claims and the DIP Liens shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations shall have been indefeasibly paid in full in cash or otherwise satisfied in accordance with the provisions of the RSA (and such DIP Superpriority Claims and the DIP Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Order.

(b)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Agent or Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority or enforceability of the DIP Liens or the DIP Superpriority Claims.  Notwithstanding any such reversal, modification, vacatur or stay of any use of DIP Cash Collateral, any Prepetition Cash Collateral, any DIP Obligations, DIP Superpriority Claims, or DIP Liens incurred by the DIP Loan Parties to the DIP Secured Parties prior to the actual receipt of written notice by the DIP Agent or Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Order, and the DIP Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of

28

the Bankruptcy Code, to the extent applicable, this Order and the DIP Documents with respect to all uses of DIP Cash Collateral and the DIP Obligations.

(c)      Except as expressly provided in this Order or the DIP Documents, the DIP Liens, the DIP Superpriority Claims and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases or terminating the joint administration of these Chapter 11 Cases or by any other act or omission, (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents or by pursuant to a separate approval by the Required DIP Lenders), or (iii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor DIP Loan Parties have waived any discharge as to any remaining DIP Obligations.  The terms and provisions of this Order and the DIP Documents shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, and all other rights and remedies of the DIP Secured Parties granted by the provisions of this Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and the DIP Documents and the Total DIP Commitment has been terminated.

15.      *No Marshaling*.  The DIP Secured Parties shall be entitled to apply the payments or proceeds of the DIP Collateral in accordance with the provisions of the DIP Credit

Agreement, and in no event shall the DIP Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or otherwise; *provided* that prior to seeking payment of any DIP Superpriority Claims or DIP Liens from net proceeds of Avoidance Actions, the DIP Secured Parties shall use commercially reasonable efforts to first satisfy such claims or liens from all other DIP Collateral.

16.     *Payments Free and Clear*.   Any and all payments or proceeds remitted to the DIP Agent on behalf of the applicable DIP Secured Parties, pursuant to the provisions of this Order, any subsequent order of the Court or the DIP Documents, shall, subject to the terms of this paragraph 16, be irrevocable, received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtor DIP Loan Parties, and solely in the case of payments made or proceeds remitted after the delivery of a Trigger Notice, subject to the Carve Out in all respects.

17.     *Releases*.   Without prejudice to the rights of any other party-in-interest in the Chapter 11 Cases, as of the entry of this Order the DIP Loan Parties hereby absolutely and unconditionally release and forever discharge and acquit each of the DIP Secured Parties and their respective Representatives (as defined herein) (collectively, the "**Released Parties**"), from any and all obligations and liabilities to the DIP Loan Parties (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, responsibilities, disputes, remedies, indebtedness, obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorney's fees, costs, expenses, judgements and causes of action arising prior to the Petition Date (collectively, the

"**Released Claims**") of any kind, nature or description, whether matured or unmatured, known or unknown, foreseen or unforeseen, liquidated or unliquidated, arising in law or equity, upon contract or tort or under any state or federal or common law or statute or regulation or otherwise, whether or not arising out of or related to (as applicable) the DIP Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made thereunder, in each case that the DIP Loan Parties at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Order.

18.     *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in this Order shall be binding upon the Debtors and any successors thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in this Order shall be binding upon all other parties in interest, including, without limitation, any Creditors' Committee; *provided* that with respect to any stipulations, agreements, admissions and releases made in the Final Cash Collateral Order and incorporated or otherwise affirmed herein by reference, such stipulations, agreements, admissions and releases shall remain subject to the terms of the Final Cash Collateral Order, including paragraph 19 thereof; *provided* that the August 30, 2019 Challenge Period as applicable to the Creditors' Committee in Paragraph 19(a)(i)(y) of the Final Cash Collateral Order shall be extended to the earlier of (i) the effective date of the plan of reorganization contemplated by the RSA (as may be amended in accordance

with the RSA, the "Plan"); (ii) 14 days after the Plan is withdrawn or confirmation of the Plan is denied; or (iii) 14 days after the Creditors' Committee terminates the Creditors' Committee RSA Joinder pursuant to Section 5 thereof; *provided further that* the Creditors' Committee and its retained professionals shall not be entitled to the payment or reimbursement of any fees and/or expenses incurred in connection with the investigation, preparation, initiation or prosecution of any Challenges between (a) the effective date of the Creditors' Committee RSA Joinder and the earlier of (b) (i) the date the Plan is withdrawn or confirmation of the Plan is denied; or (iii) the date the Creditors' Committee terminates the Creditors' Committee RSA Joinder pursuant to Section 5 thereof.

19.     *Limitation on Use of DIP Financing Proceeds and Cash Collateral.* Notwithstanding any other provision of this Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral (including Prepetition Cash Collateral) or any portion of the Carve Out may be used directly or indirectly, (a) in connection with the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the DIP Secured Parties or their predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of the DIP Obligations, the DIP Liens or the DIP Superpriority Claims granted to the DIP Secured Parties under this Order, or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Secured Parties in the DIP Obligations, and/or the liens, claims, rights, or security interests granted under this Order, the DIP Obligations and including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; *provided*

that the Debtors and the Creditors' Committee may use the proceeds of the DIP Loans and/or DIP Collateral (including DIP Cash Collateral and, solely to the extent provided in the Final Cash Collateral Order, the Prepetition Cash Collateral) to the extent set forth in and for the purposes permitted by paragraphs 19 and 20 of the Final Cash Collateral Order.

20.    *Compliance with Section 1110 Obligations and the Lombard Event of Default Waiver as to Non-Debtor Bristow Aircraft Leasing Limited*.

(a)    Nothing in this Order shall modify the rights of the Debtors to comply with section 1110 of the Bankruptcy Code and the Cape Town Treaty (as defined in the Final Cash Collateral Order) to the extent set forth in paragraph 21 of the Final Cash Collateral Order.

(b)    Notwithstanding anything herein to the contrary, the liens granted under this Order shall not be granted on the BULL Lombard Collateral, the Section 1110 Excluded Collateral (as defined in the Final Cash Collateral Order) or, solely to the extent that the PK Credit Agreement and applicable law would permit the PK Credit Facility Secured Parties to exercise remedies as a result of such grant, the PK Collateral, in each case other than Adequate Protection Liens granted to a Prepetition Secured Party in respect of its own Prepetition Collateral.  The foregoing limitation as to the Section 1110 Excluded Collateral shall cease to apply once any such asset currently within the scope of Section 1110 Excluded Collateral ceases to constitute Section 1110 Excluded Collateral (*i.e.*, for example, where an underlying loan currently protected by Section 1110 of the Bankruptcy Code is indefeasibly and irrevocably repaid in full).

21.    *This Order Governs*.  In the event of any inconsistency between the provisions of this Order, the DIP Documents, and any other order entered by this Court, the provisions of this Order shall govern unless such other order expressly provides that it controls over this Order.  In

33

the event of any inconsistency between the provisions of this Order and the Final Cash Collateral Order with respect to, or relating to, use of Prepetition Collateral (including any Prepetition Cash Collateral), including adequate protection or otherwise, the Final Cash Collateral Order shall govern.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Order and the Final Cash Collateral Order.  Furthermore, notwithstanding anything to the contrary in this Order or any other order entered by the Court (including the Final Cash Collateral Order), the proceeds of the DIP Loans shall not constitute Prepetition Cash Collateral.

22.     *The Final Cash Collateral Order*.  Other than with respect to priming of the liens of the Prepetition Consenting Secured Parties with respect to the Prepetition Collateral (including any Prepetition Cash Collateral), for so long as no "Termination Event" has occurred under the Final Cash Collateral Order, the terms and conditions of the Final Cash Collateral Order shall remain in full force and effect.  If the right to use DIP Cash Collateral or Prepetition Cash Collateral is terminated by the occurrence of a Termination Date under this Order, the occurrence of a "Termination Event" under the Final Cash Collateral Order, the occurrence of an Event of Default under the DIP Credit Agreement or the termination of the RSA, then any consent (including, without limitation, any consent to the priming of the liens of the Prepetition Consenting Secured Parties with respect to the Prepetition Collateral) or other authorization relating to Prepetition Collateral (including any Prepetition Cash Collateral) contained in this Order, the RSA, or DIP Credit Agreement, as applicable, shall be deemed null and void *ab initio* and the Final Cash Collateral Order shall remain in full force and effect and shall exclusively govern the Debtors' use of Prepetition Collateral (including any Prepetition Cash Collateral)

after the date of such event; *provided* that the Additional Adequate Protection Liens set forth in paragraph 6 of this Order shall be incorporated by reference into the Final Cash Collateral Order; *provided further* that the revocation of any consent or other authorization relating to the Prepetition Collateral pursuant to this paragraph 22 shall not affect any action taken or payment made prior to such revocation pursuant to this Order.

23.    *Limitation of Liability.*  In permitting the use of the DIP Collateral and Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order, none of the DIP Secured Parties, Prepetition Secured Parties or the Prepetition Agents shall (i) have any liability to any third party or be deemed to be in control of the operation of any of the Debtor DIP Loan Parties or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any of the Debtor DIP Loan Parties (as such terms, or any similar terms, are used in the Internal Revenue Code, United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute) or (ii) owe any fiduciary duty to any of the Debtor DIP Loan Parties, their creditors or their estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtor DIP Loan Parties.  Furthermore, nothing in this Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties, Prepetition Agents or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtor DIP Loan Parties and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

24.    *Binding Effect; Successors and Assigns.*  The provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases,

including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Creditors' Committee, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* that none of the DIP Secured Parties or the Prepetition Secured Parties shall have any obligation to permit the use of the DIP Collateral or Prepetition Collateral (including Prepetition Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

25. *Intercreditor Agreement*.  Nothing in this Order shall amend or otherwise modify the terms and enforceability of the Intercreditor Agreement.  The rights of the BGI Term Loan Agent, the Senior Secured Notes Indenture Trustee and the Prepetition Consenting Secured Parties shall at all times remain subject to the Intercreditor Agreement.

26. *Credit Bidding*.  The DIP Agent shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the DIP Obligations in any sale of the DIP Collateral, as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, in each case unless the Court for cause orders otherwise.

27.     *Maintenance of Collateral*.  The Debtor DIP Loan Parties shall comply with the covenants contained in the DIP Documents regarding the maintenance and insurance of the DIP Collateral.

28.     *Effectiveness*.  This Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014 or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

29.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Order.

30.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

31.     *Necessary Action*.  The Debtors, the DIP Secured Parties and Prepetition Secured Parties are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

32.     *Retention of Jurisdiction*.  The Court shall retain jurisdiction to enforce the provisions of this Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

**Signed:  August 21, 2019**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## Annex A

## Definitions

"**Adequate Protection Liens**" shall mean, collectively, the BGI Term Loan Secured Parties Adequate Protection Liens, the Senior Secured Notes Secured Parties Adequate Protection Liens, and the Equipment Lenders Adequate Protection Liens (as each are defined in the Final Cash Collateral Order).

"**BGI**" shall mean Bristow Group Inc.

"**BGI Term Loan Agent**" shall have the meaning ascribed in the Final Cash Collateral Order.

"**BGI Term Loan Collateral**" shall have the meaning ascribed in the Final Cash Collateral Order.

"**BGI Term Loan Lenders**" shall have the meaning ascribed in the Final Cash Collateral Order.

"**BGI Term Loan Liens**" shall have the meaning ascribed in the Final Cash Collateral Order.

"**BGI Term Loan Secured Parties**" shall have the meaning ascribed in the Final Cash Collateral Order.

"**BULL**" shall mean Bristow U.S. Leasing LLC

"**BULL Lombard Collateral**" shall have the meaning ascribed in the Final Cash Collateral Order.

"**BULL Lombard Credit Facility Secured Parties**" shall have the meaning ascribed in the Final Cash Collateral Order.

"**Creditors' Committee**" shall mean any official committee of unsecured creditors appointed under 11 U.S.C. § 1102.

"**Creditors' Committee RSA Joinder**" means the Amendment, Stipulation, and Joinder Agreement in Respect of Restructuring Support Agreement, expected to be entered on or about August 22, 2019, setting forth the terms on which the Creditors' Committee will support the RSA.

"**Equipment Lender Agents**" shall mean the Macquarie Agent, the PK Agent, and the BULL Lombard Agent, and each, individually, an "**Equipment Lender Agent**".

"**Equipment Lender Agreements**" shall mean, collectively, the Macquarie Credit Agreement, the PK Credit Agreement, and the BULL Lombard Credit Agreement, and each, individually, an "**Equipment Lender Agreement**".

"**Equipment Lenders**" shall mean, collectively, the Macquarie Credit Facility Secured Parties, the PK Credit Facility Secured Parties, and the BULL Lombard Credit Facility Secured Parties, and each, individually, an "**Equipment Lender**".

"**Equipment Prepetition Collateral**" shall mean, collectively, the Macquarie Collateral, the PK Collateral, and the BULL Lombard Collateral.

"**Equipment Prepetition Liens**" shall mean, collectively, the Macquarie Credit Facility Liens, the PK Credit Facility Liens, and the BULL Lombard Credit Facility Liens.

"**Final Cash Collateral Order**" shall mean the *Final Order (a) Authorizing the Debtors to Use Cash Collateral, (b) Granting Adequate Protection to the Prepetition Consenting Secured Parties, (c) Modifying the Automatic Stay and (d) Granting Related Relief* [D.I. 312]

"**Intercreditor Agreement**" shall mean that certain Junior Lien Intercreditor Agreement, dated as of [DATE],[1] among the Senior Secured Notes Issuer, the Senior Secured Notes Indenture Trustee, the BGI Term Loan Agent, and each additional Representative from time to time party thereto, as amended, restated, supplemented, waived, or otherwise modified from time to time.

"**Macquarie Credit Facility Secured Parties**" shall have the meaning ascribed in the Final Cash Collateral Order.

"**Macquarie Collateral**" shall have the meaning ascribed in the Final Cash Collateral Order.

"**Petition Date**" shall mean May 11, 2019.

"**PK Collateral**" shall have the meaning ascribed in the Final Cash Collateral Order.

"**PK Credit Facility Secured Parties**" shall have the meaning ascribed in the Final Cash Collateral Order.

"**Prepetition Agents**" shall mean, collectively, the Prepetition Consenting Agents and Equipment Lender Agents.

"**Prepetition Collateral**" shall mean, collectively, the BGI Term Loan Collateral, the Senior Secured Notes Collateral and the Equipment Prepetition Collateral.

"**Prepetition Consenting Agents**" shall mean, together, the BGI Term Loan Agent and the Senior Secured Notes Indenture Trustee.

"**Prepetition Consenting Secured Parties**" shall mean, collectively, the BGI Term Loan Secured Parties and the Senior Secured Notes Secured Parties.

---

[1] NTD: to be updated once executed

"**Prepetition Debt Documents**" shall mean the BGI Term Loan Credit Agreement, the Senior Secured Notes Indenture, the Macquarie Credit Agreement, the PK Credit Agreement, and the BULL Lombard Credit Agreement.

"**Prepetition Liens**" shall mean, collectively, the BGI Term Loan Liens, the Senior Secured Notes Liens, the Macquarie Credit Facility Liens, the PK Credit Facility Liens, and the BULL Lombard Credit Facility Liens.

"**Prepetition Secured Parties**" shall mean, collectively, the Prepetition Consenting Secured Parties, the Macquarie Credit Facility Secured Parties, the PK Credit Facility Secured Parties, and the BULL Lombard Credit Facility Secured Parties, and each of the above, individually, a "**Prepetition Secured Party**".

"**Representative**" or "**Representatives**" shall mean, individually or collectively, the Prepetition Secured Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such.

"**Required DIP Lenders**" shall mean, at any time, two or more unaffiliated DIP Lenders holding greater than 66 and 2/3% of (a) prior to the funding of the DIP Facility, the Total DIP Commitment, and (b) following the funding of the DIP Facility, the aggregated outstanding DIP Loans.

"**Required Secured Noteholders**" shall have the meaning provided in the RSA.

"**Required Term Loan Lenders**" shall mean the "Required Lenders" as defined in the BGI Term Loan Credit Agreement.

"**RSA**" shall mean the Amended and Restated Restructuring Support Agreement, dated as of June 27, 2019 (as amended, modified, and/or supplemented from time to time), entered into by the Borrower with (i) certain holders of the Senior Secured Notes, (ii) certain holders of Unsecured Notes (as defined in the RSA), (iii) the guarantors of the Senior Secured Notes and (iv) the other parties thereto, to support a restructuring on the terms set forth in the term sheet contained in an exhibit to the RSA.

"**Senior Secured Noteholders**" shall have the meaning ascribed in the Final Cash Collateral Order.

"**Senior Secured Notes Collateral**" shall have the meaning ascribed in the Final Cash Collateral Order.

"**Senior Secured Notes Indenture Trustee**" shall have the meaning ascribed in the Final Cash Collateral Order.

 "**Senior Secured Notes Liens**" shall have the meaning ascribed in the Final Cash Collateral Order.

 "**Senior Secured Notes Secured Parties**" shall have the meaning ascribed in the Final Cash Collateral Order.

 "**Whitney Collateral**" shall mean  those certain certificates of deposits assigned to Hancock Whitney Bank designated as CD# 707747 which secures Letter of Credit #7348399 in the amount of $195,000.00; CD# 707748 which secures Letter of Credit #5512899  in the amount of $235,000.00; CD# 707749 which secures Letter of Credit #3874799 in the amount of $250,000.00; and CD# 727158 which secures its card account, whose last four digits are #2374 in the amount of $112,000.00, as well as CD# 727161 which secures its card account, whose last four digits are #6554 in the amount of $70,000.00.

**<u>Schedule 1</u>**

**Budget**

Exhibit 1
Cash Flow Forecast
Consolidated
Global
*(Dollars in Thousands)*

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 13 Week Forecast | 26 Week Forecast |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 8/9/2019 | 8/16/2019 | 8/23/2019 | 8/30/2019 | 9/6/2019 | 9/13/2019 | 9/20/2019 | 9/27/2019 | 10/4/2019 | 10/11/2019 | 10/18/2019 | 10/25/2019 | 11/1/2019 | | |
| **OPERATING CASH FLOW** | | | | | | | | | | | | | | | |
| Total Receipts | $ 21,269 | $ 55,447 | $ 12,495 | $ 17,829 | $ 21,914 | $ 35,086 | $ 26,694 | $ 13,167 | $ 32,600 | $ 29,491 | $ 29,397 | $ 15,709 | $ 32,101 | $ 343,199 | $ 664,772 |
| Total Operating Disbursements | (26,573) | (29,571) | (30,433) | (56,684) | (29,519) | (17,496) | (24,037) | (19,900) | (41,824) | (15,160) | (25,491) | (22,670) | (31,514) | (370,873) | (683,894) |
| **Operating Cash Flow** | $ (5,304) | $ 25,877 | $ (17,938) | $ (38,855) | $ (7,605) | $ 17,589 | $ 2,657 | $ (6,733) | $ (9,224) | $ 14,331 | $ 3,906 | $ (6,962) | $ 587 | $ (27,674) | $ (19,122) |
| **NON-OPERATING ACTIVITIES** | | | | | | | | | | | | | | | |
| Other Non-Operating Activities | $ - | $ - | $ (250) | $ 148,500 | $ - | $ - | $ (650) | $ (250) | $ - | $ - | $ - | $ (250) | $ (650) | $ 146,450 | $ 145,700 |
| Debt Service | - | (2,023) | - | (75,824) | (14,041) | (2,022) | - | (824) | (10,655) | - | (2,021) | (669) | (3,530) | (111,609) | (136,800) |
| **Total Non-Operating Activities** | $ - | $ (2,023) | $ (250) | $ 72,676 | $ (14,041) | $ (2,022) | $ (650) | $ (1,074) | $ (10,655) | $ - | $ (2,021) | $ (919) | $ (4,180) | $ 34,841 | $ 8,900 |
| **RESTRUCTURING ACTIVITIES** | | | | | | | | | | | | | | | |
| Restructuring Professional Fees | $ (465) | $ - | $ - | $ (14,725) | $ (2,000) | $ - | $ - | $ - | $ (9,305) | $ - | $ - | $ - | $ (5,615) | $ (32,110) | $ (40,765) |
| US Trustee | - | - | - | - | - | - | - | - | - | - | - | - | (750) | (750) | (750) |
| **Total Restructuring Activities** | $ (465) | $ - | $ - | $ (14,725) | $ (2,000) | $ - | $ - | $ - | $ (9,305) | $ - | $ - | $ - | $ (6,365) | $ (32,860) | $ (41,515) |
| **Net Change In Cash** | $ (5,769) | $ 23,854 | $ (18,188) | $ 19,096 | $ (23,646) | $ 15,567 | $ 2,007 | $ (7,807) | $ (29,184) | $ 14,331 | $ 1,885 | $ (7,881) | $ (9,958) | $ (25,692) | $ (51,737) |
| Beginning Cash Balance | $ 147,418 | $ 141,648 | $ 165,502 | $ 147,314 | $ 166,410 | $ 142,765 | $ 158,332 | $ 160,339 | $ 152,532 | $ 123,348 | $ 137,679 | $ 139,564 | $ 131,683 | $ 147,418 | $ 147,418 |
| Net Change in Cash | (5,769) | 23,854 | (18,188) | 19,096 | (23,646) | 15,567 | 2,007 | (7,807) | (29,184) | 14,331 | 1,885 | (7,881) | (9,958) | (25,692) | (51,737) |
| **Ending Cash Balance** | $ 141,648 | $ 165,502 | $ 147,314 | $ 166,410 | $ 142,765 | $ 158,332 | $ 160,339 | $ 152,532 | $ 123,348 | $ 137,679 | $ 139,564 | $ 131,683 | $ 121,725 | $ 121,725 | $ 95,680 |