**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
08/26/2019

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**ORDER (I) CONDITIONALLY APPROVING**
**THE ADEQUACY OF THE DISCLOSURE STATEMENT,**
**(II) APPROVING THE SOLICITATION AND NOTICE PROCEDURES**
**WITH RESPECT TO CONFIRMATION OF THE PLAN, (III) APPROVING**
**THE FORM OF VARIOUS BALLOTS AND NOTICES IN CONNECTION**
**THEREWITH, (IV) APPROVING THE RIGHTS OFFERING PROCEDURES, AND (V)**
**APPROVING THE SCHEDULING OF CERTAIN**
**DATES IN CONNECTION WITH CONFIRMATION OF THE PLAN**   (Docket No. 590)

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (together, the "Debtors") for entry of an order (this "Order"), (a) conditionally approving the adequacy of the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. 590 ] (the "Disclosure Statement") for solicitation of votes on the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. 589 ] (as it may be further amended and/or modified in accordance with the terms thereof and the Restructuring Support Agreement, the "Plan"), (b) approving the Combined Hearing Notice, substantially in the form attached as Exhibit 1 hereto, (c) approving the solicitation and notice procedures with respect to confirmation of the Plan, (d) approving the form of ballots and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303).  The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

notices in connection therewith, (e) approving the Rights Offering Procedures and related documents, and (f) approving the scheduling of certain dates with respect to solicitation and confirmation of the Plan, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and the proceedings before the Court and the record of the Hearing (including, without limitation, any reservations of rights read into the record and agreed upon by the Court and/or the applicable parties at the Hearing) hereby being incorporated into this Order; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor

IT IS HEREBY ORDERED THAT

1.      The Disclosure Statement is conditionally approved.

2.      The Debtors' request for a Combined Hearing on the approval of the Disclosure Statement and confirmation of the Plan, and the following Plan Confirmation Schedule is approved:

| EVENT | DATE |
|---|---|
| **Voting Record Date** | August 21, 2019 |
| **Solicitation Deadline** | August 29, 2019 |
| **Assumption and Rejection Notice Deadline** | September 9, 2019 |
| **Commencement of Solicitation of the Rights Offering** | September 10, 2019 |
| **Plan Supplement Date** | September 16, 2019 |
| **Cure Objection Deadline** | September 23, 2019, at 4:00 p.m. (prevailing Central Time) |
| **Plan and Disclosure Statement Objection Deadline** | September 23, 2019, at 4:00 p.m. (prevailing Central Time) |
| **Deadline to File Voting Report** | September 30, 2019, at 4:00 p.m. (prevailing Central Time) |
| **Deadline to File Confirmation Brief and/or Omnibus Reply to Any Plan or Disclosure Statement Objection** | September 30, 2019 |
| **Combined Hearing on Disclosure Statement and Plan** | October 3, 2019, at 1:00 p.m. (prevailing Central Time) |
| **Deadline to Return Subscription Forms for the Rights Offering** | October 10, 2019, at 4:00 p.m. (prevailing Central Time) |

**The Combined Hearing Notice and Related Matters**

3.       The Combined Hearing Notice, substantially in the form attached hereto as Exhibit 1, complies with the requirements of Bankruptcy Rules 2002(b), 2002(d), and 3017(d) and is approved. The Combined Hearing Notice shall be filed by the Debtors and served upon all parties required pursuant to Bankruptcy Rule 2002 as of the Voting Record Date on or before **August 21, 2019**. The Debtors shall publish the Combined Hearing Notice not later than **August 28, 2019**, in the *Wall Street Journal* and the *Houston Chronicle*. The publication of the

Combined Hearing Notice, together with the mailing of the Combined Hearing Notice as described above, is deemed to be sufficient and appropriate under the circumstances.

4.      Pursuant to Bankruptcy Rule 3018(a), the date that is five (5) business days after entry of this Order is established as the Voting Record Date for determining which Holders of Claims are entitled to vote on the Plan and whether Claims have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of the Claim.

5.      The Plan Objection Deadline is **September 23, 2019, at 4:00 p.m.** (prevailing Central Time).  Any objection to the Plan or the adequacy of the Disclosure Statement on a final basis must be filed by the Plan Objection Deadline and must:  (a) be in writing; (b) conform to the Bankruptcy Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest; (d) state with particularity the basis and nature of any objection to the Plan; (e) propose a modification to the Plan that would resolve such objection (if applicable); and (f) be filed, contemporaneously with a proof of service, with the Court and served so that it is actually received by on the following parties:  (i) co-counsel to the Debtors, Baker Botts L.L.P., 2001 Ross Avenue, Suite 900, Dallas, Texas 75201, Attn:  James R. Prince & Omar J. Alaniz; (ii) co-counsel to the Debtors, Wachtell Lipton Rosen & Katz, 51 West 52nd Street, New York, New York 10019, Attn:  Richard G. Mason; and (iii) each of the entities listed on the Master Service List (available on the Solicitation Agent's website at https://cases.primeclerk.com/Bristow or the Court's website at http://www.txs.uscourts.gov/bankruptcy).

### Approval of the Solicitation Procedures and Ballots

6.      The Solicitation Procedures, substantially in the form attached as <u>Exhibit 2</u>, are approved in their entirety.

7.      The procedures for distributing the Solicitation Packages as set forth in the Motion satisfy the requirements of the Bankruptcy Code and the Bankruptcy Rules.  The Debtors shall distribute or cause to be distributed Solicitation Packages to all entities entitled to vote to accept or reject the Plan on or before a date that is five (5) business days after entry of Disclosure Statement Order.  Each Nominee through which one or more Beneficial Holders holds securities as of the Voting Record Date must distribute a Solicitation Package to the Beneficial Holder for which they hold the securities and obtain the vote of such Beneficial Holders consistent with the Solicitation Procedures.

8.      The Debtors are authorized, but not directed or required, to distribute the Combined Hearing Notice as a separate mailing from the remaining documents included in the Solicitation Package.  If the Debtors mail the Combined Hearing Notice separately, the Debtors are not required to include an additional copy of the Combined Hearing Notice in the Solicitation Package.

9.      The Debtors are authorized, but not directed or required, to distribute the Plan, the Disclosure Statement, and this Order to Holders of Claims or Interests entitled to vote on the Plan in electronic format (i.e., on a CD-ROM or flash drive).  Only the Ballots, the Solicitation Procedures, the Debtor Cover Letter, the Committee Cover Letter, and the Combined Hearing Notice will be provided in paper form.  On or before the Solicitation Deadline, the Debtors shall provide (a) complete Solicitation Packages (other than Ballots) to the U.S. Trustee and (b) the Order (in electronic format) and the Combined Hearing Notice to all parties on the 2002 List as of the Voting Record Date.  Any party that receives materials in electronic format, but would prefer to receive materials in paper format, may contact the Solicitation Agent and request paper copies of the corresponding materials previously received in electronic format (to be provided at the Debtors' expense).

10.     The Debtors are authorized, in consultation with the Supporting Noteholders and the Creditors' Committee, to make non-substantive or immaterial changes to the Disclosure Statement, the Plan, the Solicitation Package, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and related documents (including the appendices thereto) where, in the Debtors' reasonable discretion, doing so would better facilitate the solicitation process.  Subject to the foregoing, the Debtors are authorized to solicit, receive, and tabulate votes to accept or reject the Plan in accordance with this Order, without further order of the Court.

11.     The Disclosure Statement, the Plan, the Combined Hearing Notice, the Ballots, the Presumed to Accept Notice and the Presumed to Reject Notice provide all parties-in-interest with sufficient notice regarding the settlement, release, exculpation, and injunction provisions contained in the Plan in compliance with Bankruptcy Rule 3016(c).

12.     The Ballots (including the voting instructions), substantially in the forms attached as Exhibit 3(a) – (f), are approved.

13.     The Solicitation Agent is authorized to accept Ballots via electronic online transmission through a customized online balloting portal on the Debtors' case website.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

14.     The Debtors shall not be required to solicit votes from the non-Voting Classes, and Holders of Class 13 Intercompany Claims or Class 14 Intercompany Interests.  In lieu of distributing a Solicitation Package to Holders of Claims or Interests in the non-Voting Classes and Holders of Class 13 Intercompany Claims or Class 14 Intercompany Interests, the Debtors

shall cause the Combined Hearing Notice and the Presumed to Accept Notice or Presumed to Reject Notice, as applicable, to be served on Holders of Claims in the non-Voting Classes, and the Debtors shall not be required to provide Holders of Class 13 Intercompany Claims or Class 14 Intercompany Interests with a Solicitation Package or any other type of notice in connection with solicitation.

15.     The Debtors' rights pursuant to § 1126(e) of the Bankruptcy Code to request that the Court designate any Ballot or Ballots as not being cast in good faith are expressly preserved.

### Approval of the Rights Offering Procedures and Subscription Forms

16.     The Rights Offering Procedures and the Subscription Forms, substantially in the form attached as Exhibits 8(a) and 8(b), are approved.

17.     The Debtors may, with the consent of the Required Backstop Parties, and after consulting with the Creditors' Committee, modify the Rights Offering Procedures or adopt any additional detailed procedures, consistent with the provisions of the Rights Offering Procedures, to effectuate the Rights Offering and to issue the New Stock.

### Approval of Certain Notices

18.     The Presumed to Accept Notice, substantially in the form attached as Exhibit 4, is approved.

19.     The Presumed to Reject Notice, substantially in the form attached as Exhibit 5, is approved.

20.     The Debtors shall cause the Presumed to Reject Notice and the Presumed to Accept Notice to be served as set forth in the Motion.

21.     The Debtors shall mail an Assumption Notice or Rejection Notice of any Executory Contracts or Unexpired Leases (and any corresponding Cure Costs), substantially in the forms attached hereto as Exhibit 6(a) and Exhibit 6(b), to the applicable counterparties to the

Executory Contracts and Unexpired Leases that will be assumed or rejected pursuant to the Plan (as the case may be), by no later than **September 9, 2019**.  The deadline for any non-Debtor party to an Executory Contract or Unexpired Lease to object to assumption or the proposed Cure Costs set forth on Schedule 1 to the Contract and Lease Notice shall be **4:00 p.m. (prevailing Central Time) on September 23, 2019** (the "Cure Objection Deadline").  If no objection to the Cure Costs or the proposed assumption and assignment of any Executory Contract or Unexpired Lease is filed by the Cure Objection Deadline, then such party will be deemed to have stipulated that the Cure Costs as determined by the Debtors is correct and such party will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed assigned Executory Contract or Unexpired Lease or from objecting to the proposed assumption and assignment thereof; *provided* that the foregoing shall not relieve any such counterparty to an Executory Contract or Unexpired Lease of its obligation to file a proof of claim to the extent that its Executory Contract or Unexpired Lease is rejected pursuant to the Plan.

22.     The Disputed Claims Notice, substantially in the form attached as Exhibit 7, is approved.  The Debtors shall cause the Disputed Claims Notice to be served on Holders of Claims that are subject to a pending objection by the Debtors as set forth in the Solicitation Procedures.

23.     The Debtor Cover Letter and the Committee Cover Letter, substantially in the forms attached as Exhibits 9(a) and 9(b), are approved.  The Debtors shall cause the Debtor Cover Letter and the Committee Cover Letter to be served on Holders of Claims in the Voting Classes.

24.     The Debtors are excused from mailing Solicitation Packages to those Entities to whom the Debtors caused a notice regarding the Combined Hearing to be mailed and received a notice from the United States Postal Service or other carrier that such notice was undeliverable

unless such Entity provides the Debtors an accurate address not less than ten (10) business days prior to the Solicitation Date.  If an Entity has changed its mailing address after the Petition Date, the burden is on such Entity, not the Debtors, to advise the Debtors of the new address.

25.     The Debtors are authorized to serve any notices described herein through electronic mail service, which service constitutes adequate notice under the Bankruptcy Rules.

26.     Prime Clerk LLC, as the Debtors' Solicitation Agent, is authorized to assist the Debtors in (a) distributing the Solicitation Package, (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims or Interests, (c) responding to inquiries from Holders of Claims or Interests and other parties-in-interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan, (d) soliciting votes on the Plan, and (e) if necessary, contacting creditors and equity holders regarding the Plan.  The Solicitation Agent shall be entitled to indemnification to the extent provided pursuant to the Prime Clerk Engagement Agreement, dated as of April 26, 2019, between the Debtors and Prime Clerk LLC, with respect to any such services rendered in connection with the implementation of this Order.

### **Miscellaneous**

27.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion without further order of the Court.

28.     The Debtors' rights are reserved to modify the Plan, in accordance with the terms thereof, without further order of the Court in accordance with Article XI of the Plan and paragraph 9 of this Order, including the right to withdraw the Plan as to an individual Debtor at any time before the Confirmation Date.

29.     Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

30.     All time periods in this Order shall be calculated in accordance with Bankruptcy Rule 9006.

31.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

32.     Notwithstanding the provisions of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

33.     The Debtors are authorized to take all steps necessary or appropriate to carry out the relief granted pursuant to this Order in accordance with the Motion.

34.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**Signed:  August 23, 2019**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## <u>Exhibit 1</u>

**Combined Hearing Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF (A) DEADLINE TO CAST VOTES TO ACCEPT OR REJECT AMENDED
JOINT CHAPTER 11 PLAN FOR THE DEBTORS, AS MODIFIED, (B) COMBINED
HEARING TO CONSIDER APPROVAL OF DISCLOSURE STATEMENT RELATED
THERETO, (C) DEADLINE TO OBJECT TO CONFIRMATION, AND
(D) RELATED MATTERS AND PROCEDURES**

<u>**Court Approval of the Disclosure Statement and the Solicitation Procedures**</u>

On August [__], 2019, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No.__] (the "Disclosure Statement Order") that conditionally approved the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. ___] (as may be amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement"), as containing adequate information, as required under § 1125(a) of title 11 of the United States Code (the "Bankruptcy Code"), for the purposes of solicitation, and authorized the Debtors to solicit votes with regard to the acceptance or rejection of the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. ___] (as may be amended from time to time and including all exhibits and supplements thereto, the "Plan").[2]

<u>**Voting Record Date**</u>

The Voting Record Date for purposes of determining (a) which Holders of Claims are entitled to vote on the Plan and (b) whether Claims have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of the Claim is August 21, 2019.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303).  The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Disclosure Statement Order, the Disclosure Statement, or the Plan, as applicable.

**Voting Deadline**

If you held a Claim against the Debtors as of the Voting Record Date, and are entitled to vote on the Plan, you have received a Ballot and voting instructions appropriate for your Claim(s).  For your vote to be counted in connection with Confirmation of the Plan, you must follow the appropriate voting instructions, complete all required information on the Ballot, as applicable, and execute and return the completed Ballot so that it is actually received by the Solicitation Agent in accordance with the voting instructions by **September 23 2019, at 4:00 p.m. (prevailing Central Time)** (the "Voting Deadline").  Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote on the Plan.

**Objections to Plan Confirmation and the Final Approval of Disclosure Statement Plan**

The Court has established **September 23, 2019, at 4:00 p.m. (prevailing Central Time)**, as the deadline for filing and serving objections to the Confirmation of the Plan and the adequacy of information in the Disclosure Statement (the "Plan Objection Deadline").  Any objection to the Plan must:  (a) be in writing; (b) conform to the Bankruptcy Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest; (d) state with particularity the basis and nature of any objection to the Plan, (e) propose a modification to the Plan that would resolve such objection (if applicable); and (f) be filed, contemporaneously with a proof of service, with the Court and served, **so that it is actually received no later than the Plan Objection Deadline**, on (i) co-counsel to the Debtors, Baker Botts L.L.P., 2001 Ross Avenue, Suite 900, Dallas, Texas 75201, Attn:  James R. Prince & Omar J. Alaniz; (ii) co-counsel to the Debtors, Wachtell Lipton Rosen & Katz, 51 West 52nd Street, New York, New York 10019, Attn: Richard G. Mason; and (iii) each of the entities listed on the Master Service List (available on the Solicitation Agent's website at https://cases.primeclerk.com/Bristow or the Court's website at http://www.txs.uscourts.gov/bankruptcy).

**Combined Hearing**

A hearing to approve the adequacy of the Disclosure Statement and confirm the Plan (the "Combined Hearing") will commence on **October 3, 2019, at 1:00 p.m. (prevailing Central Time)**, before the United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of Texas before the Honorable David R. Jones, Chief Judge, at 515 Rusk Street, Houston, Texas 77002.  Please be advised that the Combined Hearing may be continued from time to time by the Court or the Debtors without further notice other than by such continuance being announced in open court or by a notice of continuance or reset being filed with the Court and served on parties entitled to notice under Bankruptcy Rule 2002 or otherwise.  In accordance with the Plan, the Plan may be modified, if necessary, before, during, or as a result of the Combined Hearing without further action by the Debtors and without further notice to or action, order, or approval of the Court or any other Entity.

**Assumption and Rejection Notices and Plan Supplement**

The Debtors intend to file **on or before September 9, 2019** the list of Executory Contracts and Unexpired Leases to be assumed and rejected consistent with Art. V of the Plan.

The Debtors do not intend to serve copies of the list of Executory Contracts and Unexpired Leases to be assumed and rejected on all parties-in-interest in these Chapter 11 Cases; the list, however, may be obtained from the Solicitation Agent.  The Debtors will send a separate notice advising applicable counterparties to Executory Contracts and Unexpired Leases that their respective contracts or leases are being assumed, assumed and assigned, or rejected under the Plan, and if assumed or assumed and assigned, the proposed amount of Cure Costs.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption and assignment, or the related amount of the Cure Costs, must be Filed, served, and actually received by the Debtors (1) **4:00 p.m. (prevailing Central Time) on or before September 23, 2019** (the "Cure Objection Deadline"); and (7) seven days after receiving notice of any amendment, modification or supplement to the Cure Notice.

The Debtors intend to file a Plan Supplement on or before September 16, 2019.  The Debtors do not intend to serve copies of the Plan Supplement on all parties-in-interest in these Chapter 11 Cases; the Plan Supplement, however, may be obtained from the Solicitation Agent.

## Inquiries

Holders of Claims that are entitled to vote on the Plan shall receive a Solicitation Package.  Further copies of the Solicitation Package may be obtained by (a) accessing the Solicitation Agent's website at https://cases.primeclerk.com/Bristow, (b) writing to the Solicitation Agent at Prime Clerk, Bristow Group Inc. Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, (c) emailing bristowballots@primeclerk.com, (d) calling the Solicitation Agent's toll-free information line with respect to the Debtors at (844) 627-6967 (U.S. and Canada) or (347) 292-3534 (International), and/or (e) visiting the website maintained by the Court at http://www.txs.uscourts.gov/bankruptcy.

## Release, Exculpation, and Injunction Language in the Plan

**Please be advised that Article VIII of the Plan contains the following release, exculpation, and injunction provisions:**

**RELEASES BY THE DEBTORS.  Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party[3] is deemed fully, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, the Reorganized Debtors, their Estates, and any person seeking to exercise the rights of the Estates, including any successors to the Debtors**

---

[3]  Under the Plan, "*Released Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Facility Agent; (d) the DIP Facility Lenders; (e) the Backstop Commitment Parties; (f) the Holders of 2019 Term Loan Facility Claims; (g) the 2019 Term Loan Facility Agent; (h) the Amended and Restated 2019 Term Loan Facility Lenders; (i) the Amended and Restated 2019 Term Loan Facility Agent; (j) the Supporting Noteholders; (k) the Indenture Trustees; (l) the Exit Facility Lenders; (m) the Exit Facility Agent; (n) the Milestone Parties; (o) the Creditors' Committee and each of its current and former members; (p) each current and former Affiliate of each Entity in clause (a) through (o); and (q) each Related Party of each Entity in clause (a) through (p); *provided that* any holder of a Claim or Interest that (x) validly opts out of the releases contained in the Plan or (y) files an objection to the releases contained in the Plan shall not be a "Released Party."

or any Estates representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates, including any successors to the Debtors or any Estates representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part:

  1.  the Debtors, the business or contractual arrangement between the Debtors and any Released Party, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the 2019 Term Loan Facility, the Compensation and Benefit Programs, intercompany transactions, or the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Plan, the Disclosure Statement, Rights Offering Procedures, or any other Restructuring Documents;

  2.  any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Original RSA, the Original DIP Commitment Letter, the Initial Amended RSA, the Disclosure Statement, or the Plan, including the Rights Offering, the Backstop Commitment Agreement, the DIP Facility, the Exit Facility, the Amended and Restated 2019 Term Loan Facility, or any other Restructuring Documents;

  3.  the Chapter 11 Cases, the Disclosure Statement, the Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan or the Rights Offering, or the distribution of property under the Plan or any other related agreement with respect to the foregoing; or

  4.  any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases.

  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, (ii) the rights of any current employee of the Debtors under any employment agreement or plan, (iii) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (iv) any post-Effective Date

4

obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (v) the rights of Holders of Allowed Claims to receive distributions under the Plan, (vi) any Cause of Action the Debtors may have against Columbia Helicopters, Inc. and its Related Parties, or (vii) any Cause of Action the Debtors may have against any of their former officers or directors as of the Petition Date in respect of payments made and referenced under any separation, retirement, consulting agreement, employment agreement or plan.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing release, which includes by reference each of the related provisions and definitions contained herein, and further, will constitute the Bankruptcy Court's finding that the foregoing release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable, and reasonable; and (v) given and made after due notice and opportunity for hearing.

**RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.**  As of the Effective Date, except as otherwise provided herein, each Releasing Party[4] is deemed to have fully, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:

1.    the Debtors, the business or contractual arrangement between the Debtors and any Releasing Party, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the 2019 Term Loan Facility, the Compensation and Benefit Programs, intercompany transactions, or the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Plan, the Disclosure Statement, Rights Offering Procedures, or any other Restructuring Documents;

2.    any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity

---

[4] Under the Plan, "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Facility Agent; (d) the DIP Facility Lenders; (e) the Backstop Commitment Parties; (f) the Holders of 2019 Term Loan Facility Claims; (g) the 2019 Term Loan Facility Agent; (h) the Amended and Restated 2019 Term Loan Facility Lenders; (i) the Amended and Restated 2019 Term Loan Facility Agent; (j) the Supporting Noteholders; (k) the Indenture Trustees; (l) the Exit Facility Lenders; (m) the Exit Facility Agent; (n) all Holders of Claims; (o) all Holders of Interests; (p) the Milestone Parties; (q) the Creditors' Committee and each of its current and former members; (r) each current and former Affiliate of each Entity in clause (a) through (q); and (s) each Related Party of each Entity in clause (a) through (r); *provided that* any holder of a Claim or Interest that (x) validly opts out of the releases contained in the Plan or (y) files an objection to the releases contained in the Plan shall not be a "Releasing Party"; *provided*, *further*, that for the avoidance of doubt, no Holder of a Claim that is party to or has otherwise signed the Restructuring Support Agreement may opt out of the releases.

regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Original RSA, the Original DIP Commitment Letter, the Initial Amended RSA, the Disclosure Statement, or the Plan, including the Rights Offering, the Backstop Commitment Agreement, the DIP Facility, the Exit Facility, the Amended and Restated 2019 Term Loan Facility, or any other Restructuring Documents;

3. the Chapter 11 Cases, the Disclosure Statement, the Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan or the Rights Offering, or the distribution of property under the Plan or any other related agreement with respect to the foregoing; or

4. any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, (ii) the rights of any current employee of the Debtors under any employment agreement or plan, (iii) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (iv) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (v) the rights of Holders of Allowed Claims to receive distributions under the Plan, (vi) any Cause of Action the Debtors may have against Columbia Helicopters, Inc. and its Related Parties, or (vii) any Cause of Action the Debtors may have against any of their former officers or directors as of the Petition Date in respect of payments made and referenced under any separation, retirement, consulting agreement, employment agreement or plan.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing release, which includes by reference each of the related provisions and definitions contained herein, and further, will constitute the Bankruptcy Court's finding that the foregoing release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable, and reasonable; and (v) given and made after due notice and opportunity for hearing.

**EXCULPATION.**   Except as otherwise specifically provided in the Plan, no Exculpated Party[5] shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Restructuring Support Agreement and related prepetition transactions (including the 2019 Term Loan Facility Credit Agreement), the Original RSA, the Original DIP Commitment Letter, the Initial Amended RSA, the Disclosure Statement, the Plan, the Rights Offering, the Rights Offering Procedures, the Backstop Commitment Agreement, the DIP Facility, the Exit Facility, the Amended and Restated 2019 Term Loan Facility, any other Restructuring Documents, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan or the Rights Offering, or the distribution of property under the Plan or any other related agreement with respect to the foregoing, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.   The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**INJUNCTION.** Except as otherwise expressly provided in the Plan or for obligations or distributions issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to the Plan, discharged pursuant to the Plan, or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, or the Released Parties or the Exculpated Parties:  (i) commencing

---

[5]  Under the Plan, "*Exculpated Parties*" means, collectively, and in each case in its capacity as such:  (a) the Debtors and the Reorganized Debtors; (b) the DIP Facility Agent; (c) the DIP Facility Lenders; (d) the Backstop Commitment Parties; (e) the Holders of 2019 Term Loan Facility Claims; (f) the 2019 Term Loan Facility Agent; (g) the Supporting Noteholders; (h) the Indenture Trustees; (i) the Milestone Parties, (j) the Creditors' Committee and each of its current and former members; (k) with respect to each of the foregoing entities in clauses (a) through (j), each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, direct and indirect equity holders, funds, portfolio companies, and management companies; and (l) with respect to each of the foregoing Entities in clauses (a) through (k), each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors, each in their capacity as such; *provided that* no current or former Holder of Existing Interests, each in their capacity as such, is an Exculpated Party unless such Holder is also a Supporting Noteholder or current director, officer or employee of a Debtor or an Affiliate of a Debtor.

or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

**RELEASE OF LIENS.**  Except as otherwise specifically provided in the Plan, the Milestone Settlement Agreement, the Exit Facility Credit Agreement or the Amended and Restated 2019 Term Loan Credit Agreement, as applicable, the Amended PK Air Credit Facility Agreement or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, or any other Holder of a Secured Claim.  In addition, at the sole expense of the Debtors or the Reorganized Debtors, the Holders of Secured Claims shall execute and deliver all documents reasonably requested by the Debtors, Reorganized Debtors or administrative agent for the Exit Facility to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Reorganized Debtors and their designees to file UCC-3 termination statements and other release documentation (to the extent applicable) with respect thereto.  Notwithstanding the foregoing paragraph, Article VIII.G shall not apply to any Secured Claims that are Reinstated pursuant to the terms of this Plan.

YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.

ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO THE INCLUSION OF SUCH HOLDER AS A RELEASING

**PARTY UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN OR DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN IN A BALLOT OR FORM DISTRIBUTED BY THE DEBTORS WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.   BY OBJECTING TO OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

*[remainder of page intentionally left blank]*

9

Houston, Texas
Dated: [•], 2019

<table>
<tr><td>

**BAKER BOTTS L.L.P.**

*/s/*_____
James R. Prince, State Bar No. 00784791
Omar J. Alaniz, State Bar No. 24040402
Kevin Chiu, State Bar No. 24109723
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201-2980
Telephone:  (214) 953-6500
Facsimile:  (214) 953-6503
Email: jim.prince@bakerbotts.com
      omar.alaniz@bakerbotts.com
      kevin.chiu@bakerbotts.com


-and-

Emanuel C. Grillo (*pro hac vice*)
Chris Newcomb (*pro hac vice*)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, New York   10112-4498
Telephone:  (212) 408-2500
Facsimile:  (212) 408-2501
Email: emanuel.grillo@bakerbotts.com
      chris.newcomb@bakerbotts.com


*Co-Counsel to the Debtors and Debtors in Possession*

</td><td>

**WACHTELL, LIPTON, ROSEN & KATZ**


Richard G. Mason (*pro hac vice)*
Amy R. Wolf (*pro hac vice)*
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
Email:  rgmason@wlrk.com
      arwolf@wlrk.com


*Co-Counsel to the Debtors and Debtors in Possession*

</td></tr>
</table>

## **Exhibit 2**

**Solicitation Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

### SOLICITATION PROCEDURES

On [_____], 2019, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No.___] (the "Disclosure Statement Order") that, among other things:  (a) conditionally approved the adequacy of the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. ____] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") filed in support of the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. ____] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Plan");[2] and (b) authorized the Debtors to solicit acceptances or rejections of the Plan from Holders of Impaired Claims (as defined herein) who are (or may be) entitled to receive distributions under the Plan.

### I.     The Voting Record Date.

The Court has approved **August 21, 2019**, as the voting record date (the "Voting Record Date") for purposes of determining: (a) which Holders of Claims are entitled to vote on the Plan; and (b) whether Claims have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of the Claim.

### II.     The Voting Deadline.

The Court has approved **September 23, 2019, at 4:00 p.m. (prevailing Central Time),** as the Voting Deadline for the delivery of Ballots voting to accept or reject the Plan.  The Debtors may extend the Voting Deadline, in their discretion, without further order of the Court. To be counted as votes to accept or reject the Plan, all ballots (collectively, the "Ballots", which

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303).  The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

[2]  Capitalized terms not otherwise defined herein shall have the meaning given to them in the Disclosure Statement Order, the Disclosure Statement or the Plan, applicable.

for the avoidance of doubt includes Master Ballots (as defined herein)) must be properly executed, completed, and delivered pursuant to the instructions set forth on the applicable Ballot, so that they are actually received, in any case, no later than the Voting Deadline by the Debtors' Solicitation Agent, Prime Clerk LLC.

Delivery of a Ballot to the Solicitation Agent by facsimile shall not be valid.  To have their votes to accept or reject the Plan counted, Beneficial Holders[3] must properly submit their vote to the appropriate broker, bank, other nominee, or their agent (each of the foregoing, a "Nominee") or otherwise follow the instructions of such Nominee, in sufficient time so that such Nominee can verify, tabulate, and include such Ballots in a master ballot and timely return such master ballot, so that it is actually received no later than the Voting Deadline by the Solicitation Agent.  In the case of the Beneficial Holders of the Secured Notes Claims and Unsecured Notes Claims who hold their position through a Nominee, such Beneficial Holders will be instructed to comply with the return instructions provided by such Nominee.  For the avoidance of doubt, Nominees are authorized to distribute materials to and solicit votes from underlying Beneficial Holders in accordance with their customary procedures therewith (including, but not limited to, the use of electronic methods and "voter instruction forms" in lieu of a Ballot).

## III.   Form, Content and Manner of Notices

1.     ***The Solicitation Package***:  The Solicitation Package shall contain copies of the following:

a.     the Disclosure Statement, as conditionally approved by the Court (with all exhibits thereto, including the Plan);

b.     the Disclosure Statement Order (without exhibits);

c.     these Solicitation Procedures;

d.     the Combined Hearing Notice;

e.     the applicable form of Ballot for each Voting Class in which such Holder or Nominee holds a Claim, in substantially the forms of the Ballots annexed as Exhibits 3(a)-(f) to the Disclosure Statement Order, as applicable;

f.     a pre-addressed, postage pre-paid reply envelope;

g.     a cover letter from the Debtors and the Creditors' Committee; and

h.     any supplemental documents that the Debtors may file with the Court or that the Court orders to be made available.

---

[3]  A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose Claims have not been satisfied prior to the Voting Record Date pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees.

2.      ***Distribution of the Solicitation Packages***:

The Solicitation Package shall provide the Plan, the Disclosure Statement, and the Disclosure Statement Order (without exhibits) in electronic format (i.e., CD-ROM or flash drive format), and all other contents of the Solicitation Package, including Ballots and the Solicitation Procedures, shall be provided in paper format.  Any party that receives the materials in electronic format but would prefer paper format may contact the Solicitation Agent by: (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/bristow; (ii) writing to Bristow Group Inc. Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing bristowballots@primeclerk.com; or (iv) calling the Solicitation Agent's information line with respect to the Debtors at (844) 627-6967 (U.S. and Canada) or (347) 292-3534.

The Debtors shall serve, or cause to be served, (a) all of the materials in the Solicitation Package (excluding the Ballots) on the U.S. Trustee and (b) the Disclosure Statement Order (in electronic format) and the Combined Hearing Notice to all parties required to be notified under Bankruptcy Rule 2002 and Bankruptcy Local Rule 2002-1 (the "2002 List") as of the Voting Record Date.  In addition, the Debtors shall, on or before the date that is five (5) business days after entry of this Order, mail, or cause to be mailed, the Solicitation Package to all Holders of Claims or Interests in the Voting Classes that are entitled to vote.  To avoid duplication and reduce expenses, the Debtors will use commercially reasonable efforts to ensure that any Holder of a Claim or Interest who has filed duplicative Claims or Interests against a Debtor (whether against the same or multiple Debtors) that are classified under the Plan in the same Voting Class receives no more than one Solicitation Package (and, therefore, one Ballot) on account of such Claim or Interest and with respect to that Class as against that Debtor.

3.      ***Resolution of Disputed Claims for Voting Purposes; Resolution Event***

a.      Absent a further order of the Court, the holder of a Claim that is in a Voting Class and is the subject of a pending objection on a "reduce and allow" basis shall be entitled to vote such Claim in the reduced amount contained in such objection.

b.      If a Claim is subject to an objection other than a "reduce and allow" objection that is filed with the Court on or prior to seven (7) days before the Voting Deadline: (i) the Debtors shall cause the applicable Holder to be served with a Disputed Claim Notice (which notice shall be served together with such objection); and (ii) the applicable Holder shall not be entitled to vote to accept or reject the Plan on account of such Claim unless a Resolution Event occurs as provided herein or the Court orders otherwise.

c.      If a Claim in a Voting Class is subject to an objection other than a "reduce and allow" objection that is filed with the Court less than seven (7) days prior to the Voting Deadline, the applicable Claim shall be deemed temporarily allowed for voting purposes only, without further action by the Holder of such Claim and without further order of the Court, unless the Court orders otherwise.

3

d.  A "Resolution Event" means the occurrence of one or more of the following events no later than two Business Days prior to the Voting Deadline:

(1)  an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

(2)  an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

(3)  a stipulation or other agreement is executed between the Holder of such Claim and the Debtors resolving the objection and allowing such Claim in an agreed upon amount and such agreement (or notice of such agreement) is conveyed by the Debtors to the Solicitation Agent by electronic mail or otherwise; or

(4)  the pending objection is voluntarily withdrawn by the objecting party.

e.  No later than one (1) Business Day following the occurrence of a Resolution Event, the Debtors shall cause the Solicitation Agent to distribute via email, hand delivery, or overnight courier service a Solicitation Package and a pre-addressed, postage pre-paid envelope to the relevant Holder to the extent such Holder has not already received a Solicitation Package.

4.  ***Non-Voting Status Notices for Unimpaired Classes and Classes Deemed to Reject the Plan.***  Certain Holders of Claims that are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code, or who are not entitled to vote because they are Unimpaired or otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code, will receive only the *Non-Voting Status Notice with Respect to Unimpaired Classes Presumed to Accept the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified*, substantially in the form annexed as Exhibit 4 to the Disclosure Statement Order.  Certain Holders of Claims or Interests who are not entitled to vote because they are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code will receive the *Non-Voting Status Notice with Respect to Impaired Classes Presumed to Reject the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified*, substantially in the form annexed as Exhibit 5 to the Disclosure Statement Order.  Such notice will instruct these Holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots).

5.  ***Notices in Respect of Executory Contracts and Unexpired Leases.***  Counterparties to Executory Contracts and Unexpired Leases that receive an *Assumption Notice* or a *Rejection Notice,* substantially in the forms attached as Exhibit 6(a) and 6(b) to the Disclosure Statement Order, respectively, may file an objection to the Debtors' proposed assumption, rejection, and/or cure amount, as applicable.  Such objections must be filed with the Court (contemporaneously with a proof of service) and served upon the applicable notice parties

4

(as set forth in the *Assumption Notice* and *Rejection Notice)* so as to be **actually received** by **September 23, 2019, at 4:00 p.m.,** prevailing Central Time.

## IV.    Voting and General Tabulation Procedures.

1.    ***Holders of Claims Entitled to Vote.***  Only the following Holders of Claims in the Voting Class shall be entitled to vote with regard to such Claims:

a.    Holders of Claims who, on or before the Voting Record Date, have timely filed a Proof of Claim that (i) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date; and (ii) is not the subject of a pending objection, other than a "reduce and allow" objection, filed with the Court at least 7 days prior to the Voting Deadline, pending a Resolution Event as provided herein; *provided,* that a Holder of a Claim that is the subject of a pending objection on a "reduce and allow" basis shall receive a Solicitation Package and be entitled to vote such Claim in the reduced amount contained in such objection pending the occurrence of a Resolution Event as provided herein or further order of the Court;

b.    Holders of Claims who, pursuant to the Bar Date Order, are exempt from any requirement to file a Proof(s) of Claim on or before the applicable Bar Date or have filed a single, master proof of claim by the relevant Bar Date with respect to all claims under an applicable facility, loan document, or indenture; *provided however*, that although the applicable Indenture Trustees filed master proofs of claim on behalf of the holders of the Secured and Unsecured Notes, the Beneficial Holders of those Notes (not the Indenture Trustees) will submit the votes on account of the Notes;

c.    Holders of Claims that are listed in the Schedules, which are not listed as contingent, unliquidated or disputed, or in a $0 amount; *provided*, that if the applicable Claims Bar Date has not expired prior to the Voting Record Deadline, a Claim listed on the Schedules as contingent, disputed, or unliquidated shall be allowed to vote only in the amount of $1.00;

d.    Holders of Claims that arise (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court or otherwise, (ii) in an order entered by the Court, or (iii) in a document executed by the Debtors pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed;

e.    Holders of Disputed Claims that have been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018; and

f.    the assignee of any Claim that was properly transferred on or before the Voting Record Date by any Entity described in subparagraphs (a) through (d) above; *provided*, that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date.

2.    *Establishing Claim Amounts*.

**Class 3 2019 Term Loan Facility Claims, Class 4 Secured Notes Claims and Class 8 Unsecured Notes Claims**.  The Claims amount of 2019 Term Loan Facility Claims, Secured Notes Claims and Unsecured Notes Claims for voting purposes only will be established by reference to (a) the Debtors' applicable books and records and (b) the list of record holders maintained by the applicable agent, indenture trustee, or Nominee as reflected in the securities position report(s) from DTC or other applicable depository firm, dated as of the Voting Record Date, which shall be provided by the applicable agent, indenture trustee, or Nominee to the Debtors or the Solicitation Agent no later than one (1) Business Day following the Voting Record Date.

**Filed and Scheduled Claims**.  The Claim amount established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim.  Moreover, any amounts filled in on Ballots by the Debtors through the Solicitation Agent, as applicable, are not binding for purposes of allowance and distribution.  In tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

a.    the Claim amount (i) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court or otherwise, (ii) set forth in an order of the Court, and (iii) set forth in a document executed by the Debtors pursuant to authority granted by the Court;

b.    the Claim amount Allowed (temporarily or otherwise) pursuant to a Resolution Event under these Solicitation Procedures;

c.    the Claim amount contained in a Proof of Claim that has been timely filed by the applicable Claims Bar Date (or deemed timely filed by the Court under applicable law) *provided that* the Claims Bar Date has expired before the Voting Record Date, except for any amounts asserted on account of any interest accrued after the Petition Date; *provided*, that any Ballot cast by a Holder of a Claim who timely files a Proof of Claim in respect of (a) a contingent Claim or a Claim in a wholly unliquidated or unknown amount (based on a reasonable review by the Debtors and/or the Solicitation Agent) that is not the subject of an objection will count toward satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count as a Ballot for a Claim in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, and (b) a partially liquidated and partially unliquidated Claim, such Claim will be Allowed for voting purposes only in the liquidated amount; *provided*, *further*, that to the extent the Claim amount contained in the Proof of Claim is different from the Claim amount set forth in a document filed with the Court as referenced in subparagraph (a) above, the Claim amount in the document filed with the Court shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes;

d.    the Claim amount listed in the Schedules (to the extent such Claim is not superseded by a timely filed Proof of Claim); *provided* that such Claim is not

6

scheduled as contingent, disputed, or unliquidated and/or has not been paid; *provided*, *further*, that if the applicable Claims Bar Date has not expired prior to the Voting Record Date, a Claim listed in the Schedules as contingent, disputed, or unliquidated shall be allowed to vote in the amount of $1.00; and

e.  in the absence of any of the foregoing, such Claim shall be disallowed for voting purposes unless otherwise ordered by the Court.

3.  ***General Ballot Tabulation***.  The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right to waive any of the below specified requirements for completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Local Rules:

a.  except as otherwise provided in the Solicitation Procedures, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline (as the same may be extended by the Debtors), the Debtors, in their sole discretion, shall be entitled to reject such Ballot as invalid and, therefore, not count it in connection with Confirmation of the Plan;

b.  the Debtors will file with the Court by no later than September 30, 2019, at 4:00 p.m. (prevailing Central Time) a voting report (the "Voting Report").  The Voting Report shall, among other things, delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures, or lacking necessary information, received via facsimile, or damaged (collectively, in each case, the "Irregular Ballots").  The Voting Report shall indicate the Debtors' intentions with regard to each Irregular Ballot;

c.  the method of delivery of Ballots to be sent to the Solicitation Agent is at the election and risk of each Holder.  Except as otherwise provided, a Ballot will be deemed delivered only when the Solicitation Agent actually receives the properly executed Ballot;

d.  an executed Ballot is required to be submitted by the Entity submitting such Ballot.  Subject to the other procedures and requirements herein, completed, executed Ballots (except Beneficial Holders' Ballots) may be submitted via the online "E-Balloting" portal maintained by the Solicitation Agent;

e.  Ballots should not be submitted by electronic mail or facsimile—any Ballots submitted by electronic mail or facsimile will not be valid; *provided, however, that* only Nominees may return master ballots via electronic mail to bristowballots@primeclerk.com;

f.  no Ballot should be sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), or the Debtors' financial or legal advisors, and if so sent will not be counted;

g.  if multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting Deadline, the last properly executed Ballot received will be counted and all prior received Ballots will be disregarded;

h.  Holders must vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and may not split any votes.  Accordingly, a Ballot (other than a master ballot) that partially rejects and partially accepts the Plan will not be counted.  Further, to the extent there are multiple Claims or Interests held by the same Holder within the same Class, the applicable Debtor may, in its discretion, seek to aggregate the Claims or Interests of any particular Holder within a Class for the purpose of counting votes.  The Debtors shall identify any such aggregation of multiple Claims or Interests in the Voting Report, and any party in interest may contest such aggregation at the Confirmation Hearing including, without limitation, on the basis that the Debtors have not satisfied Bankruptcy Code section 1129(a)(8)(A) for failure to meet the numerosity requirement of Bankruptcy Code section 1126(c).

i.  A Holder of a Claim that may be asserted against multiple Debtors must vote all such Claims in the same way (*i.e.*, either all to accept the Plan at each Debtor against whom they have Claims or all to reject the Plan at each Debtor against whom they have Claims and may not vote any such Claim to accept at one Debtor and reject at another Debtor).  Accordingly, a Ballot (other than a master ballot) that rejects the Plan for a Claim at one Debtor and accepts the Plan for the same Claim at another Debtor will not be counted;

j.  a person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims or Interests must indicate such capacity when signing;

k.  the Debtors, unless subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report;

l.  neither the Debtors, nor any other Entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report, nor will any of them incur any liability for failure to provide such notification;

m.  unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline or such Ballots will not be counted;

n.  in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim or Interest

will be counted for purposes of determining whether the Plan has been accepted and/or rejected;

o.   subject to any order of the Court, the Debtors reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; *provided* that any such rejections will be documented in the Voting Report;

p.   if a Claim has been estimated or a Claim has otherwise been Allowed only for voting purposes by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

q.   if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein;

r.   the following Ballots shall not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of such Claim; (ii) any Ballot cast by an Entity that does not hold a Claim or Interest in a Voting Class; (iii) any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed by the Voting Record Date (unless the applicable bar date has not yet passed, in which case such Claim shall be entitled to vote in the amount of $1.00); (iv) any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, Ballots submitted through the online "E-Balloting" portal or a Master Ballot sent by a Nominee via electronic mail shall be deemed to include an original signature); (v) any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan; and (vi) any Ballot submitted by an Entity not entitled to vote pursuant to the procedures described herein;

s.   after the Voting Deadline, and subject to the requirements of Bankruptcy Rule 3018(a), no Ballot may be withdrawn or modified without the prior written consent of the Debtors and order of the Court;

t.   the Debtors are authorized to enter into stipulations with the Holder of any Claim agreeing to the amount of a Claim for voting purposes;

u.   where any portion of a single Claim has been transferred to a transferee, all Holders of any portion of such single Claim will be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other voting and solicitation procedures set forth herein), and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan. In the event that (i) a Ballot, (ii) a group of Ballots within a Voting Class received from a single creditor, or (iii) a group of Ballots received from the

9

various Holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots shall not be counted; and

v.      for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class may be aggregated and treated as if such creditor held one Claim in such Class, in which case all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, *however*, that if separate affiliated entities, including any funds or accounts that are advised or managed by the same entity or by affiliated entities, hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity or managed fund or account will be counted separately as a vote to accept or reject the Plan.

4.    ***Master Ballot Voting Procedures.***  These rules will apply with respect to the tabulation of master ballots cast by Nominees for Beneficial Holders of certain Claims (the "Master Ballots"):

a.      votes cast by Beneficial Holders through Nominees will be applied to the applicable positions held by such Nominees of certain Claims, as applicable, as of the Voting Record Date, as evidenced by the applicable records.  Votes submitted by a Nominee will not be counted in excess of the amount of such Claims held by such Nominee as of the Voting Record Date;

b.      if conflicting votes or "over-votes" are submitted by a Nominee, the Debtors will use reasonable efforts to reconcile discrepancies with the Nominee;

c.      if over-votes on a Master Ballot are not reconciled prior to the preparation of the Voting Report, the Debtors shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and to reject the Plan submitted on the Master Ballot that contained the over-vote, but only to the extent of the Nominee's position, as of the Voting Record Date, of certain Claims;

d.      for the purposes of tabulating votes, each Beneficial Holder shall be deemed (regardless of whether such Holder includes interest in the amount counted on its Ballot) to have voted only the principal amount of its position in the applicable Secured Notes or Unsecured Notes Claims; *provided, however that* the Solicitation Agent (in coordination with the Debtors) may adjust the principal amount to reflect the amount higher of the Claim actually voted, including prepetition interest; and

e.      a single Nominee may complete and deliver to the Solicitation Agent multiple Master Ballots.  Votes reflected on multiple Master Ballots will be counted, except to the extent that they are duplicative of other Master Ballots.  If two or more Master Ballots are inconsistent, the last-dated valid Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior dated Master Ballot.

## V.      Amendments to the Plan and the Solicitation Procedures.

The Debtors, in consultation with the Supporting Noteholders and the Creditors' Committee, reserve the right to make non-substantive or immaterial changes to the Disclosure Statement, Plan (including, for the avoidance of doubt, the Plan Supplement), Ballots, Combined Hearing Notice, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, if any, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package before their distribution.

## VI.     Release, Exculpation, and Injunction Language in the Plan

**The release, exculpation, and injunction provisions contained in Article VIII of the Plan are included in the Disclosure Statement and the Combined Hearing Notice, and the release by Holders of Claims or Interests are included in the Ballots.  Entities are advised to carefully review and consider the Plan, including the release, exculpation, and injunction provisions set forth in Article VIII of the Plan, as their rights may be affected.**

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO THE INCLUSION OF SUCH HOLDER AS A RELEASING PARTY UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN OR DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN IN A BALLOT OR FORM DISTRIBUTED BY THE DEBTORS WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.  BY OBJECTING TO OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**<u>Exhibit 3(a)</u>**

**Form of Ballot for**
**Holders of 2019 Term Loan Credit Facility Claims**
and
**PK Air Credit Facility Claims and MAG Lease Obligation Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE**
**AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF**
**BRISTOW GROUP, INC. AND ITS DEBTOR AFFILIATES, AS MODIFIED**

**BALLOT FOR HOLDERS OF CLASS [__] [____] CLAIMS**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**
>
> **IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE SOLICITATION AGENT BY SEPTEMBER 23, 2019, AT 4:00 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE FOLLOWING:**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group, Inc. and Its Debtor Affiliates, as Modified* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") as set forth in the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group, Inc. and Its Debtor Affiliates, as Modified* (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has conditionally approved the Disclosure Statement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), by entry of an order on August [_], 2019 [Docket No.___] (the "Disclosure Statement Order"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303). The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

You are receiving this ballot (this "Ballot") because you are a Holder of a [_____] Claim (your "[_____] Claim") as of August 21, 2019 (the "Voting Record Date").  Accordingly, you have a right to vote to accept or reject the Plan.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHOM YOU HAVE A [_____] CLAIM.**

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials).  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov; or (b) at no charge from Prime Clerk LLC (the "Solicitation Agent") by: (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/Bristow; (ii) writing to Bristow Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing bristowballots@primeclerk.com; or (iv) calling the Solicitation Agent at:

<div align="center">

U.S. Toll Free: (844) 627-6967
International: (347) 292-3534

</div>

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your [_____] Claim has been placed in Class [__] under the Plan.  If you hold Claims or Interests in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**Via Paper Ballot.  Complete, sign, and date this Ballot and return it (with an original signature) promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to:**

<div align="center">

**Bristow Ballot Processing
c/o Prime Clerk LLC
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY 10165
*OR***

</div>

**Via E-Ballot Portal.  Submit your Ballot via the Solicitation Agent's online portal, by visiting https://cases.primeclerk.com/Bristow (the "E-Ballot Portal").  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.**

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:** _____

**The Solicitation Agent's E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.**

**Creditors who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.**

<u>**Item 1**</u>.          **Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of [_____] Claims in the following aggregate unpaid amount:

| |
|---|
| $_____ |

<u>**Item 2**</u>.          **Vote on Plan.**

The Holder of the [_____] Claims set forth in Item 1 votes to (please check only one):

| |
|---|
| ☐ <u>**ACCEPT**</u> (vote FOR) the Plan          ☐ <u>**REJECT**</u> (vote AGAINST) the Plan |

<u>**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**</u>

<u>**Item 3**</u>.          **Important information regarding the Third Party Release.**

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.C OF THE PLAN SET FORTH BELOW.**

**IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.C OF THE PLAN <u>ONLY IF</u> YOU CHECK THE BOX BELOW AND (A) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN OR (B) VOTE TO REJECT THE PLAN.  IF YOU (A) VOTE TO ACCEPT THE PLAN, (B) FAIL TO SUBMIT A BALLOT BY THE VOTING DEADLINE, (C) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN WITHOUT CHECKING THE BOX BELOW, OR (D) VOTE TO REJECT THE PLAN WITHOUT CHECKING THE BOX BELOW, IN EACH CASE YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN.**

**The Holder of the Class [  ] [     ] Claim identified in Item 1 elects to:**

> ☐ **OPT OUT of the Third Party Release**

**Article VIII.C of the Plan contains the following provision**:

As of the Effective Date, except as otherwise provided herein, each Releasing Party is deemed to have fully, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:

1.      the Debtors, the business or contractual arrangement between the Debtors and any Releasing Party, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the 2019 Term Loan Facility, the Compensation and Benefit Programs, intercompany transactions, or the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Plan, the Disclosure Statement, Rights Offering Procedures, or any other Restructuring Documents;

2.      any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Original RSA, the Original DIP Commitment Letter, the Initial Amended RSA, the Disclosure Statement, or the Plan, including the Rights Offering, the Backstop Commitment Agreement, the DIP Facility, the Exit Facility, the Amended and Restated 2019 Term Loan Facility, or any other Restructuring Documents;

3.      the Chapter 11 Cases, the Disclosure Statement, the Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan or the Rights

Offering, or the distribution of property under the Plan or any other related agreement with respect to the foregoing; or

4.       any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, (ii) the rights of any current employee of the Debtors under any employment agreement or plan, (iii) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (iv) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (v) the rights of Holders of Allowed Claims to receive distributions under the Plan, (vi) any Cause of Action the Debtors may have against Columbia Helicopters, Inc. and its Related Parties, or (vii) any Cause of Action the Debtors may have against any of their former officers or directors as of the Petition Date in respect of payments made and referenced under any separation, retirement, consulting agreement, employment agreement or plan.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing release, which includes by reference each of the related provisions and definitions contained herein, and further, will constitute the Bankruptcy Court's finding that the foregoing release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable, and reasonable; and (v) given and made after due notice and opportunity for hearing.

\*       \*       \*

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE DIP FACILITY AGENT; (D) THE DIP FACILITY LENDERS; (E) THE BACKSTOP COMMITMENT PARTIES; (F) THE HOLDERS OF 2019 TERM LOAN FACILITY CLAIMS; (G) THE 2019 TERM LOAN FACILITY AGENT; (H) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY LENDERS; (I) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY AGENT; (J) THE SUPPORTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEES; (L) THE EXIT FACILITY LENDERS; (M) THE EXIT FACILITY AGENT; (N) ALL HOLDERS OF CLAIMS; (O) ALL HOLDERS OF INTERESTS; (P) THE MILESTONE PARTIES; (Q) THE CREDITORS' COMMITTEE AND EACH OF ITS CURRENT AND FORMER MEMBERS; (R) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (Q); AND (S) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (R); PROVIDED THAT ANY HOLDER OF A

CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN OR (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN SHALL NOT BE A "RELEASING PARTY"; PROVIDED, FURTHER, THAT FOR THE AVOIDANCE OF DOUBT, NO HOLDER OF A CLAIM THAT IS PARTY TO OR HAS OTHERWISE SIGNED THE RESTRUCTURING SUPPORT AGREEMENT MAY OPT OUT OF THE RELEASES.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE DIP FACILITY AGENT; (D) THE DIP FACILITY LENDERS; (E) THE BACKSTOP COMMITMENT PARTIES; (F) THE HOLDERS OF 2019 TERM LOAN FACILITY CLAIMS; (G) THE 2019 TERM LOAN FACILITY AGENT; (H) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY LENDERS; (I) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY AGENT; (J) THE SUPPORTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEES; (L) THE EXIT FACILITY LENDERS; (M) THE EXIT FACILITY AGENT; (N) THE MILESTONE PARTIES; (O) THE CREDITORS' COMMITTEE AND EACH OF ITS CURRENT AND FORMER MEMBERS; (P) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (O); AND (Q) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (P); PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN OR (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN SHALL NOT BE A "RELEASED PARTY."

---

ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO THE INCLUSION OF SUCH HOLDER AS A RELEASING PARTY UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN OR DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN AS PROVIDED IN THIS BALLOT WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. BY OBJECTING TO OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

**Item 4.**        **Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)        as of the Voting Record Date, either: (i) the Entity is the Holder of the [_____] Claims being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the [_____] Claims being voted;

(b)        the Entity (or in the case of an authorized signatory, the Holder) has received the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c)        the Entity has cast the same vote with respect to all [_____] Claims; and

(d)        no other Ballots with respect to the amount of the [_____] Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such [_____] Claims, then any such earlier Ballots are hereby revoked.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| | |
| | |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | (If other than the Holder) |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE SEPTEMBER 23, 2019, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

## <u>INSTRUCTIONS FOR COMPLETING THIS BALLOT</u>

1.      The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.      The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.      To ensure that your Ballot is counted, you ***must*** complete and submit this Ballot as instructed herein.  **Ballots will not be accepted by electronic mail or facsimile.**

4.      <u>Use of Ballot</u>.  To ensure that your Ballot is counted, you must: (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and submit your Ballot as instructed herein.

5.      Your Class Ballot ***must*** be returned to the Solicitation Agent so as to be ***actually received*** by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is <u>September 23, 2019, at 4:00 p.m.</u>, prevailing Central Time.**

6.      If a Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the sole and absolute discretion of the Debtors.  Additionally, **the following Ballots will *not* be counted**:

   (a)      any Ballot that partially rejects and partially accepts the Plan;

   (b)      Ballots sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), any agent, indenture trustee, or the Debtors' financial or legal advisors;

   (c)      Ballots sent by electronic mail or facsimile;

   (d)      any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

   (e)      any Ballot cast by an Entity that does not hold a [     ] Claim;

   (f)      any Ballot submitted by a Holder not entitled to vote pursuant to the Plan;

(g)     any unsigned Ballot (for the avoidance of doubt, Ballots validly submitted through the E-Ballot Portal will be deemed signed);

(h)     any non-original Ballot (for the avoidance of doubt, Ballots validly submitted through the E-Ballot Portal will be deemed original); and/or

(i)     any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan.

7.     The method of delivery of Ballots to the Solicitation Agent is at the election and risk of each Holder of a [_____] Claim.  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent *actually receives* the originally executed Ballot.  In all cases, Holders should allow sufficient time to assure timely delivery.

8.     If multiple Ballots are received from the same Holder of a Class [__] Claim with respect to the same Class [___] [_____] Claim prior to the Voting Deadline, the latest, timely received, and properly completed Ballot will supersede and revoke any earlier received Ballots.

9.     You must vote all of your [___] Claims within Class [ ] either to accept or reject the Plan and may *not* split your vote.

10.     This Ballot does *not* constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

11.     **Please be sure to sign and date your Ballot**.  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the ballot.

12.     If you hold Claims in more than one Class under the Plan you may receive more than one ballot coded for each different Class.  Each ballot votes *only* your Claims indicated on that ballot, so please complete and return each ballot that you receive.

**PLEASE SUBMIT YOUR BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CALL THE RESTRUCTURING HOTLINE AT:**
**U.S. TOLL FREE: (844) 627-6967**
**INTERNATIONAL: (347) 292-3534**

**OR EMAIL BRISTOWBALLOTS@PRIMECLERK.COM.**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS ON SEPTEMBER 23, 2019, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

---

[*Remainder of page intentionally left blank*]

**<u>Exhibit 3(b)</u>**

**Form of Master Ballot for Secured Notes Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**MASTER BALLOT FOR VOTING TO ACCEPT OR REJECT THE**
**AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF**
**BRISTOW GROUP, INC. AND ITS DEBTOR AFFILIATES, AS MODIFIED**

**MASTER BALLOT FOR HOLDERS OF SECURED NOTES CLAIMS**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR
COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THIS BALLOT.

IN ORDER FOR THE VOTES ON THIS MASTER BALLOT TO BE COUNTED, THIS
MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO
BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY SEPTEMBER 23,
2019, AT 4:00 P.M., PREVAILING CENTRAL TIME (THE "<u>VOTING DEADLINE</u>") IN
ACCORDANCE WITH THE FOLLOWING:

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), are soliciting
votes with respect to the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc.
and Its Debtor Affiliates, as Modified* (as may be amended, supplemented, or otherwise modified
from time to time, the "<u>Plan</u>") as set forth in the *Amended Disclosure Statement for the Amended
Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Debtor Affiliates, as
Modified* (as may be amended, supplemented, or otherwise modified from time to time, the
"<u>Disclosure Statement</u>").   The Bankruptcy Court for the Southern District of Texas (the
"<u>Bankruptcy Court</u>") has conditionally approved the Disclosure Statement as containing adequate
information pursuant to section 1125 of title 11 of the United States Code (the "<u>Bankruptcy
Code</u>"), by entry of an order on August [___], 2019 [Docket No. ___] (the "<u>Disclosure Statement
Order</u>").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the
Plan by the Bankruptcy Court.  Capitalized terms used but not otherwise defined herein shall have
the meanings set forth in the Plan.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification
number, are:  Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow
Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764),
and Bristow Equipment Leasing Ltd. (9303).  The corporate headquarters and the mailing address for the Debtors
listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

You are receiving this master ballot (this "Master Ballot") because you are the Nominee (as defined below) of a Beneficial Holder[2] of the Claims indicated on **Exhibit A** hereto as of August 21, 2019 (the "Voting Record Date").

**This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee for certain Beneficial Holders of Claims indicated on Exhibit A hereto, to transmit to the Solicitation Agent (as defined below) the votes of such Beneficial Holders in respect of their Claims to accept or reject the Plan.**

The rights and treatment for each Class are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Master Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov; or (b) at no charge from Prime Clerk LLC (the "Solicitation Agent") by: (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/Bristow; (ii) writing to Bristow Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing bristowballots@primeclerk.com; or (iv) calling the Solicitation Agent at:

<div align="center">

U.S. Toll Free: (844) 627-6967
International: (347) 292-3534

</div>

This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Master Ballot in error, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

**The votes transmitted on this Master Ballot for certain Beneficial Holders of Claims in the Class indicated on Exhibit A shall be applied to each Debtor against whom such Beneficial Holders have a Claim.**

You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot (as defined below), and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you transmit votes. You or the Beneficial Holders of the Claims for whom you are the Nominee may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of such Claims.

---

[2]   A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose Claims or Interests have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees.

<div align="right">

2   [CUSIP/ISIN indicated on Exhibit A hereto]

</div>

The Bankruptcy Court may confirm the Plan and thereby bind all Holders of Claims or Interests. To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Solicitation Agent *actually receives* it on or before the Voting Deadline.

**The Voting Deadline is on <u>September 23, 2019, at 4:00 p.m.</u>, prevailing Central Time.**

<u>**Item 1**</u>**.**          **Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐          Is a broker, bank, or other nominee for the Beneficial Holders of the aggregate principal amount of the Claims listed in Item 2 below, or

☐          Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee for the Beneficial Holders of the aggregate principal amount of Claims listed in Item 2 below, or

☐          Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial owner of the aggregate principal amount of Claims listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the Beneficial Holders of the Claims described in Item 2.

<u>**Item 2**</u>**.**          **Claims Vote on Plan:**

The undersigned transmits the following votes of Beneficial Holders of Claims arising on account of the Senior Secured Notes  indicated on **<u>Exhibit A</u>** hereto and certifies that the following Beneficial Holders of such Claims, as identified by their respective customer account numbers set forth below, are the Beneficial Holders of such Claims as of the Voting Record Date and have delivered to the undersigned, as Nominee, properly executed ballots (the "<u>Beneficial Holder Ballots</u>") casting such votes as indicated and containing instructions for the casting of those votes on their behalf.  For purposes of this Master Ballot, accrued or unmatured interest should not be included.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Holder must vote all such Beneficial Holder's Claims to accept or reject the Plan and may not split such vote.  Any Beneficial Holder Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.  **If the Beneficial Holder has checked the box on Item 3 of the Beneficial Holder Ballot pertaining to releases by Holders of Claims, as detailed in Article VIII.C of the Plan, please place an X in the Item 3 column below for each Beneficial Holder that checked the box.**

3  [CUSIP/ISIN indicated on Exhibit A hereto]

| Your Customer Account Number for Each Beneficial Holder of Claims | Principal Amount Held as of Voting Record Date | **Item 2** Indicate the vote cast on the Beneficial Holder Ballot by checking the appropriate box below. | | | **Item 3** If the box in Item 3 of the Beneficial Holder Ballot was completed, check the box in the column below |
|---|---|---|---|---|---|
| | | Accept the Plan | **or** | Reject the Plan | OPT OUT of the Third Part Release |
| 1 | $ | | | | |
| 2 | $ | | | | |
| 3 | $ | | | | |
| 4 | $ | | | | |
| 5 | $ | | | | |
| 6 | $ | | | | |
| **TOTALS** | $ | | | | |

**Item 3.**        **Other Ballots Submitted by Beneficial Holders in the same Class.**

The undersigned certifies that it has transcribed in the following table the information, if any, provided by the Beneficial Holders in Item 4 of the Beneficial Holder Ballot:

| Your customer account number and/or Customer Name for each Beneficial Holder who completed Item 4 of the Beneficial Holder Ballot. | Transcribe from Item 4 of the Beneficial Holder Ballot | | | |
|---|---|---|---|---|
| | Account Number | Name of Registered Holder or Nominee | Principal Amount of Other Claims | CUSIP of other Class Claim Votes |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |

**Item 4.**         **Important information regarding the Third Party Release.**

**Article VIII.C of the Plan contains the following provision:**

As of the Effective Date, except as otherwise provided herein, each Releasing Party is deemed to have fully, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:

1.         the Debtors, the business or contractual arrangement between the Debtors and any Releasing Party, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the 2019 Term Loan Facility, the Compensation and Benefit Programs, intercompany transactions, or the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Plan, the Disclosure Statement, Rights Offering Procedures, or any other Restructuring Documents;

2.         any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Original RSA, the Original DIP Commitment Letter, the Initial Amended RSA, the Disclosure Statement, or the Plan, including the Rights Offering, the Backstop Commitment Agreement, the DIP Facility, the Exit Facility, the Amended and Restated 2019 Term Loan Facility, or any other Restructuring Documents;

3.         the Chapter 11 Cases, the Disclosure Statement, the Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan or the Rights Offering, or the distribution of property under the Plan or any other related agreement with respect to the foregoing; or

4.         any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, (ii) the rights of any current employee of the Debtors under any employment agreement or plan, (iii) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (iv) any post-Effective Date obligations of any party or

Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (v) the rights of Holders of Allowed Claims to receive distributions under the Plan, (vi) any Cause of Action the Debtors may have against Columbia Helicopters, Inc. and its Related Parties, or (vii) any Cause of Action the Debtors may have against any of their former officers or directors as of the Petition Date in respect of payments made and referenced under any separation, retirement, consulting agreement, employment agreement or plan.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing release, which includes by reference each of the related provisions and definitions contained herein, and further, will constitute the Bankruptcy Court's finding that the foregoing release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable, and reasonable; and (v) given and made after due notice and opportunity for hearing.

\*          \*          \*

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE DIP FACILITY AGENT; (D) THE DIP FACILITY LENDERS; (E) THE BACKSTOP COMMITMENT PARTIES; (F) THE HOLDERS OF 2019 TERM LOAN FACILITY CLAIMS; (G) THE 2019 TERM LOAN FACILITY AGENT; (H) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY LENDERS; (I) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY AGENT; (J) THE SUPPORTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEES; (L) THE EXIT FACILITY LENDERS; (M) THE EXIT FACILITY AGENT; (N) ALL HOLDERS OF CLAIMS; (O) ALL HOLDERS OF INTERESTS; (P) THE MILESTONE PARTIES; (Q) THE CREDITORS' COMMITTEE AND EACH OF ITS CURRENT AND FORMER MEMBERS; (R) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (Q); AND (S) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (R); PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN OR (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN SHALL NOT BE A "RELEASING PARTY"; PROVIDED, FURTHER, THAT FOR THE AVOIDANCE OF DOUBT, NO HOLDER OF A CLAIM THAT IS PARTY TO OR HAS OTHERWISE SIGNED THE RESTRUCTURING SUPPORT AGREEMENT MAY OPT OUT OF THE RELEASES.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE DIP FACILITY AGENT; (D) THE DIP FACILITY LENDERS; (E) THE BACKSTOP COMMITMENT PARTIES; (F) THE HOLDERS OF 2019 TERM LOAN FACILITY CLAIMS; (G) THE 2019 TERM LOAN FACILITY AGENT; (H) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY LENDERS; (I) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY

**AGENT; (J) THE SUPPORTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEES; (L) THE EXIT FACILITY LENDERS; (M) THE EXIT FACILITY AGENT; (N) THE MILESTONE PARTIES; (O) THE CREDITORS' COMMITTEE AND EACH OF ITS CURRENT AND FORMER MEMBERS; (P) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (O); AND (Q) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (P); PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN OR (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN SHALL NOT BE A "RELEASED PARTY."**

**Item 5.        Certifications.**

By signing this Master Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)    it has received a copy of the Disclosure Statement, the Plan, the Master Ballots, the Beneficial Holder Ballots, and the remainder of the Solicitation Package and has delivered the same to the Beneficial Holders of the Claims listed in Item 2 above;

(b)    it has received a completed and signed Beneficial Holder Ballot (or other accepted and customary method of communicating a vote) from each Beneficial Holder listed in Item 2 of this Master Ballot;

(c)    it is the registered Holder of all the Claims listed in Item 2 above being voted, or it has been authorized by each Beneficial Holder of the Claims listed in Item 2 above to vote on the Plan;

(d)    no other Master Ballots with respect to the same Claims identified in Item 2 have been cast or, if any other Master Ballots have been cast with respect to such Claims, then any such earlier received Master Ballots are hereby revoked;

(e)    it has properly disclosed: (i) the number of Beneficial Holders of Claims who completed the Beneficial Holder Ballots; (ii) the respective amounts of the Claims owned, as the case may be, by each Beneficial Holder of the Claims who completed a Beneficial Holder Ballot; (iii) each such Beneficial Holder of Claims' respective vote concerning the Plan; (iv) each such Beneficial Holder of Claims' certification as to other Claims voted in the same Class; and (v) the customer account or other identification number for each such Beneficial Holder of Claims; and

(f)    it will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders of Claims (whether properly completed or defective) for at least one year after the Effective Date of the Plan and disclose all such information to the Bankruptcy Court or the Debtors, if so ordered.

Name of Nominee: _____
(Print or Type)

Participant Number: _____

Name of Proxy Holder or Agent for Nominee (if applicable):

_____
(Print or Type)

Signature: _____

Name of
Signatory: _____

Title: _____

Address: _____

_____

_____

Date Completed: _____

Email Address: _____

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) PROMPTLY IN THE ENVELOPE
PROVIDED VIA FIRST CLASS MAIL, OVERNIGHT COURIER, HAND DELIVERY,
OR VIA ELECTRONIC MAIL SERVICE TO:**

**Bristow Ballot Processing
c/o Prime Clerk LLC
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY 10165
bristowballots@primeclerk.com**

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS MASTER
BALLOT ON OR BEFORE SEPTEMBER 23, 2019 AT 4:00 P.M., PREVAILING
CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, THE VOTES
TRANSMITTED BY THIS MASTER BALLOT MAY BE COUNTED TOWARD
CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

## INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT

1.     The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as Exhibit A to the Disclosure Statement.  Capitalized terms used in the Master Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Master Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT.**

2.     The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.     You should immediately distribute the Beneficial Holder Ballots and the Solicitation Package to all Beneficial Holders of Claims and take any action required to enable each such Beneficial Holder to vote timely the Claims that it holds. You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices. You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.  Any Beneficial Holder Ballot returned to you by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Solicitation Agent, a Master Ballot that reflects the vote of such Beneficial Holders by September 23, 2019, at 4:00 p.m., prevailing Central Time or otherwise validate the Master Ballot in a manner acceptable to the Solicitation Agent.

4.     If you are transmitting the votes of any Beneficial Holder of Claims other than yourself, you may either:

(a)     "Pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Claim for voting within five Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Solicitation Agent in the return envelope to be provided in the Solicitation Package.  A Nominee "pre-validates" a Beneficial Holder's Ballot by signing the Beneficial Holder Ballot and including their DTC participant number; indicating the account number of the Beneficial Holder and the principal amount of Claims held by the Nominee for such Beneficial Holder; and then forwarding the Beneficial Holder Ballot together with the Solicitation Package to the Beneficial Holder.  The Beneficial Holder then completes the remaining information requested on the Beneficial Holder Ballot and returns the Beneficial

Holder Ballot directly to the Solicitation Agent.  A list of the Beneficial Holders to whom "pre-validated" Beneficial Holder Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date; or

(b)    Within five Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Claim for voting along with a return envelope provided by and addressed to the Nominee, with the Beneficial Holder then returning the individual Beneficial Holder Ballot to the Nominee. The Nominee will tabulate the votes of its respective owners on a Master Ballot that will be provided to the Nominee separately by the Solicitation Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Solicitation Agent.  The Nominee should advise the Beneficial Holder to return their individual Beneficial Holder Ballots (or otherwise transmit their vote) to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is actually received by the Solicitation Agent on or before the Voting Deadline.

5.    With regard to any Beneficial Holder Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Solicitation Agent by the Voting Deadline; and (d) retain such Beneficial Holder Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date of the Plan.  You may be ordered to produce the Beneficial Holder Ballots (or evidence of the vote transmitted to you) to the Debtors or the Bankruptcy Court.

(i)    The Master Ballot **must** be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is September 23, 2019, at 4:00 p.m., prevailing Central Time.**

(ii)    If a Master Ballot is received **after** the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the discretion of the Debtors. Additionally, **the following Master Ballots will not be counted:**

(a)    any Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

(b)    any Master Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan;

(c)    any Master Ballot sent by facsimile or any electronic means other than electronic mail;

(d)    any unsigned Master Ballot (for the avoidance of doubt, Master Ballots validly submitted via electronic mail will be deemed signed);

10  [CUSIP/ISIN indicated on Exhibit A hereto]

> (e)　any Master Ballot that does not contain an original signature; provided, *however*, that any Master Ballot submitted via electronic mail shall be deemed to contain an original signature;
>
> (f)　any Master Ballot not marked to accept or reject the Plan; and/or
>
> (g)　any Master Ballot submitted by any party not entitled to cast a vote with respect to the Plan.

8.　The method of delivery of Master Ballots to the Solicitation Agent is at the election and risk of each Nominee.  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** the executed Master Ballot.  In all cases, Beneficial Holders and Nominees should allow sufficient time to assure timely delivery.

9.　If a Beneficial Holder or Nominee holds a Claim in a Voting Class against multiple Debtors, a vote on their Beneficial Holder Ballot will apply to all applicable Classes and Debtors against whom such Beneficial Holder or Nominee has such Claim, as applicable, in that Voting Class.

10.　If multiple Master Ballots are received from the same Nominee with respect to the same Claims voted on a Beneficial Holder Ballot prior to the Voting Deadline, the latest, timely received, and properly completed Master Ballot will supersede and revoke any earlier received Master Ballots.

11.　The Master Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

12.　**Please be sure to sign and date the Master Ballot**.  You should indicate that you are signing the Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

13.　If you are both the Nominee and the Beneficial Holder of any of the Claims indicated on **Exhibit A** of the Master Ballot or Beneficial Holder Ballot, as applicable, and you wish to vote such Claims, you may vote such Claims where indicated on the Master Ballot for such Claims and you must vote your entire Claims in the same Class to either accept or reject the Plan and may not split your vote.

14.　For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class may be aggregated and treated as if such creditor held one Claim in such Class, in which case all votes related to such Claim will be treated as a single vote to accept or reject the Plan; provided, however, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be

<div align="center">11　[CUSIP/ISIN indicated on Exhibit A hereto]</div>

aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity may be counted separately as a vote to accept or reject the Plan. Any party in interest may contest any such aggregation of multiple Claims at the Confirmation Hearing.

15.     The following additional rules shall apply to Master Ballots:

(a)     Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Claims as of the Record Voting Date, as evidenced by the record and depository listings.

(b)     Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record amount of the Claims held by such Nominee;

(c)     To the extent that conflicting votes or "over-votes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Solicitation Agent will attempt to reconcile discrepancies with the Nominee;

(d)     To the extent that over-votes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the over-vote, but only to the extent of the Nominee's position in the Claims; and

(e)     For purposes of tabulating votes, each Holder holding through a particular account will be deemed to have voted the principal amount relating its holding in that particular account, although the Solicitation Agent may be asked to adjust such principal amount to reflect the Claim amount.

PLEASE MAIL YOUR MASTER BALLOT PROMPTLY

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE RESTRUCTURING HOTLINE AT:**

**U.S. Toll Free: (844) 627-6967**
**International: (347) 292-3534**

**OR EMAIL BRISTOWBALLOTS@PRIMECLERK.COM.**

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS MASTER BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS SEPTEMBER 23, 2019, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, THE VOTES TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

## Exhibit A

**Please check one (and only one) box below to indicate the Plan Class and CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on an exhibit thereto).  If you check more than one box, you risk having all votes submitted through this Master Ballot invalidated.**

| Class 4 (Secured Notes Claims) | | |
|---|---|---|
| ☐ | 8.75% Senior Secured Notes due 2023 | CUSIP 110394AG8 / ISIN US110394AG86 |
| ☐ | 8.75% Senior Secured Notes due 2023 | CUSIP U1104MAB7 / ISIN USU1104MAB73 |

**Exhibit 3(c)**

**Form of Beneficial Holder Ballot for Secured Notes Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**BENEFICIAL HOLDER BALLOT FOR VOTING TO ACCEPT OR REJECT THE**
**AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF**
**BRISTOW GROUP, INC. AND ITS DEBTOR AFFILIATES, AS MODIFIED**

**BENEFICIAL HOLDER BALLOT FOR HOLDERS OF SECURED NOTES CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST FOLLOW THE DIRECTIONS OF YOUR NOMINEE AND ALLOW SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE AND TRANSMIT SUCH VOTE ON A MASTER BALLOT, WHICH MASTER BALLOT MUST BE RETURNED TO THE SOLICITATION AGENT BY SEPTEMBER 23, 2019, AT 4:00 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE").**

**IF, HOWEVER, YOU RECEIVED A "PRE-VALIDATED" BALLOT FROM YOUR NOMINEE WITH INSTRUCTIONS TO SUBMIT SUCH BALLOT DIRECTLY TO THE SOLICITATION AGENT, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST COMPLETE, EXECUTE, AND RETURN THE "PRE-VALIDATED" BALLOT, SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Debtor Affiliates, as Modified* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") as set forth in the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and its Debtor Affiliates, as*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303).  The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

*Modified* (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement").  The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has conditionally approved the Disclosure Statement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), by entry of an order on August [__], 2019 [Docket No. ____] (the "Disclosure Statement Order").  Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Ballot for Beneficial Holders[2] (the "Beneficial Holder Ballot") because you are a Beneficial Holder of a Claim arising on account of the Senior Secured Notes indicated on **Exhibit A** hereto as of August 21, 2019 (the "Voting Record Date"). Accordingly, you have a right to vote to accept or reject the Plan. You can cast your vote through this Beneficial Holder Ballot and return it to your broker, bank, or other nominee, or the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"), in accordance with the instructions provided by your Nominee, who will then submit a master ballot (the "Master Ballot") on behalf of the Beneficial Holders of the Class of Claims indicated on **Exhibit A** hereto.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Beneficial Holder Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials).  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov; or (b) at no charge from Prime Clerk LLC (the "Solicitation Agent") by: (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/Bristow; (ii) writing to Bristow Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing bristowballots@primeclerk.com; or (iv) calling the Solicitation Agent at:

<div align="center">

U.S. Toll Free: (844) 627-6967
International: (347) 292-3534

</div>

This Beneficial Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong ballot, please contact your Nominee immediately.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your Claim has been placed in the Class of Claims indicated on **Exhibit A** hereto, under the Plan.  If you hold Claims or Interests in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

---

[2]    A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose Claims or Interests have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees.

<div align="center">2</div>    [CUSIP/ISIN indicated on Exhibit A hereto]

In order for your vote to count, your Nominee must receive this Beneficial Holder Ballot in sufficient time for your Nominee to include your vote on a Master Ballot that must be received by the Solicitation Agent on or before the Voting Deadline, which is September 23, 2019, at 4:00 p.m., prevailing Central Time.  Please allow sufficient time for your vote to be included on the Master Ballot completed by your Nominee. If a Master Ballot recording your vote is not received by the Voting Deadline, and if the Voting Deadline is not extended, your vote will not count.

**Item 1.**          **Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Holder of Claims in the Class indicated on **Exhibit A** hereto in the following aggregate unpaid principal amount (insert amount in box below, unless otherwise completed by your Nominee):

$\boxed{\$\text{_____}}$

**Item 2.**          **Vote on Plan.**

The Beneficial Holder of the Claim, the aggregate amount of which is set forth in Item 1, votes to (please check only <u>one</u>):

☐ **ACCEPT** (vote FOR) the Plan          ☐ **REJECT** (vote AGAINST) the Plan

**<u>Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.</u>**

**Item 3.**          **Important information regarding the Third Party Release.**

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.C OF THE PLAN SET FORTH BELOW.**

**IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.C OF THE PLAN** ONLY IF **YOU CHECK THE BOX BELOW AND (A) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN OR (B) VOTE TO REJECT THE PLAN. IF YOU (A) VOTE TO ACCEPT THE PLAN, (B) FAIL TO SUBMIT A BALLOT BY THE VOTING DEADLINE, (C) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN WITHOUT CHECKING THE BOX BELOW, OR (D) VOTE TO REJECT THE PLAN**

**WITHOUT CHECKING THE BOX BELOW, IN EACH CASE YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN.**

**The Beneficial Holder of the Claims identified in Item 1 elects to:**

> ☐ **OPT OUT of the Third Party Release**

**Article VIII.C of the Plan contains the following provision:**

**As of the Effective Date, except as otherwise provided herein, each Releasing Party is deemed to have fully, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:**

**1.      the Debtors, the business or contractual arrangement between the Debtors and any Releasing Party, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the 2019 Term Loan Facility, the Compensation and Benefit Programs, intercompany transactions, or the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Plan, the Disclosure Statement, Rights Offering Procedures, or any other Restructuring Documents;**

**2.      any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Original RSA, the Original DIP Commitment Letter, the Initial Amended RSA, the Disclosure Statement, or the Plan, including the Rights Offering, the Backstop Commitment Agreement, the DIP Facility, the Exit Facility, the Amended and Restated 2019 Term Loan Facility, or any other Restructuring Documents;**

**3.      the Chapter 11 Cases, the Disclosure Statement, the Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan or the Rights Offering, or the distribution of property under the Plan or any other related agreement with respect to the foregoing; or**

**4.      any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases.**

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, (ii) the rights of any current employee of the Debtors under any employment agreement or plan, (iii) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (iv) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (v) the rights of Holders of Allowed Claims to receive distributions under the Plan, (vi) any Cause of Action the Debtors may have against Columbia Helicopters, Inc. and its Related Parties, or (vii) any Cause of Action the Debtors may have against any of their former officers or directors as of the Petition Date in respect of payments made and referenced under any separation, retirement, consulting agreement, employment agreement or plan.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing release, which includes by reference each of the related provisions and definitions contained herein, and further, will constitute the Bankruptcy Court's finding that the foregoing release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable, and reasonable; and (v) given and made after due notice and opportunity for hearing.

\*     \*     \*

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE DIP FACILITY AGENT; (D) THE DIP FACILITY LENDERS; (E) THE BACKSTOP COMMITMENT PARTIES; (F) THE HOLDERS OF 2019 TERM LOAN FACILITY CLAIMS; (G) THE 2019 TERM LOAN FACILITY AGENT; (H) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY LENDERS; (I) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY AGENT; (J) THE SUPPORTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEES; (L) THE EXIT FACILITY LENDERS; (M) THE EXIT FACILITY AGENT; (N) ALL HOLDERS OF CLAIMS; (O) ALL HOLDERS OF INTERESTS; (P) THE MILESTONE PARTIES; (Q) THE CREDITORS' COMMITTEE AND EACH OF ITS CURRENT AND FORMER MEMBERS; (R) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (Q); AND (S) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (R); PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN OR (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN SHALL NOT BE A "RELEASING PARTY"; PROVIDED, FURTHER, THAT FOR THE AVOIDANCE OF DOUBT, NO HOLDER OF A CLAIM

THAT IS PARTY TO OR HAS OTHERWISE SIGNED THE RESTRUCTURING SUPPORT AGREEMENT MAY OPT OUT OF THE RELEASES.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE DIP FACILITY AGENT; (D) THE DIP FACILITY LENDERS; (E) THE BACKSTOP COMMITMENT PARTIES; (F) THE HOLDERS OF 2019 TERM LOAN FACILITY CLAIMS; (G) THE 2019 TERM LOAN FACILITY AGENT; (H) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY LENDERS; (I) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY AGENT; (J) THE SUPPORTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEES; (L) THE EXIT FACILITY LENDERS; (M) THE EXIT FACILITY AGENT; (N) THE MILESTONE PARTIES; (O) THE CREDITORS' COMMITTEE AND EACH OF ITS CURRENT AND FORMER MEMBERS; (P) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (O); AND (Q) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (P); PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN OR (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN SHALL NOT BE A "RELEASED PARTY."

ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO THE INCLUSION OF SUCH HOLDER AS A RELEASING PARTY UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN OR DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN AS PROVIDED FOR IN THIS BALLOT WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. BY OBJECTING TO OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

<u>Item 4.</u>        **Other Beneficial Holder Ballots Submitted.**

By returning this Beneficial Holder Ballot, the Holder of the Claims identified in Item 1 certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for Claims identified in Item 1 owned by such Holder, except as identified in the following table, and (b) all Beneficial Holder Ballots submitted by the Holder in the same Class indicate the same vote to accept or reject the Plan that the Holder has indicated in Item 2 of this Beneficial Holder Ballot (please use additional sheets of paper if necessary):

**ONLY COMPLETE THIS TABLE IF YOU HAVE VOTED OTHER
CLAIMS IN THE SAME CLASS ON OTHER BENEFICIAL HOLDER BALLOTS**

| Account Number | Name of Registered Holder or Nominee | Principal Amount of Other Claims Voted | CUSIP of Other Claims Voted |
|---|---|---|---|
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

<u>**Item 5**</u>.        **Certifications.**

By signing this Beneficial Holder Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)        as of the Voting Record Date, either: (i) the Entity is the Holder of the Claims being voted on this Beneficial Holder Ballot; or (ii) the Entity is an authorized signatory for the Entity that is the Holder of the Claims being voted on this Beneficial Holder Ballot;

(b)        the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c)        the Entity has cast the same vote with respect to all Claims in a single Class; and

(d)        no other Beneficial Holder Ballots with respect to the amount of the Claims identified in Item 1 have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such earlier received Beneficial Holder Ballots are hereby revoked.

Name of Holder: _____

(Print or Type)

Signature: _____

Name of Signatory: _____

(If other than the Beneficial Holder)

Title: _____

Address: _____

_____

_____

Telephone
Number: _____

Email: _____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* IN THE ENVELOPE
PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS
PROVIDED BY YOUR NOMINEE.**

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THE MASTER
BALLOT SUBMITTED ON YOUR BEHALF WHICH REFLECTS YOUR VOTE ON OR
BEFORE SEPTEMBER 23, 2019, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF
THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY
THIS BENEFICIAL HOLDER BALLOT MAY BE COUNTED TOWARD
CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

## INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL HOLDER BALLOT

1. The Debtors are soliciting the votes of Holders of Claims and Interests with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement. Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Beneficial Holder Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER BALLOT.**

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in

8   [CUSIP/ISIN indicated on Exhibit A hereto]

number of Claims or at least two-thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3. Unless otherwise instructed by your Nominee, to ensure that your vote is counted, you must submit your Beneficial Holder Ballot to your Nominee in sufficient time to allow your Nominee to process your vote and submit a Master Ballot so that the Master Ballot is actually received by the Solicitation Agent by the Voting Deadline.  You may instruct your Nominee to vote on your behalf in the Master Ballot as follows: (a) complete the Beneficial Holder Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Beneficial Holder Ballot; and (c) sign and return the Beneficial Holder Ballot to your Nominee in accordance with the instructions provided by your Nominee.  The Voting Deadline for the receipt of Master Ballots by the Solicitation Agent is September 23, 2019, at 4:00 p.m., prevailing Central Time.  Your completed Beneficial Holder Ballot must be received by your Nominee in sufficient time to permit your Nominee to deliver your votes to the Solicitation Agent on or before the Voting Deadline.

4. **The following Beneficial Holder Ballots will not be counted**:

   (a) any Beneficial Holder Ballot that partially rejects and partially accepts the Plan;

   (b) Beneficial Holder Ballot sent to the Debtors, the Debtors' agents (other than the Solicitation Agent and only with respect to a pre-validated Beneficial Holder Ballot), any indenture trustee, or the Debtors' financial or legal advisors;

   (c) Beneficial Holder Ballot returned to a Nominee not in accordance with the Nominee's instructions;

   (d) any Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

   (e) any Beneficial Holder Ballot cast by an Entity that does not hold a Claim in the Class indicated on **Exhibit A** hereto;

   (f) any Beneficial Holder Ballot submitted by a Holder not entitled to vote pursuant to the Plan;

   (g) any unsigned Beneficial Holder Ballot (except in accordance with the Nominee's instructions);

   (h) any non-original Beneficial Holder Ballot (except in accordance with the Nominee's instructions); and/or

   (i) any Beneficial Holder Ballot not marked to accept or reject the Plan or any Beneficial Holder Ballot marked both to accept and reject the Plan.

5.     If your Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted unless the Debtors determine otherwise. In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Beneficial Holder Ballot to your Nominee. No Beneficial Holder Ballot should be sent to any of the Debtors, the Debtors' agents (other than the Solicitation Agent and only with respect to a pre-validated Beneficial Holder Ballot), the Debtors' financial or legal advisors, or any indenture trustee, and if so sent will not be counted.

6.     If you deliver multiple Beneficial Holder Ballots to your Nominee with respect to the same Claims prior to the Voting Deadline, the last received valid Beneficial Holder Ballot timely received will supersede and revoke any earlier received Beneficial Holder Ballots.

7.     You must vote all of your Claims within the same Class either to accept or reject the Plan and may **not** split your vote. Further, if a Holder has multiple Claims within the same Class, the Debtors may, in their discretion, aggregate the Claims of any particular Holder with multiple Claims within the same Class for the purpose of counting votes.

8.     This Beneficial Holder Ballot does not constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

9.     **<u>Please be sure to sign and date your Beneficial Holder Ballot</u>**. If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Beneficial Holder Ballot.

10.     If you hold Claims in more than one Class under the Plan you may receive more than one ballot coded for each different Class. Each ballot votes **<u>only</u>** your Claims indicated on that ballot, so please complete and return each ballot that you receive.

11.     The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan. Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with a ballot.

    [CUSIP/ISIN indicated on Exhibit A hereto]

**PLEASE SUBMIT YOUR BENEFICIAL HOLDER BALLOT PROMPTLY IN THE
ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE
INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL HOLDER
BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING,
PLEASE CALL THE RESTRUCTURING HOTLINE AT:**

U.S. Toll Free: (844) 627-6967
International: (347) 292-3534

**OR EMAIL BRISTOWBALLOTS@PRIMECLERK.COM.**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THE MASTER
BALLOT ON OR BEFORE SEPTEMBER 23, 2019 AT 4:00 P.M., PREVAILING
CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR
VOTE TRANSMITTED BY THIS BENEFICIAL HOLDER BALLOT MAY BE
COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION
OF THE DEBTORS.**

---

## Exhibit A

**Please check one (and only one) box below to indicate the Plan Class and CUSIP/ISIN to which this Beneficial Holder Ballot pertains (or clearly indicate such information directly on the Beneficial Holder Ballot or on an exhibit thereto). If you check more than one box, you risk having all votes submitted through this Master Ballot invalidated**

| Class 4 (Secured Notes Claims) | | |
|---|---|---|
| ☐ | 8.75% Senior Secured Notes due 2023 | CUSIP 110394AG8 / ISIN US110394AG86 |
| ☐ | 8.75% Senior Secured Notes due 2023 | CUSIP U1104MAB7 / ISIN USU1104MAB73 |

12

**Exhibit 3(d)**

**Form of Master Ballot for Unsecured Notes Claims**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**MASTER BALLOT FOR VOTING TO ACCEPT OR REJECT THE
AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
BRISTOW GROUP, INC. AND ITS DEBTOR AFFILIATES, AS MODIFIED**

**MASTER BALLOT FOR HOLDERS OF UNSECURED NOTES CLAIMS**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THIS BALLOT.**
>
> **IN ORDER FOR THE VOTES ON THIS MASTER BALLOT TO BE COUNTED, THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY SEPTEMBER 23, 2019, AT 4:00 P.M., PREVAILING CENTRAL TIME (THE "<u>VOTING DEADLINE</u>") IN ACCORDANCE WITH THE FOLLOWING:**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), are soliciting votes with respect to the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Debtor Affiliates, as Modified* (as may be amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>") as set forth in the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Debtor Affiliates, as Modified* (as may be amended, supplemented, or otherwise modified from time to time, the "<u>Disclosure Statement</u>"). The Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") has conditionally approved the Disclosure Statement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), by entry of an order on August [__], 2019 [Docket No. ___] (the "<u>Disclosure Statement Order</u>"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303). The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

You are receiving this master ballot (this "Master Ballot") because you are the Nominee (as defined below) of a Beneficial Holder[2] of the Claims indicated on **Exhibit A** hereto as of August 21, 2019 (the "Voting Record Date").

**This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee for certain Beneficial Holders of Claims indicated on Exhibit A hereto, to transmit to the Solicitation Agent (as defined below) the votes of such Beneficial Holders in respect of their Claims to accept or reject the Plan.**

The rights and treatment for each Class are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Master Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials).  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov; or (b) at no charge from Prime Clerk LLC (the "Solicitation Agent") by: (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/Bristow; (ii) writing to Bristow Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing bristowballots@primeclerk.com; or (iv) calling the Solicitation Agent at:

<div align="center">

U.S. Toll Free: (844) 627-6967
International: (347) 292-3534

</div>

This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Master Ballot in error, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

**The votes transmitted on this Master Ballot for certain Beneficial Holders of Claims in the Class indicated on Exhibit A shall be applied to each Debtor against whom such Beneficial Holders have a Claim.**

You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot (as defined below), and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you transmit votes.  You or the Beneficial Holders of the Claims for whom you are the Nominee may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of such Claims.

---

[2]   A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose Claims or Interests have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees.

<div align="right">

2     [CUSIP/ISIN indicated on Exhibit A hereto]

</div>

The Bankruptcy Court may confirm the Plan and thereby bind all Holders of Claims or Interests. To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Solicitation Agent *actually receives* it on or before the Voting Deadline.

**The Voting Deadline is on <u>September 23, 2019, at 4:00 p.m.</u>, prevailing Central Time.**

<u>**Item 1**</u>.　　　　**Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐　　　　Is a broker, bank, or other nominee for the Beneficial Holders of the aggregate principal amount of the Claims listed in Item 2 below, or

☐　　　　Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee for the Beneficial Holders of the aggregate principal amount of Claims listed in Item 2 below, or

☐　　　　Has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial owner of the aggregate principal amount of Claims listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the Beneficial Holders of the Claims described in Item 2.

<u>**Item 2**</u>.　　　　**Claims Vote on Plan:**

The undersigned transmits the following votes of Beneficial Holders of Claims arising on account of the Unsecured Notes  indicated on <u>**Exhibit A**</u> hereto and certifies that the following Beneficial Holders of such Claims, as identified by their respective customer account numbers set forth below, are the Beneficial Holders of such Claims as of the Voting Record Date and have delivered to the undersigned, as Nominee, properly executed ballots (the "<u>Beneficial Holder Ballots</u>") casting such votes as indicated and containing instructions for the casting of those votes on their behalf.  For purposes of this Master Ballot, accrued or unmatured interest should not be included.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Holder must vote all such Beneficial Holder's Claims to accept or reject the Plan and may not split such vote.  Any Beneficial Holder Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.  **If the Beneficial Holder has checked the box on Item 3 of the Beneficial Holder Ballot pertaining to releases by Holders of Claims, as detailed in Article VIII.C of the Plan, please place an X in the Item 3 column below for each Beneficial Holder that checked the box.**

| Your Customer Account Number for Each Beneficial Holder of Claims | Principal Amount Held as of Voting Record Date | **Item 2** Indicate the vote cast on the Beneficial Holder Ballot by checking the appropriate box below. | | | **Item 3** If the box in Item 3 of the Beneficial Holder Ballot was completed, check the box in the column below |
|---|---|---|---|---|---|
| | | **Accept the Plan** | **or** | **Reject the Plan** | **OPT OUT of the Third Part Release** |
| 1 | $ | | | | |
| 2 | $ | | | | |
| 3 | $ | | | | |
| 4 | $ | | | | |
| 5 | $ | | | | |
| 6 | $ | | | | |
| **TOTALS** | $ | | | | |

**<u>Item 3</u>.**         **Other Ballots Submitted by Beneficial Holders in the same Class.**

The undersigned certifies that it has transcribed in the following table the information, if any, provided by the Beneficial Holders in Item 4 of the Beneficial Holder Ballot:

| Your customer account number and/or Customer Name for each Beneficial Holder who completed Item 4 of the Beneficial Holder Ballot. | Transcribe from Item 4 of the Beneficial Holder Ballot | | | |
|---|---|---|---|---|
| | **Account Number** | **Name of Registered Holder or Nominee** | **Principal Amount of Other Claims** | **CUSIP of other Class Claim Votes** |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |

**Item 4.**        **Important information regarding the Third Party Release.**

**Article VIII.C of the Plan contains the following provision:**

As of the Effective Date, except as otherwise provided herein, each Releasing Party is deemed to have fully, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:

1.        the Debtors, the business or contractual arrangement between the Debtors and any Releasing Party, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the 2019 Term Loan Facility, the Compensation and Benefit Programs, intercompany transactions, or the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Plan, the Disclosure Statement, Rights Offering Procedures, or any other Restructuring Documents;

2.        any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Original RSA, the Original DIP Commitment Letter, the Initial Amended RSA, the Disclosure Statement, or the Plan, including the Rights Offering, the Backstop Commitment Agreement, the DIP Facility, the Exit Facility, the Amended and Restated 2019 Term Loan Facility, or any other Restructuring Documents;

3.        the Chapter 11 Cases, the Disclosure Statement, the Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan or the Rights Offering, or the distribution of property under the Plan or any other related agreement with respect to the foregoing; or

4.        any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, (ii) the rights of any current employee of the Debtors under any employment agreement or plan, (iii) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (iv) any post-Effective Date obligations of any party or

Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (v) the rights of Holders of Allowed Claims to receive distributions under the Plan, (vi) any Cause of Action the Debtors may have against Columbia Helicopters, Inc. and its Related Parties, or (vii) any Cause of Action the Debtors may have against any of their former officers or directors as of the Petition Date in respect of payments made and referenced under any separation, retirement, consulting agreement, employment agreement or plan.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing release, which includes by reference each of the related provisions and definitions contained herein, and further, will constitute the Bankruptcy Court's finding that the foregoing release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable, and reasonable; and (v) given and made after due notice and opportunity for hearing.

\*       \*       \*

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE DIP FACILITY AGENT; (D) THE DIP FACILITY LENDERS; (E) THE BACKSTOP COMMITMENT PARTIES; (F) THE HOLDERS OF 2019 TERM LOAN FACILITY CLAIMS; (G) THE 2019 TERM LOAN FACILITY AGENT; (H) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY LENDERS; (I) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY AGENT; (J) THE SUPPORTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEES; (L) THE EXIT FACILITY LENDERS; (M) THE EXIT FACILITY AGENT; (N) ALL HOLDERS OF CLAIMS; (O) ALL HOLDERS OF INTERESTS; (P) THE MILESTONE PARTIES; (Q) THE CREDITORS' COMMITTEE AND EACH OF ITS CURRENT AND FORMER MEMBERS; (R) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (Q); AND (S) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (R); PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN OR (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN SHALL NOT BE A "RELEASING PARTY"; PROVIDED, FURTHER, THAT FOR THE AVOIDANCE OF DOUBT, NO HOLDER OF A CLAIM THAT IS PARTY TO OR HAS OTHERWISE SIGNED THE RESTRUCTURING SUPPORT AGREEMENT MAY OPT OUT OF THE RELEASES.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE DIP FACILITY AGENT; (D) THE DIP FACILITY LENDERS; (E) THE BACKSTOP COMMITMENT PARTIES; (F) THE HOLDERS OF 2019 TERM LOAN FACILITY CLAIMS; (G) THE 2019 TERM LOAN FACILITY

**AGENT; (H) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY LENDERS; (I) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY AGENT; (J) THE SUPPORTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEES; (L) THE EXIT FACILITY LENDERS; (M) THE EXIT FACILITY AGENT; (N) THE MILESTONE PARTIES; (O) THE CREDITORS' COMMITTEE AND EACH OF ITS CURRENT AND FORMER MEMBERS; (P) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (O); AND (Q) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (P); PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN OR (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN SHALL NOT BE A "RELEASED PARTY."**

**<u>Item 5</u>.        Certifications**.

By signing this Master Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)     it has received a copy of the Disclosure Statement, the Plan, the Master Ballots, the Beneficial Holder Ballots, and the remainder of the Solicitation Package and has delivered the same to the Beneficial Holders of the Claims listed in Item 2 above;

(b)     it has received a completed and signed Beneficial Holder Ballot (or other accepted and customary method of communicating a vote) from each Beneficial Holder listed in Item 2 of this Master Ballot;

(c)     it is the registered Holder of all the Claims listed in Item 2 above being voted, or it has been authorized by each Beneficial Holder of the Claims listed in Item 2 above to vote on the Plan;

(d)     no other Master Ballots with respect to the same Claims identified in Item 2 have been cast or, if any other Master Ballots have been cast with respect to such Claims, then any such earlier received Master Ballots are hereby revoked;

(e)     it has properly disclosed: (i) the number of Beneficial Holders of Claims who completed the Beneficial Holder Ballots; (ii) the respective amounts of the Claims owned, as the case may be, by each Beneficial Holder of the Claims who completed a Beneficial Holder Ballot; (iii) each such Beneficial Holder of Claims' respective vote concerning the Plan; (iv) each such Beneficial Holder of Claims' certification as to other Claims voted in the same Class; and (v) the customer account or other identification number for each such Beneficial Holder of Claims; and

(f)     it will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders of Claims (whether properly completed or defective) for at least one year after the Effective Date of the Plan and disclose all such information to the Bankruptcy Court or the Debtors, if so ordered.

Name of Nominee: _____

(Print or Type)


Participant Number: _____

Name of Proxy Holder or Agent for Nominee (if applicable):


_____

(Print or Type)

Signature: _____

Name of
Signatory: _____

Title: _____

Address: _____

_____

_____

Date Completed: _____

Email Address: _____

8    [CUSIP/ISIN indicated on Exhibit A hereto]

**PLEASE COMPLETE, SIGN, AND DATE THIS MASTER BALLOT AND RETURN IT (WITH AN ORIGINAL SIGNATURE) PROMPTLY IN THE ENVELOPE PROVIDED VIA FIRST CLASS MAIL, OVERNIGHT COURIER, HAND DELIVERY, OR VIA ELECTRONIC MAIL SERVICE TO:**

**Bristow Ballot Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**

**bristowballots@primeclerk.com**

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS MASTER BALLOT ON OR BEFORE SEPTEMBER 23, 2019 AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, THE VOTES TRANSMITTED BY THIS MASTER BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

## INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT

1.     The Debtors are soliciting the votes of Holders of Claims with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement.  Capitalized terms used in the Master Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Master Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS MASTER BALLOT.**

2.     The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.     You should immediately distribute the Beneficial Holder Ballots and the Solicitation Package to all Beneficial Holders of Claims and take any action required to enable each such Beneficial Holder to vote timely the Claims that it holds. You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices. You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.  Any Beneficial Holder Ballot returned to you by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Solicitation Agent, a Master Ballot that reflects the vote of such Beneficial Holders by <u>September 23, 2019, at 4:00 p.m.</u>, prevailing Central

Time or otherwise validate the Master Ballot in a manner acceptable to the Solicitation Agent.

4.   If you are transmitting the votes of any Beneficial Holder of Claims other than yourself, you may either:

(a)   "Pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Claim for voting within five Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Solicitation Agent in the return envelope to be provided in the Solicitation Package.  A Nominee "pre-validates" a Beneficial Holder's Ballot by signing the Beneficial Holder Ballot and including their DTC participant number; indicating the account number of the Beneficial Holder and the principal amount of Claims held by the Nominee for such Beneficial Holder; and then forwarding the Beneficial Holder Ballot together with the Solicitation Package to the Beneficial Holder.  The Beneficial Holder then completes the remaining information requested on the Beneficial Holder Ballot and returns the Beneficial Holder Ballot directly to the Solicitation Agent.  A list of the Beneficial Holders to whom "pre-validated" Beneficial Holder Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date; or

(b)   Within five Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Claim for voting along with a return envelope provided by and addressed to the Nominee, with the Beneficial Holder then returning the individual Beneficial Holder Ballot to the Nominee.  The Nominee will tabulate the votes of its respective owners on a Master Ballot that will be provided to the Nominee separately by the Solicitation Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Solicitation Agent.  The Nominee should advise the Beneficial Holder to return their individual Beneficial Holder Ballots (or otherwise transmit their vote) to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is actually received by the Solicitation Agent on or before the Voting Deadline.

5.   With regard to any Beneficial Holder Ballots returned to you by a Beneficial Holder, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Solicitation Agent by the Voting Deadline; and (d) retain such Beneficial Holder Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date of the Plan.  You may be ordered to produce the Beneficial Holder Ballots (or evidence of the vote transmitted to you) to the Debtors or the Bankruptcy Court.

(i)    The Master Ballot **must** be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline. **The Voting Deadline is September 23, 2019, at 4:00 p.m., prevailing Central Time.**

(ii)    If a Master Ballot is received **after** the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the discretion of the Debtors. Additionally, **the following Master Ballots will not be counted:**

    (a)    any Master Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

    (b)    any Master Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan;

    (c)    any Master Ballot sent by facsimile or any electronic means other than electronic mail;

    (d)    any unsigned Master Ballot (for the avoidance of doubt, Master Ballots validly submitted via electronic mail will be deemed signed);

    (e)    any Master Ballot that does not contain an original signature; provided, *however*, that any Master Ballot submitted via electronic mail shall be deemed to contain an original signature;

    (f)    any Master Ballot not marked to accept or reject the Plan; and/or

    (g)    any Master Ballot submitted by any party not entitled to cast a vote with respect to the Plan.

8.    The method of delivery of Master Ballots to the Solicitation Agent is at the election and risk of each Nominee. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** the executed Master Ballot. In all cases, Beneficial Holders and Nominees should allow sufficient time to assure timely delivery.

9.    If a Beneficial Holder or Nominee holds a Claim in a Voting Class against multiple Debtors, a vote on their Beneficial Holder Ballot will apply to all applicable Classes and Debtors against whom such Beneficial Holder or Nominee has such Claim, as applicable, in that Voting Class.

10.    If multiple Master Ballots are received from the same Nominee with respect to the same Claims voted on a Beneficial Holder Ballot prior to the Voting Deadline, the latest, timely received, and properly completed Master Ballot will supersede and revoke any earlier received Master Ballots.

11.    The Master Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

<div align="right">11    [CUSIP/ISIN indicated on Exhibit A hereto]</div>

12. **Please be sure to sign and date the Master Ballot**.  You should indicate that you are signing the Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

13. If you are both the Nominee and the Beneficial Holder of any of the Claims indicated on **Exhibit A** of the Master Ballot or Beneficial Holder Ballot, as applicable, and you wish to vote such Claims, you may vote such Claims where indicated on the Master Ballot for such Claims and you must vote your entire Claims in the same Class to either accept or reject the Plan and may not split your vote.

14. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class may be aggregated and treated as if such creditor held one Claim in such Class, in which case all votes related to such Claim will be treated as a single vote to accept or reject the Plan; provided, however, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity may be counted separately as a vote to accept or reject the Plan.  Any party in interest may contest any such aggregation of multiple Claims at the Confirmation Hearing.

15. The following additional rules shall apply to Master Ballots:

    (a) Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Claims as of the Record Voting Date, as evidenced by the record and depository listings.

    (b) Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record amount of the Claims held by such Nominee;

    (c) To the extent that conflicting votes or "over-votes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Solicitation Agent will attempt to reconcile discrepancies with the Nominee;

    (d) To the extent that over-votes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the over-vote, but only to the extent of the Nominee's position in the Claims; and

    (e) For purposes of tabulating votes, each Holder holding through a particular account will be deemed to have voted the principal amount relating its holding in that

particular account, although the Solicitation Agent may be asked to adjust such principal amount to reflect the Claim amount.

**PLEASE MAIL YOUR MASTER BALLOT PROMPTLY**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE RESTRUCTURING HOTLINE AT:**

**U.S. Toll Free: (844) 627-6967**
**International: (347) 292-3534**

**OR EMAIL <u>BRISTOWBALLOTS@PRIMECLERK.COM</u>.**

> **IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS MASTER BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS SEPTEMBER 23, 2019, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, THE VOTES TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

[*Remainder of page intentionally left blank*]

## Exhibit A

**Please check one (and only one) box below to indicate the Plan Class and CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on an exhibit thereto).  If you check more than one box, you risk having all votes submitted through this Master Ballot invalidated**

| Class 8 (Unsecured Notes Claims) | | |
|---|---|---|
| ☐ | 6.25% Senior Notes due 2022 | CUSIP 110394AE3 / ISIN US110394AE39 |
| ☐ | 4.50% Convertible Senior Notes due 2023 | CUSIP 110394AF0 / ISIN US110394AF04 |

**Exhibit 3(e)**

**Form of Beneficial Holder Ballot for Unsecured Notes Claims**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**BENEFICIAL HOLDER BALLOT FOR VOTING TO ACCEPT OR REJECT THE AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF BRISTOW GROUP, INC. AND ITS DEBTOR AFFILIATES, AS MODIFIED**

**BENEFICIAL HOLDER BALLOT FOR HOLDERS OF UNSECURED NOTES CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST FOLLOW THE DIRECTIONS OF YOUR NOMINEE AND ALLOW SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE AND TRANSMIT SUCH VOTE ON A MASTER BALLOT, WHICH MASTER BALLOT MUST BE RETURNED TO THE SOLICITATION AGENT BY SEPTEMBER 23, 2019, AT 4:00 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE").**

**IF, HOWEVER, YOU RECEIVED A "PRE-VALIDATED" BALLOT FROM YOUR NOMINEE WITH INSTRUCTIONS TO SUBMIT SUCH BALLOT DIRECTLY TO THE SOLICITATION AGENT, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST COMPLETE, EXECUTE, AND RETURN THE "PRE-VALIDATED" BALLOT, SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Debtor Affiliates, as Modified* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") as set forth in the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and its Debtor Affiliates, as*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303).  The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

*Modified* (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has conditionally approved the Disclosure Statement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), by entry of an order on August [__], 2019 [Docket No. ____] (the "Disclosure Statement Order"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this Ballot for Beneficial Holders[2] (the "Beneficial Holder Ballot") because you are a Beneficial Holder of a Claim arising on account of Unsecured Notes indicated on **Exhibit A** hereto as of August 21, 2019 (the "Voting Record Date"). Accordingly, you have a right to vote to accept or reject the Plan. You can cast your vote through this Beneficial Holder Ballot and return it to your broker, bank, or other nominee, or the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"), in accordance with the instructions provided by your Nominee, who will then submit a master ballot (the "Master Ballot") on behalf of the Beneficial Holders of the Class of Claims indicated on **Exhibit A** hereto.

Your rights are described in the Disclosure Statement, which was included in the package (the "Solicitation Package") you are receiving with this Beneficial Holder Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov; or (b) at no charge from Prime Clerk LLC (the "Solicitation Agent") by: (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/Bristow; (ii) writing to Bristow Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing bristowballots@primeclerk.com; or (iv) calling the Solicitation Agent at:

<div align="center">

U.S. Toll Free: (844) 627-6967
International: (347) 292-3534

</div>

This Beneficial Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Beneficial Holder Ballot in error, or if you believe that you have received the wrong ballot, please contact your Nominee immediately.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in the Class of Claims indicated on **Exhibit A** hereto, under the Plan. If you hold Claims or Interests in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.

---

[2]   A "Beneficial Holder" means a beneficial owner of publicly-traded securities whose Claims or Interests have not been satisfied prior to the Voting Record Date (as defined herein) pursuant to Bankruptcy Court order or otherwise, as reflected in the records maintained by the Nominees.

<div align="center">

2     [CUSIP/ISIN indicated on Exhibit A hereto]

</div>

In order for your vote to count, your Nominee must receive this Beneficial Holder Ballot in sufficient time for your Nominee to include your vote on a Master Ballot that must be received by the Solicitation Agent on or before the Voting Deadline, which is September 23, 2019, at 4:00 p.m., prevailing Central Time.  Please allow sufficient time for your vote to be included on the Master Ballot completed by your Nominee. If a Master Ballot recording your vote is not received by the Voting Deadline, and if the Voting Deadline is not extended, your vote will not count.

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 8.  Holders of Class 8 Claims will separately receive a copy of the Rights Offering and Cash Out Procedures.  The Rights Offering and Cash Out Procedures provide instructions for, among other things, subscribing to the Rights Offerings provided for under the Plan.  The subscription forms provided with the Rights Offering and Cash Out Procedures also allow Holders to make the Unsecured Cash Out Election (if applicable) and provide certifications with respect to the Holder's status as (1) an accredited investor or qualified institutional buyer and (2) a U.S. citizen.  <u>The elections and certifications described in the Rights Offering and Cash Out Procedures may affect the treatment of the Holder's Claims.</u>  Accordingly, Holders of Class 12 Claims should read the Rights Offering and Cash Out Procedures carefully and follow the instructions set forth therein.**

**<u>Item 1</u>.**          **Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Beneficial Holder of Claims in the Class indicated on **Exhibit A** hereto in the following aggregate unpaid principal amount (insert amount in box below, unless otherwise completed by your Nominee):

$\boxed{\$\text{_____}}$

**<u>Item 2</u>.**          **Vote on Plan.**

The Beneficial Holder of the Claim, the aggregate amount of which is set forth in Item 1, votes to (please check only <u>one</u>):

| | |
|---|---|
| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |

**<u>Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.</u>**

**<u>Item 3</u>.**          **Important information regarding the Third Party Release.**

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.C OF THE PLAN SET FORTH BELOW.**

**IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.C OF THE PLAN** ONLY IF **YOU CHECK THE BOX BELOW AND (A) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN OR (B) VOTE TO REJECT THE PLAN. IF YOU (A) VOTE TO ACCEPT THE PLAN, (B) FAIL TO SUBMIT A BALLOT BY THE VOTING DEADLINE, (C) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN WITHOUT CHECKING THE BOX BELOW, OR (D) VOTE TO REJECT THE PLAN WITHOUT CHECKING THE BOX BELOW, IN EACH CASE YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN.**

**The Beneficial Holder of the Claims identified in Item 1 elects to:**

> ☐ **OPT OUT of the Third Party Release**

**Article VIII.C of the Plan contains the following provision:**

As of the Effective Date, except as otherwise provided herein, each Releasing Party is deemed to have fully, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:

1. the Debtors, the business or contractual arrangement between the Debtors and any Releasing Party, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the 2019 Term Loan Facility, the Compensation and Benefit Programs, intercompany transactions, or the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Plan, the Disclosure Statement, Rights Offering Procedures, or any other Restructuring Documents;

2. any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Original RSA, the Original DIP Commitment Letter, the Initial Amended RSA, the Disclosure Statement, or the Plan, including the Rights Offering, the Backstop Commitment Agreement, the DIP Facility, the Exit Facility, the Amended and Restated 2019 Term Loan Facility, or any other Restructuring Documents;

[CUSIP/ISIN indicated on Exhibit A hereto]

3.      the Chapter 11 Cases, the Disclosure Statement, the Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan or the Rights Offering, or the distribution of property under the Plan or any other related agreement with respect to the foregoing; or

4.      any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, (ii) the rights of any current employee of the Debtors under any employment agreement or plan, (iii) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (iv) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (v) the rights of Holders of Allowed Claims to receive distributions under the Plan, (vi) any Cause of Action the Debtors may have against Columbia Helicopters, Inc. and its Related Parties, or (vii) any Cause of Action the Debtors may have against any of their former officers or directors as of the Petition Date in respect of payments made and referenced under any separation, retirement, consulting agreement, employment agreement or plan.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing release, which includes by reference each of the related provisions and definitions contained herein, and further, will constitute the Bankruptcy Court's finding that the foregoing release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable, and reasonable; and (v) given and made after due notice and opportunity for hearing.

<div align="center">*      *      *</div>

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE DIP FACILITY AGENT; (D) THE DIP FACILITY LENDERS; (E) THE BACKSTOP COMMITMENT PARTIES; (F) THE HOLDERS OF 2019 TERM LOAN FACILITY CLAIMS; (G) THE 2019 TERM LOAN FACILITY AGENT; (H) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY LENDERS; (I) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY AGENT; (J) THE SUPPORTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEES;

(L) THE EXIT FACILITY LENDERS; (M) THE EXIT FACILITY AGENT; (N) ALL HOLDERS OF CLAIMS; (O) ALL HOLDERS OF INTERESTS; (P) THE MILESTONE PARTIES; (Q) THE CREDITORS' COMMITTEE AND EACH OF ITS CURRENT AND FORMER MEMBERS; (R) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (Q); AND (S) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (R); PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN OR (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN SHALL NOT BE A "RELEASING PARTY"; PROVIDED, FURTHER, THAT FOR THE AVOIDANCE OF DOUBT, NO HOLDER OF A CLAIM THAT IS PARTY TO OR HAS OTHERWISE SIGNED THE RESTRUCTURING SUPPORT AGREEMENT MAY OPT OUT OF THE RELEASES.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE DIP FACILITY AGENT; (D) THE DIP FACILITY LENDERS; (E) THE BACKSTOP COMMITMENT PARTIES; (F) THE HOLDERS OF 2019 TERM LOAN FACILITY CLAIMS; (G) THE 2019 TERM LOAN FACILITY AGENT; (H) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY LENDERS; (I) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY AGENT; (J) THE SUPPORTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEES; (L) THE EXIT FACILITY LENDERS; (M) THE EXIT FACILITY AGENT; (N) THE MILESTONE PARTIES; (O) THE CREDITORS' COMMITTEE AND EACH OF ITS CURRENT AND FORMER MEMBERS; (P) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (O); AND (Q) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (P); PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN OR (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN SHALL NOT BE A "RELEASED PARTY."

---

ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO THE INCLUSION OF SUCH HOLDER AS A RELEASING PARTY UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN OR DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN AS PROVIDED FOR IN THIS BALLOT WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. BY OBJECTING TO OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

**Item 4.**        **Other Beneficial Holder Ballots Submitted.**

By returning this Beneficial Holder Ballot, the Holder of the Claims identified in Item 1 certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for Claims identified in Item 1 owned by such Holder, except as identified in the following table, and (b) all Beneficial Holder Ballots submitted by the Holder in the same Class indicate the same vote to accept or reject the Plan that the Holder has indicated in Item 2 of this Beneficial Holder Ballot (please use additional sheets of paper if necessary):

**ONLY COMPLETE THIS TABLE IF YOU HAVE VOTED OTHER
CLAIMS IN THE SAME CLASS ON OTHER BENEFICIAL HOLDER BALLOTS**

| Account Number | Name of Registered Holder or Nominee | Principal Amount of Other Claims Voted | CUSIP of Other Claims Voted |
|---|---|---|---|
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |

**Item 5.**        **Certifications.**

By signing this Beneficial Holder Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

    (a)        as of the Voting Record Date, either: (i) the Entity is the Holder of the Claims being voted on this Beneficial Holder Ballot; or (ii) the Entity is an authorized signatory for the Entity that is the Holder of the Claims being voted on this Beneficial Holder Ballot;

    (b)        the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

[CUSIP/ISIN indicated on Exhibit A hereto]

(c)     the Entity has cast the same vote with respect to all Claims in a single Class; and

(d)     no other Beneficial Holder Ballots with respect to the amount of the Claims identified in Item 1 have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such earlier received Beneficial Holder Ballots are hereby revoked.

Name of Holder: _____

(Print or Type)

Signature: _____

Name of Signatory: _____

(If other than the Beneficial Holder)

Title: _____

Address: _____

_____

_____

Telephone
Number: _____

Email: _____

Date Completed: _____

8      [CUSIP/ISIN indicated on Exhibit A hereto]

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) *PROMPTLY* IN THE ENVELOPE
PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS
PROVIDED BY YOUR NOMINEE.**

<div style="border:1px solid black; padding:10px;">

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THE MASTER BALLOT SUBMITTED ON YOUR BEHALF WHICH REFLECTS YOUR VOTE ON OR BEFORE SEPTEMBER 23, 2019, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY THIS BENEFICIAL HOLDER BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

</div>

## INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL HOLDER BALLOT

1. The Debtors are soliciting the votes of Holders of Claims and Interests with respect to the Plan attached as <u>Exhibit A</u> to the Disclosure Statement. Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Beneficial Holder Ballot. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER BALLOT.**

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. Unless otherwise instructed by your Nominee, to ensure that your vote is counted, you must submit your Beneficial Holder Ballot to your Nominee in sufficient time to allow your Nominee to process your vote and submit a Master Ballot so that the Master Ballot is actually received by the Solicitation Agent by the Voting Deadline. You may instruct your Nominee to vote on your behalf in the Master Ballot as follows: (a) complete the Beneficial Holder Ballot; (b) indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Beneficial Holder Ballot; and (c) sign and return the Beneficial Holder Ballot to your Nominee in accordance with the instructions provided by your Nominee. The Voting Deadline for the receipt of Master Ballots by the Solicitation Agent is <u>September 23, 2019, at 4:00 p.m.</u>, prevailing Central Time. Your completed Beneficial Holder Ballot must be received by your Nominee in sufficient time to permit your Nominee to deliver your votes to the Solicitation Agent on or before the Voting Deadline.

4. **The following Beneficial Holder Ballots will <u>not</u> be counted**:

    (a)   any Beneficial Holder Ballot that partially rejects and partially accepts the Plan;

(b)  Beneficial Holder Ballot sent to the Debtors, the Debtors' agents (other than the Solicitation Agent and only with respect to a pre-validated Beneficial Holder Ballot), any indenture trustee, or the Debtors' financial or legal advisors;

(c)  Beneficial Holder Ballot returned to a Nominee not in accordance with the Nominee's instructions;

(d)  any Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

(e)  any Beneficial Holder Ballot cast by an Entity that does not hold a Claim in the Class indicated on **Exhibit A** hereto;

(f)  any Beneficial Holder Ballot submitted by a Holder not entitled to vote pursuant to the Plan;

(g)  any unsigned Beneficial Holder Ballot (except in accordance with the Nominee's instructions);

(h)  any non-original Beneficial Holder Ballot (except in accordance with the Nominee's instructions); and/or

(i)  any Beneficial Holder Ballot not marked to accept or reject the Plan or any Beneficial Holder Ballot marked both to accept and reject the Plan.

5.  If your Beneficial Holder Ballot is not received by your Nominee in sufficient time to be included on a timely submitted Master Ballot, it will not be counted unless the Debtors determine otherwise.  In all cases, Beneficial Holders should allow sufficient time to assure timely delivery of your Beneficial Holder Ballot to your Nominee.  No Beneficial Holder Ballot should be sent to any of the Debtors, the Debtors' agents (other than the Solicitation Agent and only with respect to a pre-validated Beneficial Holder Ballot), the Debtors' financial or legal advisors, or any indenture trustee, and if so sent will not be counted.

6.  If you deliver multiple Beneficial Holder Ballots to your Nominee with respect to the same Claims prior to the Voting Deadline, the last received valid Beneficial Holder Ballot timely received will supersede and revoke any earlier received Beneficial Holder Ballots.

7.  You must vote all of your Claims within the same Class either to accept or reject the Plan and may **not** split your vote.  Further, if a Holder has multiple Claims within the same Class, the Debtors may, in their discretion, aggregate the Claims of any particular Holder with multiple Claims within the same Class for the purpose of counting votes.

8.  This Beneficial Holder Ballot does not constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

9.  **Please be sure to sign and date your Beneficial Holder Ballot**.  If you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative

capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Beneficial Holder Ballot.

10.     If you hold Claims in more than one Class under the Plan you may receive more than one ballot coded for each different Class.  Each ballot votes **only** your Claims indicated on that ballot, so please complete and return each ballot that you receive.

11.     The Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan.  Accordingly, at this time, Holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with a ballot.

**PLEASE SUBMIT YOUR BENEFICIAL HOLDER BALLOT PROMPTLY IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE RESTRUCTURING HOTLINE AT:**

U.S. Toll Free: (844) 627-6967
International: (347) 292-3534

**OR EMAIL BRISTOWBALLOTS@PRIMECLERK.COM.**

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THE MASTER BALLOT ON OR BEFORE SEPTEMBER 23, 2019, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY THIS BENEFICIAL HOLDER BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

---

[*Remainder of page intentionally left blank*]

**Exhibit A**

**Please check one (and only one) box below to indicate the Plan Class and CUSIP/ISIN to which this Beneficial Holder Ballot pertains (or clearly indicate such information directly on the Beneficial Holder Ballot or on an exhibit thereto).  If you check more than one box, you risk having all votes submitted through this Master Ballot invalidated**

| Class 8 (Unsecured Notes Claims) | | |
|---|---|---|
| ☐ | 6.25% Senior Notes due 2022 | CUSIP 110394AE3 / ISIN US110394AE39 |
| ☐ | 4.50% Convertible Senior Notes due 2023 | CUSIP 110394AF0 / ISIN US110394AF04 |

**<u>Exhibit 3(f)</u>**

**Form of Ballot for General Unsecured Claims**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| BRISTOW GROUP INC., *et al.*,[1] | Case No. 19-32713 (DRJ) |
| Debtors. | Jointly Administered |

**BALLOT FOR VOTING TO ACCEPT OR REJECT THE**
**AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF**
**BRISTOW GROUP, INC. AND ITS DEBTOR AFFILIATES, AS MODIFIED**

**BALLOT FOR HOLDERS OF CLASS 12 GENERAL UNSECURED CLAIMS**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**
>
> **IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE SOLICITATION AGENT BY SEPTEMBER 23, 2019, AT 4:00 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE FOLLOWING:**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group, Inc. and Its Debtor Affiliates, as Modified* (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") as set forth in the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group, Inc. and Its Debtor Affiliates, as Modified* (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") has conditionally approved the Disclosure Statement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), by entry of an order on August [__], 2019 [Docket No.____] (the "Disclosure Statement Order"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303). The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

You are receiving this ballot (this "<u>Ballot</u>") because you are a Holder of a General Unsecured Claim (your "<u>General Unsecured Claim</u>") as of August 21, 2019 (the "<u>Voting Record Date</u>"). Accordingly, you have a right to vote to accept or reject the Plan.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHOM YOU HAVE A GENERAL UNSECURED CLAIM.**

Your rights are described in the Disclosure Statement, which was included in the package (the "<u>Solicitation Package</u>") you are receiving with this Ballot (as well as the Plan, Disclosure Statement Order, and certain other materials).  If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txs.uscourts.gov; or (b) at no charge from Prime Clerk LLC (the "<u>Solicitation Agent</u>") by: (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/Bristow; (ii) writing to Bristow Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing bristowballots@primeclerk.com; or (iv) calling the Solicitation Agent at:

<div align="center">

U.S. Toll Free: (844) 627-6967
International: (347) 292-3534

</div>

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim.  Your General Unsecured Claim has been placed in Class 12 under the Plan.  If you hold Claims or Interests in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**<u>Via Paper Ballot</u>.  Complete, sign, and date this Ballot and return it (with an original signature) promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to:**

<div align="center">

**Bristow Ballot Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**


***OR***

</div>

<div align="center">2</div>

**Via E-Ballot Portal.**  Submit your Ballot via the Solicitation Agent's online portal, by visiting https://cases.primeclerk.com/Bristow (the "**E-Ballot Portal**").  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Ballot.

**IMPORTANT NOTE:  You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique E-Ballot ID#:** _____

**The Solicitation Agent's E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**Each E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your electronic Ballot.  Please complete and submit an electronic Ballot for each E-Ballot ID# you receive, as applicable.**

**Creditors who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.**

**IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 12.**  Holders of Class 12 Claims will separately receive a copy of the Rights Offering and Cash Out Procedures. The Rights Offering and Cash Out Procedures provide instrutions for, among other things, subscribing to the Rights Offerings provided for under the Plan.  The subscription forms provided with the Rights Offering and Cash Out Procedures also allow Holders to make the GUC Cash Out Election and provide certifications with respect to the Holder's status as (1) an accredited investor or qualified institutional buyer and (2) a U.S. citizen.  **The elections and certifications described in the Rights Offering and Cash Out Procedures may affect the treatment of the Holder's Claims.**  Accordingly, Holders of Class 12 Claims should read the Rights Offering and Cash Out Procedures carefully and follow the instructions set forth therein.

**Item 1.       Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of General Unsecured Claims in the following aggregate unpaid amount:

$_____

**Item 2.       Vote on Plan.**

The Holder of the General Unsecured Claims set forth in Item 1 votes to (please check only one):

☐ **ACCEPT** (vote FOR) the Plan                    ☐ **REJECT** (vote AGAINST) the Plan

3

**Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.**

**Item 3.**          Important information regarding the Third Party Release.

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.C OF THE PLAN SET FORTH BELOW.**

**IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.C OF THE PLAN <u>ONLY IF</u> YOU CHECK THE BOX BELOW AND (A) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN OR (B) VOTE TO REJECT THE PLAN.  IF YOU (A) VOTE TO ACCEPT THE PLAN, (B) FAIL TO SUBMIT A BALLOT BY THE VOTING DEADLINE, (C) SUBMIT THE BALLOT BUT ABSTAIN FROM VOTING TO ACCEPT OR REJECT THE PLAN WITHOUT CHECKING THE BOX BELOW, OR (D) VOTE TO REJECT THE PLAN WITHOUT CHECKING THE BOX BELOW, IN EACH CASE YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN.**

**The Holder of the Class 12 General Unsecured Claim identified in Item 1 elects to:**

| ☐ **OPT OUT of the Third Party Release** |
| --- |

**Article VIII.C of the Plan contains the following provision**:

          As of the Effective Date, except as otherwise provided herein, each Releasing Party is deemed to have fully, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:

          1.          the Debtors, the business or contractual arrangement between the Debtors and any Releasing Party, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the 2019 Term Loan Facility, the Compensation and Benefit Programs, intercompany transactions, or the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement,

4

the Plan, the Disclosure Statement, Rights Offering Procedures, or any other Restructuring Documents;

2.        any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Original RSA, the Original DIP Commitment Letter, the Initial Amended RSA, the Disclosure Statement, or the Plan, including the Rights Offering, the Backstop Commitment Agreement, the DIP Facility, the Exit Facility, the Amended and Restated 2019 Term Loan Facility, or any other Restructuring Documents;

3.        the Chapter 11 Cases, the Disclosure Statement, the Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan or the Rights Offering, or the distribution of property under the Plan or any other related agreement with respect to the foregoing; or

4.        any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, (ii) the rights of any current employee of the Debtors under any employment agreement or plan, (iii) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (iv) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (v) the rights of Holders of Allowed Claims to receive distributions under the Plan, (vi) any Cause of Action the Debtors may have against Columbia Helicopters, Inc. and its Related Parties, or (vii) any Cause of Action the Debtors may have against any of their former officers or directors as of the Petition Date in respect of payments made and referenced under any separation, retirement, consulting agreement, employment agreement or plan.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing release, which includes by reference each of the related provisions and definitions contained herein, and further, will constitute the Bankruptcy Court's finding that the foregoing release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released; (iii) in the best interest of the Debtors and their Estates;

(iv) fair, equitable, and reasonable; and (v) given and made after due notice and opportunity for hearing.

<p style="text-align:center">*  *  *</p>

UNDER THE PLAN, "<u>RELEASING PARTIES</u>" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE DIP FACILITY AGENT; (D) THE DIP FACILITY LENDERS; (E) THE BACKSTOP COMMITMENT PARTIES; (F) THE HOLDERS OF 2019 TERM LOAN FACILITY CLAIMS; (G) THE 2019 TERM LOAN FACILITY AGENT; (H) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY LENDERS; (I) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY AGENT; (J) THE SUPPORTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEES; (L) THE EXIT FACILITY LENDERS; (M) THE EXIT FACILITY AGENT; (N) ALL HOLDERS OF CLAIMS; (O) ALL HOLDERS OF INTERESTS; (P) THE MILESTONE PARTIES; (Q) THE CREDITORS' COMMITTEE AND EACH OF ITS CURRENT AND FORMER MEMBERS; (R) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (Q); AND (S) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (R); PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN OR (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN SHALL NOT BE A "RELEASING PARTY"; PROVIDED, FURTHER, THAT FOR THE AVOIDANCE OF DOUBT, NO HOLDER OF A CLAIM THAT IS PARTY TO OR HAS OTHERWISE SIGNED THE RESTRUCTURING SUPPORT AGREEMENT MAY OPT OUT OF THE RELEASES.

UNDER THE PLAN, "<u>RELEASED PARTIES</u>" MEANS, COLLECTIVELY, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) THE DIP FACILITY AGENT; (D) THE DIP FACILITY LENDERS; (E) THE BACKSTOP COMMITMENT PARTIES; (F) THE HOLDERS OF 2019 TERM LOAN FACILITY CLAIMS; (G) THE 2019 TERM LOAN FACILITY AGENT; (H) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY LENDERS; (I) THE AMENDED AND RESTATED 2019 TERM LOAN FACILITY AGENT; (J) THE SUPPORTING NOTEHOLDERS; (K) THE INDENTURE TRUSTEES; (L) THE EXIT FACILITY LENDERS; (M) THE EXIT FACILITY AGENT; (N) THE MILESTONE PARTIES; (O) THE CREDITORS' COMMITTEE AND EACH OF ITS CURRENT AND FORMER MEMBERS; (P) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (O); AND (Q) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (P); PROVIDED THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) VALIDLY OPTS OUT OF THE RELEASES CONTAINED IN THE PLAN OR (Y) FILES AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN SHALL NOT BE A "RELEASED PARTY."

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO THE INCLUSION OF SUCH HOLDER AS A RELEASING PARTY UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN OR DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN USING THE ENCLOSED OPT OUT FORM WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. BY OBJECTING TO OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**Item 4.**  **Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)  as of the Voting Record Date, either: (i) the Entity is the Holder of the General Unsecured Claims being voted; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the General Unsecured Claims being voted;

(b)  the Entity (or in the case of an authorized signatory, the Holder) has received the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c)  the Entity has cast the same vote with respect to all General Unsecured Claims; and

(d)  no other Ballots with respect to the amount of the General Unsecured Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such General Unsecured Claims, then any such earlier Ballots are hereby revoked.

7

Name of Holder: _____
                        (Print or Type)


Signature: _____

Name of Signatory: _____
                        (If other than the Holder)

Title: _____

Address: _____

_____

_____

Telephone
Number: _____

Email: _____

Date Completed: _____

---

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE SEPTEMBER 23, 2019, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

---

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.     The Debtors are soliciting the votes of Holders of Claims or Interests with respect to the Plan attached as Exhibit A to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan, a copy of which also accompanies the Ballot.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.     The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided

8

by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.   To ensure that your Ballot is counted, you **must** complete and submit this Ballot as instructed herein.  **Ballots will not be accepted by electronic mail or facsimile.**

4.   <u>Use of Ballot</u>.  To ensure that your Ballot is counted, you must: (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and submit your Ballot as instructed herein.

5.   Your Class Ballot **must** be returned to the Solicitation Agent so as to be ***actually received*** by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is <u>September 23, 2019, at 4:00 p.m.</u>, prevailing Central Time.**

6.   If a Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the sole and absolute discretion of the Debtors.  Additionally, **the following Ballots will *not* be counted**:

   (a)   any Ballot that partially rejects and partially accepts the Plan;

   (b)   Ballots sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), any agent, indenture trustee, or the Debtors' financial or legal advisors;

   (c)   Ballots sent by electronic mail or facsimile;

   (d)   any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

   (e)   any Ballot cast by an Entity that does not hold a General Unsecured Claim;

   (f)   any Ballot submitted by a Holder not entitled to vote pursuant to the Plan;

   (g)   any unsigned Ballot (for the avoidance of doubt, Ballots validly submitted through the E-Ballot Portal will be deemed signed);

   (h)   any non-original Ballot (for the avoidance of doubt, Ballots validly submitted through the E-Ballot Portal will be deemed original); and/or

   (i)   any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan.

7.   The method of delivery of Ballots to the Solicitation Agent is at the election and risk of each Holder of a General Unsecured Claim.  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent ***actually receives*** the originally executed Ballot.  In all cases, Holders should allow sufficient time to assure timely delivery.

8.  If multiple Ballots are received from the same Holder of a Class 12 Claim with respect to the same Class 12 General Unsecured Claim prior to the Voting Deadline, the latest, timely received, and properly completed Ballot will supersede and revoke any earlier received Ballots.

9.  You must vote all of your General Unsecured Claims within Class 12 either to accept or reject the Plan and may *not* split your vote.

10.  This Ballot does *not* constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

11.  **<u>Please be sure to sign and date your Ballot</u>**.  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the ballot.

12.  If you hold Claims or Interests in more than one Class under the Plan you may receive more than one ballot coded for each different Class.  Each ballot votes *only* your Claims or Interests indicated on that ballot, so please complete and return each ballot that you receive.

<div align="center">

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CALL THE RESTRUCTURING HOTLINE AT:**
**U.S. TOLL FREE: (844) 627-6967**
**INTERNATIONAL: (347) 292-3534**

**OR EMAIL BRISTOWBALLOTS@PRIMECLERK.COM.**

</div>

**IF THE SOLICITATION AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS ON SEPTEMBER 23, 2019, AT 4:00 P.M., PREVAILING CENTRAL TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

## __Exhibit 4__

**Presumed to Accept Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NON-VOTING STATUS NOTICE**
**WITH RESPECT TO UNIMPAIRED CLASSES PRESUMED**
**TO ACCEPT THE AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**OF BRISTOW GROUP INC. AND ITS AFFILIATED DEBTORS, AS MODIFIED**

    **PLEASE TAKE NOTICE THAT** on [], 2019, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No._] (the "Disclosure Statement Order") that, among other things:  (a) conditionally approved the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. ___] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") as containing adequate information, as required under § 1125(a) of title 11 of the United States Code (the "Bankruptcy Code"); and (b) authorized the Debtors to solicit votes with regard to the acceptance or rejection of the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. ___] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Plan").[2]

    **PLEASE TAKE FURTHER NOTICE THAT** the Disclosure Statement, Disclosure Statement Order, the Plan, and other documents and materials included in the Solicitation Package may be obtained by (a) accessing the Solicitation Agent's website at https://cases.primeclerk.com/Bristow, (b) writing to the Solicitation Agent at Bristow Group Inc. Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, (c) emailing bristowballots@primeclerk.com, (d) calling the Solicitation Agent's toll-free information line with respect to the Debtors at (844) 627-6967 (U.S. and Canada) or (347) 292-3534 (International), and/or (e) visiting the website maintained by the Court at http://www.txs.uscourts.gov/bankruptcy.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303).  The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or Disclosure Statement Order, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because, pursuant to the terms of Article III of the Plan and the applicable provisions of the Bankruptcy Code, your Claim(s) against the Debtors are Unimpaired and, therefore, pursuant to § 1126(f) of the Bankruptcy Code, you are conclusively presumed to have accepted the Plan and are, therefore, not entitled to vote on the Plan.  Accordingly, this notice and the Combined Hearing Notice are being sent to you for informational purposes only.

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Claim(s), you should contact the Debtors in accordance with the instructions provided above.

Houston, Texas
Dated:  August [•], 2019

**BAKER BOTTS L.L.P.**

*/s/ Omar J. Alaniz*
James R. Prince, State Bar No. 00784791
Omar J. Alaniz, State Bar No. 24040402
Kevin Chiu, State Bar No. 24109723
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201-2980
Telephone:  (214) 953-6500
Facsimile:  (214) 953-6503
Email: jim.prince@bakerbotts.com
          omar.alaniz@bakerbotts.com
          kevin.chiu@bakerbotts.com


-and-

Emanuel C. Grillo (*pro hac vice*)
Chris Newcomb (*pro hac vice*)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, New York   10112-4498
Telephone:  (212) 408-2500
Facsimile:  (212) 408-2501
Email: emanuel.grillo@bakerbotts.com
                chris.newcomb@bakerbotts.com


*Co-Counsel to the Debtors and Debtors in Possession*

**WACHTELL, LIPTON, ROSEN & KATZ**

Richard G. Mason (*pro hac vice*)
Amy R. Wolf (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
Email:  rgmason@wlrk.com
          arwolf@wlrk.com


*Co-Counsel to the Debtors and Debtors in Possession*

2

**<u>Exhibit 5</u>**

**Presumed to Reject Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**NON-VOTING STATUS NOTICE**
**WITH RESPECT TO IMPAIRED CLASSES PRESUMED TO REJECT**
**THE AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF**
**BRISTOW GROUP INC. AND ITS AFFILIATED DEBTORS, AS MODIFIED**

       **PLEASE TAKE NOTICE THAT** on [], 2019, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No._] (the "Disclosure Statement Order") that, among other things: (a) conditionally approved the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. ___] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") as containing adequate information, as required under § 1125(a) of title 11 of the United States Code (the "Bankruptcy Code"); and (b) authorized the Debtors to solicit votes with regard to the acceptance or rejection of the *Amended Joint Chapter Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. ___] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Plan").[2]

       **PLEASE TAKE FURTHER NOTICE THAT** the Disclosure Statement, Disclosure Statement Order, the Plan, and other documents and materials included in the Solicitation Package may be obtained by (a) accessing the Solicitation Agent's website at https://cases.primeclerk.com/Bristow, (b) writing to the Solicitation Agent at Bristow Group Inc. Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, (c) emailing bristowballots@primeclerk.com, (d) calling the Solicitation Agent's toll-free information line with respect to the Debtors at (844) 627-6967 (U.S. and Canada) or (347) 292-3534 (International), and/or (e) visiting the website maintained by the Court at http://www.txs.uscourts.gov/bankruptcy.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303). The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or Disclosure Statement Order, as applicable.

1

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because, under the terms of Article III of the Plan your Claim(s) against the Debtors are Impaired and you will receive no distribution on account of such Claim(s) under the Plan.  Accordingly, pursuant to § 1126(g) of the Bankruptcy Code, you are deemed to have rejected the Plan and are, therefore, not entitled to vote on the Plan.  Accordingly, this notice and the Combined Hearing Notice are being sent to you for informational purposes only.

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO THE INCLUSION OF SUCH HOLDER AS A RELEASING PARTY[3] UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN OR DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN BY SUBMITTING THE ATTACHED OPT OUT FORM AS INSTRUCTED THEREIN WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.[4]  BY OBJECTING TO OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

*[remainder of page intentionally left blank]*

---

[3]  Under the Plan, "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Facility Agent; (d) the DIP Facility Lenders; (e) the Backstop Commitment Parties; (f) the Holders of 2019 Term Loan Facility Claims; (g) the 2019 Term Loan Facility Agent; (h) the Amended and Restated 2019 Term Loan Facility Lenders; (i) the Amended and Restated 2019 Term Loan Facility Agent; (j) the Supporting Noteholders; (k) the Indenture Trustees; (l) the Exit Facility Lenders; (m) the Exit Facility Agent; (n) all Holders of Claims; (o) all Holders of Interests; (p) the Milestone Parties; (q) the Creditors' Committee and each of its current and former members; (r) each current and former Affiliate of each Entity in clause (a) through (q); and (s) each Related Party of each Entity in clause (a) through (r); *provided that* any holder of a Claim or Interest that (x) validly opts out of the releases contained in the Plan or (y) files an objection to the releases contained in the Plan shall not be a "Releasing Party"; *provided*, *further*, that for the avoidance of doubt, no Holder of a Claim that is party to or has otherwise signed the Restructuring Support Agreement may opt out of the releases.

[4]  Under the Plan, "*Released Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Facility Agent; (d) the DIP Facility Lenders; (e) the Backstop Commitment Parties; (f) the Holders of 2019 Term Loan Facility Claims; (g) the 2019 Term Loan Facility Agent; (h) the Amended and Restated 2019 Term Loan Facility Lenders; (i) the Amended and Restated 2019 Term Loan Facility Agent; (j) the Supporting Noteholders; (k) the Indenture Trustees; (l) the Exit Facility Lenders; (m) the Exit Facility Agent; (n) the Milestone Parties; (o) the Creditors' Committee and each of its current and former members; (p) each current and former Affiliate of each Entity in clause (a) through (o); and (q) each Related Party of each Entity in clause (a) through (p); *provided that* any holder of a Claim or Interest that (x) validly opts out of the releases contained in the Plan or (y) files an objection to the releases contained in the Plan shall not be a "Released Party."

2

**PLEASE TAKE FURTHER NOTICE THAT** if you have any questions about the status of any of your Claim(s), you should contact the Debtors in accordance with the instructions provided above.

Houston, Texas
Dated:  August [•], 2019

**BAKER BOTTS L.L.P.**

_/s/ Omar J. Alaniz_____
James R. Prince, State Bar No. 00784791
Omar J. Alaniz, State Bar No. 24040402
Kevin Chiu, State Bar No. 24109723
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201-2980
Telephone:  (214) 953-6500
Facsimile:  (214) 953-6503
Email: jim.prince@bakerbotts.com
        omar.alaniz@bakerbotts.com
        kevin.chiu@bakerbotts.com


-and-

Emanuel C. Grillo (_pro hac vice_)
Chris Newcomb (_pro hac vice_)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, New York   10112-4498
Telephone:  (212) 408-2500
Facsimile:  (212) 408-2501
Email:  emanuel.grillo@bakerbotts.com
        chris.newcomb@bakerbotts.com


_Co-Counsel to the Debtors and Debtors in Possession_

**WACHTELL, LIPTON, ROSEN & KATZ**

Richard G. Mason (_pro hac vice_)
Amy R. Wolf (_pro hac vice_)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
Email:  rgmason@wlrk.com
        arwolf@wlrk.com


_Co-Counsel to the Debtors and Debtors in Possession_

## Third Party Release Opt Out Form

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE VIII.C OF THE PLAN SET FORTH BELOW.**

**IF YOU ELECT TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

**YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN ARTICLE VIII.C OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW AND RETURN THIS FORM TO THE DEBTORS SOLICITATION AGENT SO THAT IT IS RECEIVED BY SEPTEMBER 18, 2019.  IF YOU FAIL TO TIMELY SUBMIT THIS FORM OR SUBMIT THE FORM WITHOUT CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN.**

☐ **OPT OUT of the Third Party Release**

**Article VIII.C of the Plan contains the following provision:**

**RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.  As of the Effective Date, except as otherwise provided herein, each Releasing Party[1] is deemed to have fully, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor, Reorganized Debtor, and Released Party[2] from any and all Causes of Action,**

---

[1]  Under the Plan, "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Facility Agent; (d) the DIP Facility Lenders; (e) the Backstop Commitment Parties; (f) the Holders of 2019 Term Loan Facility Claims; (g) the 2019 Term Loan Facility Agent; (h) the Amended and Restated 2019 Term Loan Facility Lenders; (i) the Amended and Restated 2019 Term Loan Facility Agent; (j) the Supporting Noteholders; (k) the Indenture Trustees; (l) the Exit Facility Lenders; (m) the Exit Facility Agent; (n) all Holders of Claims; (o) all Holders of Interests; (p) the Milestone Parties; (q) the Creditors' Committee and each of its current and former members; (r) each current and former Affiliate of each Entity in clause (a) through (q); and (s) each Related Party of each Entity in clause (a) through (r); *provided that* any holder of a Claim or Interest that (x) validly opts out of the releases contained in the Plan or (y) files an objection to the releases contained in the Plan shall not be a "Releasing Party"; *provided*, *further*, that for the avoidance of doubt, no Holder of a Claim that is party to or has otherwise signed the Restructuring Support Agreement may opt out of the releases.

[2]  Under the Plan, "*Released Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the DIP Facility Agent; (d) the DIP Facility Lenders; (e) the Backstop Commitment Parties; (f) the Holders of 2019 Term Loan Facility Claims; (g) the 2019 Term Loan Facility Agent; (h) the Amended and Restated 2019 Term Loan Facility Lenders; (i) the Amended and Restated 2019 Term Loan Facility Agent; (j) the Supporting Noteholders; (k) the Indenture Trustees; (l) the Exit Facility Lenders; (m) the Exit Facility Agent; (n) the Milestone Parties; (o) the Creditors' Committee and each of its current and former members; (p) each current and former Affiliate of each Entity in clause (a) through (o); and (q) each Related Party of each Entity in clause (a) through (p); *provided that* any holder of a Claim or Interest that (x) validly opts out of

1

including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:

1.      the Debtors, the business or contractual arrangement between the Debtors and any Releasing Party, any Securities issued by the Debtors and the ownership thereof, the Debtors' in- or out-of-court restructuring efforts, the 2019 Term Loan Facility, the Compensation and Benefit Programs, intercompany transactions, or the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Plan, the Disclosure Statement, Rights Offering Procedures, or any other Restructuring Documents;

2.      any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Original RSA, the Original DIP Commitment Letter, the Initial Amended RSA, the Disclosure Statement, or the Plan, including the Rights Offering, the Backstop Commitment Agreement, the DIP Facility, the Exit Facility, the Amended and Restated 2019 Term Loan Facility, or any other Restructuring Documents;

3.      the Chapter 11 Cases, the Disclosure Statement, the Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan or the Rights Offering, or the distribution of property under the Plan or any other related agreement with respect to the foregoing; or

4.      any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, (ii) the rights of any current employee of the Debtors under any employment agreement or plan, (iii) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (iv) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (v) the rights of Holders of Allowed Claims to receive

---

the releases contained in the Plan or (y) files an objection to the releases contained in the Plan shall not be a "Released Party."

distributions under the Plan, (vi) any Cause of Action the Debtors may have against Columbia Helicopters, Inc. and its Related Parties, or (vii) any Cause of Action the Debtors may have against any of their former officers or directors as of the Petition Date in respect of payments made and referenced under any separation, retirement, consulting agreement, employment agreement or plan.

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing release, which includes by reference each of the related provisions and definitions contained herein, and further, will constitute the Bankruptcy Court's finding that the foregoing release is:  (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the Claims released; (iii) in the best interest of the Debtors and their Estates; (iv) fair, equitable, and reasonable; and (v) given and made after due notice and opportunity for hearing.

**Acknowledgments.** By signing this Opt Out Form, the undersigned certifies that the undersigned has the power and authority to elect whether to grant the releases contained in Article VIII.C of the Plan and has elected not to be a Releasing Party under the Plan.

Name of Holder _____

Signature_____

Title (if applicable) _____

Name of Institution _____

Street Address _____

City, State, Zip Code _____

Telephone Number_____

Email Address_____

Date Completed_____

**PLEASE SUBMIT YOUR OPT OUT FORM BY ONE OF THE FOLLOWING TWO METHODS:**

**Via Paper Form**.  Complete, sign, and date this Opt Out Form and return it (with an original signature) promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to:

<div align="center">

**Bristow Ballot Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**
***OR***

</div>

**Via E-Ballot Portal**.  Submit your Opt Out Form via the Solicitation Agent's online portal, by visiting https://cases.primeclerk.com/Bristow (the "E-Ballot Portal").  Click on the "Submit E-Ballot" section of the website and follow the instructions to submit your Opt Out Form.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Opt-Out Form:**

**Unique E-Ballot ID#:**_____

**The Solicitation Agent's E-Ballot Portal is the sole manner in which Opt Out Forms will be accepted via electronic or online transmission.  Opt Out Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**If you hold Existing Interests through a broker nominee, you cannot submit your Opt-Out via E-Ballot; rather, you must complete and return the paper Opt-Out Form.**

Parties that submit their Opt Out Form using the E-Ballot Portal should NOT also submit a paper Opt Out Form.

**<u>Exhibit 6(a)</u>**

**Form of Notice of Assumption of Executory Contracts and Unexpired Leases**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF (A) EXECUTORY CONTRACTS AND
UNEXPIRED LEASES TO BE ASSUMED BY THE DEBTORS
PURSUANT TO THE PLAN, (B) CURE AMOUNTS, IF ANY,
AND (C) RELATED PROCEDURES IN CONNECTION THEREWITH**

**PLEASE TAKE NOTICE THAT** on [], 2019, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No._] (the "Disclosure Statement Order") that, among other things: (a) conditionally approved the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. ___] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") as containing adequate information, as required under § 1125(a) of title 11 of the United States Code (the "Bankruptcy Code"); and (b) authorized the Debtors to solicit votes with regard to the acceptance or rejection of the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. ___] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the *Assumed Executory Contract and Unexpired Lease List* [Docket No. [●]] (the "Assumption Schedule") with the Court on September 9, 2019 as contemplated under the Plan. The determination to assume the agreements identified on the Assumption Schedule is subject to revision.

**PLEASE TAKE FURTHER NOTICE** that the hearing to approve the adequacy of the Disclosure Statement and confirm the Plan (the "Combined Hearing") will commence on **October 3, 2019, at 1:00 p.m. (prevailing Central Time)**.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303). The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or Disclosure Statement Order, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtors' records reflect that you are a party to a contract that is listed on the Assumption Schedule.  Therefore, you are advised to review carefully the information contained in this notice and the related provisions of the Plan, including the Assumption Schedule.

**PLEASE TAKE FURTHER NOTICE** that the Debtors are proposing to assume the Executory Contract(s) and Unexpired Lease(s) listed in **Exhibit A** attached hereto, to which you are a party.[3]

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption. Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed in the table above.  Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no cure amount outstanding for such contract or lease.

**PLEASE TAKE FURTHER NOTICE THAT** absent any pending dispute, the monetary amounts required to cure any existing defaults arising under the Executory Contract(s) and Unexpired Lease(s) identified above will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by the Debtors in Cash on the Effective Date or as soon as reasonably practicable thereafter.  In the event of a dispute, however, payment of the cure amount would be made following the entry of a final order(s) resolving the dispute and approving the assumption. If an objection to the proposed assumption or related cure amount is sustained by the Court, however, the Debtors may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan (including any assumption of an Executory Contract or Unexpired Lease as contemplated in the Plan Supplement) is **September 23, 2019, at 4:00 p.m.** prevailing Central Time (the "Plan Objection Deadline").  Any objection to the Plan must:  (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be *actually received* on or before the Plan Objection Deadline: (i) co-counsel to the Debtors, Baker Botts L.L.P., 2001 Ross Avenue, Suite 900, Dallas, Texas 75201, Attn:  James R. Prince & Omar

---

[3]  Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumption Schedule, nor anything contained in the Plan or each Debtor's schedule of assets and liabilities, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease capable of assumption, that any Reorganized Debtor(s) has any liability thereunder, or that such Executory Contract or Unexpired Lease is necessarily a binding and enforceable agreement.  Further, the Debtors expressly reserve the right to:  (a) remove any Executory Contract or Unexpired Lease from the Assumption Schedule and reject such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date; and (b) contest any Claim (or cure amount) asserted in connection with assumption of any Executory Contract or Unexpired Lease.

J. Alaniz; (ii) co-counsel to the Debtors, Wachtell Lipton Rosen & Katz, 51 West 52nd Street, New York, New York 10019, Attn: Richard G. Mason; and (iii) each of the entities listed on the Master Service List (available on the Solicitation Agent's website at https://cases.primeclerk.com/Bristow or the Court's website at http://www.txs.uscourts.gov/bankruptcy).

**PLEASE TAKE FURTHER NOTICE THAT** any objections to the Plan in connection with the assumption of the Executory Contract(s) and Unexpired Lease(s) identified above and/or related cure or adequate assurances proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the Confirmation Hearing (or such other date as fixed by the Court).

**PLEASE TAKE FURTHER NOTICE THAT ANY COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT FAILS TO OBJECT TIMELY TO THE PROPOSED ASSUMPTION OR CURE AMOUNT WILL BE DEEMED TO HAVE ASSENTED TO SUCH ASSUMPTION AND CURE AMOUNT.**

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE OF THE DEBTORS OR REORGANIZED DEBTORS ASSUME SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE.  ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Prime Clerk, LLC, the Solicitation Agent retained by the Debtors in the Chapter 11 Cases, by: (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/bristow; (ii) writing to Bristow Group Inc. Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing bristowballots@primeclerk.com; or (iv) calling the Solicitation Agent's information line with respect to the Debtors at (844) 627-6967 (U.S. and Canada) or (347) 292-3534.

You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at:  http://www.txs.uscourts.gov.

> **THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

Houston, Texas
Dated:  August [•], 2019

**BAKER BOTTS L.L.P.**

*/s/ Omar J. Alaniz*
James R. Prince, State Bar No. 00784791
Omar J. Alaniz, State Bar No. 24040402
Kevin Chiu, State Bar No. 24109723
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201-2980
Telephone:  (214) 953-6500
Facsimile:  (214) 953-6503
Email: jim.prince@bakerbotts.com
          omar.alaniz@bakerbotts.com
          kevin.chiu@bakerbotts.com

-and-

Emanuel C. Grillo (*pro hac vice*)
Chris Newcomb (*pro hac vice*)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, New York   10112-4498
Telephone:  (212) 408-2500
Facsimile:  (212) 408-2501
Email: emanuel.grillo@bakerbotts.com
          chris.newcomb@bakerbotts.com

*Co-Counsel to the Debtors and Debtors in Possession*

**WACHTELL, LIPTON, ROSEN & KATZ**

Richard G. Mason (*pro hac vice*)
Amy R. Wolf (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
Email:  rgmason@wlrk.com
          arwolf@wlrk.com

*Co-Counsel to the Debtors and Debtors in Possession*

9

## Schedule I

**Schedule of Contracts and Leases and Proposed Cure Amounts**

| Name of Debtor | Name of Counterparty | Description of Executory Contract or Unexpired Lease | Cure Amount |
|---|---|---|---|

## **Exhibit 6(b)**

**Form of Notice of Rejection of Executory Contracts and Unexpired Leases**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

## NOTICE REGARDING EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES TO BE REJECTED PURSUANT TO THE PLAN

**PLEASE TAKE NOTICE THAT** on [], 2019, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No._] (the "Disclosure Statement Order") that, among other things:  (a) conditionally approved the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. ___] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") as containing adequate information, as required under § 1125(a) of title 11 of the United States Code (the "Bankruptcy Code"); and (b) authorized the Debtors to solicit votes with regard to the acceptance or rejection of the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. ___] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the *Rejected Executory Contract and Unexpired Lease List* [Docket No. [●]] (the "Rejection Schedule") with the Court on September 9, 2019, as contemplated under the Plan.  The determination to reject the agreements identified on the Rejection Schedule is subject to revision.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303).  The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or Disclosure Statement Order, as applicable.

> **PLEASE TAKE FURTHER NOTICE THAT YOU ARE RECEIVING THIS NOTICE BECAUSE THE DEBTORS' RECORDS REFLECT THAT YOU ARE A PARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT WILL BE REJECTED PURSUANT TO THE PLAN.  THEREFORE, YOU ARE ADVISED TO REVIEW CAREFULLY THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN.[3]**

**PLEASE TAKE FURTHER NOTICE** that the hearing to approve the adequacy of the Disclosure Statement and confirm the Plan (the "Combined Hearing") will commence on **October 3, 2019, at 1:00 p.m. (prevailing Central Time)**.

**PLEASE TAKE FURTHER NOTICE THAT** all proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Court by the earlier of (1) 30 days after the date of entry of an order of the Court (including the Confirmation Order) approving such rejection, and (2) 30 days after notice of any rejection that occurs after the Effective Date.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, their Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Court.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan (including any assumption of an Executory Contract or Unexpired Lease as contemplated in the Plan Supplement) is **September 23, 2019, at 4:00 p.m.** prevailing Central Time (the "Plan Objection Deadline").  Any objection to the Plan must:  (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be ***actually received*** on or before the Plan Objection Deadline:  (i) co-counsel to the Debtors, Baker Botts L.L.P., 2001 Ross Avenue, Suite 900, Dallas, Texas 75201, Attn:  James R. Prince & Omar J. Alaniz; (ii) co-counsel to the Debtors, Wachtell Lipton Rosen & Katz, 51 West 52nd Street, New York, New York 10019, Attn: Richard G. Mason; and (iii) each of the entities listed on the Master Service List (available on the Solicitation Agent's website at https://cases.primeclerk.com/Bristow or the Court's website at http://www.txs.uscourts.gov/bankruptcy).

**PLEASE TAKE FURTHER NOTICE THAT** any objections to Plan in connection with the rejection of the Executory Contract(s) and Unexpired Lease(s) identified above and/or

---

[3]  Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  Further, the Debtors expressly reserve the right to:  (a) remove any Executory Contract or Unexpired Lease from the Rejection Schedule and assume such Executory Contract or Unexpired Lease pursuant to the terms of the Plan, up until the Effective Date; and (b) contest any Claim asserted in connection with rejection of any Executory Contract or Unexpired Lease.

related rejection damages proposed in connection with the Plan that remain unresolved as of the Confirmation Hearing will be heard at the Confirmation Hearing (or such other date as fixed by the Court).

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Prime Clerk, LLC, the Solicitation Agent retained by the Debtors in the Chapter 11 Cases, by: (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/bristow; (ii) writing to Bristow Group Inc. Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing bristowballots@primeclerk.com; or (iv) calling the Solicitation Agent's information line with respect to the Debtors at (844) 627-6967 (U.S. and Canada) or (347) 292-3534. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.txs.uscourts.gov.

[*remainder of page intentionally left blank*]

3

Houston, Texas
Dated:  August [•], 2019

**BAKER BOTTS L.L.P.**

*/s/ Omar J. Alaniz*
James R. Prince, State Bar No. 00784791
Omar J. Alaniz, State Bar No. 24040402
Kevin Chiu, State Bar No. 24109723
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201-2980
Telephone:  (214) 953-6500
Facsimile:  (214) 953-6503
Email:  jim.prince@bakerbotts.com
          omar.alaniz@bakerbotts.com
          kevin.chiu@bakerbotts.com


-and-

Emanuel C. Grillo (*pro hac vice*)
Chris Newcomb (*pro hac vice*)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, New York   10112-4498
Telephone:  (212) 408-2500
Facsimile:  (212) 408-2501
Email: emanuel.grillo@bakerbotts.com
          chris.newcomb@bakerbotts.com


*Co-Counsel to the Debtors and Debtors in
Possession*

**WACHTELL, LIPTON, ROSEN & KATZ**


Richard G. Mason (*pro hac vice*)
Amy R. Wolf (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
Email:  rgmason@wlrk.com
          arwolf@wlrk.com


*Co-Counsel to the Debtors and Debtors in
Possession*

**Exhibit 7**

Disputed Claim Notice

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## NON-VOTING STATUS WITH RESPECT TO DISPUTED CLAIMS

**PLEASE TAKE NOTICE THAT** on [], 2019, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No. _](the "Disclosure Statement Order") that, among other things:  (a) conditionally approved the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. ___] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") as containing adequate information, as required under § 1125(a) of title 11 of the United States Code (the "Bankruptcy Code"); and (b) authorized the Debtors to solicit votes with regard to the acceptance or rejection of the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. ___] (as may be amended or supplemented from time to time and including all exhibits and supplements thereto, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because you are the Holder of a Claim that is subject to a pending objection by the Debtors.  You are not entitled to vote any disputed portion of your Claim on the Plan unless one or more of the following events have taken place before September 21, 2019 (the date that is two Business Days before the Voting Deadline) (each, a "Resolution Event"):

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303).  The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or Disclosure Statement Order, as applicable.

1

1. an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

2. an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

3. a stipulation or other agreement is executed between the Holder of such Claim and the Debtors temporarily allowing the Holder of such Claim to vote its Claim in an agreed upon amount; or

4. the pending objection to such Claim is voluntarily withdrawn by the objecting party.

Accordingly, this notice is being sent to you for informational purposes only.

**PLEASE TAKE FURTHER NOTICE THAT** the Disclosure Statement, Disclosure Statement Order, the Plan, and other documents and materials included in the Solicitation Package may be obtained by (i) accessing the Debtors' restructuring website at https://cases.primeclerk.com/bristow; (ii) writing to Bristow Group Inc. Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (iii) emailing bristowballots@primeclerk.com; (iv) calling the Solicitation Agent's information line with respect to the Debtors at (844) 627-6967 (U.S. and Canada) or (347) 292-3534; or (v) visiting the website maintained by the Court at http://www.txs.uscourts.gov/bankruptcy.

**PLEASE TAKE FURTHER NOTICE THAT** if a Resolution Event occurs, then no later than one (1) Business Day thereafter, the Solicitation Agent shall distribute a ballot, and a pre-addressed, postage pre-paid envelope to you, which must be returned to the Solicitation Agent no later than the Voting Deadline, which is on September 18, 2019, at 4:00 p.m., prevailing Central Time.

**PLEASE TAKE FURTHER NOTICE THAT** if you have questions about the status of any of your Claims, you should contact the Solicitation Agent in accordance with the instructions provided above.

Houston, Texas
Dated:  August [•], 2019

**BAKER BOTTS L.L.P.**

*/s/ Omar J. Alaniz*
James R. Prince, State Bar No. 00784791
Omar J. Alaniz, State Bar No. 24040402
Kevin Chiu, State Bar No. 24109723
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201-2980
Telephone:  (214) 953-6500
Facsimile:  (214) 953-6503
Email: jim.prince@bakerbotts.com
        omar.alaniz@bakerbotts.com
        kevin.chiu@bakerbotts.com


-and-

Emanuel C. Grillo (*pro hac vice*)
Chris Newcomb (*pro hac vice*)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, New York   10112-4498
Telephone:  (212) 408-2500
Facsimile:  (212) 408-2501
Email: emanuel.grillo@bakerbotts.com
        chris.newcomb@bakerbotts.com


*Co-Counsel to the Debtors and Debtors in Possession*

**WACHTELL, LIPTON, ROSEN & KATZ**


Richard G. Mason (*pro hac vice*)
Amy R. Wolf (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, New York 10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
Email:  rgmason@wlrk.com
        arwolf@wlrk.com


*Co-Counsel to the Debtors and Debtors in Possession*

**Exhibit 8(a)**

Rights Offering Procedures

**BRISTOW GROUP INC., ET AL. (THE "COMPANY")**
**1145 RIGHTS OFFERING AND UNSECURED CASH OUT ELECTION PROCEDURES[1]**

To 1145 Eligible Holders and Nominees of 1145 Eligible Holders:

The Plan provides for the Debtors to conduct two Rights Offerings pursuant to which certain creditors may acquire the common stock of the Company, as reorganized under the Plan (the "New Common Stock" and, together with the preferred stock issuable under the Plan (the "New Preferred Stock"), the "New Stock"), and for an election (the "Unsecured Cash Out Election") to receive cash in lieu of receiving a distribution of New Common Stock under the Plan and the opportunity to participate in the Rights Offerings.

These 1145 Rights Offering and Unsecured Cash Out Election Procedures relate to the 1145 Rights Offering for 1145 Rights Offering Stock of the Company, whose issuance is exempt from registration under the Securities Act and state securities laws pursuant to section 1145 of the Bankruptcy Code, as well as the Unsecured Cash Out Election.[2]  The 1145 Rights Offering Stock acquired in this 1145 Rights Offering will generally be freely tradable, except by persons who are affiliates of the Company.

You should read these 1145 Rights Offering and Unsecured Cash Out Election Procedures in their entirety; key provisions are highlighted below:

- The parties entitled to participate in the 1145 Rights Offering (the "1145 Eligible Holders") are Holders of the following Claims (collectively, the "1145 Eligible Claims"):

  o Secured Notes Claims with a principal amount equal to at least $1,000 (in compliance with the minimum denominations applicable to such Secured Notes) (Secured Notes Claims and Unsecured Notes Claims are collectively referred to as "Note Claims," and the underlying notes are collectively referred to as the "Notes");

  o Unsecured Notes Claims with a principal amount equal to at least $1,000 (in compliance with the minimum denominations applicable to such Unsecured Notes); and

  o General Unsecured Claims.

- 1145 Eligible Holders shall have the right, but not the obligation, to participate in the 1145 Rights Offering and subscribe for 1145 Rights Offering Stock (such right, the "1145 Subscription Rights").  If you exercise your 1145 Subscription Rights, you will have to

---

[1]     Terms used and not defined herein shall have the meaning assigned to them in the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Debtor Affiliates* (as may be amended, modified or supplemented in accordance with the terms thereof, the "Plan") or the Backstop Commitment Agreement.

[2]     Separately, there are 4(a)(2) Rights Offering Procedures governing the 4(a)(2) Rights Offering. You should refer to the 4(a)(2) Rights Offering Procedures for the conditions of eligibility and the procedures for participation in that rights offering.

#92336880v2

PAY for such exercise at the Purchase Price, as described further below, and if you are a holder of Notes, arrange for the underlying Notes to be tendered in accordance with the procedures described further below.

- In lieu of receiving a distribution of New Common Stock under the Plan and the opportunity to participate in the Rights Offerings, certain 1145 Eligible Holders are entitled to instead elect to receive a cash payment pursuant to the Unsecured Cash Out Election, as described further herein. Those creditors eligible to make the Unsecured Cash Out Election consist of:

    o  holders of Unsecured Notes Claims that are not "accredited investors" (within the meaning of Rule 501(a) under the Securities Act) or "qualified institutional buyers" (within the meaning of Rule 144A of the Securities Act); and

    o  holders of General Unsecured Claims.

- If an 1145 Eligible Holder makes the Unsecured Cash Out Election, such party is not entitled to receive New Common Stock under the Plan or to participate in the Rights Offerings.

- Pursuant to and in accordance with the Backstop Commitment Agreement, the Commitment Parties[3] must exercise all of their 1145 Subscription Rights, but need not transfer the Purchase Price until the Subscription Escrow Funding Date.[4]

- Holders of Notes and General Unsecured Claims are _not_ required to exercise any of their 1145 Subscription Rights (unless they are party to the Backstop Commitment Agreement), but they may if they wish to do so and they follow the required procedures.

- Additional information regarding the 1145 Rights Offering and the Unsecured Cash Out Election is provided in this document and in the 1145 Subscription Form enclosed herewith.

---

**Important Note:  Even if you choose not to participate in the Rights Offerings or to make the Unsecured Cash Out Election, you must deliver a Citizenship Certification (defined below) and, if you are the holder of Note Claims, you must electronically tender your Notes in accordance with the procedures described below, no later than [DATE] (the "Subscription Instruction Deadline") in order to receive the New Common Stock or other applicable distribution  to which you are entitled under the Plan.  See Section 14 "Citizenship Certification" below.**

---

[3]  Commitment Parties are the parties to the Backstop Commitment Agreement who have committed to purchase shares that are not purchased in the 1145 Rights Offering and the 4(a)(2) Rights Offering.  Certain provisions of the 1145 Rights Offering and Unsecured Cash Out Election Procedures and the 4(a)(2) Rights Offering Procedures are separately applicable to these parties.

[4]  Commitment Parties are required, however, to cause a Commitment Party Addendum (defined below) to be delivered to their Nominee, who will deliver such Addendum to the Subscription Agent (defined below) no later than the Subscription Instruction Deadline (defined below).

#92336880v2

Each 1145 Rights Offering Share (as defined below), other than Unsubscribed Shares purchased by the Commitment Parties pursuant to the Backstop Commitment Agreement, is being distributed and issued by the Company pursuant to the 1145 Rights Offering without registration under the Securities Act of 1933, as amended (the "Securities Act"), in reliance upon the exemption provided in Section 1145 of the Bankruptcy Code.  None of the 1145 Subscription Rights (as defined below) or the 1145 Rights Offering Shares issuable upon exercise of such 1145 Subscription Rights distributed to 1145 Eligible Holders that are not Commitment Parties pursuant to these 1145 Rights Offering and Unsecured Cash Out Election Procedures in reliance upon the exemption provided in Section 1145 of the Bankruptcy Code have been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security.

The 1145 Subscription Rights, and the right to receive cash in respect of the Unsecured Cash Out Election, will not be detachable or transferable separately from the 1145 Eligible Claims.  Rather, the 1145 Subscription Rights and the right to receive cash in respect of the Unsecured Cash Out Election, will trade together and be evidenced by the corresponding 1145 Eligible Claims, until the Subscription Instruction Deadline, subject in the case of the Note Claims to such limitations, if any, that would be applicable to the transferability of the underlying Notes.

Exercise of the 1145 Subscription Rights, or the Unsecured Cash Out Election, once made cannot be revoked unless the 1145 Rights Offering is terminated.  Notes that have been tendered cannot be withdrawn, and therefore cannot be transferred, unless exercise of the 1145 Subscription Rights, or the Unsecured Cash Out Election is permitted to be revoked because the 1145 Rights Offering has been terminated. Similarly, no transfer of General Unsecured Claims corresponding to 1145 Subscription Rights that have been exercised, or as to which the Unsecured Cash Out Election has been made, will be recognized, unless the 1145 Rights Offering is terminated.

The Disclosure Statement (as defined below) has been distributed in connection with the Debtors' solicitation of votes to accept or reject the Plan (as defined below) and that document sets forth important information, including risk factors, that should be carefully read and considered by each 1145 Eligible Holder (as defined below) prior to making a decision to participate in the 1145 Rights Offering.  Additional copies of the Disclosure Statement are available upon request from Prime Clerk LLC (the "Subscription Agent").

The 1145 Rights Offering is being conducted by the Company in good faith and in compliance with the Bankruptcy Code. In accordance with Section 1125(e) of the Bankruptcy Code, a debtor or any of its agents that participate, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale

**or purchase of securities.**

1145 Eligible Holders should note the following times relating to the 1145 Rights Offering:

| Date | Calendar Date | Event |
|---|---|---|
| Subscription Commencement Date | [●], 2019 | Commencement of the 1145 Rights Offering and the first date on which 1145 Eligible Holders are eligible to exercise 1145 Subscription Rights or to make the Unsecured Cash Out Election. |
| Subscription Instruction Deadline | 4:00 p.m. prevailing Central Time on [●], 2019 | The deadline for 1145 Eligible Holders to subscribe for 1145 Rights Offering Shares or to make an Unsecured Cash Out Election. |
| | | *All 1145 Eligible Holders* |
| | | An 1145 Eligible Holder's applicable 1145 subscription form with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable (the "1145 Subscription Form") must be received by the Subscription Agent by the Subscription Instruction Deadline. |
| | | 1145 Eligible Holders that are holders of Note Claims must deliver their 1145 Subscription Forms to their Nominees in sufficient time to allow such Nominee to deliver the 1145 Subscription Form to the Subscription Agent, and to deliver the relevant Notes through ATOP (as defined below) by the Subscription Instruction Deadline. 1145 Eligible Holders who hold Notes through a Nominee are urged to consult with their Nominees to determine the necessary deadline to return their 1145 Subscription Forms to their Nominee. |
| | | *Non-Commitment Parties* |
| | | 1145 Eligible Holders who are not Commitment Parties must deliver the aggregate Purchase Price by the Subscription Instruction Deadline.  1145 Eligible Holders that are holders of Note Claims should coordinate payment of the Purchase Price through their Nominees. |
| | | *Commitment Parties* |
| | | 1145 Eligible Holders who are Commitment Parties must arrange for the Commitment Party Addendum to be provided to their Nominee so that the Nominee and the Subscription Agent will receive confirmation that payment does not have to be made prior to the Subscription Instruction Deadline. 1145 Eligible |

Holders who are Commitment Parties shall not be required to pay their respective aggregate Purchase Price until the Subscription Escrow Funding Date in accordance with the terms of the Backstop Commitment Agreement.

#92336880v2

On [●], 2019, the Debtors filed the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time in accordance with the terms thereof, the "Plan") with the United States Bankruptcy Court for the Southern District of Texas, Houston Division, and the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and its Debtor Affiliates* (as may be amended from time to time in accordance with its terms, the "Disclosure Statement").

### The 1145 Rights Offering

Pursuant to the Plan:

- each Holder of a Secured Notes Claim holding a number of Secured Notes with a principal amount at least equal to $1,000 (the "1145 Eligible Secured Holders") shall be entitled to exercise Secured Holder 1145 Subscription Rights pursuant to the 1145 Secured Rights Offering (as defined below);

- each holder of an Unsecured Notes Claim holding a number of Unsecured Notes with a principal amount at least equal to $1,000, and each holder of a General Unsecured Claim, in each case, that has not timely made an Unsecured Cash Out Election (collectively, the "1145 Eligible Unsecured Holders" and together with the 1145 Eligible Secured Holders, the "1145 Eligible Holders") shall be entitled to exercise Unsecured Holder 1145 Subscription Rights (as defined below) pursuant to the Unsecured 1145 Rights Offering (as defined below), in each case, in accordance with the terms and conditions of these 1145 Rights Offering and Unsecured Cash Out Election Procedures.

- Holders of Unsecured Notes Claims that are **not** accredited investors or qualified institutional buyers, and holders of General Unsecured Claims, may make the Unsecured Cash Out Election to receive a cash payment in lieu of receiving a distribution of New Common Stock under the Plan and the opportunity to participate in the Rights Offerings, as described further herein.

   For the avoidance of doubt, an 1145 Eligible Holder includes anyone who meets the requirements set forth in the immediately preceding paragraph and holds the relevant Notes or any General Unsecured Claim during the Rights Exercise Period (as defined below). It is not required that any holder of Secured Notes Claims, Unsecured Notes Claims or General Unsecured Claims is or will be an  accredited investor (within the meaning of Rule 501(a) under the Securities Act) or a qualified institutional buyer (within the meaning of Rule 144A of the Securities Act) to participate in the 1145 Rights Offering. The Secured 1145 Rights Offering and the Unsecured 1145 Rights Offering are collectively referred to as the "1145 Rights Offering."

### The 4(a)(2) Rights Offering

Separately, pursuant to the Plan, there is also being conducted a 4(a)(2) Rights Offering.  Only holders of Secured Notes Claims, Unsecured Notes Claims or General Unsecured Claims that, in each case, are accredited investors or qualified institutional buyers are eligible to participate in the 4(a)(2) Rights Offering.  The New Stock issuable in the 4(a)(2) Rights Offering will not be freely tradable under applicable securities laws. Holders of Unsecured Notes Claims or General Unsecured Claims that fully exercise their 1145 Subscription Rights but are ineligible to participate in the 4(a)(2) Rights Offering

will receive their *pro rata* share of $250,000 (up to a maximum of 7.6% of their Unsecured Notes Claims or General Unsecured Claims, as applicable) in lieu of 4(a)(2) Subscription Rights.

*Purchase Price*. The purchase price per share of New Stock in both the 1145 Rights Offering and the 4(a)(2) Rights Offering is $36.37 per share (the "Purchase Price").

### Allocation of Rights Offering Shares

**Secured Notes Claims:** Pursuant to the Plan, each holder of Secured Notes Claims will have the right (but not the obligation) through the Rights Offerings to subscribe for its *pro rata* portion of a total of New Stock with an aggregate purchase price of $37,500,000, at the Purchase Price of $36.37 per share, calculated by multiplying the number of Secured Rights Offering Shares (as defined below) offered in the Rights Offerings by the Purchase Price. This includes [●] shares of New Common Stock in the 1145 Rights Offering for an aggregate purchase price of $[●] (the "Secured 1145 Rights Offering," and such shares, the "Secured 1145 Rights Offering Shares"), and [●] shares of New Stock in the 4(a)(2) Rights Offering for an aggregate purchase price of $[●] (the "Secured 4(a)(2) Rights Offering Shares," and, collectively with the Secured 1145 Rights Offering Shares, the "Secured Rights Offering Shares"), although only accredited investors and qualified institutional buyers are eligible to subscribe for New Stock in the 4(a)(2) Rights Offering.

**Unsecured Notes Claims and General Unsecured Claims:** Pursuant to the Plan, each holder of Unsecured Notes Claims or General Unsecured Claims that has not timely made an Unsecured Cash Out Election will have the right (but not the obligation) through the Rights Offerings to subscribe for its *pro rata* portion of a total of New Stock with an aggregate purchase price of $347,500,000, at the Purchase Price of $36.37 per share, calculated by multiplying the number of Unsecured Rights Offering Shares (defined below) offered in the Rights Offerings by the Purchase Price. This includes [●] shares of New Common Stock in the 1145 Rights Offering for an aggregate purchase price of $[●] (the "Unsecured 1145 Rights Offering," and such shares, the "Unsecured 1145 Rights Offering Shares"), and [●] shares of New Stock in the 4(a)(2) Rights Offering for an aggregate purchase price of $[●] (the "Unsecured 4(a)(2) Rights Offering Shares," and, collectively with the Unsecured 1145 Rights Offering Shares, the "Unsecured Rights Offering Shares"), although only accredited investors and qualified institutional buyers are eligible to subscribe for New Stock in the 4(a)(2) Rights Offering.

1145 Eligible Holders of Note Claims wishing to subscribe in the Rights Offerings should return their 1145 Subscription Forms only to the broker, bank, commercial bank, transfer agent, trust company, dealer, or other agent or nominee (as applicable, the "Nominee") for processing.

**For any 1145 Eligible Holder of Note Claims: As part of the exercise process, following exercise of 1145 Subscription Rights, any related Notes held through DTC will be frozen from trading, as described below.** With respect to 1145 Eligible Holders who hold Notes, all 1145 Subscription Forms and/or other instructions required by their respective Nominee must be returned to the applicable Nominee in sufficient time to allow such Nominee to process and deliver the underlying Notes through The Depository Trust Company ("DTC") Automated Tender Offer Program ("ATOP"), which is how the related 1145 Subscription Rights will be exercised by those 1145 Eligible Holders of Note Claims. By giving the instruction to its Nominee to submit the underlying Notes through ATOP, such holder is (i) authorizing its Nominee to exercise the 1145 Subscription Rights associated with the amount of Notes as to which the instruction pertains and corresponding to the elections evidenced on such holder's 1145 Subscription Form; and (ii) certifying that it understands that, once submitted, the

8

underlying Notes will be frozen from trading until the Effective Date, at which point (a) the underlying Notes will be cancelled pursuant to the Plan; (b) the holder will receive its *pro rata* share of the New Common Stock distributed to its Class pursuant to the Plan and any other treatment afforded to such Class pursuant to the Plan; (c) the holder will additionally receive any related 1145 Rights Offering Shares; (d) if such holder is a 4(a)(2) Eligible Holder of Note Claims, such holder will receive any 4(a)(2) Rights Offering shares for which it has subscribed; and (e) if such holder is a holder of Unsecured Notes and is not a 4(a)(2) Eligible Holder (and solely if such Holder fully exercises its Unsecured Holder 1145 Subscription Rights), such holder will receive its *pro rata* share of the Unsecured 4(a)(2) Distribution Cash Amount (up to a maximum of 7.6% of such holder's Unsecured Notes Claims); <u>provided</u> that as described in Section 14 "Citizenship Certification," the Company may determine not to issue any New Common Stock under the Plan, including pursuant to the Rights Offerings, to any person to the extent that such person is not a U.S. citizen and such distribution would cause the Company not to be in compliance with certain laws and regulations. The amount of time necessary for a Nominee to process and deliver the applicable Notes through ATOP may vary. If applicable, Holders are urged to consult with their Nominees to determine the necessary deadline to return their 1145 Subscription Forms to their Nominee. Failure to submit such 1145 Subscription Form on a timely basis will result in forfeiture of an 1145 Eligible Holder's 1145 Subscription Rights. None of the Company, the Subscription Agent or any of the Commitment Parties will have any liability for any such failure.

No 1145 Eligible Holder (except a Commitment Party) shall be entitled to participate in the Rights Offering unless the aggregate Purchase Price (as defined below) for the 1145 Rights Offering Shares it subscribes for is received by the Subscription Agent by the Subscription Instruction Deadline.

**Commitment Parties are party to the Backstop Commitment Agreement, have already been designated, and are known both to the Company and to themselves**.

<u>Special note for Commitment Parties</u>. Commitment Parties will receive (through their counsel) an addendum (the "<u>Commitment Party Addendum</u>"), and must arrange for the Commitment Party Addendum to be provided to their Nominee, who will deliver the addendum to the Subscription Agent, so that the Nominee and the Subscription Agent will receive confirmation that payment does not have to be made prior to the Subscription Instruction Deadline. Commitment Parties are subject to these 1145 Rights Offering and Unsecured Cash Out Election Procedures, except that Commitment Parties are not required to make payment of the Purchase Price by the Subscription Instruction Deadline, and instead must provide its payment by the Subscription Escrow Funding Date to the Subscription Escrow Account in accordance with Section 2.4(b) of the Backstop Commitment Agreement.

**The rights and obligations of the Commitment Parties in the 1145 Rights Offering shall be governed by the Backstop Commitment Agreement to the extent the rights or obligations set forth therein differ from the rights and obligations set forth in these 1145 Rights Offering and Unsecured Cash Out Election Procedures or any 1145 Subscription Form.**

No interest is payable on any advanced funding of the Purchase Price. If the 1145 Rights Offering is terminated for any reason, the aggregate Purchase Price previously received by the Subscription Agent will be returned to 1145 Eligible Holders as provided in Section 8 "Termination/Return of Payment". No interest will be paid on any returned Purchase Price.

***Unsecured Cash Out Election***.

#92336880v2

In lieu of receiving a distribution of New Common Stock under the Plan and the opportunity to participate in the Rights Offering, holders of (x) Unsecured Notes Claims that are not accredited investors or qualified institutional buyers and (y) General Unsecured Claims may elect to make the Unsecured Cash Out Election, and instead receive a cash payment, as described in Section 5 "The Unsecured Cash Out Election" below. Holders who make the Unsecured Cash Out Election will not have the opportunity to participate either in the 1145 Rights Offering or the 4(a)(2) Rights Offering.

**To participate in the 1145 Rights Offering or make the Unsecured Cash Out Election, an 1145 Eligible Holder must complete all of the steps outlined below. If an 1145 Eligible Holder does not complete all of the steps outlined below by the Subscription Instruction Deadline, such 1145 Eligible Holder shall be deemed to have forever and irrevocably relinquished and waived its right to participate in the 1145 Rights Offering and to make the Unsecured Cash Out Election; provided that the Commitment Parties (in their capacities as 1145 Eligible Holders) shall not be required to submit funds in respect of the exercise of their 1145 Subscription Rights until the Subscription Escrow Funding Date in accordance with the terms of the Backstop Commitment Agreement.**

### 1.     1145 Rights Offering

1145 Eligible Secured Holders have the right, but not the obligation, to participate in the Secured 1145 Rights Offering, and 1145 Eligible Unsecured Holders have the right, but not the obligation, to participate in the Unsecured 1145 Rights Offering; provided, however, that 1145 Eligible Holders that are Commitment Parties must exercise their 1145 Subscription Rights pursuant to the Backstop Commitment Agreement.

During the Rights Exercise Period, 1145 Eligible Secured Holders are eligible to subscribe for their *pro rata* portion of the Secured 1145 Rights Offering Shares, and 1145 Eligible Unsecured Holders are eligible to subscribe for their *pro rata* portion of the Unsecured 1145 Rights Offering Shares.

Only holders of Secured Notes Claims, holders of Unsecured Notes Claims that have not timely made an Unsecured Cash Out Election (if eligible), and holders of General Unsecured Claims that have not timely made an Unsecured Cash Out Election may participate in the 1145 Rights Offering and receive 1145 Rights Offering Shares.

1145 Eligible Holders are not required to be an accredited investor or a qualified institutional buyer in order to participate in the 1145 Rights Offering.

**Each 1145 Eligible Holder may only elect to participate in the 1145 Rights Offering in the same proportion as such 1145 Eligible Holder elects to participate in the 4(a)(2) Rights Offering, and each 1145 Eligible Holder may only elect to participate in the 4(a)(2) Rights Offering in the same proportion as such 1145 Eligible Holder elects to participate in the 1145 Rights Offering; provided, however, that an 1145 Eligible Holder that does not participate in the 4(a)(2) Rights Offering because it is not an accredited investor or a qualified institutional buyer may still participate in its *pro rata* portion of the 1145 Rights Offering.**

There is no record date for the 1145 Rights Offering. Any 1145 Eligible Holder that holds 1145 Eligible Claims during the period beginning on the Subscription Commencement Date and ending on the Subscription Instruction Deadline (the "Rights Exercise Period") may participate in the 1145 Rights Offering, subject to timely compliance with these 1145 Rights Offering and Unsecured Cash Out Election Procedures.

Subject to the terms and conditions set forth in the Plan and these 1145 Rights Offering and Unsecured Cash Out Election Procedures, each Eligible Secured Holder during the Rights Exercise Period is entitled to subscribe for its *pro rata* share of the Secured 1145 Rights Offering Shares at the Purchase Price.

Subject to the terms and conditions set forth in the Plan and these 1145 Rights Offering and Unsecured Cash Out Election Procedures, each Eligible Unsecured Holder during the Rights Exercise Period is entitled to subscribe for its *pro rata* share of the Unsecured 1145 Rights Offering Shares at the Purchase Price.

There will be no over-subscription privilege in the 1145 Rights Offering.  Any Unsubscribed Shares will not be offered to other 1145 Eligible Holders but will be purchased by the applicable Commitment Parties in accordance with the Backstop Commitment Agreement.

Any 1145 Eligible Holder that subscribes for 1145 Rights Offering Shares and is deemed to be an "underwriter" under Section 1145(b) of the Bankruptcy Code, including affiliates of the Company, will be subject to restrictions under the Securities Act on its ability to resell those securities. Resale restrictions are discussed in more detail in Article XII of the Disclosure Statement, entitled "Certain Securities Law Matters."

**SUBJECT TO THE TERMS AND CONDITIONS OF THESE RIGHTS OFFERING AND UNSECURED CASH OUT ELECTION PROCEDURES (AND THE BACKSTOP COMMITMENT AGREEMENT IN THE CASE OF ANY COMMITMENT PARTY), ALL SUBSCRIPTIONS SET FORTH IN THE SUBSCRIPTION FORM ARE IRREVOCABLE.**

2.      **Rights Exercise Period**

The 1145 Rights Offering will commence and the 1145 Subscription Rights will be allocated on the Subscription Commencement Date and will expire at the Subscription Instruction Deadline.  Each 1145 Eligible Holder intending to purchase 1145 Rights Offering Shares in any 1145 Rights Offering must affirmatively elect to exercise its 1145 Subscription Rights in the manner set forth in the 1145 Subscription Form by the Subscription Instruction Deadline and must pay for any exercised 1145 Subscription Rights by the applicable deadline.

Any exercise (including payment) of the 1145 Subscription Rights to purchase Secured 1145 Rights Offering Shares (the "Secured Holder 1145 Subscription Rights") by an Eligible Secured Holder after the Subscription Instruction Deadline will not be allowed and any purported exercise (including payment) received by the Subscription Agent after the Subscription Instruction Deadline, regardless of when the documents or payment relating to such exercise were sent, will not be honored.

Any exercise (including payment) of the 1145 Subscription Rights to purchase Unsecured 1145 Rights Offering Shares (the "Unsecured Holder 1145 Subscription Rights" and together with the Secured Holder 1145 Subscription Rights, the "1145 Subscription Rights") by an Eligible Unsecured Holder after the Subscription Instruction Deadline will not be allowed and any purported exercise (including payment) received by the Subscription Agent after the Subscription Instruction Deadline, regardless of when the documents or payment relating to such exercise were sent, will not be honored.

The Subscription Instruction Deadline may be extended by the Company with the prior written

approval of the Requisite Commitment Parties, or as required by law.

As more fully described below, in order for an 1145 Eligible Holder to acquire shares in the 1145 Rights Offering, no later than the Subscription Instruction Deadline:

- its 1145 Subscription Form must be received by the Subscription Agent;

- if it is a holder of Note Claims, its Notes must be electronically tendered to the Subscription Agent in accordance with DTC's ATOP procedures by its Nominee; and

- if it is not a Commitment Party, the Purchase Price for its 1145 Rights Offering Shares must be received by the Subscription Agent by wire transfer of immediately available funds.

Although Commitment Parties are not required to pay the Purchase Price by the Subscription Instruction Deadline, they are required to deliver a Commitment Party Addendum to their Nominee by such date, who must deliver such addendum along with such Commitment Party's 1145 Subscription Form to the Subscription Agent no later than the Subscription Instruction Deadline.

3.      **Delivery of Subscription Documents**

Each 1145 Eligible Holder may exercise all or any portion of such 1145 Eligible Holder's 1145 Subscription Rights, subject to the terms and conditions contained herein. In order to facilitate the exercise of the 1145 Subscription Rights, beginning on the Subscription Commencement Date, the 1145 Subscription Form and these 1145 Rights Offering and Unsecured Cash Out Election Procedures will be sent to 1145 Eligible Holders at that time, including appropriate instructions for the proper completion, due execution and timely delivery of the executed 1145 Subscription Form and the payment of the applicable aggregate Purchase Price for its 1145 Rights Offering Shares.

4.      **Exercise of 1145 Subscription Rights**

In order to validly exercise its 1145 Subscription Rights, an 1145 Eligible Holder must timely take all actions required by these 1145 Rights Offering and Unsecured Cash Out Election Procedures.

*Holders of Note Claims.* 1145 Eligible Holders that hold Note Claims must—

- duly complete and execute an 1145 Subscription Form (including an accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) in accordance with these 1145 Rights Offering and Unsecured Cash Out Election Procedures;

- direct its Nominee to electronically tender its Notes to the appropriate account of the Subscription Agent in accordance with DTC's ATOP procedures prior to the Subscription Instruction Deadline;

- deliver its executed 1145 Subscription Form to its Nominee, so that the Nominee may insert the DTC ATOP Confirmation Number(s) reflecting the tender of the holder's Notes and deliver the 1145 Subscription Form to the Subscription Agent, such that the 1145 Subscription Form is received by the Subscription Agent no later than the Subscription Instruction Deadline; and

- as to the Purchase Price,

  o if the holder is not a Commitment Party, coordinate with its Nominee to deliver payment of the Purchase Price no later than the Subscription Instruction Deadline for the 1145 Rights

12

#92336880v2

Offering Shares for which it has subscribed by wire transfer **ONLY** of immediately available funds to the Subscription Agent in accordance with the instructions included in the 1145 Subscription Form, in the case of a holder that is not a Commitment Party, no later than the Subscription Instruction Deadline; and

o   if the holder is a Commitment Party, make payment of the Purchase Price to the Subscription Escrow Account by the Subscription Escrow Funding Date in accordance with the Backstop Commitment Agreement.

**ALL BACKSTOP COMMITMENT PARTIES MUST MAKE PAYMENTS TO THE SUBSCRIPTION ESCROW ACCOUNT IN ACCORDANCE WITH THE BACKSTOP COMMITMENT AGREEMENT, AND SHOULD NOT PAY THEIR NOMINEE(S).**

*Holders of General Unsecured Claims.* 1145 Eligible Holders that hold General Unsecured Claims must—

- duly complete and execute an 1145 Subscription Form in accordance with these 1145 Rights Offering and Unsecured Cash Out Election Procedures;

- deliver the executed 1145 Subscription Form to the Subscription Agent so that it is received by the Subscription Agent no later than the Subscription Instruction Deadline; and

- deliver payment of the Purchase Price for the 1145 Rights Offering Shares for which it has subscribed by wire transfer of immediately available funds to the Subscription Agent no later than the Subscription Instruction Deadline.

*Delivery of the 1145 Subscription Form.* The 1145 Subscription Form may be delivered to the Subscription Agent by either physical delivery or by electronic mail in accordance with the address information for the Subscription Agent set forth below under "Rights Offering Instructions for Eligible Holders" and on the 1145 Subscription Form. In all cases, the Subscription Form must actually be received by the Subscription Agent no later than the Subscription Instruction Deadline.

Holders of Note Claims must deliver their Subscription Form to their Nominee (and otherwise follow the instructions of their Nominee), and instruct their Nominee to tender their Notes to the account of the Subscription Agent in accordance with DTC's ATOP procedures, in sufficient time for their Nominee to deliver the 1145 Subscription Form and tender their Notes to the Subscription Agent no later than the Subscription Instruction Deadline.

*Payment of the Purchase Price.* Payment of the Purchase Price must be made by wire transfer of immediately available funds to the account of the Subscription Agent indicated below under "Rights Offering Instructions for Eligible Holders" and on the Subscription Form. Other than in the case of Commitment Parties, the funds must be received in the account of the Subscription Agent no later than the Subscription Instruction Deadline.

In the event that the funds received by the Subscription Agent, as applicable, from any 1145 Eligible Holder (other than a Commitment Party) do not correspond to the Purchase Price payable for the 1145 Rights Offering Shares elected to be purchased by such 1145 Eligible Holder, the number of the 1145 Rights Offering Shares deemed to be purchased by such 1145 Eligible Holder will be the lesser of (a) the number of the 1145 Rights Offering Shares elected to be purchased by such 1145 Eligible Holder

as evidenced by the relevant 1145 Subscription Form and (b) a number of the 1145 Rights Offering Shares determined by dividing the amount of the funds received by the Purchase Price, in each case up to such 1145 Eligible Holder's *pro rata* portion of 1145 Rights Offering Shares.

Other than with respect to the Commitment Parties, the cash paid to the Subscription Agent in accordance with these 1145 Rights Offering and Unsecured Cash Out Election Procedures will be deposited and held by the Subscription Agent in a segregated account until released to the Debtors in connection with the settlement of the 1145 Rights Offering on or around the Effective Date. The Subscription Agent may not use such cash for any other purpose prior to the Effective Date and may not encumber or permit such cash to be encumbered with any lien or similar encumbrance. The cash held by the Subscription Agent hereunder (or in the Subscription Escrow Account) shall not be deemed part of the Debtors' bankruptcy estates.

*Tender of Notes.*  1145 Eligible Holders that hold Note Claims and that exercise their 1145 Subscription Rights are required to cause their Nominees to tender their Notes to an account of the Subscription Agent in accordance with DTC's ATOP procedures.  If the holder exercises its 1145 Subscription Rights only in part, then, for purposes of participation in the 1145 Rights Offering, the holder is only required to tender its Notes in proportion to the 1145 Subscription Rights being exercised (subject to the considerations addressed in the next paragraph which encourage holders to tender all of their Notes). If the holder holds Notes in more than one class or series, and is exercising its 1145 Subscription Rights, the tender of Notes in each class or series must be in proportion to the 1145 Subscription Rights being exercised in respect of the corresponding Note Claims.

Although for purposes of the 1145 Rights Offering, 1145 Eligible Holders are only required to tender their Notes in proportion to the 1145 Subscription Rights that they are exercising, for the regulatory reasons discussed in Section 14 "Citizenship Certification," the Company may be precluded from issuing New Common Stock to a holder of claims, including pursuant to the Rights Offerings, unless the holder completes a citizenship certification in the form attached as <u>Annex A</u> to the 1145 Subscription Form and, in the case of holders of Note Claims, tenders all of its Notes to the account of the Subscription Agent in accordance with DTC's ATOP procedures.  *Holders of Note Claims are therefore advised to tender <u>all</u> of their Notes regardless of the amount of 1145 Subscription Rights that they are exercising.*

*Holders of Both Note Claims and General Unsecured Claims.*  If an 1145 Eligible Holder wishes to exercise its 1145 Subscription Rights with respect to both its Note Claims and its General Unsecured Claims, it must separately comply with these 1145 Rights Offering and Unsecured Cash Out Election Procedures with respect to each of the Note Claims and General Unsecured Claims.  In particular, the holder should deliver, or cause to be delivered through its Nominee, to the Subscription Agent a separate 1145 Subscription Form for the Notes Claims, on the one hand, and the General Unsecured Claims, on the other.

*Participation in the 4(a)(2) Rights Offering.*  1145 Eligible Holders that are accredited investors or qualified institutional buyers are also eligible to participate in the 4(a)(2) Rights Offering.  These holders must exercise their subscription rights in the 4(a)(2) Rights Offering in the same proportion as they are exercising their 1145 Subscription Rights in the 1145 Rights Offering, for each type of claim, or, in the case of Note Claims, with respect to each class or series of Notes that they hold.  In the event that an 1145 Eligible Holder exercises its subscription rights under the 1145 Rights Offering and the 4(a)(2) Rights Offering in different proportions, with respect to any type of claim or class or series of Notes, the Debtors and the Subscription Agent will reduce the subscription rights being exercised in the Rights

Offering as to which the proportion is higher so that the proportion in each of the 1145 Rights Offering and the 4(a)(2) Rights Offering is equal.

For example, if an 1145 Eligible Holder exercises 75% of its 1145 Subscription Rights with respect to a particular issue (CUSIP) of Notes, and 50% of its subscription rights in the 4(a)(2) Rights Offering with respect to the same issue (CUSIP), the 1145 Subscription Rights deemed exercised in the 1145 Rights Offering for that issue (CUSIP) of Notes will be reduced to the 50% level.

The requirement that subscription rights be exercised in the same proportion in each of the two Rights Offerings does not apply to 1145 Eligible Holders who are not accredited investors or qualified institutional buyers, as they are not eligible to participate in the 4(a)(2) Rights Offering.

**5.      The Unsecured Cash Out Election**

Under the terms of the Plan, holders of Unsecured Notes Claims that are not accredited investors or qualified institutional buyers, and holders of General Unsecured Claims may make an election, referred to as the Unsecured Cash Out Election, to receive a cash payment in lieu of the distribution of New Common Stock in respect of their claims to which they would otherwise be entitled under the Plan and the opportunity to participate in the Rights Offerings.  The cash payment, which will be paid following, and subject to, effectiveness of the Plan, will equal such Holder's *pro rata* share of the GUC Distribution Cash Amount, which is $6.75 million (subject to increase by up to an additional $250,000 as set forth in the Plan).  The actual amount of the cash payment made to individual creditors will depend upon the amount of Allowed claims held by creditors that make the Unsecured Cash Out Election.  A holder making the Unsecured Cash Out Election must do so with respect to all of the Unsecured Notes Claims and General Unsecured Claims that it holds.  It cannot make a partial Unsecured Cash Out Election.

In order to make the Unsecured Cash Out Election, a holder of Unsecured Notes Claims or General Unsecured Claims must timely take all actions required by these 1145 Rights Offering and Unsecured Cash Out Election Procedures.

*Holders of Unsecured Notes Claims.* Holders of Unsecured Notes Claims that are not accredited investors or qualified institutional buyers wishing to make the Unsecured Cash Out Election must—

- certify to its Nominee that it is not an accredited investor or qualified institutional buyer, and direct its Nominee to effectuate the Unsecured Cash Out Election on behalf of such holder; and

- electronically tender its Notes to the appropriate account of the Subscription Agent in accordance with DTC's ATOP procedures.

The Subscription Agent and the Debtors reserve the right to request additional information in order to confirm that a holder of Unsecured Notes Claims making the Unsecured Cash Out Election is not an accredited investor or qualified institutional buyer.

*Holders of General Unsecured Claims.* Holders of General Unsecured Claims wishing to make the Unsecured Cash Out Election must—

- duly complete and execute an 1145 Subscription Form in accordance with these 1145 Rights Offering and Unsecured Cash Out Election Procedures indicating an intention to make the Unsecured Cash Out Election; and

#92336880v2

- deliver the executed 1145 Subscription Form to the Subscription Agent so that it is received by the Subscription Agent no later than the Subscription Instruction Deadline.

*Completion and Delivery of the 1145 Subscription Form.*  Holders of General Unsecured Claims that make the Unsecured Cash Out Election must so indicate on the 1145 Subscription Form, and must not complete any part of the Subscription Form that relates to the exercise of the 1145 Subscription Rights. The holders must also complete the information for the bank or brokerage account that they designate to receive the cash payable to them in accordance with the Unsecured Cash Out Election.

The 1145 Subscription Form must be delivered to the Subscription Agent as provided in Section 4 "Exercise of 1145 Subscription Rights—Delivery of the 1145 Subscription Form" above.

*Tender of the Unsecured Notes.*  1145 Eligible Holders that hold Unsecured Notes Claims and make the Unsecured Cash Out Election are required to cause their Nominees to tender their Notes to an account of the Subscription Agent in accordance with DTC's ATOP procedures. The holder must tender all Unsecured Notes that it holds, as a partial exercise of the Unsecured Cash Out Election is not permitted.

*Holders of Unsecured Notes Claims that are accredited investors or qualified institutional buyers are not eligible to make the Unsecured Cash Out Election; however, all holders of General Unsecured Claims, including holders that are accredited investors or qualified institutional buyers, are permitted to make an Unsecured Cash Out Election.*

### 6. Disputed General Unsecured Claims

General Unsecured Claims may be Allowed in whole or in part, or disallowed, in accordance with the Plan.  Holders of the General Unsecured Claims will only be eligible to participate in the 1145 Rights Offering, and will only be deemed 1145 Eligible Holders, to the extent that their claims are Allowed as of the Subscription Commencement Date.  If a General Unsecured Claim is Allowed only in part as of the Subscription Commencement Date, the holder of the claim will be deemed to be an 1145 Eligible Holder only as to that part, and the amount of the holder's claim for purposes of participation in the 1145 Rights Offering will be the Allowed amount of the claim.

The Debtors anticipate that prior to the Subscription Commencement Date, procedures will have been implemented to establish an Allowed amount of the disputed General Unsecured Claims for purposes of participation in the 1145 Rights Offering.  If a disputed General Unsecured Claim is Allowed subsequent to the Subscription Commencement Date, in whole or in part, the holder of the claim will not be entitled to exercise 1145 Subscription Rights with respect to the subsequently Allowed claim, or portion of the claim.  Instead, the holder will receive in respect of the subsequently Allowed claim, or portion of the claim, an amount of New Common Stock and/or cash as is provided under the Plan, as applicable based on whether the holder has made the Unsecured Cash Out Election.

### 7. Transfer Restriction; Revocation

(a)     The 1145 Subscription Rights, and the right to receive cash in respect of the Unsecured Cash Out Election, will not be detachable or transferable separately from the 1145 Eligible Claims.  Rather, the 1145 Subscription Rights and the right to receive cash in respect of the Unsecured Cash Out Election, will trade together and be evidenced by the corresponding 1145 Eligible Claims, until the Subscription Instruction Deadline, subject in the case of the Note Claims to such limitations, if any, that would be applicable to the transferability of the underlying Notes;

(b)     The 1145 Subscription Rights, and the right to make the Unsecured Cash Out Election, will trade together as a unit and be evidenced by the corresponding 1145 Eligible Claims, subject to such limitations, if any, that would be applicable to the transferability of the underlying Notes; and

(c)     Once an 1145 Eligible Holder has properly exercised its 1145 Subscription Rights or the Unsecured Cash Out Election, subject to the terms and conditions contained in these 1145 Rights Offering and Unsecured Cash Out Election Procedures and the Backstop Commitment Agreement in the case of any Commitment Party, such exercise will be irrevocable unless the 1145 Rights Offering is terminated.  Moreover, Notes that have been tendered cannot be withdrawn, and therefore cannot be transferred, unless the 1145 Rights Offering has been terminated.  Similarly, no transfer of General Unsecured Claims corresponding to 1145 Subscription Rights that have been exercised, or as to which the Unsecured Cash Out Election has been made, will be recognized, unless the 1145 Rights Offering is terminated.

## 8.     Termination/Return of Payment

Unless the Effective Date has occurred, the 1145 Rights Offering will be deemed automatically terminated without any action of any party upon the earlier of (i) termination of the Restructuring Support Agreement in accordance with its terms, (ii) termination of the Backstop Commitment Agreement in accordance with its terms, (iii) the Debtors revoke or withdraw the Plan and (iv) the Outside Date (pursuant to the terms of the Backstop Commitment Agreement as in effect on the Subscription Commencement Date).  In the event the 1145 Rights Offering is terminated, any payments of at least $25.00 received pursuant to these 1145 Rights Offering and Unsecured Cash Out Election Procedures will be returned, without interest, to the applicable 1145 Eligible Holder as soon as reasonably practicable, and, in the case of payments made in respect of Notes held through a Nominee, the underlying Notes will be returned to the Nominee that submitted them through ATOP.

## 9.     Settlement of the 1145 Rights Offering and Distribution of the 1145 Rights Offering Shares

The settlement of the 1145 Rights Offering is conditioned on confirmation of the Plan by the Bankruptcy Court and the simultaneous occurrence of the Effective Date.

## 10.    Fractional Shares

No fractional 1145 Rights Offering Shares will be issued in the 1145 Rights Offering. All share allocations (including each 1145 Eligible Holder's 1145 Rights Offering Shares) will be calculated in accordance with the directions set forth in the 1145 Subscription Form and rounded down to the nearest whole share.  The total amount of 1145 Rights Offering Shares that may be purchased pursuant to the 1145 Rights Offering shall be adjusted as necessary to account for the rounding described in this Section 8.  No compensation shall be paid, whether in cash or otherwise, in respect of any rounded-down amounts.

## 11.    Validity of Exercise of 1145 Subscription Rights

All questions concerning the timeliness, viability, form and eligibility of any exercise of 1145 Subscription Rights will be determined in good faith by the Debtors in consultation with the Requisite

Commitment Parties, and, if necessary, subject to a final and binding determination by the Bankruptcy Court. The Debtors, with the consent of the Requisite Commitment Parties, may waive or reject any defect or irregularity in, or permit such defect or irregularity to be corrected within such time as they may determine in good faith, the purported exercise of any 1145 Subscription Rights.  Subscriptions will be deemed not to have been received or accepted until all irregularities have been waived or cured within such time as the Debtors determine in good faith in consultation with the Requisite Commitment Parties. In addition, the Subscription Agent shall have no obligation to notify parties of or cure any defects to the forms returned in exercising the 1145 Subscription Rights.

**Before exercising any 1145 Subscription Rights, 1145 Eligible Holders should read the Disclosure Statement and the Plan for information relating to the Debtors and the risk factors to be considered.**

All calculations shall be made in good faith by the Debtors in consultation with the Creditors' Committee and with the consent of the Requisite Commitment Parties and in accordance with any claim amounts included in the Plan, and any disputes regarding such calculations shall be subject to a final and binding determination by the Bankruptcy Court.

### 12.    Modification of Procedures

With the prior written consent of the Requisite Commitment Parties and the Creditors' Committee, the Debtors reserve the right to modify these 1145 Rights Offering and Unsecured Cash Out Election Procedures, or adopt additional procedures consistent with these 1145 Rights Offering and Unsecured Cash Out Election Procedures to effectuate the 1145 Rights Offering and to issue the 1145 Rights Offering Shares, provided, however, that the Debtors shall provide prompt written notice to each 1145 Eligible Holder of any material modification to these 1145 Rights Offering and Unsecured Cash Out Election Procedures made after the Subscription Commencement Date by posting a notice with respect to the modified or additional procedures on the Debtors' case website; and  provided, further that any amendments or modifications to the terms of the 1145 Rights Offering are subject to the provisions of Section 10.7 of the Backstop Commitment Agreement.  In so doing, and subject to the consent of the Requisite Commitment Parties, the Debtors may execute and enter into agreements and take further action that the Debtors determine in good faith is necessary and appropriate to effectuate and implement the 1145 Rights Offering and the issuance of the 1145 Rights Offering Shares.

The Debtors may undertake reasonable procedures to confirm that any participant in the 1145 Rights Offering is in fact an 1145 Eligible Holder, requiring additional certifications by such participant to that effect and other diligence measures as the Debtors deem reasonably necessary.

### 13.    DTC

The Notes are held in book-entry form in accordance with the practices and procedures of the DTC.  The Debtors intend to comply with the practices and procedures of DTC for the purpose of conducting the 1145 Rights Offering with respect to the Notes, and, subject to compliance with the requirements for modifications set forth in Section 12 hereof, these 1145 Rights Offering and Unsecured Cash Out Election Procedures will be deemed appropriately modified to achieve such compliance.

With respect to 1145 Rights Offering Shares issued to 1145 Eligible Holders of Note Claims, without limiting the foregoing, the Company intends that, to the extent practicable, such 1145 Rights Offering Shares will be issued in book entry form, and that DTC, or its nominee, will be the holder of

18

record of such 1145 Rights Offering Shares. The ownership interest of each holder of such 1145 Rights Offering Shares, and transfers of ownership interests therein, is expected to be recorded on the records of the direct and indirect participants in DTC.  It is expected that all 1145 Rights Offering Shares exercised through DTC will be allocated to exercising holders through DTC on or as soon as practicable after the Effective Date.

Holders of General Unsecured Claims that purchase 1145 Rights Offering Shares can designate on their 1145 Subscription Form a Nominee with whom they have a securities account, and elect to receive the shares by book-entry credit, in accordance with the practices and procedures of DTC, to a DTC participant account of that Nominee (or that Nominee's DTC participant).  Alternatively, a holder can indicate on the 1145 Subscription Form that it wishes to hold the shares in direct registration on the books and records of the Company's registrar and transfer agent.  New Common Stock held in direct registration will not be represented by a stock certificate, but the shares will be registered in the name of the holder, and the holder will receive an account statement confirming issuance of the shares.  To the extent a holder of a General Unsecured Claim fails to provide any delivery information on the 1145 Subscription Form, the shares will be issued in direct registration on the books and records of the Company's registrar and transfer agent based on the contact information maintained on the official claims register.

**14.  Citizenship Certification**

Federal laws and regulations place limitations on the ownership by persons who are not U.S. citizens of companies, such as the Company, that are air carriers.  Under these laws and regulations, persons who are not U.S. citizens may not collectively own more than 25% of the New Stock of the Company.  In order to assure that the Company will be in compliance with these laws and regulations following the issuance, on or after the Effective Time, of New Stock under the Plan, including pursuant to the Rights Offerings, it is necessary for the Debtors to collect information regarding the citizenship of the persons that will be acquiring New Stock under the Plan. The Company may determine not to issue any New Stock under the Plan, including pursuant to the Rights Offerings, to any person to the extent that such person is not a U.S. citizen and such distribution would cause the Company not to be in compliance with these laws and regulations.

Accordingly, each person who is to receive New Stock under the Plan must make a certification to the Debtors regarding its citizenship (the "Citizenship Certification"), the form of which is attached as Annex A to the 1145 Subcription Form.  The Citizenship Certification of a person otherwise entitled to receive New Stock under the Plan must be received by no later than the Subscription Instruction Deadline.

The requirement that the Debtors be able to identify the citizenship of persons who will be receiving New Stock under the Plan includes holders of Note Claims.  Because the Notes underlying the Note Claims are held in book-entry through DTC, holders of Notes Claims are required to electronically tender all of their Notes through DTC's ATOP system to the account of the Subscription Agent in order for the Debtors to determine whether the holders have made the required certification.

1145 Eligible Holders should utilize the 1145 Subscription Form to provide the Debtors with the certification.  To make the Citizenship Certification, 1145 Eligible Holders should read and execute the Citizenship Certification attached as Annex A to the 1145 Subscription Form.  The electronic tender of Notes in accordance with DTC's ATOP procedures to the account of the Subscription Agent in connection with the exercise of the 1145 Subscription Rights will satisfy the requirement to tender the Notes for purposes of citizenship certification.  Even if an 1145 Eligible Holder that holds Note Claims is exercising its 1145 Subscription Rights with respect to only a portion of its Note Claims, the holder should tender all

of its Notes to the account of the Subscription Agent in order to comply with the requirements for Citizenship Certification.

### 15. Inquiries And Transmittal of Documents; Subscription Agent

The 1145 Rights Offering Instructions for 1145 Eligible Holders attached hereto should be carefully read and strictly followed by the 1145 Eligible Holders.

Questions relating to the 1145 Rights Offering should be directed to the Subscription Agent via email to bristowoffers@primeclerk.com (please reference "Bristow Offering" in the subject line) or at the following phone number: (844) 627-6967 (domestic toll-free) or (347) 292-3534 (international toll).  Please note that the Subscription Agent is only able to respond to procedural questions regarding the 1145 Rights Offering, and cannot provide any information beyond that included in these 1145 Rights Offering and Unsecured Cash Out Election Procedures and the 1145 Subscription Forms.  If applicable, an 1145 Eligible Holder must follow the directions of its Nominee with respect to providing instructions to it in connection with the 1145 Rights Offering.

The risk of non-delivery of any instructions, documents, and payments to any Nominee or to the Subscription Agent or the Escrow Account is on the 1145 Eligible Holder electing to exercise its 1145 Subscription Rights or Unsecured Cash Out Election and not the Debtors, the Subscription Agent, or the Commitment Parties.

**BRISTOW GROUP, INC.**
**RIGHTS OFFERING INSTRUCTIONS FOR ELIGIBLE HOLDERS**

**Terms used and not defined herein shall have the meaning assigned to them in the Plan.**

A.  **To elect to participate in the 1145 Rights Offering, please follow the following instructions:**

1.  **Insert** the Principal Amount of Secured Notes and/or Unsecured Notes, or the allowed amount of the General Unsecured Claim, as applicable, that you hold in Item 1 of your 1145 Subscription Form (if a Nominee holds Notes on your behalf and you do not know the principal amount, please contact your Nominee immediately).  If you are a holder of Secured Notes and/or Unsecured Notes, to the extent there is a discrepancy between the amount(s) indicated in Item 1 and the amount of Notes electronically tendered through ATOP, the amount of Notes tendered through ATOP shall control for purposes of calculating the maximum number of 1145 Rights Offering Shares available for you to purchase.

2.  **Complete** the worksheet in Item 1 of your 1145 Subscription Form, which calculates the maximum number of 1145 Rights Offering Shares available for you to purchase. Such amount must be rounded down to the nearest whole share.

3.  **Complete** Item 2a of your 1145 Subscription Form to indicate the number of 1145 Rights Offering Shares you elect to purchase and the aggregate Purchase Price for such 1145 Rights Offering Shares.

4.  **Read** Item 3 of your 1145 Subscription Form.

5.  **Read, complete and sign** the certification in Item 4 of your 1145 Subscription Form.  Such execution shall indicate your acceptance and approval of the terms and conditions set forth in these 1145 Rights Offering and Unsecured Cash Out Election Procedures.

6.  **Complete** Items 5 and 6 of your 1145 Subscription Form.

7.  **Return** your signed 1145 Subscription Form (including the IRS Substitute Form W-9) (i) *if you are a holder of Note Claims*, to your Nominee, and otherwise follow your Nominee's instructions with respect to the 1145 Rights Offering, in sufficient time to allow your Nominee to process your instructions and deliver your underlying Notes through ATOP by the Subscription Instruction Deadline and (ii) *if you are a holder of General Unsecured Claims*, to the Subscription Agent such that the duly completed 1145 Subscription Form is *actually received* by the Subscription Agent by the Subscription Instruction Deadline.

    If you are a non-U.S. person, read, complete and sign an appropriate IRS Form W-8. These forms may be obtained from the IRS at its website: www.irs.gov. Payment instructions will also be included in the Subscription Form.

#92336880v2

All Subscription Forms should be delivered to the Subscription Agent as follows:

If making physical delivery of the 1145 Subscription Form:

Bristow Group Inc. Offer Processing
c/o Prime Clerk LLC
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY 10165

If delivering the 1145 Subscription Form by electronic mail:

bristowoffers@primeclerk.com

8.      **Arrange for full payment** of the aggregate Purchase Price by wire transfer of immediately available funds, calculated in accordance with Item 2 of your 1145 Subscription Form. If you are exercising their 1145 Subscription Rights with respect to Note Claims and you are not a Commitment Party, you should coordinate with your Nominee, and follow the instructions of your Nominee, so that payment is received by the Subscription Agent no later than the Subscription Instruction Deadline.

Unless you are a Commitment Party, the Purchase Price should be wired in accordance with the wire instructions provided in the 1145 Subscription Form.

If you are a Commitment Party, you must make payment of the Purchase Price to the Subscription Escrow Account by the Subscription Escrow Funding Date in accordance with the Backstop Commitment Agreement.

9.      **For Commitment Parties ONLY, confirm** that you are a Commitment Party by providing the Commitment Party Addendum to your Nominee, so that the Nominee will receive confirmation that payment does not have to be made prior to the Subscription Instruction Deadline.  (*This instruction is only for Commitment Parties, each of which is aware of their status as a Commitment Party*).

B.      **If you are (i) a holder of Unsecured Notes Claims and are not an accredited investor or a qualified institutional buyer, or (ii) a holder of General Unsecured Claims, you may follow the following instructions in order to make the Unsecured Cash Out Election:**

1.      **Insert** the Principal Amount of Unsecured Notes, or the allowed amount of the General Unsecured Claim, as applicable, that you hold in Item 1 of your 1145 Subscription Form (if a Nominee holds Unsecured Notes on your behalf and you do not know the principal amount, please contact your Nominee immediately).  If you are a holder of Unsecured Notes, to the extent there is a discrepancy between the amount(s) indicated in Item 1 and the amount of Unsecured Notes electronically tendered through ATOP, the amount of Unsecured Notes tendered through ATOP shall control for purposes of calculating the

#92336880v2

maximum amount of your Unsecured Cash Out Election.

2.     **Complete** Item 2b of your 1145 Subscription Form to indicate the Unsecured Cash Out Election.

3.     **Read, complete and sign** the certification in Item 4 of your 1145 Subscription Form.  Such execution shall indicate your acceptance and approval of the terms and conditions set forth in these 1145 Rights Offering and Unsecured Cash Out Election Procedures.

4.     **Complete** Item 7 of your 1145 Subscription Form.

5.     **Return** your signed 1145 Subscription Form (including the IRS Substitute Form W-9) (i) *if you are a holder of Note Claims*, to your Nominee, and otherwise follow your Nominee's instructions with respect to the 1145 Rights Offering, in sufficient time to allow your Nominee to process your instructions and deliver your underlying Notes through ATOP by the Subscription Instruction Deadline and (ii) *if you are a holder of General Unsecured Claims*, to the Subscription Agent such that the duly completed 1145 Subscription Form is *actually received* by the Subscription Agent by the Subscription Instruction Deadline. If you are a non-U.S. person, read, complete and sign an appropriate IRS Form W-8. These forms may be obtained from the IRS at its website: www.irs.gov. Payment instructions will also be included in the Subscription Form.

**C.**     **To make the Citizenship Certification, please follow the following instructions:**

1.     **Complete** the Citizenship Certification attached as <u>Annex A</u> to your 1145 Subscription Form.

---

**The Subscription <u>Instruction</u> Deadline shall be 4:00 p.m. prevailing Central Time on [●]. 2019.**

*Exercise of Subscription Rights*.  **In order to participate in the 1145 Rights Offering, please note that the 1145 Subscription Form must be received (i) in the case of 1145 Eligible Holders who hold General Unsecured Claims, by the Subscription Agent by the Subscription Instruction Deadline, and (ii) in the case of 1145 Eligible Holders who hold Notes, by your Nominee in sufficient time to allow such Nominee to deliver the relevant Notes through ATOP by the Subscription Instruction Deadline, and to deliver to the Subscription Agent the 1145 Subscription Form along with the appropriate funding (with respect to 1145 Eligible Holders that are not Commitment Parties) or the subscription represented by your 1145 Subscription Form will not be recognized and you will be deemed forever to have relinquished and waived your right to participate in the 1145 Rights Offering.**

**1145 Eligible Holders that are Commitment Parties must deliver the appropriate funding to the Subscription Escrow Account by the Subscription Escrow Funding Date in accordance with the Backstop Commitment Agreement.**

---

***The Unsecured Cash Out Election.*** **Only holders of Unsecured Notes Claims that are not accredited investors or qualified institutional buyer or holders of General Unsecured Claims can make an Unsecured Cash Out Election. If you are a holder of a General Unsecured Claim, in order to make the Unsecured Cash Out Election, your 1145 Subscription Form, duly completed for making the Unsecured Cash Out Election, must be received by the Subscription Agent no later than the Subscription Instruction Deadline. If you are a holder of Unsecured Notes Claims, you must also certify that you are not an accredited investor or qualified institutional buyer by delivering your completed and executed 1145 Subscription Form to your Nominee, and instruct your Nominee to electronically tender your Notes to the appropriate account of the Subscription Agent through DTC's ATOP system no later than the Subscription Deadline. Unless you comply with these procedures with respect to making the Unsecured Cash Out Election, your Unsecured Cash Out Election will not be recognized, and you will be deemed forever to have relinquished and waived your right to make the Unsecured Cash Out Election.**

**BRISTOW GROUP INC., ET AL. (THE "<u>COMPANY</u>")**
**4(a)(2) RIGHTS OFFERING PROCEDURES[1]**

To 4(a)(2) Eligible Holders and Nominees of 4(a)(2) Eligible Holders:

The Plan provides for the Debtors to conduct two Rights Offerings pursuant to which certain creditors may acquire the common stock of the Company, as reorganized under the Plan (the "<u>New Common Stock</u>" and, together with the preferred stock issuable under the Plan (the "<u>New Preferred Stock</u>"), the "<u>New Stock</u>"), and for an election (the "<u>Unsecured Cash Out Election</u>") to receive cash in lieu of receiving a distribution of New Common Stock under the Plan and the opportunity to participate in the Rights Offerings.

These 4(a)(2) Rights Offering relate to the 4(a)(2) Rights Offering for 4(a)(2) Rights Offering Stock of the Company, whose issuance is exempt from registration under the Securities Act and state securities laws pursuant to section 4(a)(2) of the Securities Act of 1933, as amended (the "<u>Securities Act</u>"), and/or Regulation D promulgated thereunder.[2] The New Stock issuable in the 4(a)(2) Rights Offering will not be freely tradable under applicable securities laws.

You should read these 4(a)(2) Rights Offering Procedures in their entirety; key provisions are highlighted below:

- The parties entitled to participate in the 4(a)(2) Rights Offering (the "<u>4(a)(2) Eligible Holders</u>") are Holders of the following Claims that are "accredited investors" (within the meaning of Rule 501(a) under the Securities Act) or a "qualified institutional buyers" (within the meaning of Rule 144A of the Securities Act) and that are acquiring the 4(a)(2) Rights Offering Shares for their own account (collectively, the "<u>4(a)(2) Eligible Claims</u>"):

  o Secured Notes Claims with a principal amount equal to at least $1,000 (in compliance with the minimum denominations applicable to such Secured Notes) (Secured Notes Claims and Unsecured Notes Claims are collectively referred to as "<u>Notes Claims</u>," and the underlying notes are collectively referred to as the "<u>Notes</u>");

  o Unsecured Notes Claims with a principal amount equal to at least $1,000 (in compliance with the minimum denominations applicable to such Unsecured Notes); and

  o General Unsecured Claims.

---

[1]     Terms used and not defined herein shall have the meaning assigned to them in the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Debtor Affiliates* (as may be amended, modified or supplemented in accordance with the terms thereof, the "<u>Plan</u>") or the Backstop Commitment Agreement.

[2]     Separately, there are 1145 Rights Offering and Unsecured Cash Out Election Procedures governing the 1145 Rights Offering and the Unsecured Cash Out Election. You should refer to the 1145 Rights Offering and Unsecured Cash Out Election Procedures for the conditions of eligibility and the procedures for participation in the 1145 Rights Offering and Unsecured Cash Out Election.

1

- 4(a)(2) Eligible Holders shall have the right, but not the obligation, to participate in the 4(a)(2) Rights Offering and subscribe for 4(a)(2) Rights Offering Stock (such right, the "4(a)(2) Subscription Rights").  If you exercise your 4(a)(2) Subscription Rights, you will have to PAY for such exercise at the Purchase Price, as described further below, and if you are a holder of Notes, arrange for the underlying Notes to be tendered in accordance with the procedures described further below.

- If a 4(a)(2) Eligible Holder makes the Unsecured Cash Out Election in accordance with the 1145 Rights Offering and Unsecured Cash Out Election Procedures, such party is not entitled to receive New Stock under the Plan or to participate in the Rights Offerings.

- Pursuant to and in accordance with the Backstop Commitment Agreement, the Commitment Parties[3] must exercise all of their 4(a)(2) Subscription Rights, but need not transfer the Purchase Price until the Subscription Escrow Funding Date.[4]

- Holders of Notes and General Unsecured Claims are _not_ required to exercise any of their 4(a)(2) Subscription Rights (unless they are party to the Backstop Commitment Agreement), but they may if they wish to do so and they follow the required procedures.

- Additional information regarding the 4(a)(2) Rights Offering is provided in this document and in the 4(a)(2) Subscription Form enclosed herewith.

---

**Important Note:  Even if you choose not to participate in the Rights Offerings or to make the Unsecured Cash Out Election, you must deliver a Citizenship Certification (defined below) and, if you are the holder of Note Claims, you must electronically tender your Notes in accordance with the procedures described below, no later than [DATE] (the "Subscription Instruction Deadline") in order to receive the New Common Stock or other applicable distribution  to which you are entitled under the Plan.  See Section 14 "Citizenship Certification" below.**

---

[3]  Commitment Parties are the parties to the Backstop Commitment Agreement who have committed to purchase shares that are not purchased in the 4(a)(2) Rights Offering and the 1145 Rights Offering.  Certain provisions of the 1145 Rights Offering and Unsecured Cash Out Election Procedures and the 4(a)(2) Rights Offering Procedures are separately applicable to these parties.

[4]  Commitment Parties are required, however, to cause a Commitment Party Addendum (defined below) to be delivered to their Nominee, who will deliver such Addendum to the Subscription Agent (defined below) no later than the Subscription Instruction Deadline (defined below).

2

Each 4(a)(2) Rights Offering Share (as defined below), including the Unsubscribed Shares purchased by the Commitment Parties pursuant to the Backstop Commitment Agreement, is being distributed and issued by the Company pursuant to the 4(a)(2) Rights Offering without registration under the Securities Act, in reliance upon the exemption provided in Section 4(a)(2) of the Securities Act and/or Regulation D promulgated thereunder.  None of the 4(a)(2) Subscription Rights (as defined below) or the 4(a)(2) Rights Offering Shares issuable upon exercise of such 4(a)(2) Subscription Rights distributed to 4(a)(2) Eligible Holders that are not Commitment Parties pursuant to these 4(a)(2) Rights Offering Procedures in reliance upon the exemption provided in Section 4(a)(2) of the Securities Act and/or Regulation D promulgated thereunder have been or will be registered under the Securities Act, nor any state or local law requiring registration for offer and sale of a security.

The 4(a)(2) Subscription Rights will not be detachable or transferable separately from the 4(a)(2) Eligible Claims.  Rather, the 4(a)(2) Subscription Rights will trade together and be evidenced by the corresponding 4(a)(2) Eligible Claims, until the Subscription Instruction Deadline, subject in the case of the Note Claims to such limitations, if any, that would be applicable to the transferability of the underlying Notes.

Each share of New Common Stock or New Preferred Stock issued upon exercise of a 4(a)(2) Subscription Right in reliance upon the exemption provided by Section 4(a)(2) of the Securities Act and/or Regulation D promulgated thereunder, and share issued in exchange for or upon the transfer, sale or assignment of any such share of New Common Stock or New Preferred Stock, shall be imprinted or otherwise associated with a legend in substantially the following form:

"THE SECURITIES REPRESENTED HEREBY WERE ORIGINALLY ISSUED ON [ISSUANCE DATE], HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR ANY APPLICABLE STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR AN AVAILABLE EXEMPTION FROM REGISTRATION THEREUNDER."

Exercise of the 4(a)(2) Subscription Rights once made cannot be revoked unless the 4(a)(2) Rights Offering is terminated.  Notes that have been tendered cannot be withdrawn, and therefore cannot be transferred, unless exercise of the 4(a)(2) Subscription Rights is permitted to be revoked because the 4(a)(2) Rights Offering has been terminated.  Similarly, no transfer of General Unsecured Claims corresponding to 4(a)(2) Subscription Rights that have been exercised will be recognized, unless the 4(a)(2) Rights Offering is terminated.

The Disclosure Statement (as defined below) has been distributed in connection with the Debtors' solicitation of votes to accept or reject the Plan (as defined below) and that document sets forth important information, including risk factors, that should be carefully read and considered by each 4(a)(2) Eligible Holder (as defined below) prior

3

to making a decision to participate in the 4(a)(2) Rights Offering.  Additional copies of the Disclosure Statement are available upon request from Prime Clerk LLC (the "<u>Subscription Agent</u>").

The 4(a)(2) Rights Offering is being conducted by the Company in good faith and in compliance with the Bankruptcy Code. In accordance with Section 1125(e) of the Bankruptcy Code, a debtor or any of its agents that participate, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security offered or sold under the plan of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such participation, for violation of any applicable law, rule, or regulation governing the offer, issuance, sale or purchase of securities.

4

4(a)(2) Eligible Holders should note the following times relating to the 4(a)(2) Rights Offering:

| Date | Calendar Date | Event |
|---|---|---|
| Subscription Commencement Date | [●], 2019 | Commencement of the 4(a)(2) Rights Offering and the first date on which 4(a)(2) Eligible Holders are eligible to exercise 4(a)(2) Subscription Rights. |
| Subscription Instruction Deadline | 4:00 p.m. prevailing Central Time on [●], 2019 | The deadline for 4(a)(2) Eligible Holders to subscribe for 4(a)(2) Rights Offering Shares.<br><br>*All 4(a)(2) Eligible Holders*<br><br>A 4(a)(2) Eligible Holder's applicable 4(a)(2) subscription form with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable (the "4(a)(2) Subscription Form") must be received by the Subscription Agent by the Subscription Instruction Deadline.<br><br>4(a)(2) Eligible Holders that are holders of Note Claims must deliver their 4(a)(2) Subscription Forms to their Nominees in sufficient time to allow such Nominee to deliver the 4(a)(2) Subscription Form to the Subscription Agent, and to deliver the relevant Notes through ATOP (as defined below) by the Subscription Instruction Deadline. 4(a)(2) Eligible Holders who hold Notes through a Nominee are urged to consult with their Nominees to determine the necessary deadline to return their 4(a)(2) Subscription Forms to their Nominee.<br><br>*Non-Commitment Parties*<br><br>4(a)(2) Eligible Holders who are not Commitment Parties must deliver the aggregate Purchase Price by the Subscription Instruction Deadline. 4(a)(2) Eligible Holders that are holders of Note Claims should coordinate payment of the Purchase Price through their Nominees.<br><br>*Commitment Parties*<br><br>4(a)(2) Eligible Holders who are Commitment Parties must arrange for the Commitment Party Addendum to be provided to their Nominee so that the Nominee and the Subscription Agent will receive confirmation that payment does not have to be made prior to the Subscription Instruction Deadline. 4(a)(2) Eligible Holders who are Commitment Parties shall not be required to pay their respective aggregate Purchase |

| | Price until the Subscription Escrow Funding Date in accordance with the terms of the Backstop Commitment Agreement. |
|---|---|

KL2 3143718.2

On [●], 2019, the Debtors filed the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and its Debtor Affiliates* (as may be amended, modified, or supplemented from time to time in accordance with the terms thereof, the "Plan") with the United States Bankruptcy Court for the Southern District of Texas, Houston Division, and the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and its Debtor Affiliates* (as may be amended from time to time in accordance with its terms, the "Disclosure Statement").

### The 4(a)(2) Rights Offering

Pursuant to the Plan:

- Each Holder of a Secured Notes Claim holding a number of Secured Notes with a principal amount at least equal to $1,000 that is an accredited investor or a qualified institutional buyer and that is acquiring the 4(a)(2) Rights Offering Shares for its own account (the "4(a)(2) Eligible Secured Holders") shall be entitled to exercise Secured Holder 4(a)(2) Subscription Rights pursuant to the 4(a)(2) Secured Rights Offering (as defined below).

- Each holder of an Unsecured Notes Claim holding a number of Unsecured Notes with a principal amount at least equal to $1,000, and each holder of a General Unsecured Claim, in each case, that (i) has not timely made an Unsecured Cash Out Election, (ii) is an accredited investor or a qualified institutional buyer and (iii) is acquiring the 4(a)(2) Rights Offering Shares for its own account (collectively, the "4(a)(2) Eligible Unsecured Holders" and together with the 4(a)(2) Eligible Secured Holders, the "4(a)(2) Eligible Holders") shall be entitled to exercise Unsecured Holder 4(a)(2) Subscription Rights (as defined below) pursuant to the Unsecured 4(a)(2) Rights Offering (as defined below), in each case, in accordance with the terms and conditions of these 4(a)(2) Rights Offering Procedures.

- Holders of General Unsecured Claims, including holders that are accredited investors or qualified institutional buyers, may make the Unsecured Cash Out Election to receive a cash payment in lieu of receiving a distribution of New Common Stock under the Plan and the opportunity to participate in the Rights Offerings, as described in the 1145 Rights Offering and Unsecured Cash Out Election Procedures.

For the avoidance of doubt, a 4(a)(2) Eligible Holder includes anyone who meets the requirements set forth in the immediately preceding paragraph and holds the relevant Notes or any General Unsecured Claim during the Rights Exercise Period (as defined below). The Secured 4(a)(2) Rights Offering and the Unsecured 4(a)(2) Rights Offering are collectively referred to as the "4(a)(2) Rights Offering."

### The 1145 Rights Offering

Separately, pursuant to the Plan, there is also being conducted an 1145 Rights Offering. Holders of Secured Notes Claims, Unsecured Notes Claims or General Unsecured Claims are eligible to participate in the 4(a)(2) Rights Offering.

*Purchase Price.*  The purchase price per share of New Stock in both the 4(a)(2) Rights Offering and the 1145 Rights Offering is $36.37 per share (the "Purchase Price").

**Allocation of Rights Offering Shares**

<u>**Secured Notes Claims**</u>**:**  Pursuant to the Plan, each 4(a)(2) Eligible Holder of Secured Notes Claims will have the right (but not the obligation) through the Rights Offerings to subscribe for its *pro rata* portion of a total of New Stock with an aggregate purchase price of $37,500,000, at the Purchase Price of $36.37 per share, calculated by multiplying the number of Secured Rights Offering Shares (as defined below) offered in the Rights Offerings by the Purchase Price.  This includes [●] shares of New Common Stock in the 4(a)(2) Rights Offering for an aggregate purchase price of $[●] (the "Secured 4(a)(2) Rights Offering," and such shares, the "Secured 4(a)(2) Rights Offering Shares"), and [●] shares of New Stock in the 1145 Rights Offering for an aggregate purchase price of $[●] (the "Secured 1145 Rights Offering Shares," and, collectively with the Secured 4(a)(2) Rights Offering Shares, the "Secured Rights Offering Shares").

<u>**Unsecured Notes Claims and General Unsecured Claims**</u>**:**  Pursuant to the Plan, each 4(a)(2) Eligible Holder of Unsecured Notes Claims or General Unsecured Claims that has not timely made an Unsecured Cash Out Election will have the right (but not the obligation) through the Rights Offerings to subscribe for its *pro rata* portion of a total of New Stock with an aggregate purchase price of $347,500,000, at the Purchase Price of $36.37 per share, calculated by multiplying the number of Unsecured Rights Offering Shares (defined below) offered in the Rights Offerings by the Purchase Price.  This includes [●] shares of New Common Stock in the 4(a)(2) Rights Offering for an aggregate purchase price of $[●] (the "Unsecured 4(a)(2) Rights Offering," and such shares, the "Unsecured 4(a)(2) Rights Offering Shares"), and [●] shares of New Stock in the 1145 Rights Offering for an aggregate purchase price of $[●] (the "Unsecured 1145 Rights Offering Shares," and, collectively with the Unsecured 4(a)(2) Rights Offering Shares, the "Unsecured Rights Offering Shares").

4(a)(2) Eligible Holders of Note Claims wishing to subscribe in the Rights Offerings should return their 4(a)(2) Subscription Forms only to the broker, bank, commercial bank, transfer agent, trust company, dealer, or other agent or nominee (as applicable, the "Nominee") for processing.

**For any 4(a)(2) Eligible Holder of Note Claims: As part of the exercise process, following exercise of 4(a)(2) Subscription Rights, any related Notes held through DTC will be frozen from trading, as described below.**  With respect to 4(a)(2) Eligible Holders who hold Notes, all 4(a)(2) Subscription Forms and/or other instructions required by their respective Nominee must be returned to the applicable Nominee in sufficient time to allow such Nominee to process and deliver the underlying Notes through The Depository Trust Company ("DTC") Automated Tender Offer Program ("ATOP"), which is how the related 4(a)(2) Subscription Rights will be exercised by those 4(a)(2) Eligible Holders of Note Claims. By giving the instruction to its Nominee to submit the underlying Notes through ATOP, such holder is (i) authorizing its Nominee to exercise the 4(a)(2) Subscription Rights associated with the amount of Notes as to which the instruction pertains and corresponding to the elections evidenced on such holder's 4(a)(2) Subscription Form; and (ii) certifying that it understands that, once submitted, the underlying Notes will be frozen from trading until the Effective Date, at which point (a) the underlying Notes will be cancelled pursuant to the Plan; (b) the holder will receive its *pro rata* share of the New Stock distributed to its Class pursuant to the Plan and any other treatment afforded to such Class pursuant to the Plan; (c) the holder will additionally receive any related 4(a)(2) Rights Offering Shares; (d) if such holder is an 1145 Eligible Holder of Note Claims, such holder will receive

any 1145 Rights Offering shares for which it has subscribed; and (e) if such holder is a holder of Unsecured Notes and is not a 4(a)(2) Eligible Holder (and solely if such Holder fully exercises its Unsecured Holder 1145 Subscription Rights), such holder will receive its *pro rata* share of the Unsecured 4(a)(2) Distribution Cash Amount (up to a maximum of 7.6% of such holder's Unsecured Notes Claims); <u>provided</u> that as described in Section 13 "Citizenship Certification," the Company may determine not to issue any New Stock under the Plan, including pursuant to the Rights Offerings, to any person to the extent that such person is not a U.S. citizen and such distribution would cause the Company not to be in compliance with certain laws and regulations. The amount of time necessary for a Nominee to process and deliver the applicable Notes through ATOP may vary. If applicable, Holders are urged to consult with their Nominees to determine the necessary deadline to return their 4(a)(2) Subscription Forms to their Nominee. Failure to submit such 4(a)(2) Subscription Form on a timely basis will result in forfeiture of a 4(a)(2) Eligible Holder's 4(a)(2) Subscription Rights. None of the Company, the Subscription Agent or any of the Commitment Parties will have any liability for any such failure.

No 4(a)(2) Eligible Holder (except a Commitment Party) shall be entitled to participate in the Rights Offering unless the aggregate Purchase Price (as defined below) for the 4(a)(2) Rights Offering Shares it subscribes for is received by the Subscription Agent by the Subscription Instruction Deadline.

**Commitment Parties are party to the Backstop Commitment Agreement, have already been designated, and are known both to the Company and to themselves**.

<u>Special note for Commitment Parties</u>.  Commitment Parties will receive (through their counsel) an addendum (the "<u>Commitment Party Addendum</u>"), and must arrange for the Commitment Party Addendum to be provided to their Nominee, who will deliver the addendum to the Subscription Agent, so that the Nominee and the Subscription Agent will receive confirmation that payment does not have to be made prior to the Subscription Instruction Deadline.  Commitment Parties are subject to these 4(a)(2) Rights Offering Procedures, except that Commitment Parties are not required to make payment of the Purchase Price by the Subscription Instruction Deadline, and instead must provide its payment by the Subscription Escrow Funding Date to the Subscription Escrow Account in accordance with Section 2.4(b) of the Backstop Commitment Agreement.

**The rights and obligations of the Commitment Parties in the 4(a)(2) Rights Offering shall be governed by the Backstop Commitment Agreement to the extent the rights or obligations set forth therein differ from the rights and obligations set forth in these 4(a)(2) Rights Offering Procedures or any 4(a)(2) Subscription Form.**

No interest is payable on any advanced funding of the Purchase Price.  If the 4(a)(2) Rights Offering is terminated for any reason, the aggregate Purchase Price previously received by the Subscription Agent will be returned to 4(a)(2) Eligible Holders as provided in Section 8 "Termination/Return of Payment".  No interest will be paid on any returned Purchase Price.

**To participate in the 4(a)(2) Rights Offering, a 4(a)(2) Eligible Holder must complete all of the steps outlined below. If a 4(a)(2) Eligible Holder does not complete all of the steps outlined below by the Subscription Instruction Deadline, such 4(a)(2) Eligible Holder shall be deemed to have forever and irrevocably relinquished and waived its right to participate in the 4(a)(2) Rights Offering; provided that the Commitment Parties (in their capacities as 4(a)(2) Eligible Holders) shall not be required to submit funds in respect of the exercise of their 4(a)(2) Subscription Rights**

until the Subscription Escrow Funding Date in accordance with the terms of the Backstop Commitment Agreement.

**1.     4(a)(2) Rights Offering**

4(a)(2) Eligible Secured Holders have the right, but not the obligation, to participate in the Secured 4(a)(2) Rights Offering, and 4(a)(2) Eligible Unsecured Holders have the right, but not the obligation, to participate in the Unsecured 4(a)(2) Rights Offering; provided, however, that 4(a)(2) Eligible Holders that are Commitment Parties must exercise their 4(a)(2) Subscription Rights pursuant to the Backstop Commitment Agreement.

During the Rights Exercise Period, 4(a)(2) Eligible Secured Holders are eligible to subscribe for their *pro rata* portion of the Secured 4(a)(2) Rights Offering Shares, and 4(a)(2) Eligible Unsecured Holders are eligible to subscribe for their *pro rata* portion of the Unsecured 4(a)(2) Rights Offering Shares.

Only holders of Secured Notes Claims, and holders of Unsecured Notes Claims and General Unsecured Claims that are accredited investors or qualified institutional buyers and that are acquiring the 4(a)(2) Rights Offering Shares for their own account and have not timely made an Unsecured Cash Out Election (if eligible), may participate in the 4(a)(2) Rights Offering and receive 4(a)(2) Rights Offering Shares.

**Each 4(a)(2) Eligible Holder may only elect to participate in the 4(a)(2) Rights Offering in the same proportion as such 4(a)(2) Eligible Holder elects to participate in the 1145 Rights Offering, and each 1145 Eligible Holder may only elect to participate in the 1145 Rights Offering in the same proportion as such 1145 Eligible Holder elects to participate in the 4(a)(2) Rights Offering.**

There is no record date for the 4(a)(2) Rights Offering.  Any 4(a)(2) Eligible Holder that holds 4(a)(2) Eligible Claims during the period beginning on the Subscription Commencement Date and ending on the Subscription Instruction Deadline (the "Rights Exercise Period") may participate in the 4(a)(2) Rights Offering, subject to timely compliance with these 4(a)(2) Rights Offering Procedures.

Subject to the terms and conditions set forth in the Plan and these 4(a)(2) Rights Offering Procedures, each Eligible Secured Holder during the Rights Exercise Period is entitled to subscribe for its *pro rata* share of the Secured 4(a)(2) Rights Offering Shares at the Purchase Price.

Subject to the terms and conditions set forth in the Plan and these 4(a)(2) Rights Offering Procedures, each Eligible Unsecured Holder during the Rights Exercise Period is entitled to subscribe for its *pro rata* share of the Unsecured 4(a)(2) Rights Offering Shares at the Purchase Price.

There will be no over-subscription privilege in the 4(a)(2) Rights Offering.  Any Unsubscribed Shares will not be offered to other 4(a)(2) Eligible Holders but will be purchased by the applicable Commitment Parties in accordance with the Backstop Commitment Agreement.

**SUBJECT TO THE TERMS AND CONDITIONS OF THESE 4(a)(2) RIGHTS OFFERING PROCEDURES (AND THE BACKSTOP COMMITMENT AGREEMENT IN THE**

CASE OF ANY COMMITMENT PARTY), ALL SUBSCRIPTIONS SET FORTH IN THE SUBSCRIPTION FORM ARE IRREVOCABLE.

**2.      Rights Exercise Period**

The 4(a)(2) Rights Offering will commence and the 4(a)(2) Subscription Rights will be allocated on the Subscription Commencement Date and will expire at the Subscription Instruction Deadline.  Each 4(a)(2) Eligible Holder intending to purchase 4(a)(2) Rights Offering Shares in any 4(a)(2) Rights Offering must affirmatively elect to exercise its 4(a)(2) Subscription Rights in the manner set forth in the 4(a)(2) Subscription Form by the Subscription Instruction Deadline and must pay for any exercised 4(a)(2) Subscription Rights by the applicable deadline.

Any exercise (including payment) of the 4(a)(2) Subscription Rights to purchase Secured 4(a)(2) Rights Offering Shares (the "Secured Holder 4(a)(2) Subscription Rights") by an Eligible Secured Holder after the Subscription Instruction Deadline will not be allowed and any purported exercise (including payment) received by the Subscription Agent after the Subscription Instruction Deadline, regardless of when the documents or payment relating to such exercise were sent, will not be honored.

Any exercise (including payment) of the 4(a)(2) Subscription Rights to purchase Unsecured 4(a)(2) Rights Offering Shares (the "Unsecured Holder 4(a)(2) Subscription Rights" and together with the Secured Holder 4(a)(2) Subscription Rights, the "4(a)(2) Subscription Rights") by an Eligible Unsecured Holder after the Subscription Instruction Deadline will not be allowed and any purported exercise (including payment) received by the Subscription Agent after the Subscription Instruction Deadline, regardless of when the documents or payment relating to such exercise were sent, will not be honored.

The Subscription Instruction Deadline may be extended by the Company with the prior written approval of the Requisite Commitment Parties, or as required by law.

As more fully described below, in order for a 4(a)(2) Eligible Holder to acquire shares in the 4(a)(2) Rights Offering, no later than the Subscription Instruction Deadline:

- its 4(a)(2) Subscription Form must be received by the Subscription Agent;

- if it is a holder of Note Claims, its Notes must be electronically tendered to the Subscription Agent in accordance with DTC's ATOP procedures by its Nominee; and

- if it is not a Commitment Party, the Purchase Price for its 4(a)(2) Rights Offering Shares must be received by the Subscription Agent by wire transfer of immediately available funds.

Although Commitment Parties are not required to pay the Purchase Price by the Subscription Instruction Deadline, they are required to deliver a Commitment Party Addendum to their Nominee by such date, who must deliver such addendum along with such Commitment Party's 4(a)(2) Subscription Form to the Subscription Agent no later than the Subscription Instruction Deadline.

**3.      Delivery of Subscription Documents**

Each 4(a)(2) Eligible Holder may exercise all or any portion of such 4(a)(2) Eligible Holder's 4(a)(2) Subscription Rights, subject to the terms and conditions contained herein. In order to facilitate

11

the exercise of the 4(a)(2) Subscription Rights, beginning on the Subscription Commencement Date, the 4(a)(2) Subscription Form and these 4(a)(2) Rights Offering Procedures will be sent to 4(a)(2) Eligible Holders at that time, including appropriate instructions for the proper completion, due execution and timely delivery of the executed 4(a)(2) Subscription Form and the payment of the applicable aggregate Purchase Price for its 4(a)(2) Rights Offering Shares.

4.      **Exercise of 4(a)(2) Subscription Rights**

In order to validly exercise its 4(a)(2) Subscription Rights, a 4(a)(2) Eligible Holder must timely take all actions required by these 4(a)(2) Rights Offering Procedures.

*Holders of Note Claims.* 4(a)(2) Eligible Holders that hold Note Claims must—

- duly complete and execute a 4(a)(2) Subscription Form (including an accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) in accordance with these 4(a)(2) Rights Offering Procedures;

- direct its Nominee to electronically tender its Notes to the appropriate account of the Subscription Agent in accordance with DTC's ATOP procedures prior to the Subscription Instruction Deadline;

- deliver its executed 4(a)(2) Subscription Form to its Nominee, so that the Nominee may insert the DTC ATOP Confirmation Number(s) reflecting the tender of the holder's Notes and deliver the 4(a)(2) Subscription Form to the Subscription Agent, such that the 4(a)(2) Subscription Form is received by the Subscription Agent no later than the Subscription Instruction Deadline; and

- as to the Purchase Price,

  - if the holder is not a Commitment Party, coordinate with its Nominee to deliver payment of the Purchase Price no later than the Subscription Instruction Deadline for the 4(a)(2) Rights Offering Shares for which it has subscribed by wire transfer **ONLY** of immediately available funds to the Subscription Agent in accordance with the instructions included in the 4(a)(2) Subscription Form, in the case of a holder that is not a Commitment Party, no later than the Subscription Instruction Deadline; and

  - if the holder is a Commitment Party, make payment of the Purchase Price to the Subscription Escrow Account by the Subscription Escrow Funding Date in accordance with the Backstop Commitment Agreement.

**ALL BACKSTOP COMMITMENT PARTIES MUST MAKE PAYMENTS TO THE SUBSCRIPTION ESCROW ACCOUNT IN ACCORDANCE WITH THE BACKSTOP COMMITMENT AGREEMENT, AND SHOULD NOT PAY THEIR NOMINEE(S).**

*Holders of General Unsecured Claims.* 4(a)(2) Eligible Holders that hold General Unsecured Claims must—

- duly complete and execute a 4(a)(2) Subscription Form in accordance with these 4(a)(2) Rights Offering Procedures;

- deliver the executed 4(a)(2) Subscription Form to the Subscription Agent so that it is received by the Subscription Agent no later than the Subscription Instruction Deadline; and

12

- deliver payment of the Purchase Price for the 4(a)(2) Rights Offering Shares for which it has subscribed by wire transfer of immediately available funds to the Subscription Agent no later than the Subscription Instruction Deadline.

*Delivery of the 4(a)(2) Subscription Form.*  The 4(a)(2) Subscription Form may be delivered to the Subscription Agent by either physical delivery or by electronic mail in accordance with the address information for the Subscription Agent set forth below under "Rights Offering Instructions for Eligible Holders" and on the 4(a)(2) Subscription Form.  In all cases, the Subscription Form must actually be received by the Subscription Agent no later than the Subscription Instruction Deadline.

Holders of Note Claims must deliver their Subscription Form to their Nominee (and otherwise follow the instructions of their Nominee), and instruct their Nominee to tender their Notes to the account of the Subscription Agent in accordance with DTC's ATOP procedures, in sufficient time for their Nominee to deliver the 4(a)(2) Subscription Form and tender their Notes to the Subscription Agent no later than the Subscription Instruction Deadline.

*Payment of the Purchase Price.*  Payment of the Purchase Price must be made by wire transfer of immediately available funds to the account of the Subscription Agent indicated below under "Rights Offering Instructions for Eligible Holders" and on the Subscription Form.  Other than in the case of Commitment Parties, the funds must be received in the account of the Subscription Agent no later than the Subscription Instruction Deadline.

In the event that the funds received by the Subscription Agent, as applicable, from any 4(a)(2) Eligible Holder (other than a Commitment Party) do not correspond to the Purchase Price payable for the 4(a)(2) Rights Offering Shares elected to be purchased by such 4(a)(2) Eligible Holder, the number of the 4(a)(2) Rights Offering Shares deemed to be purchased by such 4(a)(2) Eligible Holder will be the lesser of (a) the number of the 4(a)(2) Rights Offering Shares elected to be purchased by such 4(a)(2) Eligible Holder as evidenced by the relevant 4(a)(2) Subscription Form and (b) a number of the 4(a)(2) Rights Offering Shares determined by dividing the amount of the funds received by the Purchase Price, in each case up to such 4(a)(2) Eligible Holder's *pro rata* portion of 4(a)(2) Rights Offering Shares.

Other than with respect to the Commitment Parties, the cash paid to the Subscription Agent in accordance with these 4(a)(2) Rights Offering Procedures will be deposited and held by the Subscription Agent in a segregated account until released to the Debtors in connection with the settlement of the 4(a)(2) Rights Offering on or around the Effective Date. The Subscription Agent may not use such cash for any other purpose prior to the Effective Date and may not encumber or permit such cash to be encumbered with any lien or similar encumbrance. The cash held by the Subscription Agent hereunder (or in the Subscription Escrow Account) shall not be deemed part of the Debtors' bankruptcy estates.

*Tender of Notes.*  4(a)(2) Eligible Holders that hold Note Claims and that exercise their 4(a)(2) Subscription Rights are required to cause their Nominees to tender their Notes to an account of the Subscription Agent in accordance with DTC's ATOP procedures.  If the holder exercises its 4(a)(2) Subscription Rights only in part, then, for purposes of participation in the 4(a)(2) Rights Offering, the holder is only required to tender its Notes in proportion to the 4(a)(2) Subscription Rights being exercised (subject to the considerations addressed in the next paragraph which encourage holders to tender all of their Notes).  If the holder holds Notes in more than one class or series, and is exercising its 4(a)(2) Subscription Rights, the tender of Notes in each class or series must be in proportion to the 4(a)(2) Subscription Rights being exercised in respect of the corresponding Note Claims.

Although for purposes of the 4(a)(2) Rights Offering, 4(a)(2) Eligible Holders are only required to tender their Notes in proportion to the 4(a)(2) Subscription Rights that they are exercising, for the regulatory reasons discussed in Section 13 "Citizenship Certification," the Company may be precluded from issuing New Common Stock to a holder of claims, including pursuant to the Rights Offerings, unless the holder completes a citizenship certification in the form attached as <u>Annex A</u> to the 4(a)(2) Subscription Form and, in the case of holders of Note Claims, tenders all of its Notes to the account of the Subscription Agent in accordance with DTC's ATOP procedures. *Holders of Note Claims are therefore advised to tender <u>all</u> of their Notes regardless of the amount of 4(a)(2) Subscription Rights that they are exercising.*

*Holders of Both Note Claims and General Unsecured Claims.* If a 4(a)(2) Eligible Holder wishes to exercise its 4(a)(2) Subscription Rights with respect to both its Note Claims and its General Unsecured Claims, it must separately comply with these 4(a)(2) Rights Offering Procedures with respect to each of the Note Claims and General Unsecured Claims. In particular, the holder should deliver, or cause to be delivered through its Nominee, to the Subscription Agent a separate 4(a)(2) Subscription Form for the Notes Claims, on the one hand, and the General Unsecured Claims, on the other.

*Participation in the 1145 Rights Offering.* 4(a)(2) Eligible Holders are also eligible to participate in the 1145 Rights Offering. These holders must exercise their subscription rights in the 1145 Rights Offering in the same proportion as they are exercising their 4(a)(2) Subscription Rights in the 4(a)(2) Rights Offering, for each type of claim, or, in the case of Note Claims, with respect to each class or series of Notes that they hold. In the event that a 4(a)(2) Eligible Holder exercises its subscription rights under the 4(a)(2) Rights Offering and the 1145 Rights Offering in different proportions, with respect to any type of claim or class or series of Notes, the Debtors and the Subscription Agent will reduce the subscription rights being exercised in the Rights Offering as to which the proportion is higher so that the proportion in each of the 4(a)(2) Rights Offering and the 4(a)(2) Rights Offering is equal.

For example, if a 4(a)(2) Eligible Holder exercises 75% of its 4(a)(2) Subscription Rights with respect to a particular issue (CUSIP) of Notes, and 50% of its subscription rights in the 1145 Rights Offering with respect to the same issue (CUSIP), the 4(a)(2) Subscription Rights deemed exercised in the 4(a)(2) Rights Offering for that issue (CUSIP) of Notes will be reduced to the 50% level.

The requirement that subscription rights be exercised in the same proportion in each of the two Rights Offerings does not apply to 1145 Eligible Holders who are not accredited investors or qualified institutional buyers, as they are not eligible to participate in the 4(a)(2) Rights Offering.

## 5.    Disputed General Unsecured Claims

General Unsecured Claims may be Allowed in whole or in part, or disallowed, in accordance with the Plan. Holders of the General Unsecured Claims will only be eligible to participate in the 4(a)(2) Rights Offering, and will only be deemed 4(a)(2) Eligible Holders, to the extent that their claims are Allowed as of the Subscription Commencement Date. If a General Unsecured Claim is Allowed only in part as of the Subscription Commencement Date, the holder of the claim will be deemed to be a 4(a)(2) Eligible Holder only as to that part, and the amount of the holder's claim for purposes of participation in the 4(a)(2) Rights Offering will be the Allowed amount of the claim.

The Debtors anticipate that prior to the Subscription Commencement Date, procedures will have been implemented to establish an Allowed amount of the disputed General Unsecured Claims for purposes of participation in the 4(a)(2) Rights Offering. If a disputed General Unsecured Claim is

Allowed subsequent to the Subscription Commencement Date, in whole or in part, the holder of the claim will not be entitled to exercise 4(a)(2) Subscription Rights with respect to the subsequently Allowed claim, or portion of the claim. Instead, the holder will receive in respect of the subsequently Allowed claim, or portion of the claim, an amount of New Stock and/or cash as is provided under the Plan, as applicable based on whether the holder has made the Unsecured Cash Out Election.

### 6. Transfer Restriction; Revocation

(a)    The 4(a)(2) Subscription Rights will not be detachable or transferable separately from the 4(a)(2) Eligible Claims. Rather, the 4(a)(2) Subscription Rights will trade together and be evidenced by the corresponding 4(a)(2) Eligible Claims, until the Subscription Instruction Deadline, subject in the case of the Note Claims to such limitations, if any, that would be applicable to the transferability of the underlying Notes;

(b)    The 4(a)(2) Subscription Rights will trade together as a unit and be evidenced by the corresponding 4(a)(2) Eligible Claims, subject to such limitations, if any, that would be applicable to the transferability of the underlying Notes; and

(c)    Once a 4(a)(2) Eligible Holder has properly exercised its 4(a)(2) Subscription Rights, subject to the terms and conditions contained in these 4(a)(2) Rights Offering Procedures and the Backstop Commitment Agreement in the case of any Commitment Party, such exercise will be irrevocable unless the 4(a)(2) Rights Offering is terminated. Moreover, Notes that have been tendered cannot be withdrawn, and therefore cannot be transferred, unless the 4(a)(2) Rights Offering has been terminated.

### 7. Termination/Return of Payment

Unless the Effective Date has occurred, the 4(a)(2) Rights Offering will be deemed automatically terminated without any action of any party upon the earlier of (i) termination of the Restructuring Support Agreement in accordance with its terms, (ii) termination of the Backstop Commitment Agreement in accordance with its terms, (iii) the Debtors revoke or withdraw the Plan and (iv) the Outside Date (pursuant to the terms of the Backstop Commitment Agreement as in effect on the Subscription Commencement Date). In the event the 4(a)(2) Rights Offering is terminated, any payments of at least $25.00 received pursuant to these 4(a)(2) Rights Offering Procedures will be returned, without interest, to the applicable 4(a)(2) Eligible Holder as soon as reasonably practicable, and, in the case of payments made in respect of Notes held through a Nominee, the underlying Notes will be returned to the Nominee that submitted them through ATOP.

### 8. Settlement of the 4(a)(2) Rights Offering and Distribution of the 4(a)(2) Rights Offering Shares

The settlement of the 4(a)(2) Rights Offering is conditioned on confirmation of the Plan by the Bankruptcy Court and the simultaneous occurrence of the Effective Date.

### 9. Fractional Shares

No fractional 4(a)(2) Rights Offering Shares will be issued in the 4(a)(2) Rights Offering. All share allocations (including each 4(a)(2) Eligible Holder's 4(a)(2) Rights Offering Shares) will be

calculated in accordance with the directions set forth in the 4(a)(2) Subscription Form and rounded down to the nearest whole share. The total amount of 4(a)(2) Rights Offering Shares that may be purchased pursuant to the 4(a)(2) Rights Offering shall be adjusted as necessary to account for the rounding described in this Section 8. No compensation shall be paid, whether in cash or otherwise, in respect of any rounded-down amounts.

### 10. Validity of Exercise of 4(a)(2) Subscription Rights

All questions concerning the timeliness, viability, form and eligibility of any exercise of 4(a)(2) Subscription Rights will be determined in good faith by the Debtors in consultation with the Requisite Commitment Parties, and, if necessary, subject to a final and binding determination by the Bankruptcy Court. The Debtors, with the consent of the Requisite Commitment Parties, may waive or reject any defect or irregularity in, or permit such defect or irregularity to be corrected within such time as they may determine in good faith, the purported exercise of any 4(a)(2) Subscription Rights. Subscriptions will be deemed not to have been received or accepted until all irregularities have been waived or cured within such time as the Debtors determine in good faith in consultation with the Requisite Commitment Parties. In addition, the Subscription Agent shall have no obligation to notify parties of or cure any defects to the forms returned in exercising the 4(a)(2) Subscription Rights.

**Before exercising any 4(a)(2) Subscription Rights, 4(a)(2) Eligible Holders should read the Disclosure Statement and the Plan for information relating to the Debtors and the risk factors to be considered.**

All calculations shall be made in good faith by the Debtors in consultation with the Creditors' Committee and with the consent of the Requisite Commitment Parties and in accordance with any claim amounts included in the Plan, and any disputes regarding such calculations shall be subject to a final and binding determination by the Bankruptcy Court.

### 11. Modification of Procedures

With the prior written consent of the Requisite Commitment Parties and the Creditors' Committee, the Debtors reserve the right to modify these 4(a)(2) Rights Offering Procedures, or adopt additional procedures consistent with these 4(a)(2) Rights Offering Procedures to effectuate the 4(a)(2) Rights Offering and to issue the 4(a)(2) Rights Offering Shares, provided, however, that the Debtors shall provide prompt written notice to each 4(a)(2) Eligible Holder of any material modification to these 4(a)(2) Rights Offering Procedures made after the Subscription Commencement Date by posting a notice with respect to the modified or additional procedures on the Debtors' case website; and provided, further that any amendments or modifications to the terms of the 4(a)(2) Rights Offering are subject to the provisions of Section 10.7 of the Backstop Commitment Agreement. In so doing, and subject to the consent of the Requisite Commitment Parties, the Debtors may execute and enter into agreements and take further action that the Debtors determine in good faith is necessary and appropriate to effectuate and implement the 4(a)(2) Rights Offering and the issuance of the 4(a)(2) Rights Offering Shares.

The Debtors may undertake reasonable procedures to confirm that any participant in the 4(a)(2) Rights Offering is in fact a 4(a)(2) Eligible Holder, requiring additional certifications by such participant to that effect and other diligence measures as the Debtors deem reasonably necessary.

12.    **DTC**

The Notes are held in book-entry form in accordance with the practices and procedures of the DTC.  The Debtors intend to comply with the practices and procedures of DTC for the purpose of conducting the 4(a)(2) Rights Offering with respect to the Notes, and, subject to compliance with the requirements for modifications set forth in Section 12 hereof, these 4(a)(2) Rights Offering Procedures will be deemed appropriately modified to achieve such compliance.

With respect to 4(a)(2) Rights Offering Shares issued to 4(a)(2) Eligible Holders of Note Claims, without limiting the foregoing, the Company intends that, to the extent practicable, such 4(a)(2) Rights Offering Shares will be issued in book entry form, and that DTC, or its nominee, will be the holder of record of such 4(a)(2) Rights Offering Shares. The ownership interest of each holder of such 4(a)(2) Rights Offering Shares, and transfers of ownership interests therein, is expected to be recorded on the records of the direct and indirect participants in DTC.  It is expected that all 4(a)(2) Rights Offering Shares exercised through DTC will be allocated to exercising holders through DTC on or as soon as practicable after the Effective Date.

Holders of General Unsecured Claims that purchase 4(a)(2) Rights Offering Shares can designate on their 4(a)(2) Subscription Form a Nominee with whom they have a securities account, and elect to receive the shares by book-entry credit, in accordance with the practices and procedures of DTC, to a DTC participant account of that Nominee (or that Nominee's DTC participant).  Alternatively, a holder can indicate on the 4(a)(2) Subscription Form that it wishes to hold the shares in direct registration on the books and records of the Company's registrar and transfer agent.  New Stock held in direct registration will not be represented by a stock certificate, but the shares will be registered in the name of the holder, and the holder will receive an account statement confirming issuance of the shares.  To the extent a holder of a General Unsecured Claim fails to provide any delivery information on the 4(a)(2) Subscription Form, the shares will be issued in direct registration on the books and records of the Company's registrar and transfer agent based on the contact information maintained on the official claims register.

13.    **Citizenship Certification**

Federal laws and regulations place limitations on the ownership by persons who are not U.S. citizens of companies, such as the Company, that are air carriers.  Under these laws and regulations, persons who are not U.S. citizens may not collectively own more than 25% of the New Stock of the Company.  In order to assure that the Company will be in compliance with these laws and regulations following the issuance, on or after the Effective Time, of New Stock under the Plan, including pursuant to the Rights Offerings, it is necessary for the Debtors to collect information regarding the citizenship of the persons that will be acquiring New Stock under the Plan. The Company may determine not to issue any New Stock under the Plan, including pursuant to the Rights Offerings, to any person to the extent that such person is not a U.S. citizen and such distribution would cause the Company not to be in compliance with these laws and regulations.

Accordingly, each person who is to receive New Stock under the Plan must make a certification to the Debtors regarding its citizenship (the "Citizenship Certification"), the form of which is attached as Annex A to the 4(a)(2) Subscription Form.  The Citizenship Certification of a person otherwise entitled to receive New Stock under the Plan must be received by no later than the Subscription Instruction Deadline.

The requirement that the Debtors be able to identify the citizenship of persons who will be receiving New Stock under the Plan includes holders of Note Claims.  Because the Notes underlying the Note Claims are held in book-entry through DTC, holders of Notes Claims are required to electronically tender all of their Notes through DTC's ATOP system to the account of the Subscription Agent in order for the Debtors to determine whether the holders have made the required certification.

4(a)(2) Eligible Holders should utilize the 4(a)(2) Subscription Form to provide the Debtors with the certification.  To make the Citizenship Certification, 4(a)(2) Eligible Holders should read and execute the Citizenship Certification attached as <u>Annex A</u> to the 4(a)(2) Subscription Form.  The electronic tender of Notes in accordance with DTC's ATOP procedures to the account of the Subscription Agent in connection with the exercise of the 4(a)(2) Subscription Rights will satisfy the requirement to tender the Notes for purposes of the Citizenship Certification.  Even if a 4(a)(2) Eligible Holder that holds Note Claims is exercising its 4(a)(2) Subscription Rights with respect to only a portion of its Note Claims, the holder should tender all of its Notes to the account of the Subscription Agent in order to comply with the requirements for the Citizenship Certification.

## 14.    Inquiries And Transmittal of Documents; Subscription Agent

The 4(a)(2) Rights Offering Instructions for 4(a)(2) Eligible Holders attached hereto should be carefully read and strictly followed by the 4(a)(2) Eligible Holders.

Questions relating to the 4(a)(2) Rights Offering should be directed to the Subscription Agent via email to bristowoffers@primeclerk.com (please reference "Bristow Offering" in the subject line) or at the following phone number: (844) 627-6967 (domestic toll-free) or (347) 292-3534 (international toll).  Please note that the Subscription Agent is only able to respond to procedural questions regarding the 4(a)(2) Rights Offering, and cannot provide any information beyond that included in these 4(a)(2) Rights Offering Procedures and the 4(a)(2) Subscription Forms.  If applicable, a 4(a)(2) Eligible Holder must follow the directions of its Nominee with respect to providing instructions to it in connection with the 4(a)(2) Rights Offering.

The risk of non-delivery of any instructions, documents, and payments to any Nominee or to the Subscription Agent or the Escrow Account is on the 4(a)(2) Eligible Holder electing to exercise its 4(a)(2) Subscription Rights or Unsecured Cash Out Election and not the Debtors, the Subscription Agent, or the Commitment Parties.

**BRISTOW GROUP, INC.**
**RIGHTS OFFERING INSTRUCTIONS FOR ELIGIBLE HOLDERS**

**Terms used and not defined herein shall have the meaning assigned to them in the Plan.**

A.   **To elect to participate in the 4(a)(2) Rights Offering, please follow the following instructions:**

1.   **Insert** the Principal Amount of Secured Notes and/or Unsecured Notes, or the allowed amount of the General Unsecured Claim, as applicable, that you hold in Item 1 of your 4(a)(2) Subscription Form (if a Nominee holds Notes on your behalf and you do not know the principal amount, please contact your Nominee immediately).  If you are a holder of Secured Notes and/or Unsecured Notes, to the extent there is a discrepancy between the amount(s) indicated in Item 1 and the amount of Notes electronically tendered through ATOP, the amount of Notes tendered through ATOP shall control for purposes of calculating the maximum number of 4(a)(2) Rights Offering Shares available for you to purchase.

2.   **Complete** the worksheet in Item 1 of your 4(a)(2) Subscription Form, which calculates the maximum number of 4(a)(2) Rights Offering Shares available for you to purchase. Such amount must be rounded down to the nearest whole share.

3.   **Complete** Item 2(a) of your 4(a)(2) Subscription Form to indicate the number of 4(a)(2) Rights Offering Shares you elect to purchase and the aggregate Purchase Price for such 4(a)(2) Rights Offering Shares.

4.   **Complete** Item 3 of your 4(a)(2) Subscription Form regarding payment and delivery instructions.

5.   **Read, complete and sign** the certification in Item 4 of your 4(a)(2) Subscription Form. Such execution shall indicate your acceptance and approval of the terms and conditions set forth in these 4(a)(2) Rights Offering Procedures.

6.   **Read and complete** Items 5 and 6 of your 4(a)(2) Subscription Form.

7.   **Return** your signed 4(a)(2) Subscription Form (including the IRS Substitute Form W-9) (i) *if you are a holder of Note Claims*, to your Nominee, and otherwise follow your Nominee's instructions with respect to the 4(a)(2) Rights Offering, in sufficient time to allow your Nominee to process your instructions and deliver your underlying Notes through ATOP by the Subscription Instruction Deadline and (ii) *if you are a holder of General Unsecured Claims*, to the Subscription Agent such that the duly completed 4(a)(2) Subscription Form is *actually received* by the Subscription Agent by the Subscription Instruction Deadline.

If you are a non-U.S. person, read, complete and sign an appropriate IRS Form W-8. These forms may be obtained from the IRS at its website: www.irs.gov. Payment

19

instructions will also be included in the Subscription Form.

All Subscription Forms should be delivered to the Subscription Agent as follows:

If making physical delivery of the 4(a)(2) Subscription Form:

Bristow Group Inc. Offer Processing
c/o Prime Clerk LLC
One Grand Central Place
60 East 42nd Street, Suite 1440
New York, NY 10165

If delivering the 4(a)(2) Subscription Form by electronic mail:

bristowoffers@primeclerk.com

8.  **Arrange for full payment** of the aggregate Purchase Price by wire transfer of immediately available funds, calculated in accordance with Item 2 of your 4(a)(2) Subscription Form. If you are exercising their 4(a)(2) Subscription Rights with respect to Note Claims and you are not a Commitment Party, you should coordinate with your Nominee, and follow the instructions of your Nominee, so that payment is received by the Subscription Agent no later than the Subscription Instruction Deadline.

Unless you are a Commitment Party, the Purchase Price should be wired in accordance with the wire instructions provided in the 4(a)(2) Subscription Form.

If you are a Commitment Party, you must make payment of the Purchase Price to the Subscription Escrow Account by the Subscription Escrow Funding Date in accordance with the Backstop Commitment Agreement.

9.  **For Commitment Parties ONLY, confirm** that you are a Commitment Party by providing the Commitment Party Addendum to your Nominee, so that the Nominee will receive confirmation that payment does not have to be made prior to the Subscription Instruction Deadline.  (*This instruction is only for Commitment Parties, each of which is aware of their status as a Commitment Party*).

B.  **To make the Citizenship Certification, please follow the following instructions:**

1.  **Complete** the Citizenship Certification attached as _Annex A_ to your 4(a)(2) Subscription Form.

C.  **To make the certification as to your status as an "accredited investor" or "qualified institutional buyer," please follow the following instructions:**

1.  **Complete** the Investor Certification attached as _Annex B_ to your 4(a)(2) Subscription Form.

**The Subscription <u>Instruction</u> Deadline shall be 4:00 p.m. prevailing Central Time on [●]. 2019.**

*Exercise of Subscription Rights.*  **In order to participate in the 4(a)(2) Rights Offering, please note that the 4(a)(2) Subscription Form must be received (i) in the case of 4(a)(2) Eligible Holders who hold General Unsecured Claims, by the Subscription Agent by the Subscription Instruction Deadline, and (ii) in the case of 4(a)(2) Eligible Holders who hold Notes, by your Nominee in sufficient time to allow such Nominee to deliver the relevant Notes through ATOP by the Subscription Instruction Deadline, and to deliver to the Subscription Agent the 4(a)(2) Subscription Form along with the appropriate funding (with respect to 4(a)(2) Eligible Holders that are not Commitment Parties) or the subscription represented by your 4(a)(2) Subscription Form will not be recognized and you will be deemed forever to have relinquished and waived your right to participate in the 4(a)(2) Rights Offering.**

**4(a)(2) Eligible Holders that are Commitment Parties must deliver the appropriate funding to the Subscription Escrow Account by the Subscription Escrow Funding Date in accordance with the Backstop Commitment Agreement.**

KL2 3143718.2

## **Exhibit 8(b)**

Subscription Materials

**BRISTOW GROUP INC.**

**1145 SUBSCRIPTION FORM**
**FOR 1145 RIGHTS OFFERING AND UNSECURED CASH OUT ELECTION**

**FOR USE BY 1145 ELIGIBLE HOLDERS OF**
**SECURED NOTE CLAIMS AND UNSECURED NOTE CLAIMS**

**IN CONNECTION WITH THE DEBTORS'**
**DISCLOSURE STATEMENT DATED [●], 2019**

---

**SUBSCRIPTION INSTRUCTION DEADLINE**

**The Subscription Instruction Deadline is 4:00 p.m. Central Time on [●], 2019.**

**Please note that your 1145 Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) must be received by Prime Clerk LLC (the "Subscription Agent") at or prior to the Subscription Instruction Deadline or the subscription represented by your 1145 Subscription Form will not be recognized, and you will be deemed forever to have relinquished and waived your right to participate in the 1145 Rights Offering or to make the Unsecured Cash Out Election (if applicable).**

**1145 Eligible Holders that are holders of Note Claims must deliver their 1145 Subscription Forms to their Nominees (as defined in the 1145 Rights Offering and Cash Out Election Procedures) in sufficient time to allow such Nominee to tender the relevant Notes to the appropriate account of the Subscription Agent through ATOP (as defined below), and to deliver their 1145 Subscription Form to the Subscription Agent (as applicable), by the Subscription Instruction Deadline.  1145 Eligible Holders are urged to consult with their Nominees to determine the deadline for the delivery of their 1145 Subscription Form to their Nominee in order for the Nominee to comply with these requirements, and to otherwise comply with their Nominee's instructions.**

**1145 Eligible Holders that are not Commitment Parties must arrange for payment of the Purchase Price for their subscription to be received by Subscription Agent by the Subscription Instruction Deadline, and should coordinate payment of the Purchase Price through their Nominees.**

**1145 Eligible Holders who are Commitment Parties must arrange for the Commitment Party Addendum to be provided to their Nominee so that the Nominee and the Subscription Agent will receive confirmation that payment does not have to be made prior to the Subscription Instruction Deadline. 1145 Eligible Holders that are Commitment Parties must deliver the appropriate funding directly to the Subscription Escrow Account by the deadline indicated in the Commitment Party Funding Notice (the "Subscription Escrow Funding Date").**

**The 1145 Rights Offering Shares, other than Unsubscribed Shares purchased by the Commitment Parties pursuant to the Backstop Commitment Agreement, are being distributed and issued by the Debtors without registration under the Securities Act of 1933, as amended (the "Securities Act"), in reliance upon the exemption provided in section 1145 of the Bankruptcy Code.**

**None of the 1145 Subscription Rights or the 1145 Rights Offering Shares issuable upon exercise of such 1145 Subscription Rights, distributed to 1145 Eligible Holders that are not Commitment Parties pursuant to the 1145 Rights Offering and Unsecured Cash Out Election Procedures in reliance upon the exemption provided in Section 1145 of the Bankruptcy Code, have been or will be registered under the Securities Act, nor any state or local law requiring registration for the offer or sale of a security.**

**Please consult the Plan, the Disclosure Statement and the 1145 Rights Offering and Cash Out Election**

**Procedures (including the 1145 Rights Offering Instructions included herein) for additional information with respect to this 1145 Subscription Form. Any terms capitalized but not defined herein shall have the meaning as set forth in the Plan or the 1145 Rights Offering and Cash Out Election Procedures.**

**If you have any questions, please contact the Subscription Agent via email at bristowoffers@primeclerk.com (please reference "<u>Bristow 1145 Rights Offering</u>" in the subject line), or at the following applicable phone number: (844) 627-6967 (domestic toll-free) or (347) 292-3534 (international toll).**

**SUBJECT TO THE TERMS AND CONDITIONS OF THE 1145 RIGHTS OFFERING AND UNSECURED CASH OUT ELECTION PROCEDURES (AND THE BACKSTOP COMMITMENT AGREEMENT IN THE CASE OF ANY COMMITMENT PARTY), ALL SUBSCRIPTIONS SET FORTH IN THIS 1145 SUBSCRIPTION FORM ARE IRREVOCABLE.**

To subscribe, fill out Items 1 and 2 and read and complete Items 3, 4, 5 and 6 below.

**Item 1.  Amount of Notes and Calculation of Maximum Number of 1145 Rights Offering Shares.**[1]

The undersigned, or the beneficial owner on whose behalf the undersigned is executing this form, is a beneficial Holder of Notes in the following principal amount(s) and/or that the person executing this form is an authorized signatory of that beneficial Holder. For purposes of this 1145 Subscription Form, do not adjust the principal (face) amount for any accrued or unmatured interest.  The amounts below must correspond to the principal amounts of Notes that your Nominee electronically delivers via ATOP (if there is a discrepancy between Item 1 and the amount delivered via ATOP, the principal amount of Notes electronically delivered through ATOP shall control). (If a Nominee holds your Notes on your behalf and you do not know the principal amount, please contact your Nominee immediately.)

**IMPORTANT NOTE:  IF YOU HOLD YOUR NOTES THROUGH MORE THAN ONE NOMINEE, YOU <u>MUST</u> COMPLETE AND RETURN A SEPARATE 1145 SUBSCRIPTION FORM TO EACH APPLICABLE NOMINEE.  YOU MAY NOT AGGREGATE POSITIONS HELD BY DIFFERENT NOMINEES ON A SINGLE 1145 SUBSCRIPTION FORM.**

---

[1]   Assumes a Rights Offerings Amount of $385,000,000 and no DIP Surplus Conversion; to the extent of modifications of the Rights Offerings Amount and any DIP Surplus Conversion, the Purchase Price and amount of Rights Offerings Shares offered will change.

*[Insert principal amount of Notes electronically delivered through ATOP and calculate Maximum Number of 1145 Rights Offering Shares for each CUSIP held]*

| | If you own the following Notes: | CUSIP/ISIN | Principal Amount delivered via ATOP | | Rights Factor | | The Maximum Number of 1145 Rights Offering Shares is: |
|---|---|---|---|---|---|---|---|
| 1a | 8.75% Secured Notes due 2023 | 110394 AG8 / US110394AG86 | $_____ | x | [TBD] | = | _____<br>Item 1a<br>(Round down to the nearest whole share) |
| 1b | 8.75% Secured Notes due 2023 | U1104MAB7 / USU1104MAB73 | $_____ | x | [TBD] | = | _____<br>Item 1b<br>(Round down to the nearest whole share) |
| 1c | 6.250% Senior Notes due 2022 | 110394AE3 / US110394AE39 | $_____ | x | [TBD] | = | _____<br>Item 1c<br>(Round down to the nearest whole share) |
| 1d | 4.50% Convertible Senior Notes due 2023 | 110394 AF0 / US110394AF04 | $_____ | x | [TBD] | = | _____<br>Item 1d<br>(Round down to the nearest whole share) |
| **Maximum 1145 Participation Amount (Total of Items 1a-1d):** | | | | | | | _____ |

**Item 2.  Purchase Price, Unsecured Cash Out Election and Unsecured 4(a)(2) Distribution Cash Amount.**

　**2a-2d.**  By filling in the following blanks in the table below, you are indicating that the undersigned 1145 Eligible Holder is electing to purchase the number of 1145 Rights Offering Shares specified below (specify a number of 1145 Rights Offering Shares, which is not greater than the Maximum 1145 Participation Amount calculated in Item 1a-1d, respectively, above), on the terms and subject to the conditions set forth in the 1145 Rights Offering and Unsecured Cash Out Election Procedures.

| | | | | | |
|---|---|---|---|---|---|
| 2a | _____<br>(Insert number of 1145 Rights Offering Shares you elect to purchase – not to exceed the amount in Item 1a above) | x | $36.37 | = | $_____<br><br>Item 2a – Purchase Price |
| 2b | _____<br>(Insert number of 1145 Rights Offering Shares you elect to purchase – not to exceed the amount in Item 1b above) | x | $36.37 | = | $_____<br><br>Item 2b – Purchase Price |
| 2c | _____<br>(Insert number of 1145 Rights Offering Shares you elect to purchase – not to exceed the amount in Item 1c above) | x | $36.37 | = | $_____<br><br>Item 2c – Purchase Price |
| 2d | _____<br>(Insert number of 1145 Rights Offering Shares you elect to purchase – not to exceed the amount in Item 1d above) | x | $36.37 | = | $_____<br><br>Item 2d – Purchase Price |
| **Total 1145 Rights Offering Shares Electing to Purchase** | _____<br>**(Indicate total number of 1145 Rights Offering Shares you elect to purchase by adding Items 2a-2d in each row above)** | | **Aggregate Purchase Price for 1145 Rights Offering Shares:** | | $_____<br>**(Indicate aggregate Purchase Price of 1145 Rights Offering Shares you elect to purchase by adding Items 2a-2d in each row above)** |

**2e.**  1145 Eligible Holders of Unsecured Notes that are not "accredited investors" (within the meaning of Rule 501(a) under the Securities Act) or "qualified institutional buyers" (within the meaning of Rule 144A of the Securities Act) may make the Unsecured Cash Out Election to receive their pro rata share of the GUC Distribution Cash Amount in accordance with the Plan by checking the box below.

You should NOT complete Item 1c-1d or Item 2c-2d if you are making the Unsecured Cash Out Election.

If you hold your Unsecured Notes through more than one Nominee, you must make the Unsecured Cash Out Election for the Unsecured Notes that you hold with all your Nominees.  Otherwise, your Unsecured Cash Out Election will not be valid.  By checking the box below in this Item 2e, you are certifying that you have made the Unsecured Cash Election with respect to all the Unsecured Notes that you beneficially own, including Unsecured Notes held with other Nominees.

**If you check the box below, then, provided your Nominee tenders your corresponding Unsecured Notes through ATOP, you will only receive a distribution of cash. You will NOT receive any 1145 Rights Offering Shares or New Common Stock under the Plan with respect to your Unsecured Notes.**

☐   I am an 1145 Eligible Holder of Unsecured Notes that is not an "accredited investor" (within the meaning of Rule 501(a) under the Securities Act) or "qualified institutional buyer" (within the meaning of Rule 144A of the Securities Act), and I hereby elect to receive my *pro rata* share of the GUC Distribution Cash in accordance with the Plan in lieu of New Common Stock and 1145 Rights Offering Shares with respect to my Unsecured Notes

**IMPORTANT NOTE FOR HOLDERS OF UNSECURED NOTES THAT CHECK THE ABOVE BOX TO MAKE THE UNSECURED CASH OUT ELECTION**:  TO EFFECTUATE THIS ELECTION, YOUR NOMINEE IS ONLY REQUIRED TO TENDER YOUR UNDERLYING NOTES THROUGH ATOP. YOUR NOMINEE SHOULD NOT RETURN THIS 1145 SUBSCRIPTION FORM OR THE CITIZENSHIP CERTIFICATION TO THE SUBSCRIPTION AGENT.  IF YOUR NOTES ARE VALIDLY TENDERED THROUGH ATOP, THE CASH PAYMENT IN RESPECT OF YOUR UNSECURED CASH OUT ELECTION WILL BE PAID TO THE DTC PARTICIPANT ACCOUNT FROM WHICH YOUR NOTES WERE DELIVERED VIA ATOP, AND SHOULD BE CREDITED TO YOUR ACCOUNT WITH YOUR NOMINEE IN ACCORDANCE WITH YOUR NOMINEE'S PRACTICES AND PROCEDURES.

**2f.**  1145 Eligible Holders of Unsecured Notes that are not "accredited investors" or "qualified institutional buyers" that have fully exercised their 1145 Subscription Rights will receive their *pro rata* share of the Unsecured 4(a)(2) Distribution Cash Amount (up to a maximum of 7.6% of such holder's Unsecured Notes Claims) in accordance with the Plan.  By checking the box below, you certify that you are a holder of Unsecured Notes, that you are not an "accredited investor" or a "qualified institutional buyer" and that you have exercised your 1145 Subscription Rights with respect to ALL Unsecured Notes that you beneficially own, including any Unsecured Notes held with other Nominees

☐   I am an 1145 Eligible Holder of Unsecured Notes that is not an "accredited investor" or "qualified institutional buyer," and I have fully exercised my 1145 Subscription Rights with respect to all Unsecured Notes that I beneficially own.

## Item 3.  Payment Instructions and Share Delivery Information.

For 1145 Eligible Holders that  (i) did not check the box in Item 2e above and (ii) are not Commitment Parties, payment of the aggregate Purchase Price calculated pursuant to Item 2 above shall be made by wire transfer ONLY of immediately available funds by no later than the Subscription Instruction Deadline in accordance with the following instructions.  1145 Eligible Holders should coordinate with their Nominees, and, follow their Nominee's instructions, with respect to the payment of the Purchase Price.

U.S. Wire Instructions:

| | |
|---|---|
| Account Name : | |
| Bank Account No.: | |
| ABA/Routing No.: | |
| Bank Name: | |
| Bank Address: | |
| Reference: | |

International Wire Instructions:

| | |
|---|---|
| Correspondent/Intermediary Bank SWIFT | |
| Correspondent/Intermediary Bank Name | |
| Correspondent/Intermediary Bank Address | |
| Beneficiary Account Number | |
| Beneficiary Name | |
| Beneficiary Address | |
| Memo, Special Instructions, Originator to Beneficiary Information, Bank to Bank Information | |

Please note that the failure to include the claimant name or form number in the reference field of any domestic or international wire payment may result in the rejection of the corresponding rights offering submission. In addition, please also note that payments cannot be aggregated, and one wire should be sent per 1145 Subscription Form submission.

1145 Eligible Holders that are Commitment Parties are required to complete and return to their Nominee the Commitment Party Addendum, which was provided to Commitment Parties directly by their applicable counsel.  If you did not receive the Commitment Party Addendum from your counsel, please reach out to your counsel or the Subscription Agent for assistance. For 1145 Eligible Holders that are Commitment Parties, payment of the aggregate Purchase Price calculated pursuant to Item 2 above shall be made by wire transfer ONLY of immediately available funds directly to an account established and maintained by a third party satisfactory to the Commitment Parties, which account may be an escrow account pursuant to Section 2.4(b) of the Backstop Commitment Agreement (the "Subscription Escrow Account").

**NO NOMINEE OR BROKER SHOULD MAKE ANY PAYMENT IN RESPECT OF THE AGGREGATE PURCHASE PRICE OF A COMMITMENT PARTY WHO RETURNED THE COMMITMENT PARTY ADDENDUM TO THEIR NOMINEE, AND NO NOMINEE OR BROKER SHOULD DEDUCT FUNDS FROM THE ACCOUNT OF A COMMITMENT PARTY TO MAKE ANY SUCH PAYMENT.**

**IN ADDITION, THE 1145 RIGHTS OFFERING SHARES ARE EXPECTED TO BE DTC ELIGIBLE, AND SUCH SHARES WILL ONLY BE DELIVERED TO THE DTC PARTICIPANT ACCOUNT FORM WHICH THE UNDERLYING NOTES WERE DELIVERED VIA ATOP.**

**PLEASE NOTE: NO 1145 RIGHTS OFFERING SUBMISSION WILL BE VALID UNLESS ON OR PRIOR TO THE SUBSCRIPTION INSTRUCTION DEADLINE (I) THIS 1145 SUBSCRIPTION FORM IS VALIDLY SUBMITTED TO THE SUBSCRIPTION AGENT BY YOUR NOMINEE, (II) YOUR NOMINEE ELECTRONICALLY DELIVERS THE UNDERLYING NOTES CORRESPONDING TO THIS 1145 SUBSCRIPTION FORM THROUGH ATOP AND (III) WITH RESPECT TO 1145 ELIGIBLE HOLDERS THAT ARE NOT COMMITMENT PARTIES, THE AGGREGATE PURCHASE PRICE IS RECEIVED BY THE SUBSCRIPTION AGENT.**

**1145 ELIGIBLE HOLDERS THAT ARE COMMITMENT PARTIES MUST COMPLY WITH (I) AND (II) ABOVE ON OR PRIOR TO THE SUBSCRIPTION INSTRUCTION DEADLINE AND DELIVER THE APPROPRIATE FUNDING DIRECTLY TO THE SUBSCRIPTION ESCROW ACCOUNT NO LATER THAN THE BACKSTOP FUNDING DEADLINE SPECIFIED IN THE FINAL FUNDING NOTICE.**

**PLEASE NOTE: NO UNSECURED CASH OUT ELECTION WILL BE VALID UNLESS ON OR PRIOR TO THE SUBSCRIPTION INSTRUCTION DEADLINE, (I) THE HOLDER OF UNSECURED NOTES CERTIFIES TO ITS NOMINEE THAT IT IS NOT AN ACCREDITED INVESTOR OR QUALIFIED INSTITUTIONAL BUYER, AND DIRECTS ITS NOMINEE TO EFFECTUATE THE UNSECURED CASH OUT ELECTION ON BEHALF OF SUCH HOLDER; AND (II) THE NOMINEE ELECTRONICALLY TENDERS THE UNDERLYING NOTES THROUGH ATOP.**

**Item 4.  Certification.**

The undersigned hereby certifies that (i) the undersigned is the holder of the Note Claims above (the "Holder"), or the authorized signatory (the "Authorized Signatory") of such holder acting on behalf of the Holder, (ii) the Holder has received a copy of the Plan, the Disclosure Statement and the 1145 Rights Offering and Unsecured Cash Out Election Procedures (including the 1145 Rights Offering Instructions included therein) and (iii) the Holder understands that the exercise of the rights under the 1145 Rights Offering is subject to all the terms and conditions set forth in the Plan, the 1145 Rights Offering and Unsecured Cash Out Election Procedures and, if applicable, the Backstop Commitment Agreement.

**The Holder (or the Authorized Signatory on behalf of such Holder) acknowledges that, by executing this 1145 Subscription Form, the 1145 Eligible Holder named below (x) has elected to subscribe for the number of 1145 Rights Offering Shares designated under Item 2 above and will be bound to pay the aggregate Purchase Price listed under Item 2 above for the 1145 Rights Offering Shares it has subscribed for or (y) has elected to make the Unsecured Cash Out Election (as applicable).**

Date: _____

Name of 1145 Eligible Holder: _____

U.S. Federal Tax EIN/SSN (optional): _____

If non-U.S. person, check here and attach appropriate IRS Form W- 8 ☐

If U.S. person, check here and attach IRS Form W-9 ☐

Signature: _____

Name of Signatory: _____

Title: _____

Telephone Number: _____

Email: _____

**Item 5.  Tender of Notes.**

**All 1145 Eligible Holders of Notes must direct their Nominee to electronically tender their applicable underlying Notes to an account of the Subscription Agent via DTC's Automated Tender Offer Program ("<u>ATOP</u>") in order to participate in the 1145 Rights Offering (to the extent of such participation) or to make the Unsecured Cash Out Election.  In addition, U.S. citizens that are 1145 Eligible Holders who do not provide the Citizenship Certification attached as Annex A, and who do not direct their Nominees to tender all of their Notes to the Subscription Agent via ATOP, may be treated as a non-U.S. citizen and may not be issued New Common Stock under the Plan, including pursuant to the 1145 Rights Offering, if necessary for the Company to comply with applicable laws and regulations.**

The undersigned hereby certifies that the undersigned has electronically tendered its underlying Notes via DTC's ATOP system, through the identified Nominee, in the following principal amount(s).  (The DTC ATOP Confirmation Number(s) and, if applicable, Euroclear or Clearstream Reference Number required below should be completed by the Nominee (unless the undersigned's Nominee has directed otherwise) prior to returning this 1145 Subscription Form to the Subscription Agent):

| CUSIP/ISIN | Principal Amount Tendered | DTC ATOP Confirmation Number (*only may only provide <u>one</u> ATOP Confirmation Number per CUSIP*) | Euroclear or Clearstream Reference Number (if applicable) |
|---|---|---|---|
| 110394 AG8 / US110394AG86 | $ | | |
| U1104MAB7 / USU1104MAB73 | $ | | |
| 110394AE3 / US110394AE39 | $ | | |
| 110394 AF0 / US110394AF04 | $ | | |

**Nominee Information:**

**Name of Nominee:**   _____

**Contact Name:**   _____

**DTC Participant Number (as applicable):**   _____

**Telephone Number:**   _____

**Email Address:**   _____

**Item 6.**  Wire information in the event a refund is necessary.

| Account Name : | |
|---|---|
| Bank Account No.: | |
| ABA/Routing No.: | |
| SWIFT Instructions (as applicable) | |
| Bank Name: | |
| Bank Address: | |
| Reference: | |

**Once completed, you must return this 1145 Subscription Form to your Nominee in accordance with your Nominee's instructions in sufficient time for your Nominee to tender your Notes to the account of the Subscription Agent through DTC's ATOP system, and, unless you have made the Unsecured Cash Out Election, to deliver this 1145 Subscription Form to the Subscription Agent and Citizenship Certification, at or before the Subscription Instruction Deadline. In addition—**

- **if you elected to participate in the 1145 Rights Offering and are not a Commitment Party, you should coordinate with your Nominee with respect to payment of Purchase Price, so that it is received by the Subscription Agent by wire transfer of immediately available funds by the Subscription Instruction Deadline;**

- **if you elected to participate in the 1145 Rights Offering and are a Commitment Party, your Nominee should return your Commitment Party Addendum to the Subscription Agent by the Subscription Instruction Deadline, and you should pay the Purchase Price directly to the Subscription Escrow Account by the Subscription Escrow Funding Deadline.**

**Nominees delivering the 1145 Subscription Form and other documents referenced above by mail, overnight courier or hand delivery, should return such form to:**

**Bristow Group Inc. Offer Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**

**Nominees delivering the 1145 Subscription Form and other documents referenced above by electronic mail should return such form to:**

**bristowoffers@primeclerk.com**

**Nominees should only use ONE method of return.**

## ANNEX A

## CITIZENSHIP CERTIFICATION

**Definitions:**

For the purposes of this certification:

A U.S. Citizen Share is a share legally and beneficially owned by a U.S. citizen;

A U.S. citizen means (a) an individual who is a citizen of the U.S.; (b) a partnership in which each partner is a U.S. citizen; (c) a corporation which (i) is organized under the laws of the United States, the District of Columbia, or one of its states or territories, (ii) has a U.S. citizen as its President, (iii) two-thirds or more of its board of directors and other managing officers are U.S. citizens, (iv) at least 75 percent of its voting stock is owned and controlled by U.S. citizens and (subject to the Open-Skies note below) at least 51 percent of its total equity is owned and controlled by U.S. citizens, and (v) is under the actual control of U.S. citizens.

In regard to (ii) above, please note:

"Partnership" includes general partnerships, limited partnerships (LPs), and limited liability companies (LLCs) whose internal governance is analogous to a partnership's governance.

"Corporation," in addition to its usual meaning, includes LLCs whose internal governance is analogous to a corporation's governance.

"Open-Skies" Ownership interests held legally and beneficially by citizens of countries with which the U.S. does not have a liberal aviation trade agreement (known as an "open-skies" agreement) may not exceed 25% individually or in the aggregate. A list of countries with which the U.S. has open-skies agreements is available at www.transportation.gov/policy/aviation-policy/open-skies-agreements-being-applied.

"Actual control" includes all forms of control, whether actual or potential and whether exercised or not exercised.

**Instructions:**

The Certification set forth below must be completed and furnished to Subscription Agent by either (i) e-mailing: [bristowcertification@primeclerk.com] or (ii) mailing to Bristow Group Inc., c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165. To complete this Certification:

Select one (but not more than one) of box A, box B, box C, or box D as appropriate;

Sign this Certification in the space provided; and

If the person signing this certification is a stockbroker, bank manager, legal representative or other agent for the prospective transferee, complete the Certification of Agent on page 3 hereof.

A. □ I declare that I am an individual person who is a U.S. citizen and that the shares to be registered in my name will be "U.S. Citizen Shares."

B. □ I/We declare that I am/we are partner(s) in a partnership (as defined above) organized and existing under the laws of the United States or one of its states or territories, that each partner in the partnership is a U.S. citizen as defined above, and that the shares to be registered in the

partnership's name will be "U.S. Citizen Shares."

C. ☐ We declare that we are a corporation (as defined above) which (i) is organized under the laws of the United States, the District of Columbia, or one of its states or territories; (ii) has a U.S. citizen as its President; (iii) two-thirds or more of its board of directors and other managing officers are U.S. citizens; (iv) at least 75 percent of its voting stock is owned and controlled by U.S. citizens and (subject to the Open-Skies note above) at least 51 percent of its total equity is owned and controlled by U.S. citizens; and (v) is under the actual control of U.S. citizens (all as defined and explained above); and that the shares to be registered in the corporation's name will be "U.S. Citizen Shares."

D. ☐ If I am an individual person who is not a U.S. citizen and therefore have not selected box A, above, I declare that I am a citizen of the following country: _____. If we are a partnership, corporation, LLC or any other entity (other than an individual person) that is not a U.S. citizen and therefore have not selected box B or box C, above, we declare that the ultimate beneficial ownership of the majority of the outstanding voting interest in the partnership, corporation, LLC or other entity is held by an individual citizen or citizens of the following country: _____. (If majority of such ultimate beneficial ownership is not held by an individual citizen or citizens of any one country, please include a list specifying percentage of total outstanding voting interest by country of citizenship corresponding to individuals holding ultimate beneficial ownership.)  By checking this box D, I/we understand that the shares to be registered in my or the partnership's, corporation's, LLC's or other entity's name will not be "U.S. Citizen Shares."

Date: _____

*If the Declarant is an individual, complete the following:*

Surname: _____

First Name: _____

Middle Name(s): _____

Address: _____

No. and Street: _____

Town or City: _____

Post Code: _____

Country: _____

Citizenship: _____

Signature: _____

*Note:  If the Declarant is a corporation, partnership, LLC or any entity other than an individual person, complete the following:*

Name of Entity: _____

Name of Authorized Signatory: _____

Title: _____

Signature: _____

     In the case of joint shareholders, ALL must sign.  A corporation should complete the form under the hand of a duly authorized official or agent who should state his or her capacity.  Shares to be held by a nominee must be considered held by the person for whom the nominee is acting if such person is the beneficial owner of such shares or has an interest in such shares, as described above.

     If this Certification cannot otherwise be completed within 20 calendar days of receipt, this Certification may be made by the stockbroker, bank manager, legal representative or by any other person duly authorized by Power of Attorney, in every case acting as the agent of the transferee(s).  In such cases, however, the following certification must also be made:

     **CERTIFICATION OF AGENT:**  I/We, being the person(s) making the Certification set out above as agent(s) for the person(s) named in the Certification and whose name(s) is/are set out herein, represent and warrant that person(s) on whose behalf the Certification is made is/are known to me/us and that I/we am/are duly authorized to make the said Certification on behalf of such person(s) and that, having made reasonable inquiry and exercised reasonable diligence regarding the statements contained in such Certification, such statements are correct to the best of my/our knowledge and belief.

Signature(s): _____

Date: _____ Organization: _____

If signed by a stockbroker, bank manager, legal representative or other individual duly authorized by Power of Attorney, give the name, address and telephone number of the person signing this form:

Name: _____

Address: _____

Telephone: _____

**BRISTOW GROUP INC.**

**4(a)(2) SUBSCRIPTION FORM**
**FOR 4(a)(2) RIGHTS OFFERING FOR USE BY 4(a)(2) ELIGIBLE HOLDERS OF**
**SECURED NOTE CLAIMS AND UNSECURED NOTE CLAIMS**

**IN CONNECTION WITH THE DEBTORS'**
**DISCLOSURE STATEMENT DATED [●], 2019**

---

### SUBSCRIPTION INSTRUCTION DEADLINE

**The Subscription Instruction Deadline is 4:00 p.m. Central Time on [●], 2019.**

**Please note that your 4(a)(2) Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) must be received by Prime Clerk LLC (the "Subscription Agent") at or prior to the Subscription Instruction Deadline or the subscription represented by your 4(a)(2) Subscription Form will not be recognized, and you will be deemed forever to have relinquished and waived your right to participate in the 4(a)(2) Rights Offering.**

**4(a)(2) Eligible Holders that are holders of Note Claims must deliver their 4(a)(2) Subscription Forms to their Nominees (as defined in the 4(a)(2) Rights Offering Procedures) in sufficient time to allow such Nominee to tender the relevant Notes to the appropriate account of the Subscription Agent through ATOP (as defined below), and to deliver their 1145 Subscription Form to the Subscription Agent (as applicable), by the Subscription Instruction Deadline Eligible Holders are urged to consult with their Nominees to determine the deadline for the delivery of their 4(a)(2) Subscription Form to their Nominee in order for the Nominee to comply with these requirements, and to otherwise comply with their Nominee's instructions.**

**4(a)(2) Eligible Holders that are not Commitment Parties must arrange for payment of the Purchase Price for their subscription to be received by Subscription Agent by the Subscription Instruction Deadline, and should coordinate payment of the Purchase Price through their Nominees.**

**4(a)(2) Eligible Holders who are Commitment Parties must arrange for the Commitment Party Addendum to be provided to their Nominee so that the Nominee and the Subscription Agent will receive confirmation that payment does not have to be made prior to the Subscription Instruction Deadline. 4(a)(2) Eligible Holders that are Commitment Parties must deliver the appropriate funding directly to the Subscription Escrow Account by the deadline indicated in the Commitment Party Funding Notice (the "Subscription Escrow Funding Date").**

**The 4(a)(2) Rights Offering Shares, including Unsubscribed Shares purchased by the Commitment Parties pursuant to the Backstop Commitment Agreement, are being distributed and issued by the Debtors without registration under the Securities Act of 1933, as amended (the "Securities Act"), in reliance upon the exemption provided in section 4(a)(2) of the Securities Act or and/or Regulation D promulgated thereunder.**

**None of the 4(a)(2) Subscription Rights or the 4(a)(2) Rights Offering Shares issuable upon exercise of such 4(a)(2) Subscription Rights distributed to 4(a)(2) Eligible Holders that are not Commitment Parties pursuant to these 4(a)(2) Rights Offering Procedures in reliance upon the exemption provided in Section 4(a)(2) of the Securities Act and/or Regulation D promulgated thereunder have been or will be registered under the Securities Act, nor any state or local law requiring registration for the offer or sale of a security.**

**Please consult the Plan, the Disclosure Statement and the 4(a)(2) Rights Offering Procedures (including the 4(a)(2) Rights Offering Instructions included herein) for additional information with respect to this 4(a)(2) Subscription Form. Any terms capitalized but not defined herein shall have the meaning as set forth in the Plan or the 4(a)(2) Rights Offering Procedures.**

---

**If you have any questions, please contact the Subscription Agent via email at bristowoffers@primeclerk.com (please reference "Bristow 4(a)(2) Rights Offering" in the subject line), or at the following applicable phone number: (844) 627-6967 (domestic toll-free) or (347) 292-3534 (international toll).**

**SUBJECT TO THE TERMS AND CONDITIONS OF THE 4(a)(2) RIGHTS OFFERING PROCEDURES (AND THE BACKSTOP COMMITMENT AGREEMENT IN THE CASE OF ANY COMMITMENT PARTY), ALL SUBSCRIPTIONS SET FORTH IN THIS 4(a)(2) SUBSCRIPTION FORM ARE IRREVOCABLE.**

---

To subscribe, fill out Items 1 and 2 and read and complete Items 3, 4, 5 and 6 below.

**Item 1.  Amount of Notes and Calculation of Maximum Number of 4(a)(2) Rights Offering Shares.**[1]

The undersigned, or the beneficial owner on whose behalf the undersigned is executing this form, is a beneficial Holder of Notes in the following principal amount(s) and/or that the person executing this form is an authorized signatory of that beneficial Holder. For purposes of this 4(a)(2) Subscription Form, do not adjust the principal (face) amount for any accrued or unmatured interest.  The amounts below must correspond to the principal amounts of Notes that your Nominee electronically delivers via ATOP (if there is a discrepancy between Item 1 and the amount delivered via ATOP, the principal amount of Notes electronically delivered through ATOP shall control). (If a Nominee holds your Notes on your behalf and you do not know the principal amount, please contact your Nominee immediately).

**IMPORTANT NOTE:  IF YOU HOLD YOUR NOTES THROUGH MORE THAN ONE NOMINEE, YOU MUST COMPLETE AND RETURN A SEPARATE 4(a)(2) SUBSCRIPTION FORM TO EACH APPLICABLE NOMINEE.  YOU MAY NOT AGGREGATE POSITIONS HELD BY DIFFERENT NOMINEES ON A SINGLE 4(a)(2) SUBSCRIPTION FORM.**

---

[1]   Assumes a Rights Offerings Amount of $385,000,000 and no DIP Surplus Conversion; to the extent of modifications of the Rights Offerings Amount and any DIP Surplus Conversion, the Purchase Price and amount of Rights Offerings Shares offered will change.

*[Insert principal amount of Notes electronically delivered through ATOP and calculate Maximum Number of 4(a)(2) Rights Offering Shares for each CUSIP held]*

| | If you own the following Notes: | CUSIP/ISIN | Principal Amount delivered via ATOP | | Rights Factor | | The Maximum Number of 4(a)(2) Rights Offering Shares is: |
|---|---|---|---|---|---|---|---|
| 1a | 8.75% Secured Notes due 2023 | 110394 AG8 / US110394AG86 | $_____ | x | [TBD] | = | _____ Item 1a (Round down to the nearest whole share) |
| 1b | 8.75% Secured Notes due 2023 | U1104MAB7 / USU1104MAB73 | $_____ | x | [TBD] | = | _____ Item 1b (Round down to the nearest whole share) |
| 1c | 6.250% Senior Notes due 2022 | 110394AE3 / US110394AE39 | $_____ | x | [TBD] | = | _____ Item 1c (Round down to the nearest whole share) |
| 1d | 4.50% Convertible Senior Notes due 2023 | 110394 AF0 / US110394AF04 | $_____ | x | [TBD] | = | _____ Item 1d (Round down to the nearest whole share) |
| **Maximum 4(a)(2) Participation Amount (Total of Items 1a-1d):** | | | | | | | _____ |

**Item 2.  Purchase Price.**

**2a-2d.**  By filling in the following blanks in the table below, you are indicating that the undersigned 4(a)(2) Eligible Holder is electing to purchase the number of 4(a)(2) Rights Offering Shares specified below (specify a number of 4(a)(2) Rights Offering Shares, which is not greater than the Maximum 4(a)(2) Participation Amount calculated in Item 1a-1d, respectively, above), on the terms and subject to the conditions set forth in the 4(a)(2) Rights Offering Procedures.

| | | | | | |
|---|---|---|---|---|---|
| 2a | _____ <br> (Insert number of 4(a)(2) Rights Offering Shares you elect to purchase – not to exceed the amount in Item 1a above) | x | $36.37 | = | $_____ <br> Item 2a – Purchase Price |
| 2b | _____ <br> (Insert number of 4(a)(2) Rights Offering Shares you elect to purchase – not to exceed the amount in Item 1b above) | x | $36.37 | = | $_____ <br> Item 2b – Purchase Price |
| 2c | _____ <br> (Insert number of 4(a)(2) Rights Offering Shares you elect to purchase – not to exceed the amount in Item 1c above) | x | $36.37 | = | $_____ <br> Item 2c – Purchase Price |
| 2d | _____ <br> (Insert number of 4(a)(2) Rights Offering Shares you elect to purchase – not to exceed the amount in Item 1d above) | x | $36.37 | = | $_____ <br> Item 2d – Purchase Price |
| **Total 4(a)(2) Rights Offering Shares Electing to Purchase** | _____ <br> **(Indicate total number of 4(a)(2) Rights Offering Shares you elect to purchase by adding Items 2a-2d in each row above)** | | **Aggregate Purchase Price for 4(a)(2) Rights Offering Shares:** | | $_____ <br> **(Indicate aggregate Purchase Price of 4(a)(2) Rights Offering Shares you elect to purchase by adding Items 2a-d in each row above)** |

**2e.** By checking the box below in this Item 2e, you are certifying that you have **NOT** made the Unsecured Cash Out Election with respect to the General Unsecured Claims that you hold.

☐   I am a 4(a)(2) Eligible Holder of General Unsecured Claims, and I hereby elect to purchase the number of 4(a)(2) Rights Offering Shares specified in Item 1a-d below, on the terms and subject to the conditions set forth in the 4(a)(2) Rights Offering Procedures. I have not made the Unsecured Cash Out Election with respect to the General Unsecured Claims that I hold.

**Item 3.  Payment Instructions and Share Delivery Information.**

For 4(a)(2) Eligible Holders that are not Commitment Parties, payment of the aggregate Purchase Price calculated pursuant to Item 2 above shall be made by wire transfer ONLY of immediately available funds by no later than the Subscription Instruction Deadline in accordance with the following instructions.  4(a)(2) Eligible Holders should coordinate with their Nominees, and, follow their Nominee's instructions, with respect to the payment of the Purchase Price.

U.S. Wire Instructions:

| | |
|---|---|
| Account Name : | |
| Bank Account No.: | |
| ABA/Routing No.: | |
| Bank Name: | |
| Bank Address: | |
| Reference: | |

International Wire Instructions:

| | |
|---|---|
| Correspondent/Intermediary Bank SWIFT | |
| Correspondent/Intermediary Bank Name | |
| Correspondent/Intermediary Bank Address | |
| Beneficiary Account Number | |
| Beneficiary Name | |
| Beneficiary Address | |
| Memo, Special Instructions, Originator to Beneficiary Information, Bank to Bank Information | |

Please note that the failure to include the claimant name or form number in the reference field of any domestic or international wire payment may result in the rejection of the corresponding rights offering submission. In addition, please also note that payments cannot be aggregated, and one wire should be sent per 4(a)(2) Subscription Form submission.

4(a)(2) Eligible Holders that are Commitment Parties are required to complete and return to their Nominee the Commitment Party Addendum, which was provided to Commitment Parties directly by their applicable counsel.  If you did not receive the Commitment Party Addendum from your counsel, please reach out to your counsel or the Subscription Agent for assistance.  For 4(a)(2) Eligible Holders that are Commitment Parties, payment of the aggregate Purchase Price calculated pursuant to Item 2 above shall be made by wire transfer ONLY of immediately available funds directly to an account established and maintained by a third party satisfactory to the Commitment Parties, which account may be an escrow account pursuant to Section 2.4(b) of the Backstop Commitment Agreement (the "Subscription Escrow Account").

**NO NOMINEE OR BROKER MAY MAKE ANY PAYMENT IN RESPECT OF THE AGGREGATE PURCHASE PRICE OF A COMMITMENT PARTY WHO RETURNED THE COMMITMENT PARTY ADDENDUM TO THEIR NOMINEE AND NO NOMINEE OR BROKER MAY DEDUCT FUNDS FROM THE ACCOUNT OF A COMMITMENT PARTY TO MAKE ANY SUCH PAYMENT.**

**IN ADDITION, THE 4(a)(2) RIGHTS OFFERING SHARES ARE EXPECTED TO BE DTC ELIGIBLE AND SUCH SHARES WILL ONLY BE DELIVERED TO THE DTC PARTICIPANT ACCOUNT FORM WHICH THE UNDERLYING NOTES WERE DELIVERED VIA ATOP.**

---

**PLEASE NOTE: NO 4(a)(2) RIGHTS OFFERING SUBMISSION WILL BE VALID UNLESS ON OR PRIOR TO THE SUBSCRIPTION INSTRUCTION DEADLINE (I) THIS 4(a)(2) SUBSCRIPTION FORM IS VALIDLY SUBMITTED TO THE SUBSCRIPTION AGENT BY YOUR NOMINEE, (II) YOUR NOMINEE ELECTRONICALLY DELIVERS THE UNDERLYING NOTES CORRESPONDING TO THIS 4(a)(2) SUBSCRIPTION FORM THROUGH ATOP AND (III) WITH RESPECT TO 4(a)(2) ELIGIBLE HOLDERS THAT ARE NOT COMMITMENT PARTIES, THE AGGREGATE PURCHASE PRICE IS RECEIVED BY THE SUBSCRIPTION AGENT.**

**4(a)(2) ELIGIBLE HOLDERS THAT ARE COMMITMENT PARTIES MUST COMPLY WITH (I) AND (II) ABOVE ON OR PRIOR TO THE SUBSCRIPTION INSTRUCTION DEADLINE AND DELIVER THE APPROPRIATE FUNDING DIRECTLY TO THE SUBSCRIPTION ESCROW ACCOUNT NO LATER THAN THE BACKSTOP FUNDING DEADLINE SPECIFIED IN THE FINAL FUNDING NOTICE.**

---

**Item 4.  Certification.**

The undersigned hereby certifies that (i) the undersigned is the holder of the Note Claims above (the "Holder"), or the authorized signatory (the "Authorized Signatory") of such holder acting on behalf of the Holder, (ii) the Holder has received a copy of the Plan, the Disclosure Statement and the 4(a)(2) Rights Offering Procedures (including the 4(a)(2) Rights Offering Instructions included therein) and (iii) the Holder understands that the exercise of the rights under the 4(a)(2) Rights Offering is subject to all the terms and conditions set forth in the Plan, the 4(a)(2) Rights Offering Procedures and, if applicable, the Backstop Commitment Agreement.

**The Holder (or the Authorized Signatory on behalf of such Holder) acknowledges that, by executing this 4(a)(2) Subscription Form, the 4(a)(2) Eligible Holder named below has elected to subscribe for the number of 4(a)(2) Rights Offering Shares designated under Item 2 above and will be bound to pay the aggregate Purchase Price listed under Item 2 above for the 4(a)(2) Rights Offering Shares it has subscribed for.**

Date: _____

Name of 4(a)(2) Eligible Holder: _____

U.S. Federal Tax EIN/SSN (optional): _____

If non-U.S. person, check here and attach appropriate IRS Form W- 8 ☐

If U.S. person, check here and attach IRS Form W-9 ☐

Signature: _____

Name of Signatory: _____

Title: _____

Telephone Number: _____

Email: _____

**Item 5.  Tender of Notes.**

**All 4(a)(2) Eligible Holders of Notes must direct their Nominee to electronically tender their applicable underlying Notes to an account of the Subscription Agent via DTC's Automated Tender Offer Program ("ATOP") in order to participate in the 4(a)(2) Rights Offering. In addition, U.S. citizens that are 4(a)(2) Eligible Holders who do not provide the Citizenship Certification attached as Annex A, and who do not direct their Nominees to tender all of their Notes to the Subscription Agent via ATOP, may be treated as a non-U.S. citizen and may not be issued New Common Stock under the Plan, including pursuant to the 4(a)(2) Rights Offering, if necessary for the Company to comply with applicable laws and regulations.**

The undersigned hereby certifies that the undersigned has electronically tendered its underlying Notes via DTC's ATOP system, through the identified Nominee, in the following principal amount(s).  (The DTC ATOP Confirmation Number(s) and, if applicable, Euroclear or Clearstream Reference Number required below should be completed by the Nominee (unless the undersigned's Nominee has directed otherwise) prior to returning this 4(a)(2) Subscription Form to the Subscription Agent):

| **CUSIP/ISIN** | **Principal Amount Tendered** | **DTC ATOP Confirmation Number** *(only may only provide **one** ATOP Confirmation Number per CUSIP)* | **Euroclear or Clearstream Reference Number** **(if applicable)** |
|---|---|---|---|
| 110394 AG8 / US110394AG86 | $ | | |
| U1104MAB7 / USU1104MAB73 | $ | | |
| 110394AE3 / US110394AE39 | $ | | |
| 110394 AF0 / US110394AF04 | $ | | |

**Nominee Information:**

**Name of Nominee:** _____

| | |
|---|---|
| **Name of Contact:** | _____ |
| **DTC Participant Number (as applicable):** | _____ |
| **Telephone Number:** | _____ |
| **Email Address:** | _____ |

**Item 6.**  Wire information in the event a refund is necessary.

| | |
|---|---|
| Account Name : | |
| Bank Account No.: | |
| ABA/Routing No.: | |
| SWIFT Instructions (as applicable) | |
| Bank Name: | |
| Bank Address: | |
| Reference: | |

**Once completed, you must return this 4(a)(2) Subscription Form to your Nominee in accordance with your Nominee's instructions in sufficient time for your Nominee to tender your Notes to the account of the Subscription Agent through DTC's ATOP system, and, unless you have made the Unsecured Cash Out Election, to deliver this 4(a)(2) Subscription Form to the Subscription Agent and Citizenship Certification, at or before the Subscription Instruction Deadline.  In addition—**

- **if you elected to participate in the 4(a)(2) Rights Offering and are not a Commitment Party, you should coordinate with your Nominee with respect to payment of Purchase Price, so that it is received by the Subscription Agent by wire transfer of immediately available funds by the Subscription Instruction Deadline;**

- **if you elected to participate in the 4(a)(2) Rights Offering and are a Commitment Party, your Nominee should return your Commitment Party Addendum to the Subscription Agent by the Subscription Instruction Deadline, and you should pay the Purchase Price directly to the Subscription Escrow Account by the Subscription Escrow Funding Deadline.**

**Nominees delivering the 4(a)(2) Subscription Form and other documents referenced above by mail, overnight courier or hand delivery, should return such form to:**

<div align="center">

**Bristow Group Inc. Offer Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**

</div>

**Nominees delivering the 4(a)(2) Subscription Form and other documents referenced above by electronic mail should return such form to:**

<div align="center">

**bristowoffers@primeclerk.com**

</div>

**Nominees should only use ONE method of return.**

## ANNEX A

## CITIZENSHIP CERTIFICATION

**Definitions:**

For the purposes of this certification:

A U.S. Citizen Share is a share legally and beneficially owned by a U.S. citizen;

A U.S. citizen means (a) an individual who is a citizen of the U.S.; (b) a partnership in which each partner is a U.S. citizen; (c) a corporation which (i) is organized under the laws of the United States, the District of Columbia, or one of its states or territories, (ii) has a U.S. citizen as its President, (iii) two-thirds or more of its board of directors and other managing officers are U.S. citizens, (iv) at least 75 percent of its voting stock is owned and controlled by U.S. citizens and (subject to the Open-Skies note below) at least 51 percent of its total equity is owned and controlled by U.S. citizens, and (v) is under the actual control of U.S. citizens.

In regard to (ii) above, please note:

"Partnership" includes general partnerships, limited partnerships (LPs), and limited liability companies (LLCs) whose internal governance is analogous to a partnership's governance.

"Corporation," in addition to its usual meaning, includes LLCs whose internal governance is analogous to a corporation's governance.

"Open-Skies" Ownership interests held legally and beneficially by citizens of countries with which the U.S. does not have a liberal aviation trade agreement (known as an "open-skies" agreement) may not exceed 25% individually or in the aggregate. A list of countries with which the U.S. has open-skies agreements is available at www.transportation.gov/policy/aviation-policy/open-skies-agreements-being-applied.

"Actual control" includes all forms of control, whether actual or potential and whether exercised or not exercised.

**Instructions:**

The Certification set forth below must be completed and furnished to Subscription Agent by either (i) e-mailing: [bristowcertification@primeclerk.com] or (ii) mailing to Bristow Group Inc., c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165. To complete this Certification:

Select one (but not more than one) of box A, box B, box C, or box D as appropriate;

Sign this Certification in the space provided; and

If the person signing this certification is a stockbroker, bank manager, legal representative or other agent for the prospective transferee, complete the Certification of Agent on page 3 hereof.

A. □ I declare that I am an individual person who is a U.S. citizen and that the shares to be registered in my name will be "U.S. Citizen Shares."

B. □ I/We declare that I am/we are partner(s) in a partnership (as defined above) organized and existing under the laws of the United States or one of its states or territories, that each partner in the partnership is a U.S. citizen as defined above, and that the shares to be registered in the

partnership's name will be "U.S. Citizen Shares."

C.  ☐ We declare that we are a corporation (as defined above) which (i) is organized under the laws of the United States, the District of Columbia, or one of its states or territories; (ii) has a U.S. citizen as its President; (iii) two-thirds or more of its board of directors and other managing officers are U.S. citizens; (iv) at least 75 percent of its voting stock is owned and controlled by U.S. citizens and (subject to the Open-Skies note above) at least 51 percent of its total equity is owned and controlled by U.S. citizens; and (v) is under the actual control of U.S. citizens (all as defined and explained above); and that the shares to be registered in the corporation's name will be "U.S. Citizen Shares."

D.  ☐ If I am an individual person who is not a U.S. citizen and therefore have not selected box A, above, I declare that I am a citizen of the following country: _____. If we are a partnership, corporation, LLC or any other entity (other than an individual person) that is not a U.S. citizen and therefore have not selected box B or box C, above, we declare that the ultimate beneficial ownership of the majority of the outstanding voting interest in the partnership, corporation, LLC or other entity is held by an individual citizen or citizens of the following country: _____. (If majority of such ultimate beneficial ownership is not held by an individual citizen or citizens of any one country, please include a list specifying percentage of total outstanding voting interest by country of citizenship corresponding to individuals holding ultimate beneficial ownership.)  By checking this box D, I/we understand that the shares to be registered in my or the partnership's, corporation's, LLC's or other entity's name will not be "U.S. Citizen Shares."

Date: _____

*If the Declarant is an individual, complete the following:*

Surname: _____

First Name: _____

Middle Name(s): _____

Address: _____

No. and Street: _____

Town or City: _____

Post Code: _____

Country: _____

Citizenship: _____

Signature: _____

***Note:***  *If the Declarant is a corporation, partnership, LLC or any entity other than an individual person, complete the following:*

Name of Entity: _____

Name of Authorized Signatory: _____

Title: _____

Signature: _____

     In the case of joint shareholders, ALL must sign.  A corporation should complete the form under the hand of a duly authorized official or agent who should state his or her capacity.  Shares to be held by a nominee must be considered held by the person for whom the nominee is acting if such person is the beneficial owner of such shares or has an interest in such shares, as described above.

     If this Certification cannot otherwise be completed within 20 calendar days of receipt, this Certification may be made by the stockbroker, bank manager, legal representative or by any other person duly authorized by Power of Attorney, in every case acting as the agent of the transferee(s).  In such cases, however, the following certification must also be made:

     **CERTIFICATION OF AGENT:**  I/We, being the person(s) making the Certification set out above as agent(s) for the person(s) named in the Certification and whose name(s) is/are set out herein, represent and warrant that person(s) on whose behalf the Certification is made is/are known to me/us and that I/we am/are duly authorized to make the said Certification on behalf of such person(s) and that, having made reasonable inquiry and exercised reasonable diligence regarding the statements contained in such Certification, such statements are correct to the best of my/our knowledge and belief.

Signature(s): _____

Date: _____ Organization: _____

If signed by a stockbroker, bank manager, legal representative or other individual duly authorized by Power of Attorney, give the name, address and telephone number of the person signing this form:

Name: _____

Address: _____

Telephone: _____

**Annex B**

## INVESTOR CERTIFICATION

The undersigned makes the appropriate Accredited Investor or Qualified Institutional Buyer certification (each, a "Certification" and, together, the "Certifications") by filling out Section I or Section II below, as applicable.

## I. Accredited Investor Certification

The undersigned certifies that the undersigned is an "accredited investor" as defined in Rule 501(a) of Regulation D promulgated under the Securities Act of 1933, as amended (the "Securities Act"), because the undersigned is (please check and initial by the appropriate box):

☐   A natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his or her purchase exceeds $1,000,000 USD (net worth includes total assets at fair market value, excluding one's primary residence, less total liabilities, including home mortgages to the extent they exceed the fair market value of one's primary residence);

☐   A natural person who had an individual income in excess of $200,000 USD in each of the two most recent calendar years (2016 and 2017) or joint income with that person's spouse in excess of $300,000 USD in each of those years and has a reasonable expectation of reaching the same income level in the current calendar year (2018);

☐   An entity in which all of the equity owners are accredited investors.

☐   A corporation, limited liability company or partnership, with total assets in excess of $5,000,000 USD, not formed for the specific purpose of acquiring the securities offered;

☐   A trust, with total assets in excess of $5,000,000 USD, not formed for the specific purpose of acquiring the securities offered whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) of Regulation D promulgated under the Securities Act;

☐   An employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 USD or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

☐   A bank as defined in Section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity;

☐   A broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended;

☐   An insurance company as defined in Section 2(a)(I 3) of the Securities Act;

☐   An investment company registered under the Investment Company Act of 1940 or a business development company as defined in Section 2(a)(48) of that Act;

☐   Any Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958;

☐   Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000 USD;

☐   Any private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940; or

☐   Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000 USD.

**IN WITNESS WHEREOF**, the undersigned has executed this Certification on and as of the ___ day of _____ , 2019.

Name of Investor or Entity:

_____

By: _____

Its: _____

State or Country of Primary Residence: _____

Address:  _____

Fax: _____

E-mail_____

## II.  Qualified Institutional Buyer Certification

The undersigned hereby certifies that it is a QIB (as defined in Rule 144A under the Securities Act), because the undersigned (please check and initial by the appropriate box):

A.  Owned and/or invested for its own account or for the account of other QIBs on a discretionary basis eligible securities (excluding affiliate's securities, bank deposit notes and CD's, loan participations, repurchase agreements, securities owned but subject to a repurchase agreement, swaps and dealer's unsold allotment) and has the investment discretion with respect to each such account, and full power and authority to make the acknowledgements, representations and agreements on behalf of each owner of such account as described below:

Date: _____, _____ (must be on or after the close of its most recent fiscal year)

Amount: $ _____; and

B.  The dollar amount set forth above is:

a. ☐ Greater than $100 million and the undersigned is one of the following entities:

☐ An insurance company as defined in Section 2(13) of the Securities Act;

☐ An investment company registered under the Investment Company Act of 1940 (the "Investment Company Act") or any business development company as defined in Section 2(a)(48) of the Investment Company Act;

☐ A Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958;

☐ A plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees;

☐ An employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974;

☐ A trust fund whose trustee is a bank or trust company and whose participants are exclusively plans of the types identified in paragraph (4) or (5) of this section, except trust funds that include as participants individual retirement accounts or H.R. 10 plans;

☐ A business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940;

☐ An organization described in Section 501(c)(3) of the Internal Revenue Code, corporation (other than a bank as defined in Section 3(a)(2) of the Securities Act or a savings and loan association or other institution referenced in Section 3(a)(5)(A) of the Securities Act or a foreign bank or savings and loan association or equivalent institution), partnership or similar business trust;

☐ A U.S. bank, savings and loan association or equivalent foreign institution, which has an audited net worth of at least $25 million as demonstrated in its latest annual financial statements; or

☐ An investment adviser registered under the Investment Advisers Act.

b. ☐ Greater than $10 million and the undersigned is a dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934 (the "Exchange Act"), acting for its own account or the accounts of other QIBs, that in the aggregate owns and invests on a discretionary basis securities of issuers that are not affiliated with the dealer;

c. ☐ Less than $10 million, and the undersigned is a dealer registered under Section 15 of the Exchange Act with the SEC and will only purchase Rule 144A securities in transactions in which it acts as a riskless principal (as defined in Rule 144A);

d. ☐ Less than $100 million, and the undersigned is an investment company registered under the Investment Company Act, which, together with one or more registered investment companies having the same or an affiliated investment adviser, owns at least $100 million of eligible securities; or

e. ☐ Less than $100 million, and the undersigned is an entity, all the equity owners of which are QIBs.

Securities acquired in a transaction made pursuant to the provisions of Rule 144A are deemed to be "restricted securities" within the meaning of Rule 144(a)(3).

**IN WITNESS WHEREOF**, the undersigned has executed this Certification on and as of the ____ day of _____ , 2019.

Name of Investor or Entity:

_____

By: _____

Its: _____

State or Country of Primary Residence: _____

Address: _____

Fax: _____

E-mail_____

**BRISTOW GROUP INC.**

**1145 GENERAL UNSECURED CLAIM SUBSCRIPTION FORM**
**FOR 1145 RIGHTS OFFERING**

**FOR USE BY 1145 ELIGIBLE HOLDERS OF**
**GENERAL UNSECURED CLAIMS**

**IN CONNECTION WITH THE DEBTORS'**
**DISCLOSURE STATEMENT DATED [●], 2019**

---

**SUBSCRIPTION INSTRUCTION DEADLINE**

**The Subscription Instruction Deadline is 4:00 p.m. Central Time on [●], 2019.**

**Please note that your 1145 Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) must be received by Prime Clerk LLC (the "Subscription Agent") at or prior to the Subscription Instruction Deadline or the subscription represented by your 1145 Subscription Form will not be recognized, and you will be deemed forever to have relinquished and waived your right to participate in the 1145 Rights Offering or to make the Unsecured Cash Out Election (if applicable).**

**1145 Eligible Holders that are holders of General Unsecured Claims must deliver their 1145 Subscription Forms and the appropriate funding to the Subscription Agent by the Subscription Instruction Deadline.**

**The 1145 Rights Offering Shares, other than Unsubscribed Shares purchased by the Commitment Parties pursuant to the Backstop Commitment Agreement, are being distributed and issued by the Debtors without registration under the Securities Act of 1933, as amended (the "Securities Act"), in reliance upon the exemption provided in section 1145 of the Bankruptcy Code.**

**None of the 1145 Subscription Rights or the 1145 Rights Offering Shares issuable upon exercise of such 1145 Subscription Rights, distributed to 1145 Eligible Holders that are not Commitment Parties pursuant to the 1145 Rights Offering and Unsecured Cash Out Election Procedures in reliance upon the exemption provided in Section 1145 of the Bankruptcy Code, have been or will be registered under the Securities Act, nor any state or local law requiring registration for the offer or sale of a security.**

**Please consult the Plan, the Disclosure Statement and the 1145 Rights Offering and Cash Out Election Procedures (including the 1145 Rights Offering Instructions included herein) for additional information with respect to this 1145 Subscription Form. Any terms capitalized but not defined herein shall have the meaning as set forth in the Plan or the 1145 Rights Offering and Cash Out Election Procedures.**

**If you have any questions, please contact the Subscription Agent via email at bristowoffers@primeclerk.com (please reference "Bristow 1145 Rights Offering" in the subject line), or at the following applicable phone number: (844) 627-6967 (domestic toll-free) or (347) 292-3534 (international toll).**

**SUBJECT TO THE TERMS AND CONDITIONS OF THE 1145 RIGHTS OFFERING AND**

**UNSECURED CASH OUT ELECTION PROCEDURES, ALL SUBSCRIPTIONS SET FORTH IN THIS 1145 SUBSCRIPTION FORM ARE IRREVOCABLE.**

**Once completed, this 1145 Subscription Form should be returned to the Subscription Agent in accordance with the below delivery instructions.**

**If delivering the 1145 Subscription Form by mail, overnight courier or hand delivery:**

<div align="center">

**Bristow Group Inc. Offer Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**

</div>

**If delivering the 1145 Subscription Form by electronic mail:**
<div align="center">

**bristowoffers@primeclerk.com**

</div>

To subscribe, fill out Items 1 and 2, and read and complete Items 3, 4, 5 and 6 below.

**Item 1.  Amount of Claims and Calculation of Maximum Number of 1145 Rights Offering Shares.[1]**

The undersigned is the Holder of a General Unsecured Claim(s) in the following amount(s) and/or that the person executing this form is an authorized signatory of that Holder.  For purposes of this General Unsecured Claim Subscription Form:

A General Unsecured Claim is an Allowed General Unsecured Claim or an Asserted General Unsecured Claim.

An Allowed General Unsecured Claim is an unsecured claim against a Debtor which, as of the Subscription Commencement Date, (i) was listed on the Debtors' Schedules of Assets and Liabilities and not marked as "contingent" "disputed" or "unliquidated", (ii) allowed by an order of the Bankruptcy Court, or (iii) temporarily allowed pursuant to Bankruptcy Rule 3018 by an order of the Bankruptcy Court or a stipulation with the Debtors.

An Asserted General Unsecured Claim is an unsecured claim against a Debtor which is asserted in a proof of claim.  For the avoidance of doubt, an Asserted General Unsecured Claim with respect to an executory contract or unexpired lease pending the rejection of such contract or lease is NOT an Allowed General Unsecured Claim and may not participate in the 1145 Rights Offering.

Eligible Holders of Allowed Note Claims should not use this form.

---

[1]   Assumes a Rights Offerings Amount of $385,000,000 and no DIP Surplus Conversion; to the extent of modifications of the Rights Offerings Amount and any DIP Surplus Conversion, the Purchase Price and amount of Rights Offerings Shares offered will change.

*Insert* amount *of Allowed General Unsecured Claim(s) held* (if you *are unsure whether you have an Allowed General Unsecured Claim*, please contact *the Subscription Agent for assistance*)

| | | | | |
|---|---|---|---|---|
| _____<br>(Insert Allowed General<br>Unsecured Claim Amount) | X | [•]² | = | _____<br>(Maximum Number of 1145 Rights<br>Offering Shares)  (Round down to<br>nearest whole number) (the<br>"Maximum Participation Amount") |

**Item 2.  Purchase Price, Unsecured Cash Out Election and** Unsecured 4(a)(2) Distribution Cash **Amount.**

      **2a**  By filling in the following blanks, you are indicating that the undersigned 1145 Eligible Holder is electing to purchase the number of 1145 Rights Offering Shares specified below (specify a number of 1145 Rights Offering Shares, which is not greater than the Maximum 1145 Participation Amount calculated in Item 1 above), on the terms and subject to the conditions set forth in the 1145 Rights Offering and Unsecured Cash Out Election Procedures.

| | | | | |
|---|---|---|---|---|
| _____<br>(Indicate the number of<br>1145 Rights Offering<br>Shares you elect to<br>purchase—not to exceed<br>the amount in Item 1<br>above) | X | $36.37 | = | $_____<br>Aggregate Purchase Price |

      **2b.** 1145 Eligible Holders of General Unsecured Claims may make the Unsecured Cash Out Election to receive their pro rata share of the GUC Distribution Cash Amount in accordance with the Plan by checking the box below.

      You should NOT complete Item 1 or Item 2a-2b if you are making the Unsecured Cash Out Election.

      By checking the box below in this Item 2b, you are certifying that you have made the Unsecured Cash Election with respect to all the General Unsecured Claims that you hold.

      **If you check the box below, then you will only receive a distribution of cash. You will NOT receive any 1145 Rights Offering Shares or New Common Stock under the Plan with respect to your General Unsecured Claims.**

      ☐  I am an 1145 Eligible Holder of General Unsecured Claims and I hereby elect to receive my *pro rata* share of the GUC Distribution Cash in accordance with the Plan in lieu of New Common

---

² This amount is based on the total amount of General Unsecured Claims claimed against the Debtor [TBD].

Stock and 1145 Rights Offering Shares with respect to my General Unsecured Claims.

**2c.**    1145 Eligible Holders of General Unsecured Claims that are not "accredited investors" or "qualified institutional buyers" that have fully exercised their 1145 Subscription Rights will receive their *pro rata* share of the Unsecured 4(a)(2) Distribution Cash Amount (up to a maximum of 7.6% of such holder's General Unsecured Claims) in accordance with the Plan.  By checking the box below, you certify that you are a holder of General Unsecured Claims, that you are not an "accredited investor" or a "qualified institutional buyer" and that you have exercised your 1145 Subscription Rights with respect to ALL General Unsecured Claims that you hold.

☐    I am an 1145 Eligible Holder of General Unsecured Claims that is not an "accredited investor" or "qualified institutional buyer," and I have fully exercised my 1145 Subscription Rights with respect to all General Unsecured Claims that I hold.

**Item 3.  Payment and Delivery Instructions (only applicable to holders that did not check the box in Item 2b above).**

Payment of the aggregate Purchase Price calculated in Item 2a above must be made by wire transfer to the Subscription Agent no later than the Subscription Instruction Deadline ONLY in accordance with the following instructions:

U.S. Wire Instructions:

| | |
|---|---|
| Account Name : | |
| Bank Account No.: | |
| ABA/Routing No.: | |
| Bank Name: | |
| Bank Address: | |
| Reference: | |

International Wire Instructions:

| | |
|---|---|
| Correspondent/Intermediary Bank SWIFT | |
| Correspondent/Intermediary Bank Name | |
| Correspondent/Intermediary Bank Address | |
| Beneficiary Account Number | |
| Beneficiary Name | |
| Beneficiary Address | |
| Memo, Special Instructions, Originator to Beneficiary Information, Bank to Bank Information | |

**Please note that the failure to include the claimant name or form number in the reference field of any domestic or international wire payment may result in the rejection of the corresponding rights offering submission. In addition, please also note that payments cannot be aggregated, and one wire should be sent per 1145 Subscription Form submission.**

**Item 4.  Certification.**

The undersigned hereby certifies that (i) the undersigned is the holder of the General Unsecured Claims above (the "Holder"), or the authorized signatory (the "Authorized Signatory") of such holder acting on behalf of the Holder, (ii) the Holder has received a copy of the Plan, the Disclosure Statement and the 1145 Rights Offering and Unsecured Cash Out Election Procedures (including the 1145 Rights Offering Instructions included therein) and (iii) the Holder understands that the exercise of the rights under the 1145 Rights Offering is subject to all the terms and conditions set forth in the Plan, the 1145 Rights Offering and Unsecured Cash Out Election Procedures.

**The Holder (or the Authorized Signatory on behalf of such Holder) acknowledges that, by executing this 1145 Subscription Form, the 1145 Eligible Holder named below (x) has elected to subscribe for the number of 1145 Rights Offering Shares designated under Item 2 above and will be bound to pay the aggregate Purchase Price listed under Item 2 above for the 1145 Rights Offering Shares it has subscribed for or (y) has elected to make the Unsecured Cash Out Election (as applicable)**

Date: _____

Name of 1145 Eligible Holder: _____

U.S. Federal Tax EIN/SSN (optional): _____

If non-U.S. person, check here and attach appropriate IRS Form W- 8 ☐

If U.S. person, check here and attach IRS Form W-9 ☐

Signature: _____

Name of Signatory: _____

Title: _____

Telephone Number: _____

Email: _____

**Item 5. Share Delivery Information.**

## A. Nominee information for receipt of the 1145 Rights Offering Shares:

By completing the information in this Item 5(A), a holder may designate a broker, bank, commercial bank, transfer agent, trust company, dealer, or other agent or nominee (as applicable, the "Nominee") to receive the 1145 Rights Offering Shares in accordance with the practices and procedures

of DTC, to be held by the Nominee in an account for the benefit of the holder.

DTC Participant Name:_____

DTC Participant Number:_____

Beneficial Holder Account Number Reference:_____

DTC Participant Contact Name:_____

DTC Participant Contact Telephone:_____

DTC Participant Contact Email:_____


**B.  Registration Information for the direct registration of 1145 Rights Offering Shares.**

**If neither Item 5(A) or 5(B) is completed, the 1145 Rights Offering Shares will be registered in the holder's name reflected on the official claims register maintained by the Subscription Agent (in its capacity as the Debtors' noticing and claims agent; the "<u>Claims Register</u>").**

Registered Holder Name:[3] _____

Registered Holder Name (continued from above, if necessary):  _____

Address 1: _____

Address 2: _____

City, State, and Zip Code: _____

Foreign Country Name: _____

Telephone Number: _____

E-Mail Address: _____

U.S. Tax Identification Number: _____

Check here if non-US (no TIN) ☐

Please indicate the "account type" that may be used in connection with registration of your 1145 Rights Offering Shares.

*Please check <u>only</u> <u>one</u> box:*

☐  *INDIVIDUAL ACCOUNT;*

☐  *IRA ACCOUNT;*

☐  *CORPORATIONS (S-CORP): (ASSOCIATED, ASSOCIATES, ASSOCIATION, CO, CO. COMPANY, CORP, CORPORATE/PARTNER, ENTERPRISE(S), FUND, GROUP, INCORPORATED, INC, INTERNATIONAL,*

---

[3]     The name of the registered holder must be as it appears on the Claims Register.

*INTL, LIMITED, LTD, LIFETIME LIMITED COMPANY, LLC, L.L.C, PARTNER, PARTNERS, PLC, PUBLIC LIMITED COMPANY);*

☐ *PARTNERSHIP: (LP, L P, L.P., LLP, LIMITED PARTNERSHIP, LIFETIME LIMITED PARTNERSHIP);*

☐ *BANK;*

☐ *NOMINEE ACCOUNTS;*

☐ *THE NEW C-CORP;*

☐ *NON-PROFIT: (CEMETERY, CHURCH, COLLEGE, COMMISSION FOR CHILDREN WITH, COMMISSION FOR HANDICAPPED, COMMISSION MINISTRIES INC, COMMISSION OF PUBLIC WORKS, COMMISSION OF BANKING & FOUNDATIONS, HOSPITAL, SCHOOL, SYNAGOGUE, UNIVERSITY);*

☐ *FIDUCIARY ACCOUNT: (CUSTODIAN, CO-TRUSTEE, ESTATE, EXECUTOR, EXECUTRIX FBO, F/B/O, FAO, FIDUCIARY TRUST, ITF, LIFE TEN, PENSION PLAN, INDIVIDUAL NAME PROFIT SHARING PLAN, RETIREMENT PLAN, 401K PLAN, SELL TRANSFER PLEDGE , STATE UNIFORM TRANSFER RO MINOR'S ACT, TTEE, TTEES, UW, UTMA, UGMA, USUFRUCT, UNIFIED, UNIF GIFT MIN ACT, UNIF TRUST MIN ACT, UNIFIED GIFT TO MINORS ACT, UNIFORM GIFT TO MINORS, UNIFORM TRANSFER TO MINORS, GRANT (GRANTOR ANNUITY TRUST);*

☐ *TENANTS IN COMMON;*

☐ *TENANTS BY ENTIRETY: (TEN ENT, TENANTS ENT, TENANTS ENTIRETY, TENANTS BY ENTIRETY, TENANTS BY ENTIRETIES);*

☐ *JOINT TENANTS: (JT TEN, JT TEN WROS, JT WROS, J/T/W/R/S, JOINT TENANCY, JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, JT OWNERSHIP, IF JT ACCOUNT WITH TOD); or*

☐ *COMMUNITY PROPERTY: (COM PROP, COMM PROP, COM PROPERTY, COMM PROPERTY, MARITAL PROPERTY, HWACP, HUSBAND & WIFE AS COMMUNITY PROPERTY).*

**Item 6.  Wire Information.**

Wire transfer information in the event a refund is necessary (or, if the Unsecured Cash Out Election is made and the Debtors determine to make the applicable payment via wire transfer).

| | |
|---|---|
| **Account Name:** | |
| **Bank Account No.:** | |
| **ABA/Routing No.:** | |
| **Bank Name:** | |
| **Bank Address:** | |
| **Reference:** | |

U.S. citizens that are 1145 Eligible Holders who do not provide the Citizenship Certification attached as Annex A may be treated as a non-U.S. citizen and may not be issued New Common Stock under the Plan, including pursuant to the 1145 Rights Offering, if necessary for the Company to comply with applicable laws and regulations. Holders that have made the Unsecured Cash Out Election should not return the Citizenship Certification.

**ONCE COMPLETED, YOU MUST RETURN THIS 1145 SUBSCRIPTION FORM AND THE CITIZENSHIP CERTIFICATION TO THE SUBSCRIPTION AGENT BY THE SUBSCRIPTION INSTRUCTION DEADLINE. IN ADDITION, IF YOU ELECTED TO PARTICIPATE IN THE 1145 RIGHTS OFFERING YOU MUST MAKE PAYMENT OF PURCHASE PRICE, SO THAT IT IS RECEIVED BY THE SUBSCRIPTION AGENT BY WIRE TRANSFER OF IMMEDIATELY AVAILABLE FUNDS BY THE SUBSCRIPTION INSTRUCTION DEADLINE.**

## CITIZENSHIP CERTIFICATION

**Definitions:**

For the purposes of this certification:

A U.S. Citizen Share is a share legally and beneficially owned by a U.S. citizen;

A U.S. citizen means (a) an individual who is a citizen of the U.S.; (b) a partnership in which each partner is a U.S. citizen; (c) a corporation which (i) is organized under the laws of the United States, the District of Columbia, or one of its states or territories, (ii) has a U.S. citizen as its President, (iii) two-thirds or more of its board of directors and other managing officers are U.S. citizens, (iv) at least 75 percent of its voting stock is owned and controlled by U.S. citizens and (subject to the Open-Skies note below) at least 51 percent of its total equity is owned and controlled by U.S. citizens, and (v) is under the actual control of U.S. citizens.

In regard to (ii) above, please note:

"Partnership" includes general partnerships, limited partnerships (LPs), and limited liability companies (LLCs) whose internal governance is analogous to a partnership's governance.

"Corporation," in addition to its usual meaning, includes LLCs whose internal governance is analogous to a corporation's governance.

"Open-Skies" Ownership interests held legally and beneficially by citizens of countries with which the U.S. does not have a liberal aviation trade agreement (known as an "open-skies" agreement) may not exceed 25% individually or in the aggregate.  A list of countries with which the U.S. has open-skies agreements is available at www.transportation.gov/policy/aviation-policy/open-skies-agreements-being-applied.

"Actual control" includes all forms of control, whether actual or potential and whether exercised or not exercised.

**Instructions:**

The Certification set forth below must be completed and furnished to Subscription Agent by either (i) e-mailing: [bristowcertification@primeclerk.com] or (ii) mailing to Bristow Group Inc., c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165. To complete this Certification:

Select one (but not more than one) of box A, box B, box C, or box D as appropriate;

Sign this Certification in the space provided; and

If the person signing this certification is a stockbroker, bank manager, legal representative or other agent for the prospective transferee, complete the Certification of Agent on page 3 hereof.

A. □ I declare that I am an individual person who is a U.S. citizen and that the shares to be registered in my name will be "U.S. Citizen Shares."

B. □ I/We declare that I am/we are partner(s) in a partnership (as defined above) organized and existing under the laws of the United States or one of its states or territories, that each partner in the partnership is a U.S. citizen as defined above, and that the shares to be registered in the partnership's name will be "U.S. Citizen Shares."

C.  □  We declare that we are a corporation (as defined above) which (i) is organized under the laws of the United States, the District of Columbia, or one of its states or territories; (ii) has a U.S. citizen as its President; (iii) two-thirds or more of its board of directors and other managing officers are U.S. citizens; (iv) at least 75 percent of its voting stock is owned and controlled by U.S. citizens and (subject to the Open-Skies note above) at least 51 percent of its total equity is owned and controlled by U.S. citizens; and (v) is under the actual control of U.S. citizens (all as defined and explained above); and that the shares to be registered in the corporation's name will be "U.S. Citizen Shares."

D.  □  If I am an individual person who is not a U.S. citizen and therefore have not selected box A, above, I declare that I am a citizen of the following country: _____. If we are a partnership, corporation, LLC or any other entity (other than an individual person) that is not a U.S. citizen and therefore have not selected box B or box C, above, we declare that the ultimate beneficial ownership of the majority of the outstanding voting interest in the partnership, corporation, LLC or other entity is held by an individual citizen or citizens of the following country: _____. (If majority of such ultimate beneficial ownership is not held by an individual citizen or citizens of any one country, please include a list specifying percentage of total outstanding voting interest by country of citizenship corresponding to individuals holding ultimate beneficial ownership.)  By checking this box D, I/we understand that the shares to be registered in my or the partnership's, corporation's, LLC's or other entity's name will not be "U.S. Citizen Shares."

Date: _____

*If the Declarant is an individual, complete the following:*

Surname: _____

First Name: _____

Middle Name(s): _____

Address: _____

No. and Street: _____

Town or City: _____

Post Code: _____

Country: _____

Citizenship: _____

Signature: _____

***Note:*** *If the Declarant is a corporation, partnership, LLC or any entity other than an individual person, complete the following:*

Name of Entity: _____

Name of Authorized Signatory: _____

Title: _____

Signature: _____

       In the case of joint shareholders, ALL must sign.  A corporation should complete the form under the hand of a duly authorized official or agent who should state his or her capacity.  Shares to be held by a nominee must be considered held by the person for whom the nominee is acting if such person is the beneficial owner of such shares or has an interest in such shares, as described above.

       If this Certification cannot otherwise be completed within 20 calendar days of receipt, this Certification may be made by the stockbroker, bank manager, legal representative or by any other person duly authorized by Power of Attorney, in every case acting as the agent of the transferee(s).  In such cases, however, the following certification must also be made:

       **CERTIFICATION OF AGENT:**  I/We, being the person(s) making the Certification set out above as agent(s) for the person(s) named in the Certification and whose name(s) is/are set out herein, represent and warrant that person(s) on whose behalf the Certification is made is/are known to me/us and that I/we am/are duly authorized to make the said Certification on behalf of such person(s) and that, having made reasonable inquiry and exercised reasonable diligence regarding the statements contained in such Certification, such statements are correct to the best of my/our knowledge and belief.

Signature(s): _____

Date: _____   Organization: _____

If signed by a stockbroker, bank manager, legal representative or other individual duly authorized by Power of Attorney, give the name, address and telephone number of the person signing this form:

Name: _____

Address: _____

Telephone: _____

**BRISTOW GROUP INC.**

**4(a)(2) GENERAL UNSECURED CLAIM SUBSCRIPTION FORM
FOR 4(a)(2) RIGHTS OFFERING**

**FOR USE BY 4(a)(2) ELIGIBLE HOLDERS OF
GENERAL UNSECURED CLAIMS**

**IN CONNECTION WITH THE DEBTORS'
DISCLOSURE STATEMENT DATED [•], 2019**

---

### SUBSCRIPTION INSTRUCTION DEADLINE

**The Subscription Instruction Deadline is 4:00 p.m. Central Time on [●], 2019.**

**Please note that your 4(a)(2) Subscription Form (with accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable) must be received by Prime Clerk LLC (the "Subscription Agent") at or prior to the Subscription Instruction Deadline or the subscription represented by your 4(a)(2) Subscription Form will not be recognized, and you will be deemed forever to have relinquished and waived your right to participate in the 4(a)(2) Rights Offering.**

**4(a)(2) Eligible Holders that are holders of General Unsecured Claims must deliver their 4(a)(2) Subscription Forms and the appropriate funding to the Subscription Agent by the Subscription Instruction Deadline.**

**The 4(a)(2) Rights Offering Shares, including Unsubscribed Shares purchased by the Commitment Parties pursuant to the Backstop Commitment Agreement, are being distributed and issued by the Debtors without registration under the Securities Act of 1933, as amended (the "Securities Act"), in reliance upon the exemption provided in section 4(a)(2) of the Securities Act and/or Regulation D promulgated thereunder.**

**None of the 4(a)(2) Subscription Rights or the 4(a)(2) Rights Offering Shares issuable upon exercise of such 4(a)(2) Subscription Rights distributed to 4(a)(2) Eligible Holders that are not Commitment Parties pursuant to these 4(a)(2) Rights Offering Procedures in reliance upon the exemption provided in Section 4(a)(2) of the Securities Act and/or Regulation D Promulgated thereunder have been or will be registered under the Securities Act, nor any state or local law requiring registration for the offer or sale of a security.**

**Please consult the Plan, the Disclosure Statement and the 4(a)(2) Rights Offering Procedures (including the 4(a)(2) Rights Offering Instructions included therein) for additional information with respect to this 4(a)(2) Subscription Form.  Any terms capitalized but not defined herein shall have the meaning as set forth in the Plan or the 4(a)(2) Rights Offering Procedures.**

**If you have any questions, please contact the Subscription Agent via email at bristowoffers@primeclerk.com (please reference "Bristow 4(a)(2) Rights Offering" in the subject line), or at the following applicable phone number: (844) 627-6967 (domestic toll-free) or (347) 292-3534 (international toll).**

**SUBJECT TO THE TERMS AND CONDITIONS OF THE 4(a)(2) RIGHTS OFFERING PROCEDURES, ALL SUBSCRIPTIONS SET FORTH IN THIS 4(a)(2) SUBSCRIPTION FORM ARE IRREVOCABLE.**

**Once completed, this 4(a)(2) Subscription Form should be returned to the Subscription Agent in accordance with the below delivery instructions.**

**If delivering the 4(a)(2) Subscription Form by mail, overnight courier or hand delivery:**

**Bristow Group Inc. Offer Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**

**If delivering the 4(a)(2) Subscription Form by electronic mail:**
**bristowoffers@primeclerk.com**

To subscribe, fill out Items 1 and 2, and read and complete Items 3, 4, 5 and 6 below.

**Item 1.  Amount of Claims and Calculation of Maximum Number of 4(a)(2) Rights Offering Shares.**[1]

The undersigned is the Holder of a General Unsecured Claim(s) in the following amount(s) and/or that the person executing this form is an authorized signatory of that Holder.  For purposes of this General Unsecured Claim Subscription Form:

A General Unsecured Claim is an Allowed General Unsecured Claim or an Asserted General Unsecured Claim.

An Allowed General Unsecured Claim is an unsecured claim against a Debtor which, as of the Subscription Commencement Date, (i) was listed on the Debtors' Schedules of Assets and Liabilities and not marked as "contingent" "disputed" or "unliquidated", (ii) allowed by an order of the Bankruptcy Court, or (iii) temporarily allowed pursuant to Bankruptcy Rule 3018 by an order of the Bankruptcy Court or a stipulation with the Debtors.

An Asserted General Unsecured Claim is an unsecured claim against a Debtor which is asserted in a proof of claim.  For the avoidance of doubt, an Asserted General Unsecured Claim with respect to an executory contract or unexpired lease pending the rejection of such contract or lease is NOT an Allowed General Unsecured Claim and may not participate in the 4(a)(2) Rights Offering.

Eligible Holders of Allowed Note Claims should not use this form.

---

[1]   Assumes a Rights Offerings Amount of $385,000,000 and no DIP Surplus Conversion; to the extent of modifications of the Rights Offerings Amount and any DIP Surplus Conversion, the Purchase Price and amount of Rights Offerings Shares offered will change.

*Insert* amount *of Allowed General Unsecured Claim(s) held* (if you *are unsure whether you have an Allowed General Unsecured Claim*, please contact *the Subscription Agent for assistance*)

| | | | | |
|---|---|---|---|---|
| _____<br>(Insert Allowed General Unsecured Claim Amount) | X | [•]² | = | _____<br>(Maximum Number of 4(a)(2) Rights Offering Shares)  (Round down to nearest whole number) (the "<u>Maximum Participation Amount</u>") |

## Item 2.  Purchase Price.

**2a.** By filling in the following blanks, you are indicating that the undersigned 4(a)(2) Eligible Holder is electing to purchase the number of 4(a)(2) Rights Offering Shares specified below (specify a number of 4(a)(2) Rights Offering Shares, which is not greater than the Maximum 4(a)(2) Participation Amount calculated in Item 1 above), on the terms and subject to the conditions set forth in the 4(a)(2) Rights Offering Procedures.

| | | | | |
|---|---|---|---|---|
| _____<br>(Indicate the number of 4(a)(2) Rights Offering Shares you elect to purchase—not to exceed the amount in Item 1 above) | X | $36.37 | = | $_____<br>Aggregate Purchase Price |

**2b.** By checking the box below in this Item 2b, you are certifying that you have **<u>NOT</u>** made the Unsecured Cash Out Election with respect to the General Unsecured Claims that you hold.

☐  I am a 4(a)(2) Eligible Holder of General Unsecured Claims, and I hereby elect to purchase the number of 4(a)(2) Rights Offering Shares specified in Item 2a above, on the terms and subject to the conditions set forth in the 4(a)(2) Rights Offering Procedures. I have not made the Unsecured Cash Out Election with respect to the General Unsecured Claims that I hold.

## Item 3.  Payment and Delivery Instructions.

Payment of the aggregate Purchase Price calculated in Item 2 above must be made by wire transfer to the Subscription Agent no later than the Subscription Instruction Deadline ONLY in accordance with the following instructions:

U.S. Wire Instructions:

---

² This amount is based on the total amount of General Unsecured Claims claimed against the Debtor [TBD].

| Account Name : | |
| --- | --- |
| Bank Account No.: | |
| ABA/Routing No.: | |
| Bank Name: | |
| Bank Address: | |
| Reference: | |

International Wire Instructions:

| Correspondent/Intermediary Bank SWIFT | |
| --- | --- |
| Correspondent/Intermediary Bank Name | |
| Correspondent/Intermediary Bank Address | |
| Beneficiary Account Number | |
| Beneficiary Name | |
| Beneficiary Address | |
| Memo, Special Instructions, Originator to Beneficiary Information, Bank to Bank Information | |

**Please note that the failure to include the claimant name or form number in the reference field of any domestic or international wire payment may result in the rejection of the corresponding rights offering submission. In addition, please also note that payments cannot be aggregated, and one wire should be sent per 4(a)(2) Subscription Form submission.**

**Item 4.  Certification.**

The undersigned hereby certifies that (i) the undersigned is the holder of the General Unsecured Claims above (the "Holder"), or the authorized signatory (the "Authorized Signatory") of such holder acting on behalf of the Holder, (ii) the Holder has received a copy of the Plan, the Disclosure Statement and the 4(a)(2) Rights Offering Procedures (including the 4(a)(2) Rights Offering Instructions included therein) and (iii) the Holder understands that the exercise of the rights under the 4(a)(2) Rights Offering is subject to all the terms and conditions set forth in the Plan, the 4(a)(2) Rights Offering Procedures.

**The Holder (or the Authorized Signatory on behalf of such Holder) acknowledges that, by executing this 4(a)(2) Subscription Form, the 4(a)(2) Eligible Holder named below has elected to subscribe for the number of 4(a)(2) Rights Offering Shares designated under Item 2 above and will be bound to pay the aggregate Purchase Price listed under Item 2 above for the 4(a)(2) Rights Offering Shares it has subscribed for.**

Date: _____

Name of 4(a)(2) Eligible Holder: _____

U.S. Federal Tax EIN/SSN (optional): _____

If non-U.S. person, check here and attach appropriate IRS Form W- 8 ☐

If U.S. person, check here and attach IRS Form W-9 ☐


Signature: _____

Name of Signatory: _____

Title: _____

Telephone Number: _____

Email: _____


**Item 5. Share Delivery Information.**

## A. Nominee information for receipt of the 4(a)(2) Rights Offering Shares in the event such securities are DTC eligible:

By completing the information in this Item 5(A), a holder may designate a broker, bank, commercial bank, transfer agent, trust company, dealer, or other agent or nominee (as applicable, the "Nominee") to receive the 4(a)(2) Rights Offering Shares in accordance with the practices and procedures of DTC, to be held by the Nominee in an account for the benefit of the holder.

DTC Participant Name:_____

DTC Participant Number:_____

Beneficial Holder Account Number Reference:_____

DTC Participant Contact Name:_____

DTC Participant Contact Telephone:_____

DTC Participant Contact Email:_____


**B.  Registration Information for the direct registration of 4(a)(2) Rights Offering Shares.**

If neither Item 5(A) or 5(B) is completed, the 4(a)(2) Rights Offering Shares will be registered in the holder's name reflected on the official claims register maintained by the Subscription Agent (in its capacity as the Debtors' noticing and claims agent; the "Claims Register").

Registered Holder Name:[3] _____

---

[3]     The same of the registered holder must be as it appears on the Claims Register.

Registered Holder Name (continued from above, if necessary): _____

Address 1: _____

Address 2: _____

City, State, and Zip Code: _____

Foreign Country Name: _____

Telephone Number: _____

E-Mail Address: _____

U.S. Tax Identification Number: _____

Check here if non-US (no TIN) ☐

Please indicate the "account type" that may be used in connection with registration of your 4(a)(2) Rights Offering Shares.

*Please check _only_ _one_ box:*

☐ *INDIVIDUAL ACCOUNT;*

☐ *IRA ACCOUNT;*

☐ *CORPORATIONS (S-CORP): (ASSOCIATED, ASSOCIATES, ASSOCIATION, CO, CO. COMPANY, CORP, CORPORATE/PARTNER, ENTERPRISE(S), FUND, GROUP, INCORPORATED, INC, INTERNATIONAL, INTL, LIMITED, LTD, LIFETIME LIMITED COMPANY, LLC, L.L.C, PARTNER, PARTNERS, PLC, PUBLIC LIMITED COMPANY);*

☐ *PARTNERSHIP: (LP, L P, L.P., LLP, LIMITED PARTNERSHIP, LIFETIME LIMITED PARTNERSHIP);*

☐ *BANK;*

☐ *NOMINEE ACCOUNTS;*

☐ *THE NEW C-CORP;*

☐ *NON-PROFIT: (CEMETERY, CHURCH, COLLEGE, COMMISSION FOR CHILDREN WITH, COMMISSION FOR HANDICAPPED, COMMISSION MINISTRIES INC, COMMISSION OF PUBLIC WORKS, COMMISSION OF BANKING & FOUNDATIONS, HOSPITAL, SCHOOL, SYNAGOGUE, UNIVERSITY);*

☐ *FIDUCIARY ACCOUNT: (CUSTODIAN, CO-TRUSTEE, ESTATE, EXECUTOR, EXECUTRIX FBO, F/B/O, FAO, FIDUCIARY TRUST, ITF, LIFE TEN, PENSION PLAN, INDIVIDUAL NAME PROFIT SHARING PLAN, RETIREMENT PLAN, 401K PLAN, SELL TRANSFER PLEDGE , STATE UNIFORM TRANSFER RO MINOR'S ACT, TTEE, TTEES, UW, UTMA, UGMA, USUFRUCT, UNIFIED, UNIF GIFT MIN ACT, UNIF TRUST MIN ACT, UNIFIED GIFT TO MINORS ACT, UNIFORM GIFT TO MINORS, UNIFORM TRANSFER TO MINORS, GRANT (GRANTOR ANNUITY TRUST);*

☐ *TENANTS IN COMMON;*

☐ *TENANTS BY ENTIRETY: (TEN ENT, TENANTS ENT, TENANTS ENTIRETY, TENANTS BY ENTIRETY, TENANTS BY ENTIRETIES);*

☐ *JOINT TENANTS: (JT TEN, JT TEN WROS, JT WROS, J/T/W/R/S, JOINT TENANCY, JOINT TENANTS WITH RIGHT OF SURVIVORSHIP, JT OWNERSHIP, IF JT ACCOUNT WITH TOD); or*

☐ *COMMUNITY PROPERTY: (COM PROP, COMM PROP, COM PROPERTY, COMM PROPERTY, MARITAL PROPERTY, HWACP, HUSBAND & WIFE AS COMMUNITY PROPERTY).*

**Item 6.  Wire Information.**

Wire transfer information in the event a refund is necessary (or, if the Unsecured Cash Out Election is made and the Debtors determine to make the applicable payment via wire transfer).

| | |
|---|---|
| **Account Name:** | |
| **Bank Account No.:** | |
| **ABA/Routing No.:** | |
| **Bank Name:** | |
| **Bank Address:** | |
| **Reference:** | |

U.S. citizens that are 4(a)(2) Eligible Holders who do not provide the Citizenship Certification attached as Annex A may be treated as a non-U.S. citizen and may not be issued New Common Stock under the Plan, including pursuant to the 4(a)(2)Rights Offering, if necessary for the Company to comply with applicable laws and regulations. Holders that have made the Unsecured Cash Out Election should not return the Citizenship Certification.

**ONCE COMPLETED, YOU MUST RETURN THIS 4(a)(2) SUBSCRIPTION FORM AND THE CITIZENSHIP CERTIFICATION TO THE SUBSCRIPTION AGENT BY THE SUBSCRIPTION INSTRUCTION DEADLINE. IN ADDITION, IF YOU ELECTED TO PARTICIPATE IN THE 4(a)(2)RIGHTS OFFERING YOU MUST MAKE PAYMENT OF PURCHASE PRICE, SO THAT IT IS RECEIVED BY THE SUBSCRIPTION AGENT BY WIRE TRANSFER OF IMMEDIATELY AVAILABLE FUNDS BY THE SUBSCRIPTION INSTRUCTION DEADLINE.**

**Annex A**

**CITIZENSHIP CERTIFICATION**

**Definitions:**

For the purposes of this certification:

A U.S. Citizen Share is a share legally and beneficially owned by a U.S. citizen;

A U.S. citizen means (a) an individual who is a citizen of the U.S.; (b) a partnership in which each partner is a U.S. citizen; (c) a corporation which (i) is organized under the laws of the United States, the District of Columbia, or one of its states or territories, (ii) has a U.S. citizen as its President, (iii) two-thirds or more of its board of directors and other managing officers are U.S. citizens, (iv) at least 75 percent of its voting stock is owned and controlled by U.S. citizens and (subject to the Open-Skies note below) at least 51 percent of its total equity is owned and controlled by U.S. citizens, and (v) is under the actual control of U.S. citizens.

In regard to (ii) above, please note:

"Partnership" includes general partnerships, limited partnerships (LPs), and limited liability companies (LLCs) whose internal governance is analogous to a partnership's governance.

"Corporation," in addition to its usual meaning, includes LLCs whose internal governance is analogous to a corporation's governance.

"Open-Skies" Ownership interests held legally and beneficially by citizens of countries with which the U.S. does not have a liberal aviation trade agreement (known as an "open-skies" agreement) may not exceed 25% individually or in the aggregate. A list of countries with which the U.S. has open-skies agreements is available at www.transportation.gov/policy/aviation-policy/open-skies-agreements-being-applied.

"Actual control" includes all forms of control, whether actual or potential and whether exercised or not exercised.

**Instructions:**

The Certification set forth below must be completed and furnished to Subscription Agent by either (i) e-mailing: [bristowcertification@primeclerk.com] or (ii) mailing to Bristow Group Inc., c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165. To complete this Certification:

Select one (but not more than one) of box A, box B, box C, or box D as appropriate;

Sign this Certification in the space provided; and

If the person signing this certification is a stockbroker, bank manager, legal representative or other agent for the prospective transferee, complete the Certification of Agent on page 3 hereof.

A. □ I declare that I am an individual person who is a U.S. citizen and that the shares to be registered in my name will be "U.S. Citizen Shares."

B. □ I/We declare that I am/we are partner(s) in a partnership (as defined above) organized and existing under the laws of the United States or one of its states or territories, that each partner in the partnership is a U.S. citizen as defined above, and that the shares to be registered in the partnership's name will be "U.S. Citizen Shares."

C.  ☐ We declare that we are a corporation (as defined above) which (i) is organized under the laws of the United States, the District of Columbia, or one of its states or territories; (ii) has a U.S. citizen as its President; (iii) two-thirds or more of its board of directors and other managing officers are U.S. citizens; (iv) at least 75 percent of its voting stock is owned and controlled by U.S. citizens and (subject to the Open-Skies note above) at least 51 percent of its total equity is owned and controlled by U.S. citizens; and (v) is under the actual control of U.S. citizens (all as defined and explained above); and that the shares to be registered in the corporation's name will be "U.S. Citizen Shares."

D.  ☐ If I am an individual person who is not a U.S. citizen and therefore have not selected box A, above, I declare that I am a citizen of the following country: _____. If we are a partnership, corporation, LLC or any other entity (other than individual person) that is not a U.S. citizen and therefore have not selected box B or box C, above, we declare that the ultimate beneficial ownership of the majority of the outstanding voting interest in the partnership, corporation, LLC or other entity is held by an individual citizen or citizens of the following country: _____. (If majority of such ultimate beneficial ownership is not held by an individual citizen or citizens of any one country, please include a list specifying percentage of total outstanding voting interest by country of citizenship corresponding to individuals holding ultimate beneficial ownership.)  By checking this box D, I/we understand that the shares to be registered in my or the partnership's, corporation's, LLC's or other entity's name will not be "U.S. Citizen Shares."

Date: _____

*If the Declarant is an individual, complete the following:*

Surname: _____

First Name: _____

Middle Name(s): _____

Address: _____

No. and Street: _____

Town or City: _____

Post Code: _____

Country: _____

Citizenship: _____

Signature: _____

*Note:*  *If the Declarant is a corporation, partnership, LLC or any entity other than an individual person, complete the following:*

Name of Entity: _____

Name of Authorized Signatory: _____

Title: _____

Signature: _____

     In the case of joint shareholders, ALL must sign.  A corporation should complete the form under the hand of a duly authorized official or agent who should state his or her capacity.  Shares to be held by a nominee must be considered held by the person for whom the nominee is acting if such person is the beneficial owner of such shares or has an interest in such shares, as described above.

     If this Certification cannot otherwise be completed within 20 calendar days of receipt, this Certification may be made by the stockbroker, bank manager, legal representative or by any other person duly authorized by Power of Attorney, in every case acting as the agent of the transferee(s).  In such cases, however, the following certification must also be made:

**CERTIFICATION OF AGENT:**  I/We, being the person(s) making the Certification set out above as agent(s) for the person(s) named in the Certification and whose name(s) is/are set out herein, represent and warrant that person(s) on whose behalf the Certification is made is/are known to me/us and that I/we am/are duly authorized to make the said Certification on behalf of such person(s) and that, having made reasonable inquiry and exercised reasonable diligence regarding the statements contained in such Certification, such statements are correct to the best of my/our knowledge and belief.

Signature(s): _____

Date: _____ Organization: _____

If signed by a stockbroker, bank manager, legal representative or other individual duly authorized by Power of Attorney, give the name, address and telephone number of the person signing this form:

Name: _____

Address: _____

Telephone: _____

**ANNEX B**

# INVESTOR CERTIFICATION

The undersigned makes the appropriate Accredited Investor or Qualified Institutional Buyer certification (each, a "Certification" and, together, the "Certifications") by filling out Section I or Section II below, as applicable.

## I.  Accredited Investor Certification

The undersigned certifies that the undersigned is an "accredited investor" as defined in Rule 501(a) of Regulation D promulgated under the Securities Act of 1933, as amended (the "Securities Act"), because the undersigned is (please check and initial by the appropriate box):

☐    A natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his or her purchase exceeds $1,000,000 USD (net worth includes total assets at fair market value, excluding one's primary residence, less total liabilities, including home mortgages to the extent they exceed the fair market value of one's primary residence);

☐    A natural person who had an individual income in excess of $200,000 USD in each of the two most recent calendar years (2016 and 2017) or joint income with that person's spouse in excess of $300,000 USD in each of those years and has a reasonable expectation of reaching the same income level in the current calendar year (2018);

☐    An entity in which all of the equity owners are accredited investors.

☐    A corporation, limited liability company or partnership, with total assets in excess of $5,000,000 USD, not formed for the specific purpose of acquiring the securities offered;

☐    A trust, with total assets in excess of $5,000,000 USD, not formed for the specific purpose of acquiring the securities offered whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) of Regulation D promulgated under the Securities Act;

☐    An employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 USD or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

☐    A bank as defined in Section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity;

☐    A broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended;

☐    An insurance company as defined in Section 2(a)(I 3) of the Securities Act;

☐    An investment company registered under the Investment Company Act of 1940 or a business development company as defined in Section 2(a)(48) of that Act;

☐    Any Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958;

☐    Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000 USD;

☐    Any private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940; or

☐    Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000 USD.

**IN WITNESS WHEREOF**, the undersigned has executed this Certification on and as of the ____ day of _____ , 2019.

Name of Investor or Entity:

_____

By: _____

Its: _____

State or Country of Primary Residence: _____

Address: _____

Fax: _____

E-mail_____

## II.  Qualified Institutional Buyer Certification

The undersigned hereby certifies that it is a QIB (as defined in Rule 144A under the Securities Act), because the undersigned (please check and initial by the appropriate box):

A.  Owned and/or invested for its own account or for the account of other QIBs on a discretionary basis eligible securities (excluding affiliate's securities, bank deposit notes and CD's, loan participations, repurchase agreements, securities owned but subject to a repurchase agreement, swaps and dealer's unsold allotment) and has the investment discretion with respect to each such account, and full power and authority to make the acknowledgements, representations and agreements on behalf of each owner of such account as described below:

Date: _____, _____ (must be on or after the close of its most recent fiscal year)

Amount: $ _____; and

B.  The dollar amount set forth above is:

a. ☐ Greater than $100 million and the undersigned is one of the following entities:

☐  An insurance company as defined in Section 2(13) of the Securities Act;

☐  An investment company registered under the Investment Company Act of 1940 (the "Investment Company Act") or any business development company as defined in Section 2(a)(48) of the Investment Company Act;

☐  A Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958;

☐  A plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees;

☐  An employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974;

☐  A trust fund whose trustee is a bank or trust company and whose participants are exclusively plans of the types identified in paragraph (4) or (5) of this section, except trust funds that include as participants individual retirement accounts or H.R. 10 plans;

☐ A business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940;

☐ An organization described in Section 501(c)(3) of the Internal Revenue Code, corporation (other than a bank as defined in Section 3(a)(2) of the Securities Act or a savings and loan association or other institution referenced in Section 3(a)(5)(A) of the Securities Act or a foreign bank or savings and loan association or equivalent institution), partnership or similar business trust;

☐ A U.S. bank, savings and loan association or equivalent foreign institution, which has an audited net worth of at least $25 million as demonstrated in its latest annual financial statements; or

☐ An investment adviser registered under the Investment Advisers Act.

b. ☐ Greater than $10 million and the undersigned is a dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934 (the "Exchange Act"), acting for its own account or the accounts of other QIBs, that in the aggregate owns and invests on a discretionary basis securities of issuers that are not affiliated with the dealer;

c. ☐ Less than $10 million, and the undersigned is a dealer registered under Section 15 of the Exchange Act with the SEC and will only purchase Rule 144A securities in transactions in which it acts as a riskless principal (as defined in Rule 144A);

d. ☐ Less than $100 million, and the undersigned is an investment company registered under the Investment Company Act, which, together with one or more registered investment companies having the same or an affiliated investment adviser, owns at least $100 million of eligible securities; or

e. ☐ Less than $100 million, and the undersigned is an entity, all the equity owners of which are QIBs.

Securities acquired in a transaction made pursuant to the provisions of Rule 144A are deemed to be "restricted securities" within the meaning of Rule 144(a)(3).

**IN WITNESS WHEREOF**, the undersigned has executed this Certification on and as of the ____ day of _____ , 2019.

Name of Investor or Entity:

_____

By: _____

Its: _____

State or Country of Primary Residence: _____

Address: _____

Fax: _____

E-mail_____

## **Exhibit 9(a)**

Debtor Cover Letter



<div align="center">**August ___, 2019**</div>

<u>Via First Class Mail</u>

<u>RE</u>:     <u>**In re Bristow Group Inc., *et al.*,**</u>
         <u>**Chapter 11 Case No. 19-32713 (DRJ) (Jointly Administered)**</u>

TO ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN:

Bristow Group Inc. and its affiliated debtors and debtors in possession (collectively, the "<u>Debtors</u>")[1] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>") on May 11, 2019.

You have received this letter and the enclosed materials because you are entitled to vote on the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "<u>Plan</u>").[2]   On August ___, 2019, the Court entered an order (the "<u>Disclosure Statement Order</u>"), among other things: (a) authorizing the Debtors to solicit acceptances for the Plan; (b) conditionally approving the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Debtor Affiliates* (the "<u>Disclosure Statement</u>"); (c) approving the solicitation materials and documents to be included in the solicitation packages (the "<u>Solicitation Package</u>"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan, and for filing objections to the Plan.

<div style="border:1px solid black; text-align:center">

**YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE ON THE PLAN. THEREFORE, YOU SHOULD READ THIS LETTER CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

</div>

In addition to this cover letter, the enclosed materials comprise your Solicitation Package, and were approved by the Court for distribution to Holders of Claims in connection with the solicitation of votes to accept the Plan.  The Solicitation Package consists of the following:

---

[1]   The Debtors in these Chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303). The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

[2]   Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

a.      the Disclosure Statement, as conditionally approved by the Court (with all exhibits thereto, including the Plan);

b.      the Disclosure Statement Order (without exhibits);

c.      the Solicitation Procedures;

d.      the Combined Hearing Notice;

e.      the applicable form of Ballot for each Voting Class in which such Holder or Nominee holds a Claim, in substantially the forms of the Ballots annexed as Exhibits 3(a)-(f) to the Disclosure Statement Order, as applicable;

f.       a pre-addressed, postage pre-paid reply envelope;

g.      the Creditors' Committee Cover Letter; and

h.      any supplemental documents that the Debtors may file with the Court or that the Court orders to be made available.

Bristow Group Inc. (on behalf of itself and each of the other Debtors) has approved the filing of the Plan and the solicitation of votes to accept the Plan.  The Debtors believe that the compromises contemplated under the Plan are fair and equitable, maximize the value of the Debtors' estates, provide the best recovery to stakeholders under the circumstances, and will enable to Debtors to achieve their goal of de-levering their balance sheet and right-sizing their aircraft fleet, without any material impact on their customers, employees or operations.  The Debtors believe that the acceptance of the Plan is in the best interests of their estates and all other parties in interest.   Moreover, the Debtors believe that any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses, which, in turn, likely would result in smaller distributions (or no distributions) or recoveries on account of Claims asserted in the Chapter 11 Cases.

---

**THE DEBTORS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN. THE VOTING DEADLINE IS 4:00 PM PREVAILING CENTRAL TIME ON SEPTEMBER 23, 2019.**

---

The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions, however, please feel free to contact Prime Clerk, LLC, the Solicitation Agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by: (a) visiting the Debtors' restructuring website at https://cases.primeclerk.com/Bristow; (b) writing to Solicitation Agent at Prime Clerk, Bristow Group Inc. Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (c) emailing bristowballots@primeclerk.com; and/or (d) calling the Debtors' restructuring hotline at the following number:

**US/CANADA TOLL FREE: (844) 627-6967**
**INTERNATIONAL: (347) 292-3534**

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.C CONTAINS A THIRD-PARTY RELEASE.**

**ALL HOLDERS OF CLAIMS THAT DO NOT FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO THE INCLUSION OF SUCH HOLDER AS A "RELEASING PARTY" UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII OF THE PLAN OR OPT OUT OF THE RELEASES PURSUANT TO THE INTSTRUCTIONS SET FORTH IN THE BALLOT WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.**

**THIS LETTER IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE SOLICITATION AGENT.**

Copies of certain orders, notices, and pleadings, including copies of this letter, the Plan and the Disclosure Statement, as well as other information regarding these chapter 11 cases are available for inspection free of charge on the Debtors' website at https://cases.primeclerk.com/Bristow.  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.txs.uscourts.gov.


Sincerely,


_____

Bristow Group Inc. on its own behalf and for each of the Debtors

**Exhibit 9(b)**

Committee Cover Letter

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
BRISTOW GROUP INC., ET AL.**

TO:        All Holders of Class 8 Unsecured Notes Claims and Class 12 General Unsecured Claims against Bristow Group Inc. and its debtor affiliates (the "***Debtors***")

FROM:    The Official Committee of Unsecured Creditors of Bristow Group Inc., et al. (the "***Creditors' Committee***")[1]

---

You are receiving this letter because you are an unsecured creditor of the Debtors and are entitled to vote on the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Debtor Affiliates* [Dkt. No. 574] proposed by the Debtors, as such Plan may be amended, modified or supplemented from time to time (the "***Plan***")[2].  As further described in the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Debtor Affiliates* (the "***Disclosure Statement***") [Dkt. No. 576], the Creditors' Committee supports the confirmation and consummation of the Plan and believes that the Plan provides the best possible recovery for unsecured creditors for the reasons described below.  **Accordingly, the Creditors' Committee, which acts as a fiduciary body representing the interests of all unsecured creditors in the Debtors' chapter 11 bankruptcy cases, recommends that you vote to *ACCEPT* the Plan by completing and returning your official Ballot enclosed with your solicitation materials prior to the Voting Deadline.**

Holders of Trade Claims have been separately classified in Class 11 and will be receiving payment in full and in cash.  Such holders are deemed to accept the Plan and are not entitled to vote.  Therefore, Holders of Trade Claims need not, and should not, submit a ballot.  To the extent you have received this letter and a Ballot and believe that you have been improperly classified as a holder of a Class 12 General Unsecured Claim, please immediately contact the Debtors.  You may need to file an objection to protect your rights.

You should carefully read all materials that accompany this letter, including the Plan, Disclosure Statement, and instructions for completing and mailing your ballot and subscription forms.  A short summary of the Plan and certain key deadlines is set forth below.

## I.    Executive Summary

The Plan effectuates a financial restructuring of the Debtors' through the equitization of the majority of the Debtors' unsecured debt.  As a result (and with some exceptions), unsecured creditors will receive equity on account of their unsecured claims as well as the right to participate in Rights Offerings to purchase additional equity at a discount to the value ascribed to the equity for Plan confirmation purposes.  As discussed in more detail below, certain unsecured creditors may elect to receive a lower recovery in the form of all cash (the "***Unsecured Cash Out Election***")

---

[1] The current members of the Creditors' Committee are: (a) General Electric Company; (b) HeliFleet 2013-01, LLC; (c) Infosys Limited; (d) Mill Hill Credit Opportunities Master Fund LP; and (e) Speedcast Communications, Inc.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

in lieu of equity distributions and the rights to participate in the Rights Offerings. Those cash distributions will be funded through a cash pool of $6.75 million (subject to adjustment as described herein) (the "**GUC Cash Distribution Amount**").

As part of the Plan, two separate rights offerings will be conducted: (i) an 1145 Rights Offering which will be made available to all unsecured creditors who do not make the Unsecured Cash Out Election and will be governed by the 1145 Rights Offering and Unsecured Cash Out Election Procedures, and (ii) a 4(a)(2) Rights Offering which will be made available only to unsecured creditors who are accredited investors or qualified institutional buyers and which will be governed by the 4(a)(2) Rights Offering Procedures. The 1145 Rights Offering and Unsecured Cash Out Election Procedures and the 4(a)(2) Rights Offering Procedures (described further herein and in the Disclosure Statement) will be separately mailed to you. The deadline to return the forms required to participate in the Rights Offerings and the Unsecured Cash Out Election is **October 10, 2019, at 4:00pm (Prevailing Central Time).**

## II.  The Plan Reflects a Global Settlement of Numerous Issues

As described in detail in the Disclosure Statement, the Plan embodies a global settlement that was achieved after extensive arms'-length negotiations between various parties including (i) the Debtors, (ii) the Creditors' Committee, (iii) holders of nearly 100% of the Secured Notes, (iv) holders of over 73% of the Unsecured Notes, and (v) holders of 100% of the 2019 Term Loan Facility (collectively, the "**Plan Support Parties**"). At the outset of these Chapter 11 Cases, the Debtors entered into a prepetition restructuring support agreement with certain holders of the Secured Notes which would have provided the holders of the Secured Notes with the vast majority of the reorganized equity, leaving Unsecured Creditors with what the Creditors' Committee believed would be only a small amount of reorganized equity sufficient solely to satisfy the best interests test, which requires a recovery at least equal to a recovery in a hypothetical chapter 7 liquidation. It became apparent that, unless the Company could raise adequate cash to fund operations and pay off secured creditors in full, unsecured creditors would be left with very little recoveries, if any.

Rather than accept that unsatisfactory treatment, the Ad Hoc Unsecured Noteholder Group negotiated a revised deal structure embodied in the Amended Plan, under which certain holders of the Unsecured Notes and the Secured Notes are investing $535 million of new money into the Company through (i) $385 million of fully backstopped Rights Offerings and (ii) the equitization of the $150 million DIP Facility. Of that $535 million of new money financing, $460 million will come from Unsecured Creditors. The proceeds of that new money financing will be used to make distributions under the Plan and to provide the Reorganized Debtors with adequate working capital. The Creditors' Committee does not believe that the Company could raise that amount of capital from third parties on better terms.

Upon reaching the inter-noteholder settlement, the parties focused on the resolution of issues raised by the Committee. The Committee's goal of maximizing value for unsecured creditors focused on, among other things: (a) unimpairment of trade creditors; (b) mechanics to ensure wide and fair participation in the Rights Offering; (c) enhancing liquidity of the New Stock issued by the Reorganized Debtors to unsecured creditors; and (d) the availability, amount and mechanics of the Unsecured Cash Out Election. The Committee was successful in obtaining

significant improvements to the deal negotiated by the Debtors and its ad hoc creditor groups. These improvements include:

- Holders of Unsecured Notes Claims and General Unsecured Claims (both accredited and unaccredited) will be able to participate pro rata in the Unsecured Equity Pool and the rights offering for the Unsecured 1145 Rights Offering Stock;

- Holders of Unsecured Notes Claims and General Unsecured Claims, in each case, who do not make the Unsecured Cash Out Election and are not accredited investors, and who fully exercise their Unsecured 1145 Subscription Rights, will also receive their pro rata share of $250,000 (up to a maximum recovery of 7.6% of such Holder's Allowed claims) to compensate for their ineligibility to participate in the 4(a)(2) Rights Offering, with any unused amounts being added to the GUC Distribution Cash Amount;

- Holders of Unsecured Notes Claims who are not accredited investors and Holders of General Unsecured Claims can make the Unsecured Cash Out Election to receive their pro rata share of the GUC Distribution Cash Amount, which is a $6.75 million cash pool, in lieu of receiving New Stock and rights to purchase Unsecured Rights Offering Stock; and

- Holders of Trade Claims will be unconditionally paid in full and in cash in the ordinary course of business.

The modified Plan provides for material recoveries to unsecured creditors that the Creditors' Committee believes exceeds recoveries unsecured creditors would have received in a liquidation or any available alternative plan of reorganization. In light of these distributions, the Creditors' Committee believes that confirmation of the Plan is in the best interests of all unsecured creditors. Moreover, the Creditors' Committee believes that the settlement of the various issues embodied in the Plan constitutes a reasonable compromise of complex disputes, will avoid the significant expense and delay that would have been incurred had any of the disputed issues been litigated, and will allow the Debtors to exit bankruptcy efficiently and without the uncertainty attendant to litigation of these disputes.

## III.    Unsecured Creditors' Plan Consideration

The Plan provides for three separate classes of unsecured claims: (i) Trade Claims; (ii) Unsecured Notes Claims; and (iii) General Unsecured Claims. As discussed herein, as part of the integrated, global settlement, the Plan also settles issues relating to the allocation and distribution of value among holders of Secured Notes Claims, Unsecured Notes Claims, and General Unsecured Claims, thereby avoiding complex, protracted, and costly litigation of these issues that would have otherwise reduced the available distributions for all creditors. Based on this settled allocation of value, estimated claims in each creditor class, and the valuation of the Debtors, the Disclosure Statement includes estimates of projected recoveries on each class members' allowed claims. The distributions provided under the Plan will be in full and final satisfaction, release, discharge, and settlement of such claims against the Debtors. More specifically, the Disclosure Statement projects the following estimated percentage recoveries for each class of Unsecured Claims:

| Class | Estimated Recovery |
|---|---|
| Class 7 – Trade Claims | 100% |
| Class 8 –Unsecured Notes Claims | 25.7%-28.5%[3] |
| Class 12 – General Unsecured Claims | 11.3%-26.6%[4] |

Holders of unsecured claims that are eligible to, but do not timely make the Unsecured Cash Out Election and fail to exercise their rights to purchase additional equity through the Rights Offering, will receive only their pro rata share of the Unsecured Equity Pool.  As a result, such holders will forgo their pro rata share of the value of the rights associated with the Rights Offerings. As described in more detail in the Disclosure Statement, the Debtors have valued the rights to participate in the Rights Offerings at $84.2 million in the aggregate.

Article II.D of the Disclosure Statement contains a detailed description of the treatment of each class of claims.  Please reference the Disclosure Statement for a more detailed summary of the mechanics for distributions to unsecured creditors under the Plan, the facts and assumptions behind these predictions and projections, and for information relating to the Debtors and these chapter 11 cases.  Each estimate and projection in this letter is taken from the Disclosure Statement and qualified by all of the information in the Disclosure Statement.

---

[3] Projected recoveries for Class 8 creditors assume that no unaccredited holders of Unsecured Notes Claims make the Unsecured Cash Out Election and that all holders of Unsecured Notes Claims exercise their Subscription Rights. Actual recoveries may be more or less than the range depending upon the amount of Class 8 and Class 12 Claims held by holders that make the Unsecured Cash Out Election.  To the extent a holder of Unsecured Notes Claims does not exercise its Subscription Rights (and, if eligible, does not make the Unsecured Cash Out Election), such holder will receive only its Pro Rata Share of the Unsecured Equity Pool for which projected recoveries may range from 14.1% to 15.6% of its Unsecured Notes Claims.  To the extent an unaccredited holder of Unsecured Notes Claims timely makes the Unsecured Cash Out Election, such holder will receive an amount of cash for which estimated projected recoveries may range from 11.3% to 16.9% of their Unsecured Notes Claims (assuming that the actual aggregate amount of General Unsecured Claims and Unsecured Notes Claims that are the subject of the Unsecured Cash Out Election remains within the Debtors' $40-60 million General Unsecured Claims estimate).  Recoveries based on New Stock and Subscription Rights are based on the Plan Enterprise Value (as defined in the Restructuring Support Agreement) and may differ materially to the extent actual value differs from Plan Enterprise Value.

[4] Projected recoveries for Class 12 creditors assume that no unaccredited holders of Unsecured Notes Claims make the Unsecured Cash Out Election.  Actual recoveries may be more or less than the range depending upon the amount of Class 8 and Class 12 Claims held by holders that make the Unsecured Cash Out Election.  To the extent a holder of General Unsecured Claims does not exercise its Subscription Rights (and does not make the Unsecured Cash Out Election), such holder will receive only its Pro Rata Share of the Unsecured Equity Pool for which estimated projected recoveries may range from 14.1% to 15.6% of its General Unsecured Claims.  To the extent that all holders of General Unsecured Claims timely make the Unsecured Cash Out Election, each such holder will receive an amount of cash for which estimated projected recoveries may range from 11.3% to 16.9% of their General Unsecured Claims (assuming that the actual aggregate amount of General Unsecured Claims and Unsecured Notes Claims that are the subject of the Unsecured Cash Out Election remains within the Debtors' $40-60 million General Unsecured Claims estimate).  Recoveries based on New Stock and Subscription Rights are based on the Plan Enterprise Value (as defined in the Restructuring Support Agreement) and may differ materially to the extent actual value differs from Plan Enterprise Value.

A.    **Class 8 Unsecured Notes Claims**

Under the Plan, holders of Allowed Unsecured Notes Claims will receive in full and final satisfaction of their Unsecured Notes Claims:

1.    if you **are** a 4(a)(2) Eligible Holder (i.e., an accredited investor or qualified institutional buyer),

a.    your Pro Rata[5] share of (x) the Unsecured Equity Pool, (y) the Unsecured 1145 Subscription Rights and (z) the Unsecured 4(a)(2) Subscription Rights; or

2.    if you **are <u>not</u>** a 4(a)(2) Eligible Holder, either:

a.    (x) if you **<u>do not</u>** timely make the Unsecured Cash Out Election (including the failure to timely return an election notice), your Pro Rata share[6] of (A) the Unsecured Equity Pool, (B) ***<u>solely if you fully exercise the Unsecured 1145 Subscription Rights,</u>*** the Unsecured 4(a)(2) Distribution Cash Amount (up to a maximum of 7.6% of your Unsecured Notes Claims), and (C) the Unsecured 1145 Subscription Rights; or

b.    (y) if you **<u>do</u>** timely elect in accordance with the Unsecured Cash Out Election Procedures, your Pro Rata[7] share of the GUC Distribution Cash Amount.

---

[5] For the treatment set forth in <u>Section III.B.8.i</u> of the Plan, the Pro Rata amounts shall be calculated as follows: for the treatment set forth in (x) and (y), the Pro Rata amounts shall be calculated as the Pro Rata share of all Allowed Unsecured Notes Claims and all Allowed General Unsecured Claims, in each case, that do not make the Unsecured Cash Out Election (including the failure to timely return an election notice), and for the treatment set forth in (z), the Pro Rata amount shall be calculated as the Pro Rata share of all Allowed Unsecured Notes Claims and all Allowed General Unsecured Claims, in each case, that are held by 4(a)(2) Eligible Holders and that do not make the Unsecured Cash Out Election (including the failure to return an election notice).

[6] For the treatment set forth in <u>Section III.B.8.b.ii.x</u> of the Plan, the Pro Rata amounts shall be calculated as follows: for the treatment set forth in (A) and (C), the Pro Rata amount shall be calculated as the Pro Rata share of all Allowed Unsecured Notes Claims and all Allowed General Unsecured Claims, in each case, that do not make the Unsecured Cash Out Election (including the failure to timely return an election notice); and for the treatment set forth in (B), the Pro Rata amount shall be calculated as the Pro Rata share of all Allowed Unsecured Notes Claims and all Allowed General Unsecured Claims, in each case, that are not held by 4(a)(2) Eligible Holders and that do not make the Unsecured Cash Out Election (including the failure to timely return an election notice).

[7] For the treatment set forth in <u>Section III.B.ii.y</u> of the Plan, the Pro Rata amounts shall be calculated as the Pro Rata share of all Allowed Unsecured Notes Claims held by Holders that are not a 4(a)(2) Eligible Holder and Allowed General Unsecured Claims, and, in each case, that timely make the Unsecured Cash Out Election.

### *Summary of Class 8 Form of Recoveries*

| | Unsecured Equity Pool | Unsecured 1145 Subscription Rights | Unsecured 4(a)(2) Subscription Rights | Unsecured 4(a)(2) Distribution Cash Amount | GUC Distribution Cash Amount |
|---|---|---|---|---|---|
| **4(a)(2) Eligible Holder** | | | | | |
| **No Cash Out Election Option** | Yes | Yes | Yes | No | No |
| **Non-4(a)(2) Eligible Holder** | | | | | |
| **Does Not Make the Unsecured Cash Out Election** | Yes | Yes | No | Yes, solely if Unsecured 1145 Subscription Rights are fully exercised | No |
| **Does Make the Unsecured Cash Out Election** | No | No | No | No | Yes |

To determine whether you are a 4(a)(2) Eligible Holder, please review the subscription forms carefully to properly assert your eligibility and please contact your financial and legal advisors with any questions regarding such status.

Section X of the Disclosure Statement contains the procedures governing the Rights Offerings. Holders of Unsecured Notes Claims and General Unsecured Claims should review those procedures, as well as the solicitation form and instructions included in the solicitation packages, for more information as to how to participate in the Rights Offerings or Unsecured Cash Out Election, as applicable.

**B.     Class 12 General Unsecured Claims**

Under the Plan, holders of Allowed General Unsecured Claims will receive in full and final satisfaction of their General Unsecured Claims:

1. if you **are** a 4(a)(2) Eligible Holder, either:

   a. (x) if you **do not** timely make the Unsecured Cash Out Election, your Pro Rata[8] share of (A) the Unsecured Equity Pool, (B) the

---

[8] For the treatment set forth in Section III.B.12.b.i.x of the Plan, the Pro Rata amounts shall be calculated as follows: for the treatment set forth in (A) and (B), the Pro Rata amount shall be calculated as the Pro Rata share of all Allowed Unsecured Notes Claims and all Allowed General Unsecured Claims, in each case, that do not make the Unsecured Cash Out Election (including the failure to timely return an election notice), and for the treatment set forth in (C), the Pro Rata amount shall be calculated as the Pro Rata share of all Allowed Unsecured Notes Claims and all Allowed

Unsecured 1145 Subscription Rights, and (C) the Unsecured 4(a)(2) Subscription Rights; or

    b.  (y) if you **do** timely elect in accordance with the Unsecured Cash Out Election Procedures, your Pro Rata[9] share of the GUC Distribution Cash Amount.

2.  if you **are not** a 4(a)(2) Eligible Holder, either:

    a.  (x) if you **do** <u>**not**</u> timely make the Unsecured Cash Out Election, your Pro Rata share[10] of (A) the Unsecured Equity Pool, (B) ***<u>solely if you fully exercise the Unsecured 1145 Subscription Rights,</u>*** the Unsecured 4(a)(2) Distribution Cash Amount (up to a maximum of (7.6% of such Holder's General Unsecured Claims), and (C) the Unsecured 1145 Subscription Rights; or

    b.  (y) if you **do** timely make the Unsecured Cash Out Election, your Pro Rata[11] share of the GUC Distribution Cash Amount.

### *<u>Summary of Class 12 Form of Recoveries</u>*

| | <u>Unsecured Equity Pool</u> | <u>Unsecured 1145 Subscription Rights</u> | <u>Unsecured 4(a)(2) Subscription Rights</u> | <u>Unsecured 4(a)(2) Distribution Cash Amount</u> | <u>GUC Distribution Cash Amount</u> |
|---|---|---|---|---|---|
| <u>**4(a)(2) Eligible Holder**</u> | | | | | |
| <u>**Does Not** Make</u> **the Unsecured Cash Out Election** | Yes | Yes | Yes | No | No |

---

General Unsecured Claims, in each case that are held by 4(a)(2) Eligible Holders and that do not make the Unsecured Cash Out Election (including the failure to timely return an election notice).

[9] For the treatment set forth in <u>Section III.B.12.b.i.y</u> of the Plan, the Pro Rata amounts shall be calculated as the Pro Rata share of all Allowed Unsecured Notes Claims held by Holders that are not a 4(a)(2) Eligible Holder and Allowed General Unsecured Claims, in each case, that timely make the Unsecured Cash Out Election.

[10] For the treatment set forth in <u>Section III.B.12.b.ii.x</u> of the Plan, the Pro Rata amounts shall be calculated as follows: for the treatment set forth in (A) and (C), the Pro Rata amount shall be calculated as the Pro Rata share of all Allowed Unsecured Notes Claims and all Allowed General Unsecured Claims, in each case, that do not make the Unsecured Cash Out Election (including the failure to timely return an election notice); and for the treatment set forth in (B), the Pro Rata amount shall be calculated as the Pro Rata share of all Allowed Unsecured Notes Claims and all Allowed General Unsecured Claims, in each case, that are not held by 4(a)(2) Eligible Holders and that do not make the Unsecured Cash Out Election (including the failure to timely return an election notice).

[11] For the treatment set forth in <u>Section III.B.12.b.ii.y</u> of the Plan, the Pro Rata amounts shall be calculated as the Pro Rata share of all Allowed Unsecured Notes Claims held by Holders that are not a 4(a)(2)Eligible Holder and all Allowed General Unsecured Claims and, in each case, that timely make the Unsecured Cash Out Election).

|  | Unsecured Equity Pool | Unsecured 1145 Subscription Rights | Unsecured 4(a)(2) Subscription Rights | Unsecured 4(a)(2) Distribution Cash Amount | GUC Distribution Cash Amount |
|---|---|---|---|---|---|
| **Does Make** the Unsecured Cash Out Election | No | No | No | No | Yes |
| **Non-4(a)(2) Eligible Holder** | | | | | |
| **Does Not Make** the Unsecured Cash Out Election | Yes | Yes | No | Yes, solely if Unsecured 1145 Subscription Rights are fully exercised | No |
| **Does Make** the Unsecured Cash Out Election | No | No | No | No | Yes |

To determine whether you are a 4(a)(2) Eligible Holder, please review the subscription forms carefully to properly assert your eligibility and please contact your financial and legal advisors with any questions regarding such status.

Section X of the Disclosure Statement contains the procedures governing the Rights Offerings. Holders of Unsecured Notes Claims and General Unsecured Claims should review those procedures, as well as the solicitation form and instructions included in the solicitation packages, for more information as to how to participate in the Rights Offerings or Unsecured Cash Out Election, as applicable.

## IV.   **Important Deadlines**

The Disclosure Statement also contains a number of important ***record dates*** and ***deadlines***, including (but not limited to) the following:

- **August 21, 2019** is the ***record date for voting***. You can only vote claims you held on **August 21, 2019**.

- **September 10, 2019** is the commencement of Solicitation for the Rights Offering.

- **September 23, 2019 at 4:00 p.m. (Prevailing Central Time)** is the ***deadline*** for the Debtors' balloting agent to receive ballots from all creditors and objections to the Plan.

- **October 3, 2019 at 1:00 p.m. (Prevailing Central Time)** is the date for the ***hearing on the confirmation*** of the Plan.

- **October 10, 2019 at 4:00 p.m. (Prevailing Central Time**) is the ***deadline*** to return the Subscription Forms to participate in the Rights Offering and the Unsecured Cash Out Election.

Please review the Disclosure Statement for other dates and deadlines that may be important to you.

## V.     Conclusion

The Creditors' Committee recommends each holder of a claim receiving this letter vote to **ACCEPT** the Plan and return its ballot indicating such acceptance in accordance with the voting instructions described in the Disclosure Statement and Ballot.

You should carefully read the Disclosure Statement and the Plan in their entirety and may wish to consult your own legal or financial advisors.  This letter is not offered as legal advice as to any specific claim or treatment under the Plan.  It is for informational purposes only.

The Rights Offerings and the Unsecured Cash Out Election will be governed by separate procedures and subscription forms, which you should carefully review and which will be mailed separately.  The Creditors' Committee expresses no view and is not making any recommendations as to whether you should exercise any of your rights to purchase New Stock in connection with the Rights Offerings or whether you should make the Unsecured Cash Out Election.  You may wish to consult your own legal or financial advisors before making any decisions.

By this letter, the Creditors' Committee is expressing its support for the Plan. This letter does not purport to reflect the views of the Bankruptcy Court and does not constitute findings of facts or conclusions of law endorsed by the Bankruptcy Court; nor does it necessarily reflect the views of any individual Creditors' Committee member, which reserve any and all of their rights.

If you have questions or require additional information, please call the Creditors' Committee hotline at 212-715-3282.

Very truly yours,

The Official Committee of Unsecured Creditors of Bristow Group Inc.., et al.

**THE CREDITORS' COMMITTEE'S RECOMMENDATION THAT UNSECURED CREDITORS VOTE TO ACCEPT THE PLAN SHOULD NOT SERVE AS A SUBSTITUTE FOR EACH UNSECURED CREDITOR'S OWN CAREFUL READING AND CONSIDERATION OF THE DISCLOSURE STATEMENT, PLAN, AND RELATED DOCUMENTS DISSEMINATED THEREWITH, AND CONSULTATION WITH COUNSEL OR OTHER PROFESSIONAL ADVISORS.**

**THIS LETTER MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN THE CREDITORS' COMMITTEE'S VIEWS ON HOW TO VOTE ON THE PLAN, AND THE**

INFORMATION CANNOT BE RELIED UPON FOR ANY OTHER PURPOSE.  THE CREDITORS' COMMITTEE DOES NOT GUARANTEE ANY PARTICULAR RESULT IN THE DEBTORS' BANKRUPTCY CASES.

THE BANKRUPTCY COURT'S APPROVAL OF THIS SOLICITATION LETTER TO BE INCLUDED AS PART OF THE SOLICITATION PACKAGE DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE MERITS OF THE PLAN OR THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THIS COMMUNICATION DOES NOT CONSTITUTE, AND SHALL NOT BE CONSTRUED AS, A SOLICITATION BY THE CREDITORS' COMMITTEE OR BY ANY INDIVIDUAL MEMBER OF THE CREDITORS' COMMITTEE.