**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| BRISTOW GROUP INC., *et al.*,[1] | ) ) | Case No. 19-32713 (DRJ) |
| Debtors. | ) ) ) | Jointly Administered |

**DEBTORS' EMERGENCY MOTION TO EXTEND THE EXCLUSIVITY PERIODS TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
>
> **THERE WILL BE A HEARING ON THIS MOTION ON SEPTEMBER 18, 2019, AT 2:00 P.M. (CDT) IN COURTROOM 400, 515 RUSK STREET, HOUSTON, TEXAS 77002, BEFORE THE HONORABLE DAVID R. JONES.**

Bristow Group Inc. and its debtor affiliates (collectively, the "Debtors" or "Bristow"), as debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303). The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

Cases"), file this motion (the "Motion") pursuant to section 1121 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") to extend by ninety (90) days their exclusive period to file a plan of reorganization and solicit acceptances thereof. In support of this Motion, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

1. The Debtors seek 90-day extensions of the exclusive periods to file and solicit acceptances of a chapter 11 plan. These extensions will allow the Debtors to continue their efforts to confirm their proposed plan that is now supported by all major creditor constituencies, and thereby bring these chapter 11 cases to a value-maximizing conclusion. As detailed below, "cause" plainly exists under section 1121 of the Bankruptcy Code to extend the Debtors' exclusive periods.

2. The Debtors have made significant progress towards confirming a plan of reorganization and completing their restructuring. On the first day of these cases, the Debtors had a restructuring support agreement that only had the support of their secured term loan lenders and noteholders. Since that date, the Debtors have worked diligently to forge additional consensus among their creditor constituencies and to develop a chapter 11 plan of reorganization. Those efforts have led to the filing of the *Amended Joint Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, as Modified* [Docket No. 589] (the "Plan"),[2] which is now supported by all of the Debtors' major creditor constituencies, including over 99 percent of their secured term loan lenders and noteholders, 73 percent of their unsecured noteholders, the Creditors' Committee and certain crucial equipment lenders and lessors. The Debtors have recently received conditional approval of their Disclosure Statement and have commenced solicitation of acceptances on the Plan. The confirmation hearing on the Plan is scheduled for

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

October 3, 2019 and, if confirmation is granted, the Debtors anticipate consummating the Plan and emerging from chapter 11 shortly thereafter.

3.      Although the Debtors expect they will be able to confirm the Plan and emerge on that timeline, work remains to be done.  For example, the Plan contemplates a $385 million new money rights offering that is being launched in the coming days.  Moreover, certain parties in interest have already signaled that they intend to oppose confirmation, and the Debtors continue to negotiate with certain of their equipment lenders and other constituencies.  Granting an extension of each Debtor's exclusive right to file and solicit acceptance of a chapter 11 plan will allow the Debtors to, among other things, (i) continue toward emergence in an efficient, organized fashion, (ii) address any issues that could arise in connection with the rights offering, and (iii) address and (potentially resolve) objections to confirmation, all without the potential disruptive effects of competing plans.  For all of the foregoing reasons, and the reasons more specifically described herein, 90-day extensions of the exclusivity periods are appropriate.

### RELIEF REQUESTED

4.      The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, extending each Debtor's exclusive right to file a chapter 11 plan through and including December 6, 2019, and to solicit votes thereon through and including February 4, 2020 (collectively, the "Exclusivity Periods"), without prejudice to the Debtors' right to seek further extensions of the Exclusivity Periods.[3]

---

[3]    The Debtors' exclusive right to file a chapter 11 plan is currently set to expire on September 9, 2019. Pursuant to Section 13 of the *Procedures for Complex Chapter 11 Cases In the Southern District of Texas* (the "Complex Case Procedures"), the filing of this Motion automatically extends such Exclusivity Period until the date that the Court rules on this Motion.

3

**JURISDICTION AND VENUE**

5. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The basis for the relief requested herein is section 1121 of title 11 of the Bankruptcy Code.

**BACKGROUND**

8. On May 11, 2019 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

9. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 23, 2019, the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee") in these cases. *See* Docket No. 179.

10. Additional factual background regarding the Debtors, including their business operations, capital and debt structures, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of Brian Allman in Support of First Day Pleadings* (the "First Day Declaration") [Docket No. 25], which is fully incorporated in this Motion by reference, and in the *Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of*

4

*Reorganization of Bristow Group Inc. and Its Debtor Affiliates, as Modified* [Docket No. 590] (with any amendments, modifications, or supplements thereto, the "Disclosure Statement"), which is also fully incorporated in this Motion by reference.

11. Based on the number of aircraft operated, Bristow is the leading global industrial aviation services provider through its Debtor and non-Debtor affiliate operations. As of the Petition Date, the Debtors' collective liabilities, including liabilities of non-debtors subject to guarantees from Debtor Bristow Group Inc. and/or other Debtors, was estimated to be in excess of $1.7 billion. The Debtors, like other helicopter service providers, suffered prolonged financial distress over the past few years. The Debtors commenced these Chapter 11 Cases to implement a comprehensive series of restructuring transactions to de-lever the Debtors' balance sheet, optimize their fleet and raise new go-forward capital.

12. Significant progress has been made towards reorganizing the Debtors since the Petition Date. Having reached agreement on an initial restructuring support agreement with the Secured Notes Ad Hoc Group shortly before the Petition Date, the Debtors engaged with additional stakeholders to secure the terms of a value-maximizing and consensual reorganization. Specifically, following the Petition Date, the Debtors, the Secured Notes Ad Hoc Group, and the Unsecured Notes Ad Hoc Group negotiated and worked towards a new restructuring support agreement that would provide the Debtors with additional liquidity and exit funding, maximize recoveries to all of the Debtors' creditors, and allow the Debtors to quickly emerge from chapter 11 on a consensual basis. Those negotiations were successful, and on June 27, 2019, the Debtors and the Supporting Noteholders (holding approximately 89.84% of the Secured Notes and approximately 54.54% of the Unsecured Notes) entered into the Amended and Restated Restructuring Support Agreement. Following that date, the Debtors and Supporting Noteholders

continued to refine the reorganization contemplated by this amended RSA, and garnered additional support for the same, resulting in the execution of the Second Amended and Restated Restructuring Support Agreement (the "Restructuring Support Agreement") on July 24, 2019, by the Debtors and holders of approximately 99.3% of the outstanding Secured Notes, 100% of the 2019 Term Loans and 73.6% of the Unsecured Notes. Following that date, the Debtors and the Supporting Noteholders negotiated with the Creditors' Committee to garner its support for the Plan. Ultimately, the Debtors, the Supporting Noteholders and the Creditors' Committee reached a global settlement, which resulted in the Creditors' Committee executing a joinder (the "Joinder"), dated August 22, 2019, to the Restructuring Support Agreement, pursuant to which the Creditors' Committee agreed to support the Plan subject to the terms of the Joinder.

13. In addition to the Restructuring Support Agreement and the substantial creditor support achieved thereby, the Debtors have accomplished a number of goals to move their Chapter 11 Cases forward, including:

   a. The approval of critical first and second day relief, including the use of cash collateral on an interim and final basis [*See* Docket No. 312];

   b. The approval of a $150 million postpetition credit facility (the "DIP Loan") [*See* Docket No. 582];

   c. The preparation and approval of a Key Employee Incentive Plan ("KEIP") in order to retain and drive the performance of the Debtors' critical employees [*See* Docket No. 588];

   d. The filing of the Disclosure Statement and the Plan;

   e. The conditional approval of the Disclosure Statement [*See* Docket No. 599] and the commencement of solicitation on the Plan; and

   f. Agreeing upon the general terms of a global settlement with Milestone Aviation Group Limited, P.K. AirFinance S.À R.L., and their respective affiliates (the "Milestone Parties") to optimize the Debtors' post-confirmation aircraft fleet and address many issues with these parties and their respective claims.

14. Over the next several weeks the Debtors will finalize their fleet optimization plan. This will involve making determinations on whether to assume or reject the Debtors' many executory contracts and leases, and addressing issues related to related cure obligations. The Debtors will also be collaborating with the Milestone Parties to ensure that the terms of their global settlement and related transactions are approved. While the Debtors look forward to the confirmation hearing and believe the Plan satisfies the requirements for confirmation set forth in the Bankruptcy Code, given the complexities of these Chapter 11 Cases, the limited extension of the Exclusivity Periods sought hereby is prudent and appropriate.

### BASIS FOR RELIEF

15. A debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case pursuant to section 1121(b) of the Bankruptcy Code. Section 1121(c)(3) of the Bankruptcy Code extends the period of exclusivity for an additional 60 days, to an initial maximum of 180 days, if the debtor has filed a chapter 11 plan and is soliciting votes on such plan. "[T]he point of exclusivity is to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated." *In re Burns and Roe Enters., Inc.*, No. 00-41610 RG, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (internal quotation marks omitted) (quoting H.R. Rep. No. 103-835, at 36 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3344).

16. Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusivity "for cause," subject to certain limitations not relevant here. Specifically, section 1121(d) provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d). Although the

7

Bankruptcy Code does not define "cause," bankruptcy courts have discretion to extend exclusivity to promote the orderly, consensual, and successful reorganization of a debtor's affairs. *See In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987) (noting that the meaning of "cause" under section 1121 should be viewed in context of the Bankruptcy Code's goal of fostering reorganization); *In re Mirant Corp.*, No. 4-04-CV-476-A, 4-04-CV-530-A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) (noting that an extension of exclusivity is typically granted where "the debtor showed substantial progress had been made in negotiations toward reorganization"); *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (citing factors relevant to whether "cause" exists to extend exclusive periods).

17.  Courts within the Fifth Circuit and in other jurisdictions have held that the decision to extend the Exclusivity Periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case. *See Mirant*, 2004 WL 2250986, at *3 (noting that the decision to extend exclusivity "lies within the bankruptcy court's discretion"); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (extending exclusivity based on the totality of the circumstances); *see also In re Borders Group, Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y 2011) (noting that "the court has broad discretion in extending or terminating exclusivity"); *First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986) (holding that section 1121(d) of the Bankruptcy Code provides the bankruptcy court "with flexibility to either reduce or increase that period of exclusivity within its discretion"). In particular, courts examine a number of factors to determine whether a debtor has had an adequate opportunity to develop, negotiate, and propose a chapter 11 plan and thus whether there is "cause" for extension of the Exclusivity Periods. These factors include the following:

    (a)      the size and complexity of the case;

8

(b) the need for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

(c) whether the debtor has made progress in negotiations with its creditors;

(e) whether the debtor is seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands;

(f) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(g) whether the debtor is paying its bills as they become due;

(h) the amount of time which has elapsed in the case; and/or

(i) whether an unresolved contingency exists.

*See, e.g.*, *In re New Millennium Mgmt., LLC*, No. 13-35719-H3-11, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014) (listing factors relevant to whether "cause" exists to extend exclusivity periods) (citing *In re GMG Cap. Partners III, L.P.*, 503 B.R. 596, 600-01 (Bankr. S.D.N.Y. 2014)); *see also In re Adelphia Commc'ns Corp.*, 336 B.R. at 674-77 (denying motion to terminate exclusivity based on factors for cause).

18.   Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods. *See, e.g.*, *Express One*, 194 B.R. at 100-01 (listing all nine factors later set forth in *Adelphia*, determining "cause" to extend exclusivity existed without finding that every factor was met); *see also In the Matter of Excel Maritime Carriers Ltd.*, 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013) (noting in an exclusivity termination context that the ultimate consideration for the court is what will best move the case forward in the best interests of all parties).

19.   Further, courts regularly grant a debtor's first request for an extension of the debtor's exclusive period to file a chapter 11 plan. *See In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) (noting that during the initial 120-day period in which debtors have an

9

exclusive right to file a chapter 11 plan, "bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied.") (quoting 11 U.S.C. § 1121(b), (c)(2)); *see also Borders*, 460 B.R. at 825 (same).

20. Courts in this and other districts have approved similar relief in other complex chapter 11 cases at the initial exclusivity hearing. *See, e.g.*, *In re Westmoreland Coal Company*, No. 18-35672 (Bankr. S.D. Tex. Jan. 16, 2019) (granting an initial exclusivity extension of 120 days); *In re iHeartMedia, Inc.*, No. 18-31274 (Bankr. S.D. Tex. July 10, 2018) (granting an initial exclusivity extension of 135 days); *In re EXCO Resources, Inc.*, No. 18-30155 (Bankr. S.D. Tex. May 8, 2018) (granting an initial exclusivity extension of 90 days); *In re Seadrill Ltd.*, No. 17-60079 (Bankr. S.D. Tex. January 8, 2018) (granting an initial exclusivity extension of 180 days); *In re GenOn Energy, Inc.*, No. 17-33695 (Bankr. S.D. Tex. Oct. 3, 2017) (granting an initial exclusivity extension of approximately 180 days); *In re Ultra Petroleum Corp.*, No. 16-32202 (Bankr. S.D. Tex. Feb. 22, 2017) (granting initial exclusivity extension of 120 days); *In re CJ Holding Co.*, No. 16-33590 (Bankr. S.D. Tex. Nov. 3, 2016) (granting an initial exclusivity extension of 120 days); *In re SandRidge Energy Inc.*, No. 16-32488 (Bankr. S.D. Tex. Aug. 30, 2016) (granting an initial exclusivity extension of 120 days).[4] Such initial extensions are reasonable, as serial short-term extensions lead to instability by forcing parties to continue returning to court over-and-over again to litigate exclusivity. *See In re MSR Resort Golf Course LLC*, No. 11-10372 (Bankr. S.D.N.Y.), Hr'g Tr. Feb. 21, 2012, 7:24–8:3 (extending exclusivity, in part, because "everything else in the case ground to a significant halt, in light of prior fights about exclusivity").

---

[4] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' counsel.

21. Here, as set forth in detail below, the relevant factors strongly favor initial extensions of the Exclusivity Periods.

### A. THE DEBTORS' CHAPTER 11 CASES ARE LARGE AND COMPLEX

22. Both Congress and courts have acknowledged that the size and complexity of a debtor's case alone may provide cause for extending a debtor's exclusivity periods. *See Express One*, 194 B.R. at 100-01 (approving the debtor's third exclusivity extension and noting that "the traditional ground for cause is the large size of the debtor and the concomitant difficulty in formulating a plan"); *see also In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del.), Hr'g Tr. Sept. 16, 2014, 73:5–17 (granting debtors' six-month extension in "an extremely complex case" with "a lot of things that are moving" and where the debtors have "a long way to go in order to get to a plan of reorganization that is hopefully confirmable whether on a global basis or in pieces"); *In re Cengage Learning, Inc.*, No. 13-44106 (Bankr. E.D.N.Y.), Hr'g Tr. Oct. 25, 2013, 59:4–14 (granting debtors' first request for extension in a case of "substantial size and complexity" where, among other things, the debtors had $5.8 billion in debt and nearly 5,000 employees); *In re MSR Resort Golf Course LLC*, No. 11-10372 (Bankr. S.D.N.Y.), Hr'g Tr. Nov. 3, 2011, 376:13–20 (granting debtors' second request for extension where "[t]he debtors have large and complex cases" involving over $2 billion in consolidated assets, $1.5 billion in secured debt, thirty debtors, and five large and complicated businesses).

23. The sheer amount of the Debtors' pre-petition debt along with their multi-layered and intertwined capital structure justifies an extension of the Exclusivity Periods. The restructuring of the Debtors' debt with the transactions contemplated in the Restructuring Support Agreement and the Plan is a monumental task involving many stakeholders and transactions, including the conversion of existing debt to equity and the issuance of new equity

11

for new money pursuant to a rights offering. While maneuvering through that process, the Debtors have been working to optimize their large global aircraft fleet. Despite the challenges faced, the Debtors have been able to achieve significant progress by entering into transactions to preserve and grow their business, such as the DIP Loan and the KEIP, while negotiating and filing the Plan and reaching agreements with many important stakeholders.

B. **THE DEBTORS HAVE MADE SIGNIFICANT PROGRESS IN NEGOTIATING IN GOOD FAITH WITH ALL CREDITORS AND ADMINISTERING THESE CHAPTER 11 CASES**

24. Since the Petition Date, the Debtors have worked diligently to reach terms with critical stakeholders, including the Unsecured Notes Ad Hoc Group, the Creditors' Committee and the Debtors' key lessor and lender creditors. The Debtors' efforts to promote consensus whenever possible support the extension of the Exclusivity Periods, as the Debtors have every intention of building consensus to confirm their Plan. *See Mirant*, 2004 WL 2250986, at *2 ("In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization."); *see also In re MSR Resort Golf Course LLC*, No. 11-10372 (Bankr. S.D.N.Y.), Hr'g Tr. Nov. 3, 2011, 377:2–8 (granting debtors' second exclusivity extension based, in part, on compromises reached between the debtors and their stakeholders and concluding that the debtors' "good-faith progress is also evidenced by these settlements, which evidence . . . progress in trying to reach some consensus on the end game strategy in these cases, and the timing for such a strategy"); *In re Tribune Co.*, No. 08-13141 (Bankr. D. Del.), Hr'g Tr. Dec. 7, 2009, 70:2–4 (extending exclusivity based, in part, on the fact that "there are ongoing discussions, which may or may not result in a global resolution").

25. If granted, the Debtors will use these extended Exclusivity Periods to build further consensus for their chapter 11 exit strategies. The Debtors will continue to work with each stakeholder in an effort to minimize objections and make the confirmation process as consensual

12

as possible. Accordingly, the extension of the Exclusivity Periods as requested herein should be granted.

C.  **AN EXTENSION OF THE EXCLUSIVITY PERIODS WILL NOT PREJUDICE CREDITORS**

26.  This request for an extension of the Exclusivity Periods is the Debtors' first request and comes less than four months into these chapter 11 cases. Courts routinely grant a debtor's first request for an initial exclusivity extension for periods significantly longer than those sought here. *See, e.g.*, *In re Seadrill Ltd.*, No. 17-60079 (Bankr. S.D. Tex. January 8, 2018) (granting an initial exclusivity extension of 180 days); *In re GenOn Energy, Inc.*, No. 17-33695 (Bankr. S.D. Tex. Oct. 3, 2017) (granting an initial exclusivity extension of approximately 180 days); *In re Ultra Petroleum Corp.*, No. 1632202 (Bankr. S.D. Tex. Feb. 22, 2017) (granting initial exclusivity extension of 120 days); *In re CJ Holding Co.*, No. 16-33590 (Bankr. S.D. Tex. Nov. 3, 2016) (granting an initial exclusivity extension of 120 days); *In re SandRidge Energy Inc.*, No. 16-32488 (Bankr. S.D. Tex. Aug. 30, 2016) (granting an initial exclusivity extension of 120 days); *In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del.), Hr'g Tr. Sept. 16, 2014, 73:21–25 (granting debtors' request for a six-month extension because "just a two month or three month even extension of exclusivity won't accomplish anything, we're going to be right back here having the same argument and you're going to get the same ruling, provided things continue to move").

27.  As discussed above, the Debtors have accomplished a great deal and proposed the Plan that, when confirmed, will allow the Debtors to quickly exit from chapter 11 and maximize recoveries for all stakeholders. But, out of an abundance of caution, and given the complexities of these cases and the various transactions and elections contemplated by the Plan, additional time for the Debtors to implement their restructuring is prudent and appropriate. Extending the

Exclusivity Periods will not prejudice creditors, but will in fact benefit creditors by avoiding the drain on estate assets attendant to the distraction and disruption that would be caused should any competing chapter 11 plans be proposed. All stakeholders benefit from that continued stability and predictability, which comes only with the Debtors being the sole potential plan proponents. Moreover, even if the Bankruptcy Court approves an extension of the Exclusivity Periods, nothing prevents parties in interest from later arguing that cause supports termination of the Debtors' exclusivity. Accordingly, the relief requested herein is without prejudice to the Debtors' creditors and will instead benefit the Debtors, their creditors, and all other key parties in interest.

### D. THE DEBTORS ARE NOT PRESSURING CREDITORS BY REQUESTING AN EXTENSION OF THE EXCLUSIVITY PERIODS

28. The Debtors' restructuring process is intended to confirm a plan that maximizes the value of the Debtors' estates for all of the Debtors' key economic stakeholders. The Debtors request a brief extension of the Exclusivity Periods not to pressure creditors, but to provide a sufficient, flexible window in which the Debtors can obtain confirmation of the Plan and implement the various complex financial transactions contemplated thereby, without the disruption and distraction created by competing plan proposals.

### E. THE DEBTORS ARE PAYING THEIR DEBTS AS THEY COME DUE

29. The Debtors have paid their undisputed postpetition debts in the ordinary course of business or as otherwise provided by Court order since the Petition Date.

### F. RELATIVELY LITTLE TIME HAS ELAPSED IN THE CHAPTER 11 CASES

30. These Chapter 11 Cases were filed nearly four months ago. In that time, a number of key restructuring objectives have been accomplished, as detailed above. The Debtors clearly have not dragged their feet in moving the Chapter 11 Cases forward.

## **EMERGENCY CONSIDERATION**

31. In accordance with Local Rule 9013-1(i), the Debtors request emergency consideration of the Motion. The Debtors' exclusive period to file a chapter 11 plan is set to expire on September 9, 2019. Although section 13 of the Complex Case Procedures provides for a temporary extension until the Motion is considered by the Bankruptcy Court, prolonged uncertainty surrounding the Debtors' exclusive right to file a plan could negatively impact their efforts to reach a consensus with creditors and move their restructuring forward toward an efficient and expeditious resolution. Accordingly, the Debtors submit that emergency consideration of this Motion is warranted under the circumstances.

## **NOTICE**

32. The Debtors will provide notice of this Motion to (a) the U.S. Trustee; and (b) all other parties on the Master Service List. The Debtors respectfully submit that such notice is sufficient and that no further notice of this Motion is required.

## **NO PRIOR REQUEST**

38. No prior request for the relief sought in this motion has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that this Court (i) enter an order extending the exclusive period within which the Debtors may file a chapter 11 plan to December 6, 2019 and extending the exclusive period within which the Debtors may solicit acceptances of such plan to February 4, 2020, without prejudice of the Debtors' right to seek further extensions, and (ii) grant the Debtors any further relief they are entitled.

Dated: September 6, 2019

Respectfully submitted,

| **BAKER BOTTS L.L.P.** | **WACHTELL, LIPTON, ROSEN & KATZ** |
|---|---|
| */s/ Chris Newcomb* | |
| James R. Prince, State Bar No. 00784791 | Richard G. Mason (*pro hac vice*) |
| Omar J. Alaniz, State Bar No. 24040402 | Amy R. Wolf (*pro hac vice*) |
| Kevin Chiu, State Bar No. 24109723 | **WACHTELL, LIPTON, ROSEN & KATZ** |
| **BAKER BOTTS L.L.P.** | 51 West 52nd Street |
| 2001 Ross Avenue, Suite 900 | New York, New York 10019 |
| Dallas, Texas 75201-2980 | Telephone:  (212) 403-1000 |
| Telephone:  (214) 953-6500 | Facsimile:  (212) 403-2000 |
| Facsimile:  (214) 953-6503 | Email:  rgmason@wlrk.com |
| Email: jim.prince@bakerbotts.com | arwolf@wlrk.com |
|          omar.alaniz@bakerbotts.com | |
|          kevin.chiu@bakerbotts.com | *Co-Counsel to the Debtors and Debtors in Possession* |

-and-

Emanuel C. Grillo (*pro hac vice*)
Chris Newcomb. (*pro hac vice*)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, New York   10112-4498
Telephone:  (212) 408-2500
Facsimile:  (212) 408-2501
Email: emanuel.grillo@bakerbotts.com
          chris.newcomb@bakerbotts.com

*Co-Counsel to the Debtors and Debtors in Possession*