**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER APPROVING THE**
**<u>SETTLEMENT AGREEMENT WITH AIRBUS HELICOPTERS S.A.S.</u>**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
>
> **THERE WILL BE A HEARING ON THIS MOTION ON <u>OCTOBER  3, 2019, AT 9:00 A.M. (CDT)</u> IN COURTROOM 400, 515 RUSK STREET, HOUSTON, TEXAS 77002, BEFORE THE HONORABLE DAVID R. JONES.**

The above-captioned debtors (collectively, the "<u>Debtors</u>") submit this motion (this

"<u>Motion</u>") for entry of an order, substantially in the form annexed hereto as **<u>Exhibit A</u>** (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303).  The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

"Proposed Order"), pursuant to sections 105(a) and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the settlement agreement (the "Settlement Agreement") by and among the Debtors and Airbus Helicopters S.A.S. ("Airbus," and together with the Debtors, the "Parties"), a copy of which is annexed hereto as **Exhibit B**.  In support of this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      One of the primary goals of these Chapter 11 Cases is to enable the Debtors to right-size their aircraft fleet.  As part of this process, the Debtors have identified cost savings to be achieved through a fleet reduction, and evaluated the need to add additional helicopters to their fleet after emergence from Chapter 11.  The Debtors determined that there is not a need based on current market conditions to increase their fleet by 22 helicopters at this time.  This led to the Debtors to seek to reject the Purchase Agreement (defined below) pursuant to the Rejection Motion (defined below).

2.      Rejecting the Purchase Agreement without the Settlement Agreement would have left various issues unresolved.  Most notably, Airbus is currently holding a deposit of €23,370,997, Airbus may have filed a large rejection damages claim if the Court approved the Rejection Motion, and Claim 143 (defined below) needs to be reconciled.  These open issues could have led to complex and costly litigation, which would have posed a significant burden to both Parties. Recognizing these risks, the Debtors and Airbus, with the assistance of their legal and financial advisors, negotiated the Settlement Agreement in good faith and through arm's-length negotiation seeking to, among other things, resolve the outstanding issues concerning the Purchase Agreement and preserve the Parties' long-standing business relationship.

3.      The Debtors submit that the Settlement Agreement is in the best interest of the Debtors, their stakeholders, and all parties in interest.  The Settlement Agreement, among other things, will bring approximately €11,685.498.50 back into the estate, comprised of a €5,842,749.25 cash payment and a €5,842,749.25 credit for the Debtors to apply towards future new aircraft purchase orders. Further, the Settlement Agreement withdraws Claim 143 and resolves all claims that Airbus may assert against the Debtors arising out of the Purchase Agreement.

4.      For these reasons and those set forth below, the Debtors respectfully request that the Court approve the Settlement Agreement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The basis for the relief requested herein are sections 105(a) and 365(a) of the Bankruptcy Code, and Bankruptcy Rule 9019.

## BACKGROUND

### A.     The Chapter 11 Cases

7.      On May 11, 2019 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

8.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On May 23, 2019, the United States Trustee appointed an official committee of unsecured creditors in these cases.  *See* Docket No. 179.

9.      On August 22, 2019, the Debtors filed their *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and Its Affiliated Debtors, As Modified* [Docket No. 589] and corresponding disclosure statement [Docket No. 590].

10.      Additional factual background regarding the Debtors, including their business operations, capital and debt structures, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of Brian Allman in Support of First Day Pleadings* [Docket No. 25] (the "First Day Declaration"),[2] which is fully incorporated in this Motion by reference.

**B.      The Purchase Agreement and Associated Claim**

11.      On or about February 27, 2015, BGI entered into *Purchase Agreement No. EC175.104.PA*, dated February 27, 2015 with Airbus, which was subsequently amended on December 16, 2015, August 31, 2016, November 1, 2017, and May 1, 2019 (the "Purchase Agreement"), that, among other things, provided for BGI to purchase seventeen (17) Firm EC175 helicopters (the "Initial Helicopter Order") and later, pursuant to an amendment to the Purchase Agreement, dated August 31, 2016, BGI agreed to purchase an additional five (5) Firm EC175 helicopters (the "Additional Helicopter Order," together with the Initial Helicopter Order, the "Ordered Helicopters"). Pursuant to the Purchase Agreement, the Debtors furnished a €23,370,997 deposit to Airbus (the "Deposit"), which Airbus alleges is non-refundable under the terms of the Purchase Agreement.

12.      Delivery of the first of the Ordered Helicopters has been postponed until October 2021 pursuant to an amendment to the Purchase Agreement, dated May 1, 2019 (the "May Amendment").  In the May Amendment, Airbus acknowledged that it had issued two notes (the "Notes") in the amount of $7,733,333 to the Debtors in respect to the buyback by Airbus of certain

---

[2]  Capitalized terms used, but not otherwise defined herein have meanings ascribed to them in the First Day Declaration.

AS332 helicopters (which has occurred). Airbus also agreed to issue a further four (4) additional notes to the Debtors between October 2021 and March 2025 totaling $8,266,667 (for future orders of spare parts and other support services) (the "Additional Notes"). This agreement was conditioned on the Debtors' purchase and receipt of the Ordered Helicopters (which has not occurred). Airbus remains in possession of the Deposit, which it alleges is non-refundable. Airbus never issued the Additional Notes.

13.     On July 30, 2019, Airbus filed proof of claim number 143 ("Claim 143") against BGI in these Chapter 11 Cases asserting an unliquidated general unsecured claim.  In Claim 143, Airbus asserts it filed Claim 143 to preserve its rights because, at the time Claim 143 was filed, the Debtors had not yet determined whether or not to assume or reject the Purchase Agreement pursuant to section 365 of the Bankruptcy Code.

**C.      The Rejection of the Purchase Agreement**

14.     On September 12, 2019, the Debtors filed their *Motion for Entry of an Order Authorizing the Debtors to Reject the Purchase Agreement with Airbus Helicopters, Pursuant to Sections 105 and 365 of the Bankruptcy Code* [Docket No. 639] (the "Rejection Motion") seeking to reject the Purchase Agreement.

15.     As set forth in greater detail in the Rejection Motion, Bristow has undertaken—and continues to undertake—a comprehensive analysis of its overall fleet in an effort to right-size its fleet.  As an ongoing component of that plan and of the chapter 11 process, Bristow has identified cost savings to be achieved through a fleet reduction and evaluating the need to add additional helicopters to its fleet after emergence from Chapter 11.  Based on projected market conditions, Bristow does not currently anticipate the need to increase the size of its fleet after emergence from Chapter 11.

16.     The Debtors have determined that the addition of the Ordered Helicopters to their fleet is no longer necessary for their future operations and that the projected maintenance, upkeep, and storage costs of the Ordered Helicopters will be a material financial burden for the Debtors after emerging from Chapter 11.

**D.      The Terms of the Settlement Agreement**[3]:

17.     The salient terms of the Settlement Agreement are:

    a.   The Rejection Motion is settled pursuant to the terms of the Settlement Agreement. Further, Airbus consents to the rejection of the Purchase Agreement pursuant to section 365 of the Bankruptcy Code pursuant to the terms of the Settlement Agreement and Proposed Order. *See* Settlement Agreement, ¶ 3.

    b.   Claim 143 is withdrawn in its entirety with prejudice. Airbus also waives its rights to amend Claim 143 and file any proofs of claim in these Chapter 11 Cases in relation to the Purchase Agreement. For the avoidance of doubt, Airbus waives its right to file any claims arising from the rejection of the Purchase Agreement pursuant to the Proposed Order. *See* Settlement Agreement, ¶ 4.

    c.   The terms of the Notes are unaltered by the terms of the Settlement Agreement, shall remain in full force as obligations of Airbus despite the rejection of the Purchase Agreement, and remain subject to the terms of the Purchase Agreement, as amended. Moreover, upon the Effective Date and the remittance of the Deposit Payment (as defined under the Settlement Agreement), any and all obligations of any kind of Airbus with respect to, related to, or concerning the Additional Notes, whether pursuant to the Purchase Agreement or otherwise, shall be released, terminated, waived, and otherwise extinguished pursuant to the terms of the Settlement Agreement. *See* Settlement Agreement, ¶ 5.

---

[3] To the extent that there is any conflict between the terms of the Settlement Agreement and this summary, the Settlement Agreement shall control. Capitalized terms used but not otherwise defined in this summary shall take the meanings ascribed to them in the Settlement Agreement.

d.  The Deposit shall be disposed of as follows:

- Within fourteen (14) calendar days of the Effective Date, Airbus shall make a payment equal to one fourth of the Deposit, in the amount of €5,842,749.25, to the Debtors by wire transfer in immediately available funds to the wiring instructions for the Debtors identified in Exhibit "1" to the Settlement Agreement.  *See* Settlement Agreement, ¶ 6(a).

- Effective as of the Debtors' receipt of the Deposit Payment in Paragraph 6(a) and the issuance of the Credit in Paragraph 6(c), the Debtors waive all rights to seek the return of the remaining portion of the Deposit. *See* Settlement Agreement, ¶ 6(b).

- Notwithstanding anything to the contrary in Paragraphs 6(a) and 6(b) of the Settlement Agreement, Airbus shall also issue a credit (the "Credit") in the amount of €5,842,749.25 to the Debtors, which the Debtors may use at their discretion to buy exclusively new H175 and H160 helicopters from Airbus (to the exclusion of any other goods, products, or services, for which the Credit may not be used or applied); *provided however*, that any and all purchase order(s) to which the Credit is to be applied must be placed with Airbus no later than the date that is forty-eight (48) months after the Effective Date. Further, the Credit may represent no greater than twenty percent (20%) of the sum of the purchase order(s) to which the Credit is applied. If the Debtors do not place a purchase order(s) with Airbus within such forty-eight (48) month period after the Effective Date, then the Credit shall become void and shall be extinguished and waived in its entirety.  *See* Settlement Agreement, ¶ 6(c).

e.  Airbus will withdraw its vote to reject the Debtors' Plan by no later than Monday, September 23, 2019.  Airbus's *Limited Objection and Reservation of Rights* with respect to the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group, Inc. and its Debtor Affiliates, as Modified* (Docket No. 685) shall be withdrawn upon this Court's approval of the Settlement Agreement. *See* Settlement Agreement, ¶ 7.

f.  Unless compelled by legal process and testifying under oath, neither the Debtors nor the Debtors' elected officials, directors, managers, coordinators, and/or employees, shall at any time following the Effective Date, directly or indirectly, make or engage in, or solicit or encourage others to make or engage in, any conduct, verbal or otherwise, that would defame, harm, disparage, or otherwise adversely affect the reputation of Airbus, its subsidiaries, or any of its employees, trustees, directors, shareholders, owners, officers, attorneys, agents and advisors, individually or collectively, or any of their products, services, businesses or activities, including, but not limited to, any oral statements regarding the quality or reliability of the Ordered Helicopters or Airbus's other products or business operations. *See* Settlement Agreement, ¶ 8.

g. Upon the remittance of the Deposit Payment and issuance of the Credit as set forth in paragraph 6(c) of the Settlement Agreement, and as consideration for entry into the Settlement Agreement, the Debtors on behalf of themselves, their estates, their heirs, representatives and assigns, do hereby fully, finally and forever waive, release and/or discharge Airbus, and their respective heirs, successors, assigns, affiliates, officers, directors, shareholders, associates, partners, subsidiaries, predecessors, successors, employees, financial advisors, attorneys and agents from any and all of the Debtors' claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, demand rights, titles, defenses, or demands whatsoever, known or unknown, asserted or unasserted (including, without limitation, preference and all other chapter 5 avoidance actions, if any, that the Debtors or their estates may have against Airbus), which may arise from or are otherwise related to the Purchase Agreement or the Additional Notes to the extent permitted by law (and save and except for any cause of action or claim based on Airbus's breach of the Settlement Agreement).  For the avoidance of doubt, all of the Debtors' rights concerning the Notes are preserved and not waived in any way by the Settlement Agreement.  *See* Settlement Agreement, ¶ 9.

h. Upon the Effective Date, and as consideration for entry into the Settlement Agreement, Airbus, on behalf of itself, its heirs, representatives and assigns, does hereby fully, finally and forever waive and release the Debtors, their estates, and their heirs, successors, assigns, affiliates, officers, directors, shareholders, associates, partners, subsidiaries, predecessors, successors, employees, financial advisors, attorneys and agents from any and all of Airbus' claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, demand rights, titles, defenses, or demands whatsoever, known or unknown, asserted or unasserted, which may arise from or are otherwise related to the Purchase Agreement or the Additional Notes to the extent permitted by law (and save and except for any cause of action or claim based on the Debtors' breach of the Settlement Agreement). For the avoidance of doubt, all of Airbus's rights under the Stipulation and concerning the Notes are preserved and not waived in any way by the Settlement Agreement. *See* Settlement Agreement, ¶ 10.

## **RELIEF REQUESTED**

18. The Debtors respectfully request that the Court enter an order, substantially in the form of the Proposed Order approving the Settlement Agreement pursuant to sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

**BASIS FOR RELIEF**

A.  **Rejection of the Purchase Agreement**
    **is a Sound Exercise of the Debtors' Business Judgement.**

19.      Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 521 (1984); *In re Lavigne*, 114 F.3d 379, 386 (2d Cir. 1997).  "[T]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'"  *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993); *see also Matter of Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994) (noting that Section 365 "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed.").

20.      The standard applied to determine whether the rejection of an unexpired lease should be authorized is the "business judgment" standard.  *See In re Penn Traffic Co.*, 524 F.3d 373, 383 (2d Cir. 2008); *In re Texas Health Enterprises Inc.*, 72 Fed. Appx. 122, 126 (5th Cir. 2003) (citing *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985)); *In re Old Carco LLC*, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009); *see also Bildisco & Bildisco*, 465 U.S. at 513; *In re Orion Pictures Corp.*, 4 F.3d at 1098-99; *In re Minges*, 602 F.2d 38, 42 (2d Cir. 1979); *In re Texas Sheet Metals, Inc.*, 90 B.R. 260, 264 (Bankr. S.D. Tex. 1988).  Courts defer to a debtor's business judgment in rejecting an unexpired lease, and upon finding that a debtor has exercised its sound business judgment, approve the rejection under section 365(a) of the Bankruptcy Code.  *See Bildisco & Bildisco*, 465 U.S. at 523 (recognizing the "business judgment" standard used to approve rejection of executory contracts); *Nostas Assocs. v. Costich (In re Klein*

9

*Sleep Products, Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996) (recognizing the "business judgment" standard used to approve rejection of executory contracts); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1307 (5th Cir. 1985) (applying business judgment standard to the determination of whether a rejection decision was proper under § 365); *In re Minges*, 602 F.2d at 42-43 (holding that the "business judgment" test is appropriate for determining when an executory contract can be rejected); *In re Pilgrim's Pride Corp.*, 403 B.R. 413, 426 (Bankr. N.D. Tex. 2009) (holding that, absent public policy necessitating a more stringent standard, business judgment standard applies to a rejection decision under § 365(a)).

21.     The "business judgment" standard is not a strict standard; it requires only a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See In re Pisces Energy, LLC*, Nos. 09–36591–H5–11, 09–36593–H5–11, 2009 WL 7227880 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment." (citation omitted)); *In re Balco Equities, Inc.*, 323 B.R. 85, 99 (Bankr. S.D.N.Y 2005) ("In determining whether the debtor has employed reasonable business discretion, the court for the most part must only determine that the rejection will likely benefit the estate.") (quoting *In re G Survivor Corp.*, 171 B.R. 755, 757 (S.D.N.Y. 1994)).  Further, under the business judgment standard, "[a] debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'"  *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001).

22.     As set forth in greater detail in the Rejection Motion, the Debtors in their business judgement have determined to reject the Purchase Agreement because, as part of their ongoing efforts to reduce costs and anticipate their post-emergence needs, the Ordered Helicopters are no

longer necessary under their current business plan. There is currently not a projected need to add

an additional 22 helicopters to the Debtors' fleet.

23.     Thus, the Debtors have determined to reject the Purchase Agreement because it is

burdensome to the Debtors and no longer beneficial to the Debtors or their estates. Further, Airbus

has consented to the rejection of the Purchase Agreement. Accordingly, the Debtors respectfully

request that the Court authorize the Debtors to reject the Purchase Agreement pursuant to the terms

of the Settlement Agreement.

**B.      The Settlement Should Be Approved.**

24.     A bankruptcy court may approve a settlement in accordance with Bankruptcy Rule

9019, which provides that "[o]n motion by the [debtor] and after notice and a hearing, the court

may approve a compromise or settlement." Fed. R. Bankr. P. 9019. "Compromises are 'a normal

part of the process of reorganization,'" *Protective Comm. for Indep. S'holders of TMT Trailer

Ferry Inc., v. Anderson*, 390 U.S. 414, 424 (1968), and are favored in bankruptcy because they

minimize litigation costs and further the parties' interest in expediting the administration of the

bankruptcy case. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Bond*,

1994 U.S. App. Lexis 1282, *9-*14 (4th Cir. 1994). "One of the goals of Congress in fashioning

the Bankruptcy Code was to encourage parties in a distress situation to work out a deal among

themselves." *In re Mirant Corp.*, 334 B.R. 800, 811 (Bankr. N.D. Tex. 2005).

25.     In determining whether to approve a settlement, courts in the Fifth Circuit have

applied a three factor test with a focus on comparing "the terms of the compromise with the likely

rewards of litigation." *In re Age Refining, Inc.*, 801 F.3d 530, 540 (5th Cir. 2015) (citing *Rivercity

v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 607 (5th Cir. 1980)). A bankruptcy court

must evaluate: (a) the probability of success in the litigation, with due consideration for the

uncertainty in fact and law, (b) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (c) all other factors bearing on the wisdom of the compromise. *See Age Refining*, 801 F.3d at 540 (citing *Jackson Brewing Co.*, 624 F.2d at 602); *see also In re Cajun Electric Power Cooperative, Inc.*, 119 F.3d 349, 356 (5th Cir. 1997) (citing same*); In re Mirant Corp.*, 348 B.R. 725, 739-40 (Bankr. N.D. Tex. 2006). Furthermore, "[u]nder the rubric of the third, catch-all provision, [the Fifth Circuit has] specified two additional factors that bear on the decision to approve a proposed settlement." *Id*. These "other factors" include consideration of (i) "the best interest of creditors, with proper deference to their reasonable views;" and (ii) "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id*.; *see also Age Refining*, 801 F.3d at 540 (citing *Cajun Electric*); *In re Heritage Organization, L.L.C.*, 375 B.R. 230, 260 (Bankr. N.D. Tex. 2007).

26.     "In evaluating a Rule 9019 settlement, a bankruptcy court need not 'conduct a mini-trial to determine the probable outcome of any claims waived in the settlement.'" *In re Age Refining*, 801 F.3d at 541. Rather, "[t]he judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision." *In re Cajun Elec. Power Coop.*, 119 F.3d at 356; *see also TMT Trailer Ferry*, 390 U.S. at 425 (noting that a court should "compare the terms of the compromise with the likely rewards of litigation"); *In re Heritage Organization, LLC*, 375 B.R. at 260 ("it is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision . . . ."); *In re Mirant*, 348 B.R. at 741, n.36 ("For a settlement to meet the best interests test, the amount being paid or received by the estate (or, here, Mirant) need only be within the extremes of the range.").

27.    The Debtors in their business judgement have determined that the Settlement Agreement is fair and equitable and is in the best interest of the Debtors and their estates.  The Settlement Agreement, which is the product of good faith and arm's-length negotiation, preserves the Debtors' relationship with Airbus and brings approximately €11,685.498.50 back into the estate, comprised of a €5,842,749.25 cash payment and €5,842,749.25 in credits for the Debtors to apply towards future purchase orders.

28.    Resolving a potentially large rejection damages claim that may have been asserted by Airbus if the Court approved the Rejection Motion and the withdrawal of Claim 143 also obviates the need for costly and complex litigation concerning the Parties' respective obligations under the Purchase Agreement.  The Parties also dispute whether Airbus was legally obligated to return the Deposit if the Purchase Agreement was rejected.  Litigation concerning these issues would have required the Parties to engage in extensive discovery, which would have placed significant burdens on both Parties.

29.     Based on the foregoing, the Debtors submit that the terms of the Settlement Agreement represent a reasonable exercise of the Debtors' business judgement, are supported by valid business justifications, and benefit all stakeholders in the Debtors' restructuring process. Accordingly, the Debtors respectfully request that the Court approve the Settlement Agreement.

## NO PRIOR REQUEST

30.    No prior request for the relief sought herein has been made to this or any other Court.

## REQUEST FOR EMERGENCY HEARING

31.    In accordance with Rule 9013-1(i) of the Local Bankruptcy Rules for the Southern District of Texas, the Debtors request emergency consideration of the Motion.  Consideration of

the Motion by October 3, 2019 is critical because it resolves all issues concerning the Purchase Agreement and the Rejection Motion that if not resolved promptly could lead to uncertainty as to whether the Deposit will be returned to the Debtors and if Airbus will file a rejection damages claim.  As such, the Debtors respectfully request that the Court set a hearing on this Motion on October 3, 2019 at 9:00 a.m. (prevailing Central Time).

## NOTICE

32.     The Debtors will provide notice of this Motion to (a) the U.S. Trustee; and (b) all other parties on the Master Service List.  The Debtors respectfully submit that such notice is sufficient and that no further notice of this Motion is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion, and granting such other and further relief the Court may deem proper.

*[Remainder of Page Intentionally Blank]*

Dallas, Texas
Dated: September 30, 2019

Respectfully submitted,

**BAKER BOTTS L.L.P.**                                  **WACHTELL, LIPTON, ROSEN & KATZ**

*/s/  Omar J. Alaniz*

James R. Prince, State Bar No. 00784791          Richard G. Mason (*pro hac vice*)
Omar J. Alaniz, State Bar No. 24040402            Amy R. Wolf (*pro hac vice*)
Kevin Chiu, State Bar No. 24109723               **WACHTELL, LIPTON, ROSEN & KATZ**
**BAKER BOTTS L.L.P.**                                  51 West 52nd Street
2001 Ross Avenue, Suite 900                       New York, New York 10019
Dallas, Texas 75201-2980                          Telephone:  (212) 403-1000
Telephone:  (214) 953-6500                         Facsimile:  (212) 403-2000
Facsimile:  (214) 953-6503                         Email:  rgmason@wlrk.com
Email:  jim.prince@bakerbotts.com                          arwolf@wlrk.com
         omar.alaniz@bakerbotts.com
         kevin.chiu@bakerbotts.com
                                                  *Co-Counsel to the Debtors and Debtors in*
                                                  *Possession*

-and-

Emanuel C. Grillo (*pro hac vice*)
Chris Newcomb. (*pro hac vice*)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, New York   10112-4498
Telephone:  (212) 408-2500
Facsimile:  (212) 408-2501
Email:  emanuel.grillo@bakerbotts.com
         chris.newcomb@bakerbotts.com

*Co-Counsel to the Debtors and Debtors in*
*Possession*

**Exhibit A**

**Proposed Order**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BRISTOW GROUP INC., *et al.*,[1] | ) | Case No. 19-32713 (DRJ) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## ORDER APPROVING DEBTORS'
## SETTLEMENT AGREEMENT WITH AIRBUS HELICOPTERS S.A.S.

Upon the motion (the "Motion"), filed by the above-captioned debtors (collectively, the "Debtors") for entry of an order (this "Order"), pursuant to sections 105(a) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to enter into the Settlement Agreement;[2] and it appearing that the Court having jurisdiction to consider the relief sought in the Motion in accordance with 28 U.S.C. § 1334; and it appearing that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that consideration of the Motion on an emergency basis is proper under the circumstances; and it appearing that all due and proper notice of the Motion having been given under the circumstances; and it appearing that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest; and after due and deliberation thereon, and sufficient cause appearing therefore, it is hereby

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303).  The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

[2] Capitalized terms not otherwise defined herein shall have the same meanings as ascribed to them in the Motion.

**ORDERED, ADJUDGED AND DECREED** that:

1.      The Motion is GRANTED to the extent set forth herein.

2.      The Debtors are authorized to enter into the Settlement Agreement with Airbus, which was attached as Exhibit "B" to the Motion.

3.      The Purchase Agreement is hereby rejected pursuant to section 365 of the Bankruptcy Code, effective as of the date of this Order.

4.      Pursuant to the terms of the Settlement Agreement, Airbus is barred from amending Claim 143 or filing additional proofs of claim in these Chapter 11 Cases in relation to the Purchase Agreement, including, but not limited to, any claims for rejection damages.

5.      Prime Clerk, the claims agent retained in the Debtors' Chapter 11 Cases, is authorized to reflect that Claim 143 is withdrawn on the official claims register maintained for the Debtors' Chapter 11 Cases.

6.      Airbus' vote to reject the Plan shall be deemed withdrawn, effective as of September 23, 2019.

7.      Airbus' *Limited Objection and Reservation of Rights* [Docket No. 685] shall be deemed withdrawn, effective as of September 23, 2019.

8.      Nothing herein shall affect or modify the *Stipulation and Agreed Order Regarding Opt Out of Third-Party Plan Releases by Airbus Helicopters S.A.S.* [Docket No. 736].

9.      The Debtors are authorized to take all necessary actions to carry out this Order.

10.     The Court shall retain jurisdiction to hear and determine any and all matters arising from the interpretation and/or implementation of this Order.

Dated:  _____, 2019
        Houston, Texas                          _____
                                                HON. DAVID R. JONES
                                                United States Bankruptcy Judge

2

**<u>Exhibit B</u>**

**Settlement Agreement**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BRISTOW GROUP INC., *et al.*, | ) | Case No. 19-32713 (DRJ) |
| | ) | |
| Debtors. [1] | ) | Jointly Administered |
| | ) | |

**SETTLEMENT AGREEMENT BY AND AMONG**
**THE DEBTORS AND AIRBUS HELICOPTERS S.A.S.**

This settlement agreement (the "Settlement Agreement") is made by and among the above-captioned debtors and debtors in possession (collectively, the "Debtors"), and Airbus Helicopters S.A.S. ("Airbus" and, together with the Debtors the "Parties").

**RECITALS**

**The Chapter 11 Cases**

A.      On May 11, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (Houston Division) (the "Bankruptcy Court") commencing the above-styled Chapter 11 cases (the "Chapter 11 Cases").

B.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On May 23,

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are:  Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303).  The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

2019, the United States Trustee appointed an official committee of unsecured creditors in these Chapter 11 Cases. *See* Docket No. 179.

**The Purchase Agreement and Associated Claim**

C.       On or about February 27, 2015, Bristow Group, Inc. ("BGI"), one of the Debtors, entered into the *Purchase Agreement No. EC 175.104.PA*, dated February 27, 2015 with Airbus, which was subsequently amended on December 16, 2015, August 31, 2016, November 1, 2017, and May 1, 2019 (the "Purchase Agreement"), that, among other things, provided for BGI to purchase seventeen (17) Firm EC175 helicopters (the "Initial Helicopter Order") and later, pursuant to an amendment to the Purchase Agreement, dated August 31, 2016, BGI agreed to purchase an additional five (5) Firm EC175 helicopters (the "Additional Helicopter Order," together with the Initial Helicopter Order, the "Ordered Helicopters").  Pursuant to the Purchase Agreement, the Debtors furnished a €23,370,997 deposit to Airbus (the "Deposit").

D.       Delivery of the first of the Ordered Helicopters has been postponed until October 2021 pursuant to an amendment to the Purchase Agreement, dated May 1, 2019 (the "May Amendment").  In the May Amendment, Airbus also acknowledged that it had issued two notes (the "Notes") in the amount of $7,733,333 to the Debtors in respect to the buyback of certain helicopters, and Airbus agreed to issue a further four additional notes to the Debtors between October 2021 and March 2025 totaling $8,266,667 (for future orders of spare parts and other support services) (the "Additional Notes") also in respect to the buyback of certain helicopters. Airbus never issued the Additional Notes.

E.       On July 30, 2019, Airbus filed proof of claim number 143 ("Claim 143") against BGI in the Chapter 11 Cases asserting an unliquidated general unsecured claim.

**The Rejection Motion**

F.     On September 12, 2019, the Debtors filed their *Motion for Entry of an Order Authorizing the Debtors to Reject the Purchase Agreement with Airbus Helicopters, Pursuant to Sections 105 and 365 of the Bankruptcy Code* [Docket No. 639] (the "Rejection Motion") in the Chapter 11 Cases seeking to reject the Purchase Agreement.

G.     On September 23, 2019, Airbus filed its *Limited Objection and Reservation of Rights* [Docket No. 685] (the "Limited Objection") in the Chapter 11 Cases with respect to the *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group, Inc. and its Debtor Affiliates*, as modified [Docket No. 589] (the "Plan").

H.     On September 30, 2019, Debtors and Airbus entered into the *Stipulation and Agreed Order Regarding Opt Out of Third-Party Plan Releases by Airbus Helicopters S.A.S.* [Docket No. 736] (the "Stipulation").

I.     Following arm's-length discussions between the Debtors and Airbus, the Parties have agreed to resolve all of the issues presented by, arising under, or related to the Purchase Agreement, upon the terms and conditions set forth below.

**NOW, THEREFORE**, without the admission of liability by the Parties or the adjudication of any issue of fact or law, and upon the consent and agreement between the Parties, it is hereby stipulated, consented to and agreed:

## THE AGREEMENT

1.     **Incorporation.**  The recitals set forth above are incorporated herein by reference.

2.     **Bankruptcy Court Approval.**

a.     This Settlement Agreement shall become effective upon the date that an order of the Bankruptcy Court is entered in the Chapter 11 Cases approving the terms of this

Settlement Agreement (the "Approval Order"), and such Approval Order becomes final and not subject to an appeal or request for stay (the "Effective Date").

b.      The Debtors will promptly file a motion with the Bankruptcy Court for entry of the Approval Order pursuant to sections 105(a) and 365 of the Bankruptcy Code and Bankruptcy Rule 9019 approving this Settlement Agreement.

c.      Between the date that the Parties sign the Settlement Agreement (the "Execution Date") and the Effective Date, the Parties agree that they are bound by the Settlement Agreement, upon its approval by the Bankruptcy Court, and that they shall thereafter make no claim before the Bankruptcy Court that is contrary to the terms set forth herein.

d.      This Settlement Agreement, and any settlements or releases contained within it, will become null and void *ab initio* if either: (1) the Bankruptcy Court denies approval of this Settlement Agreement or (2), at the option of either Party, an Approval Order is not entered approving this Settlement Agreement within 150 calendar days after the Execution Date.

3.      **Rejection of the Purchase Agreement.**

a.      The Rejection Motion is settled pursuant to the terms of this Settlement Agreement.

b.      Airbus consents to the rejection of the Purchase Agreement pursuant to section 365 of the Bankruptcy Code pursuant to the terms of this Settlement Agreement and the Approval Order.

4.      **Claim 143.**

a.      Claim 143 is withdrawn in its entirety with prejudice.

b.      Airbus waives its rights to amend Claim 143 and file any proofs of claim in these Chapter 11 Cases in relation to the Purchase Agreement.  For the avoidance of doubt, Airbus

4

waives its right to file any claims in these Chapter 11 Cases arising from the rejection of the Purchase Agreement pursuant to the Approval Order.

     5.      **The Notes and Additional Notes.**

     a.      The terms of the Notes are unaltered by the terms of this Settlement Agreement, shall remain in full force as obligations of Airbus despite the rejection of the Purchase Agreement, and remain subject to the terms of the Purchase Agreement, as amended.

     b.      Upon the Effective Date and the remittance of the Deposit Payment (defined below), any and all obligations of any kind of Airbus with respect to, related to, or concerning the Additional Notes, whether pursuant to the Purchase Agreement or otherwise, are hereby released, terminated, waived, and otherwise extinguished pursuant to the terms of this Settlement Agreement.

     6.      **The Deposit.**

     a.      Within fourteen (14) calendar days of the Effective Date, Airbus shall make a payment equal to one-fourth of the Deposit, in the amount of €5,842,749.25, to the Debtors (the "Deposit Payment"), by wire transfer in immediately available funds to the wiring instructions for the Debtors identified in Exhibit "1" to this Settlement Agreement.

     b.      Effective as of the Debtors' receipt of the Deposit Payment in Paragraph 6(a) and the issuance of the Credit (defined below) in Paragraph 6(c), the Debtors waive all rights to seek the return of the remaining portion of the Deposit.

     c.      Notwithstanding anything to the contrary in the preceding Paragraphs 6(a) and 6(b), Airbus shall also issue a credit (the "Credit") equal to one-fourth of the Deposit, in the amount of €5,842,749.25, to the Debtors, which the Debtors may use at their discretion to buy exclusively new H160 and H175 helicopters from Airbus (to the exclusion of any other goods,

products, or services, for which the Credit may not be used or applied); *provided however*, that any and all purchase order(s) to which the Credit is to be applied must be placed with Airbus no later than the date that is forty-eight (48) months after the Effective Date. Further, the Credit may represent no greater than twenty percent (20%) of the sum of the purchase order(s) to which the Credit is applied. If the Debtors do not place a purchase order(s) with Airbus within such forty-eight (48) month period after the Effective Date, then the Credit shall become void and shall be extinguished and waived in its entirety.

       7.    **<u>Plan Confirmation</u>.**

       a.    Airbus will withdraw its vote to reject the Debtors' Plan by no later than Monday, September 23, 2019.

       b.    Airbus will withdraw its Limited Objection effective upon entry of the Approval Order.

       c.    Nothing in this Settlement Agreement or Approval Order shall modify the Stipulation providing an opt out of certain Releases.

       8.    **<u>No Disparagement</u>.**  Unless compelled by legal process and testifying under oath, neither the Debtors nor the Debtors' elected officials, directors, managers, coordinators, and/or employees, shall at any time following the Effective Date, directly or indirectly, make or engage in, or solicit or encourage others to make or engage in, any conduct, verbal or otherwise, that would defame, harm, disparage, or otherwise adversely affect the reputation of Airbus, its subsidiaries, or any of its employees, trustees, directors, shareholders, owners, officers, attorneys, agents and advisors ("<u>Airbus Affiliates</u>"), individually or collectively, or any of their products, services, businesses or activities, including, but not limited to, any oral statements regarding the quality or reliability of the Ordered Helicopters or Airbus's other products or business operations.

9.      **Release of Airbus By Debtors**. Upon the remittance of the Deposit Payment and issuance of the Credit by Airbus as set forth in paragraph 6(c), and as consideration for entry into this Settlement Agreement, the Debtors on behalf of themselves, their estates, their heirs, representatives and assigns, do hereby fully, finally and forever waive, release and/or discharge Airbus, and its respective heirs, successors, assigns, affiliates, officers, directors, shareholders, associates, partners, subsidiaries, predecessors, successors, employees, financial advisors, attorneys and agents from any and all of the Debtors' claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, demand rights, titles, defenses, or demands whatsoever, known or unknown, asserted or unasserted (including, without limitation, preference and all other chapter 5 avoidance actions, if any, that the Debtors or their estates may have against Airbus), which may arise from or are otherwise related to the Purchase Agreement or the Additional Notes to the extent permitted by law**,** and save and except for any cause of action or claim based on Airbus's breach of this Settlement Agreement.  Furthermore, and for the avoidance of doubt, all of the Debtors' rights concerning the Notes are preserved and not waived in any way by this Settlement Agreement.

10.      **Release of Debtors by Airbus.**  Upon the Effective Date, and as consideration for entry into this Settlement Agreement, Airbus, on behalf of itself, its heirs, representatives and assigns, does hereby fully, finally and forever waive and release the Debtors, their estates, and their heirs, successors, assigns, affiliates, officers, directors, shareholders, associates, partners, subsidiaries, predecessors, successors, employees, financial advisors, attorneys and agents from any and all of Airbus' claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, demand rights, titles, defenses, or demands whatsoever, known or unknown, asserted or unasserted which may arise from or are otherwise related to the Purchase Agreement or the

Additional Notes to the extent permitted by law and save and except for any cause of action or claim based on the Debtors' breach of this Settlement Agreement. Furthermore, and for the avoidance of doubt, all of Airbus' rights under the Stipulation and concerning the Notes are preserved and not waived by this Settlement Agreement.

**Additional Terms**

11.     This Settlement Agreement constitutes the entire agreement and understanding of the Parties regarding the subject matter hereof and can be modified only by a writing signed by the Parties. All prior understandings, representations, and agreements are merged in this Settlement Agreement, and this Settlement Agreement shall not be modified in any manner, except by written instrument signed by the Parties.

12.     This Settlement Agreement shall be binding upon the Parties hereto and their respective successors and/or assigns.

13.     The Parties understand and agree that neither the making of this Settlement Agreement nor anything contained herein shall be construed or considered in any way to be an admission of guilt, wrongdoing, or noncompliance with federal, state or local law, statute, order or regulation, tortious act, breach of contract, violation of common law, or any other wrongdoing whatsoever.

14.     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action among or between the Parties, other than as may be necessary to: (a) obtain approval of and enforce this Settlement Agreement or any dispute hereunder, or (b) seek damages or injunctive relief in connection therewith.

15.     This Settlement Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing the document to be drafted. Each

Party warrants that it has been represented and advised by counsel or has had a full opportunity to be represented and advised by counsel with respect to this Settlement Agreement and all matters covered by it.

16.     This Settlement Agreement may be executed in multiple counterparts, each of which shall be deemed an original and evidence of this Settlement Agreement may be exchanged by email, fax or other electronic transmission of a scanned copy of the signature pages or by exchange of originally signed documents, each of which shall be as fully binding on the party as a signed original.

17.     Each person who executes this Settlement Agreement represents that he or she is duly authorized to execute this Settlement Agreement. The Parties warrant and represent that they are the holders and owners of the claims subject to the respective releases set forth in Paragraphs 9 and 10 above, that such claims have not been assigned or otherwise conveyed to any other person, firm, or entity, and that they have the right to surrender, compromise, and settle the claims covered by the terms of this Settlement Agreement.

18.     Each Party is responsible for accurately determining and reporting the tax consequences of the making and/or performance of this Settlement Agreement. The Parties further acknowledge and agree (i) that no representations have been made by any other Party regarding the appropriate tax treatment of any financial benefits or detriments resulting from the making and/or performance of this Settlement Agreement, and (ii) that no Party shall have any claim against any other Party based on or arising from the inaccurate reporting of the tax consequences of the making or performance of this Settlement Agreement.

19.     The Parties shall be responsible for their respective attorneys' fees, expenses, and costs incurred by them in connection with the Rejection Motion and the negotiation, execution, and implementation of this Settlement Agreement.

20.     The discovery by any Party, subsequent to the execution of this Settlement Agreement, of any facts not heretofore known to that Party, or that the facts or law upon which any Party relied in executing this Settlement Agreement was not as that Party believed it to be (other than as expressly set forth herein), shall not constitute grounds for declaring this Settlement Agreement void, avoidable, or otherwise unenforceable. This subsection is intended by the Parties to preclude any claim that any Party or other entity was fraudulently induced to enter into this Settlement Agreement or was induced to enter into this Settlement Agreement by a mistake of fact or law.

21.     **This Settlement Agreement shall be governed by and be construed in accordance with the laws of the State of Texas without giving effect to the principles of conflicts of laws thereof.** The Parties hereby irrevocably and unconditionally agree that the Bankruptcy Court shall retain exclusive jurisdiction to interpret, implement, and enforce the provisions of this Settlement Agreement. The Parties further agree that the Bankruptcy Court shall be the exclusive venue for litigation of any dispute or claim arising under or relating to this Settlement Agreement, and that the Bankruptcy Court is a convenient forum in which to decide any such dispute or claim. The Parties consent to the personal jurisdiction of the Bankruptcy Court for the litigation of any such dispute or claim.

*[Remainder of Page Intentionally Left Blank]*

**ACKNOWLEDGED AND AGREED BY:**

| | |
|---|---|
| Houston, Texas | Marignane, France |
| Dated: September 30, 2019 | Dated: September 30, 2019 |
| | |
| BRISTOW GROUP INC., *et al.,* | AIRBUS HELICOPTERS S.A.S. |
| *Debtors and Debtors in Possession* | |
| By: | By: |

| | |
|---|---|
| */s/ L. Don Miller* | */s/ Jean-Pascal Meo* |
| L. Don Miller | Jean-Pascal Meo |
| President and Chief Executive Officer | Senior Vice President and General Counsel |
| Bristow Group Inc. | Airbus Helicopters S.A.S. |
| 2103 City West Boulevard, 4th Floor | Route de l'Aéroport |
| Houston, Texas 77042 | 13725 Marignane Cedex |
| (713) 267-7600 | FRANCE |
| | +33 (0)4 42 85 60 51 |

**EXHIBIT "1"**
**WIRING INSTRUCTIONS FOR DEBTORS**