UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| BRISTOW GROUP INC., *et al.*,[1] | Case No. 19-32713 (DRJ) |
| Debtors. | Jointly Administered |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF
AN ORDER APPROVING THE SETTLEMENT AGREEMENT WITH
THE HUNTINGTON NATIONAL BANK AND WILMINGTON TRUST COMPANY**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
>
> **THE DEBTORS ARE REQUESTING THAT THE COURT SET A HEARING ON THIS MOTION ON OCTOBER 23, 2019, AT 11:00 A.M. (CDT) IN COURTROOM 400, 515 RUSK STREET, HOUSTON, TEXAS 77002, BEFORE THE HONORABLE DAVID R. JONES.**

The above-captioned debtors (collectively, the "Debtors") submit this motion (this "Motion") for entry of an order, substantially in the form annexed hereto as **Exhibit A** (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Bristow Group Inc. (9819), BHNA Holdings Inc. (8862), Bristow Alaska Inc. (8121), Bristow Helicopters Inc. (8733), Bristow U.S. Leasing LLC (2451), Bristow U.S. LLC (2904), BriLog Leasing Ltd. (9764), and Bristow Equipment Leasing Ltd. (9303). The corporate headquarters and the mailing address for the Debtors listed above is 2103 City West Blvd., 4th Floor, Houston, Texas 77042.

"Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving the settlement agreement (the "Agreement") by and among (i) Bristow U.S. LLC ("Lessee") and Bristow Group Inc. ("Guarantor," and together with the Lessee, the "Debtor Parties"); (ii) The Huntington National Bank ("HNB"); and (iii) Wilmington Trust Company not in its individual capacity but solely as owner trustee and lessor under a Trust Agreement dated as of April 3, 2006 for the benefit of HNB ("Owner Trustee," collectively, with the Debtor Parties, HNB, and the Owner Trustee, the "Parties") a copy of which is annexed hereto as **Exhibit B**. In support of this Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT[2]

1. With their emergence from Chapter 11 being imminent, the Debtors are finalizing the composition of their post-emergence fleet. The Debtors have determined that there is a need to lease the 211 Aircraft after emergence and that there is a potential future need to lease the 021 Aircraft. The Parties, through arm's-length negotiation, have negotiated the terms of the New 211 Lease, which was executed on October 17, 2019. Discussions concerning the terms of the Potential New 021 Lease are ongoing.

2. The Parties have determined that the entry into the New 211 Lease and the Potential 021 Lease resolve their commercial dispute concerning the New York Litigation and the Bankruptcy Claims. Left unresolved, these open issues could have led to complex and costly litigation, which would have posed a significant burden to the Parties and strain the Parties' future business relationship. Recognizing this, the Parties, with the assistance of their advisors, negotiated the Agreement in good faith and through arm's-length negotiation seeking to, among

---

[2] Capitalized terms in this Preliminary Statement are defined below if not defined above.

other things, resolve the outstanding issues concerning the Lease Agreements, New York Litigation, and Bankruptcy Claims.

3. The Debtors submit that the Agreement is in the best interest of the Debtors, their stakeholders, and all parties in interest. The Agreement, among other things, establishes a mechanism to consensually resolve the New York Litigation and Bankruptcy Claims, and provides for the exchange of mutual releases.

4. For these reasons and those set forth below, the Debtors respectfully request that the Court approve the Agreement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The basis for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

**A.     The Chapter 11 Cases**

7. On May 11, 2019 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

8. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 23, 2019, the United States Trustee appointed an official committee of unsecured creditors in these cases. *See* Docket No. 179.

9. On October 8, 2019, the Court entered an order confirming the Debtors' *Amended Joint Chapter 11 Plan of Reorganization of Bristow Group Inc. and its Debtor Affiliates, as Further Modified* [Docket No. 825].

10. Additional factual background regarding the Debtors, including their business operations, capital and debt structures, and the events leading to the filing of these chapter 11 cases, is set forth in detail in the *Declaration of Brian Allman in Support of First Day Pleadings* [Docket No. 25] (the "First Day Declaration"), which is fully incorporated in this Motion by reference.

**B.    The Lease Agreements**

11. On or about December 29, 2011, the Owner Trustee and Lessee executed Aircraft Lease (S/N 920021) (as amended, modified, supplemented and/or restated from time to time, the "021 Lease" and, together with all related transactions related to the lease of the 021 Aircraft (defined below), the "021 Lease Agreement"), pursuant to which Lessee leased from Owner Trustee the Sikorsky S-92 airframe bearing U.S. Registration Mark N932BG and manufacturer's serial number 920021, two General Electric model CT7-8A engines bearing manufacturer's serial numbers 947249 and 947250, a Sikorsky rotor blade assembly, one Hamilton Standard model 36-150[S92] auxiliary power unit bearing manufacturer's serial number P121, standard avionics and any equipment, logs, books and other records, or property related thereto (collectively, the "021 Aircraft").

12. On or about March 28, 2014, Capital One Equipment Finance Corp. ("Capital One") and Lessee executed Aircraft Lease (S/N 920211) (as amended, modified, supplemented and/or restated from time to time, the "211 Lease," and, together with all related transactions related to the lease of the 211 Aircraft (defined below), the "211 Lease Agreement" and together with the 021 Lease Agreement, the "Aircraft Lease Agreements"), pursuant to which Lessee

4

previously leased from HNB (as assignee from Capital One in connection with HNB's subsequent purchase of the 211 Aircraft (defined below)) the Sikorsky S-92 airframe bearing U.S. Registration Mark N892BG and manufacturer's serial number 920211, two (2) General Electric model CT7-8A engines bearing manufacturer's serial numbers GE-E947703 and GE-E947698, a Sikorsky rotor blade assembly, a Honeywell model 36-150 (S92) auxiliary power unit bearing manufacturer's serial number P335, standard avionics and any equipment, logs, books and other records, or property related thereto (collectively, the "211 Aircraft," and together with the 021 Aircraft, the "Aircraft").

13. On or about December 29, 2011, the Guarantor executed a guaranty (as amended, modified, supplemented and/or restated from time to time, the "021 Lease Guaranty"), in favor of Owner Trustee, pursuant to which Guarantor guaranteed all obligations, covenants and undertakings of the Lessee under the 021 Lease Agreement.

14. On or about March 28, 2014, the Guarantor executed a guaranty (as amended, modified, supplemented and/or restated from time to time, the "211 Lease Guaranty" and together with the 021 Lease Guaranty, the "Guaranties"), in favor of Capital One (and subsequently HNB in connection with its subsequent purchase of the 211 Aircraft), pursuant to which Guarantor guaranteed all obligations, covenants and undertakings of the Lessee under the 211 Lease Agreement.

15. On October 17, 2019, the Parties entered a new lease for the 211 Aircraft (the "New 211 Lease").

16. Further, the Parties are in discussions concerning a potential new lease related to the 021 Aircraft (the "Potential New 021 Lease").

## C.     The New York Litigation

17.     On November 6, 2017, HNB commenced a lawsuit in the United States District Court for the Southern District of New York against the Debtors, styled *The Huntington National Bank v. Bristow U.S. LLC et al.*, Case No. 17-cv-08595 (S.D.N.Y.) (the "New York Litigation"), seeking damages for an alleged breach of the 021 Lease, 021 Guaranty and declaratory relief. In the New York Litigation, the Debtors asserted counterclaims against HNB related to the 021 Lease and related to the 211 Lease.  HNB also asserted additional claims against the Debtors related to an alleged breach of the 211 Lease and 211 Guaranty.

18.     The Debtors believe that the claims asserted against the Debtors in the New York Litigation have no merit.

19.     HNB and the Owner Trustee believe that the counterclaims asserted against HNB in the New York Litigation have no merit.

## D.     HNB and the Owner Trustee's Claims

20.     On August 2, 2019, HNB filed proof of claim number 163 against the Guarantor in relation to the Guaranties and asserted a general unsecured claim in the amount of $4,869,407.78 ("Claim 163") on account of amounts that the Debtors allegedly owe to HNB under the 021 Lease and 211 Lease, and the claims that HNB asserted in the New York Litigation relating to the 021 Lease.

21.     On the same day, HNB also filed proof of claim number 187 against the Lessee in relation to the Aircraft Lease Agreements and asserted a general unsecured claim in the amount of $4,869,407.78 ("Claim 187") on account of amounts that the Debtors allegedly owe to HNB under the 021 Lease and 211 Lease, and the claims that HNB asserted in the New York Litigation relating to the 021 Lease.

22. On the same day, the Owner Trustee filed proof of claim number 189 in relation to the 021 Lease against the Lessee and asserted a general unsecured claim in the amount of $3,338,495 ("Claim 189" and together with Claim 163 and Claim 187, the "Bankruptcy Claims") on account of amounts that the Debtors allegedly owe to the Owner Trustee under the 021 Lease and the claims that the Owner Trustee asserted in the New York Litigation relating to the 021 Lease.

E. **The Terms of the Agreement** [3]

23. The salient terms of the Agreement are:

    a. Withdrawal of the Bankruptcy Claims.

- Within seven (7) days after the occurrence of the 021 PBH Eligibility Date,[4] HNB shall amend and reduce Claim 163 and Claim 187 with respect to all asserted amounts related to the 021 Aircraft, including the approximately $3,338,495.09 amount stated in Claim 163 and Claim 187. *See* Agreement, § 3.1(a).

- Within seven (7) days after the occurrence of the 211 PBH Eligibility Date,[5] HNB shall amend and reduce Claim 163 and Claim 187 with respect to all asserted amounts related to the 211 Aircraft, including the approximately $1,530,912.69 amount stated in Claim 163 and Claim 187. *See id.*, § 3.1(b).

---

[3] To the extent that there is any conflict between the terms of the Agreement and this summary, the Agreement shall control. Capitalized terms used but not otherwise defined in this summary shall take the meanings ascribed to them in the Agreement.

[4] The term "021 PBH Eligibility Date" is defined in the Agreement to mean the date of which (i) the Parties have executed the Potential New 021 Lease and (ii) either (a)(1) Sikorsky confirms that the 021 Aircraft is eligible to be enrolled on any power-by-the-hour ("PBH") or similar maintenance support program with Sikorsky and (2) GE confirms that the engines affixed to the 021 Aircraft are eligible to be enrolled on any PBH or similar maintenance support program with GE; or (b) the 021 Aircraft and the engines affixed thereto being enrolled on the Debtors' applicable PBH agreements with Sikorsky and GE, respectively. *See* Agreement, ¶ Q.

[5] The term "211 PBH Eligibility Date" is defined in the Agreement to mean the date of which (i) the Parties have executed the New 211 Lease and (ii) either (a)(1) Sikorsky confirms that the 211 Aircraft is eligible to be enrolled on any PBH or similar maintenance support program with Sikorsky and (2) GE confirms that the engines affixed to the 211 Aircraft are eligible to be enrolled on any PBH or similar maintenance support program with GE; or (b) the 211 Aircraft and the engines affixed thereto being enrolled on the Debtors' applicable PBH agreements with Sikorsky and GE, respectively. *See* Agreement, ¶ P.

- HNB shall withdraw Claim 163 and Claim 187 in their entirety within seven (7) days after the latter to occur of the 021 PBH Eligibility Date and 211 PBH Eligibility Date. *See id*, § 3.1(c).

- The Owner Trustee shall withdraw Claim 189 in its entirety within seven (7) days after the occurrence of the 021 PBH Eligibility Date. *See id.*, § 3.2.

b. <u>Reservation of Rights Concerning Bankruptcy Claims</u>. The Debtors reserve the right to object to Claim 163 and Claim 187 as they relate to the 021 Aircraft, and Claim 189, including, but not limited to, in the event the 021 PBH Eligibility Date does not occur within 180 days of the effective date of the Plan. *See id.*, § 4.1.

c. <u>The New York Litigation</u>. The Parties shall cooperate to jointly seek the dismissal of the New York Litigation, including the HNB Litigation Claims and the 021 Debtor Counterclaims, with prejudice, upon the latter to occur of the 021 PBH Eligibility Date and the 211 PBH Eligibility Date with each Party to bear their respective attorneys' fees and costs. *See id.*, § 5.1.

d. <u>The 021 Aircraft Releases.</u>

- Upon the 021 PBH Eligibility Date, the Debtors, on behalf of such Party and such Party's successors (including, without limitation, any trustees acting on behalf of such Debtor and any debtor-in-possession with respect to any Debtor), assigns, insurers, attorneys, agents, or persons, corporations, representatives and other persons or entities connected therewith, as applicable (collectively, the "<u>Debtor Releasors</u>"), hereby fully and forever compromise, settle, release, acquit, discharge and covenant not to sue HNB and the Owner Trustee and each of their respective predecessors, successors, assigns, parents, subsidiaries, affiliates and each and every one of their respective officers, employees, directors, agents and attorneys (collectively, the "<u>HNB Releasees</u>") from any and all debts, claims, demands, liabilities, responsibilities, disputes, causes, damages, actions, causes of action (whether at law and/or in equity) and obligations of every nature whatsoever (whether liquidated or unliquidated, known or unknown, asserted or unasserted, foreseen or unforeseen, matured or unmatured, fixed or contingent) that any of the Debtor Releasors had, have and/or may claim to have against any of the HNB Releasees which arise from or relate to any actions which any of the HNB Releasees have and/or may have taken or have and/or may have omitted to take prior to the Effective Date related to the 021 Debtor Counterclaims, the 021 Lease Agreement and/or the 021 Lease Guaranty; <u>provided, however</u>, nothing herein shall be deemed to impact any of the Parties' rights and obligations pursuant to the Agreement and the Potential New 021 Lease. *See id.*, § 8.1 (a).

8

- Upon the 021 PBH Eligibility Date, HNB and the Owner Trustee, on behalf of such Party and such Party's successors, assigns, insurers, attorneys, agents, or persons, corporations, representatives and other persons or entities connected therewith, as applicable (collectively, the "<u>HNB Releasors</u>"), hereby fully and forever compromise, settle, release, acquit, discharge and covenant not to sue the Debtors and each of their respective predecessors, successors, assigns, parents, subsidiaries, affiliates and each and every one of their respective officers, employees, directors, agents and attorneys (collectively, the "<u>Debtor Releasees</u>") from any and all debts, claims, demands, liabilities, responsibilities, disputes, causes, damages, actions, causes of action (whether at law and/or in equity) and obligations of every nature whatsoever (whether liquidated or unliquidated, known or unknown, asserted or unasserted, foreseen or unforeseen, matured or unmatured, fixed or contingent) that any of the HNB Releasors had, have and/or may claim to have against any of the Debtor Releasees which arise from or relate to any actions which any of the Debtor Releasees have and/or may have taken or have and/or may have omitted to take prior to the Effective Date related to the 021 Lease Agreement, the 021 Lease Guaranty, 021 HNB Litigation Claims, and Claim 163 and Claim 187 as they relate to the 021 Aircraft, and Claim 189; <u>provided, however</u>, nothing herein shall be deemed to impact any of the Parties' rights and obligations pursuant to the Agreement and the Potential New 021 Lease. *See id.*, § 8.1 (b).

e. <u>The 211 Aircraft Releases</u>.

- Upon the 211 PBH Eligibility Date, the Debtor Releasors, hereby fully and forever compromise, settle, release, acquit, discharge and covenant not to sue the HNB Releasees from any and all debts, claims, demands, liabilities, responsibilities, disputes, causes, damages, actions, causes of action (whether at law and/or in equity) and obligations of every nature whatsoever (whether liquidated or unliquidated, known or unknown, asserted or unasserted, foreseen or unforeseen, matured or unmatured, fixed or contingent) that any of the Debtor Releasors had, have and/or may claim to have against any of the HNB Releasees which arise from or relate to any actions which any of the HNB Releasees have and/or may have taken or have and/or may have omitted to take prior to the Effective Date related to the 211 Debtor Counterclaims, the 211 Lease Agreement and/or the 211 Lease Guaranty; <u>provided, however</u>, nothing herein shall be deemed to impact any of the Parties' rights and obligations pursuant to the Agreement and the New 211 Lease. *See id.*, § 8.2 (a).

- Upon the 211 PBH Eligibility Date, the HNB Releasors, hereby fully and forever compromise, settle, release, acquit, discharge and covenant not to sue the Debtor Releasees from any and all debts, claims, demands, liabilities, responsibilities, disputes, causes, damages, actions, causes of

action (whether at law and/or in equity) and obligations of every nature whatsoever (whether liquidated or unliquidated, known or unknown, asserted or unasserted, foreseen or unforeseen, matured or unmatured, fixed or contingent) that any of the HNB Releasors had, have and/or may claim to have against any of the Debtor Releasees which arise from or relate to any actions which any of the Debtor Releasees have and/or may have taken or have and/or may have omitted to take prior to the Effective Date related to the 211 Lease Agreement, 211 Lease Guaranty, 211 HNB Litigation Claims, and Claim 163 and Claim 187 as they relate to the 211 Aircraft; provided, however, nothing herein shall be deemed to impact any of the Parties' rights and obligations pursuant to the Agreement and the New 211 Lease. *See id.*, § 8.2 (b).

## RELIEF REQUESTED

24. The Debtors respectfully request that the Court enter an order, substantially in the form of the Proposed Order approving the Agreement pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BASIS FOR RELIEF

25. A bankruptcy court may approve a settlement in accordance with Bankruptcy Rule 9019, which provides that "[o]n motion by the [debtor] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. "Compromises are 'a normal part of the process of reorganization,'" *Protective Comm. for Indep. S'holders of TMT Trailer Ferry Inc., v. Anderson*, 390 U.S. 414, 424 (1968), and are favored in bankruptcy because they minimize litigation costs and further the parties' interest in expediting the administration of the bankruptcy case. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996); *In re Bond*, 1994 U.S. App. Lexis 1282, *9-*14 (4th Cir. 1994). "One of the goals of Congress in fashioning the Bankruptcy Code was to encourage parties in a distress situation to work out a deal among themselves." *In re Mirant Corp.*, 334 B.R. 800, 811 (Bankr. N.D. Tex. 2005).

26. In determining whether to approve a settlement, courts in the Fifth Circuit have applied a three factor test with a focus on comparing "the terms of the compromise with the likely

rewards of litigation." *In re Age Refining, Inc.*, 801 F.3d 530, 540 (5th Cir. 2015) (citing *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 607 (5th Cir. 1980)).  A bankruptcy court must evaluate: (a) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (b) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (c) all other factors bearing on the wisdom of the compromise.  *See Age Refining*, 801 F.3d at 540 (citing *Jackson Brewing Co.*, 624 F.2d at 602); *see also In re Cajun Electric Power Cooperative, Inc.*, 119 F.3d 349, 356 (5th Cir. 1997) (citing same*); In re Mirant Corp.*, 348 B.R. 725, 739-40 (Bankr. N.D. Tex. 2006). Furthermore, "[u]nder the rubric of the third, catch-all provision, [the Fifth Circuit has] specified two additional factors that bear on the decision to approve a proposed settlement." *Id*. These "other factors" include consideration of (i) "the best interest of creditors, with proper deference to their reasonable views;" and (ii) "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id*.; *see also Age Refining*, 801 F.3d at 540 (citing *Cajun Electric*); *In re Heritage Organization, L.L.C.*, 375 B.R. 230, 260 (Bankr. N.D. Tex. 2007).

27. "In evaluating a Rule 9019 settlement, a bankruptcy court need not 'conduct a mini-trial to determine the probable outcome of any claims waived in the settlement.'" *In re Age Refining*, 801 F.3d at 541. Rather, "[t]he judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision." *In re Cajun Elec. Power Coop.*, 119 F.3d at 356; *see also TMT Trailer Ferry*, 390 U.S. at 425 (noting that a court should "compare the terms of the compromise with the likely rewards of litigation"); *In re Heritage Organization, LLC*, 375 B.R. at 260 ("it is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision . . . ."); *In re Mirant*, 348 B.R. at

11

741, n.36 ("For a settlement to meet the best interests test, the amount being paid or received by the estate (or, here, Mirant) need only be within the extremes of the range.").

28. The Debtors in their business judgement have determined that the Agreement is fair and equitable and is in the best interest of the Debtors and their estates. The Agreement, which is the product of good faith and arm's-length negotiation, paves the way for the Parties' performance under the New 211 Lease and for the Parties to continue their discussions concerning the Potential 021 Lease.

29. The mechanism in the Agreement to resolve the Bankruptcy Claims provides a path forward for the resolution of each of the Bankruptcy Claims without the need for costly and complex litigation concerning the Parties' respective obligations under the Lease Agreements. Litigation concerning these issues would have required the Parties to engage in extensive discovery, which would have placed significant burdens on both Parties. Similarly, the Agreement provides a mechanism to consensually resolve the New York Litigation and the Bankruptcy Claims.

30. Based on the foregoing, the Debtors submit that the terms of the Agreement represent a reasonable exercise of the Debtors' business judgement, are supported by valid business justifications, and benefit all stakeholders in the Debtors' restructuring process. Accordingly, the Debtors respectfully request that the Court approve the Agreement.

**NO PRIOR REQUEST**

31. No prior request for the relief sought herein has been made to this or any other Court.

## REQUEST FOR EMERGENCY HEARING

32. In accordance with Rule 9013-1(i) of the Local Bankruptcy Rules for the Southern District of Texas, the Debtors request emergency consideration of the Motion. Consideration of the Motion by October 23, 2019 is critical because it provides a consensual resolution of issues concerning the Lease Agreements, the New York Litigation, and Bankruptcy Claims, which will obviate the need for litigation between the Parties after the Debtors' emergence from Chapter 11. As such, the Debtors respectfully request that the Court set a hearing on this Motion on October 23, 2019 at 11:00 a.m. (prevailing Central Time).

## NOTICE

33. The Debtors will provide notice of this Motion to (a) the U.S. Trustee; and (b) all other parties on the Master Service List. The Debtors respectfully submit that such notice is sufficient and that no further notice of this Motion is required.

*[The Remainder of this Page is Intentionally Blank.]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion, and granting such other and further relief the Court may deem proper.

Dallas, Texas
Dated: October 18, 2019

Respectfully submitted,

| **BAKER BOTTS L.L.P.** | **WACHTELL, LIPTON, ROSEN & KATZ** |
|---|---|
| */s/  Omar J. Alaniz* | |
| James R. Prince, State Bar No. 00784791 | Richard G. Mason (*pro hac vice*) |
| Omar J. Alaniz, State Bar No. 24040402 | Amy R. Wolf (*pro hac vice*) |
| Kevin Chiu, State Bar No. 24109723 | **WACHTELL, LIPTON, ROSEN & KATZ** |
| **BAKER BOTTS L.L.P.** | 51 West 52nd Street |
| 2001 Ross Avenue, Suite 900 | New York, New York 10019 |
| Dallas, Texas 75201-2980 | Telephone:  (212) 403-1000 |
| Telephone:  (214) 953-6500 | Facsimile:  (212) 403-2000 |
| Facsimile:  (214) 953-6503 | Email:  rgmason@wlrk.com |
| Email: jim.prince@bakerbotts.com |           arwolf@wlrk.com |
|          omar.alaniz@bakerbotts.com | |
|          kevin.chiu@bakerbotts.com | *Co-Counsel to the Debtors and Debtors in Possession* |

-and-

Emanuel C. Grillo (*pro hac vice)*
Chris Newcomb. (*pro hac vice*)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, New York   10112-4498
Telephone:  (212) 408-2500
Facsimile:  (212) 408-2501
Email: emanuel.grillo@bakerbotts.com
         chris.newcomb@bakerbotts.com

*Co-Counsel to the Debtors and Debtors in Possession*